Diana M. Torres (SBN 162284)
diana.torres@kirkland.com
Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff
AECOM ENERGY &
CONSTRUCTION, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AECOM ENERGY & CONSTRUCTION, INC., an Ohio Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN RIPLEY, an individual; TODD HALE, an individual; GARY TOPOLEWSKI, an individual; HENRY BLUM, an individual; BUD ZUKALOFF, an individual; "MORRISON KNUDSEN CORPORATION," a Nevada Corporation; "MORRISON-KNUDSEN COMPANY, INC.," a Nevada Corporation; "MORRISON-KNUDSEN SERVICES, INC.," a Nevada Corporation; and "MORRISON-KNUDSEN INTERNATIONAL INC.," a Nevada Corporation,<br><br>Defendants. | CASE NO. 2:17-cv-05398<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:**<br><br>**1. FALSE DESIGNATION OF ORIGIN/AFFILIATION/ PASSING OFF;**<br>**2. FALSE ADVERTISING;**<br>**3. CYBERPIRACY;**<br>**4. CA COMMON LAW UNFAIR COMPETITION;**<br>**5. CA STATUTORY UNFAIR COMPETITION;**<br>**6. CA STATUTORY FALSE ADVERTISING; AND**<br>**7. PETITION FOR CANCELLATION OF A REGISTERED MARK**<br><br>**DEMAND FOR JURY TRIAL** |

1   Plaintiff AECOM Energy & Construction, Inc. ("AECOM") brings this action
2   against Defendants for injunctive relief and damages.  The allegations herein are made
3   based on personal knowledge as to AECOM and its own actions and interactions, and
4   upon information and belief as to all other matters.

## INTRODUCTION

6   1.   This case is about a remarkable fraud by Defendants to usurp the identity
7   and goodwill of Morrison Knudsen Corporation, an iconic company in modern
8   American history, whose accomplishments include some of this nation's greatest and
9   most well-known engineering and construction feats ("MK").  In doing so, Defendants
10  have falsified corporate records, submitted false statements to both federal and state
11  government agencies, and have created a website www.morrison-knudsen.com (the
12  "Fraudulent Website") on which they falsely claim that MK's previous projects, as
13  well as its long and storied past, is their own.  Through this website, they offer for sale
14  to the public used construction equipment and seek equity stakes in other projects—all
15  by fraudulently trading on the knowledge, experience, and business reputation of MK.

16  2.   AECOM, the successor to MK, sent a cease and desist letter to
17  Defendants to reach a resolution to this matter.  Defendants' brazen response was to
18  accuse AECOM of attempting to trade off MK's goodwill—the goodwill that rightly
19  belongs to AECOM.  AECOM tried again to resolve this matter without court
20  intervention, explaining the acquisitions that form the basis for AECOM's rights.
21  This time, Defendants did not respond.  As of this date, Defendants continue to
22  impersonate MK, a company with which they have no actual relationship.  AECOM
23  thus files this action to enjoin Defendants from further fraudulent use of MK's name,
24  trademarks and corporate records, and from falsely asserting or taking any further
25  action to convey an affiliation or other relationship with MK, including through the
26  use of the Fraudulent Website.

## THE PARTIES

3.   Plaintiff AECOM is an Ohio corporation with its principal place of

business located at 1999 Avenue of the Stars, Suite #2600, Los Angeles, California 90067.  AECOM is an engineering firm that provides a wide range of services, including design, construction, technical services, management and capital.  Formerly known as Morrison Knudsen Corporation and then as Washington Group International, AECOM was the registered owner of MK's trademark rights in the United States.

4.      Defendant Morrison Knudsen Corporation is a Nevada Corporation, with its principal place of business at 2049 Century Park East, Suite 3850, Los Angeles, California 90067 (diagonally across the street from that of AECOM).

5.      Defendant Morrison-Knudsen Company, Inc. is a Nevada Corporation, with its principal place of business at 2049 Century Park East, Suite 3850, Los Angeles, California 90067.

6.      Defendant Morrison Knudsen International Inc. is a Nevada Corporation, with its principal place of business at 2049 Century Park East, Suite 3850, Los Angeles, California 90067.

7.      Defendant Morrison-Knudsen Services, Inc. is a Nevada Corporation, with its principal place of business at 2049 Century Park East, Suite 3850, Los Angeles, California 90067.

8.      Defendant John Ripley is an individual residing and working in Los Angeles, California, and, along with the other individual Defendants, controls the Defendant entities.

9.      Defendant Gary Topolewski is an individual residing and working in Los Angeles, California, and, along with the other individual Defendants, controls the Defendant entities.

10.      Defendant Todd Hale is an individual residing and working in Los Angeles, California, and, along with the other individual Defendants, controls the Defendant entities.

11.      Defendant Bud Zukaloff is an individual residing and working in Los

Angeles, California, and, along with the other individual Defendants, controls the Defendant entities.

12.     Defendant Henry Blum is an individual residing and working in Los Angeles, California, and, along with the other individual Defendants, controls the Defendant entities.

13.     At all relevant times, each of the Defendants was the agent and alter ego of each other Defendant, acting for and on behalf of each of the other Defendants, all of whom act as a single enterprise, with unity of purpose and control.

JURISDICTION AND VENUE

14.     This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and California statutory and common law.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 *et seq.*, and 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338(a) and 1338(b).  This Court has supplemental jurisdiction over the Fourth, Fifth, and Sixth Causes of Action below, pursuant to 28 U.S.C. § 1367(a).

15.     Each of the Defendants is subject to personal jurisdiction in this Court based on continuous and systematic contacts within this judicial district.  In multiple documents filed with government entities, Defendants state that their address is 2049 Century Park East Suite 3850, Los Angeles, CA 90067.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and (d) because a substantial amount of the events and injury occurred in this judicial district and Defendants themselves claim to operate their principal place of business in this district.

**BACKGROUND**

**MORRISON KNUDSEN CORPORATION**

17.     MK was founded in the early part of the 20th Century by Harry Morrison and Morris Knudsen, and became a storied engineering firm.  MK's first successful project was the construction of the Three-Mile Falls Dam in Oregon in 1914.  Within twenty years, MK was building such notable projects as the Hoover Dam.  By mid-

century, MK had reportedly built over 100 dams, as well as numerous airfields, military bases, ships, and countless other projects, throughout the world.  In 1954, TIME magazine's cover featured Harry Morrison, proclaiming him as "the man who has done more than anyone else to change the face of the earth."



18.     Over the following forty years, MK would build such notable projects as the San Francisco-Oakland Bay Bridge and the Trans-Alaska Pipeline, to name just two.  MK also broadened into railway design and construction, and spun off a separate entity called MK Rail.

19.     In 1996, MK and another construction and engineering firm, Washington Construction Group, Inc. merged, with the surviving entity operating under the name Morrison Knudsen Corporation and continuing to offer the same services that MK had offered for nearly a century.  In 2000, however, MK changed its name to Washington Group International.  In 2007, engineering and construction firm URS Corp. ("URS") acquired MK, then known as Washington Group International, and its operational subsidiaries, which were renamed but continued to operate as wholly owned subsidiaries of URS.  Despite its changes in name and ownership, MK continued to offer the same types of engineering and construction services that had made it one of the most influential companies ever to exist in its industry.

**AECOM**

20.     Headquartered in Los Angeles, California, AECOM is a subsidiary of a multinational engineering firm of the same name, with expertise in design, consulting,

construction, and management services.  Until 2000, Plaintiff AECOM was named Morrison Knudsen Corporation, an Ohio subsidiary of its Delaware parent, also called Morrison Knudsen Corporation.  In 2000, AECOM's name (Morrison Knudsen Corporation) changed to Washington Group International.  In 2007, Washington Group International and its related entities were acquired by URS Corp.  In 2014, AECOM's parent company, also called AECOM, acquired URS and its related entities when URS merged with an AECOM subsidiary.  In connection with that acquisition, Plaintiff AECOM's name became what it is today: AECOM Energy & Construction, Inc.

21.    The AECOM entities employ more than 87,000 people around the globe, and provide services to a wide range of clients in over 150 countries.  The new World Trade Center in New York, the Hong Kong International Airport, Dubai Healthcare City, London Gateway, The Royal Bank of Scotland and, closer to home, the new Los Angeles NFL stadium being built for the Chargers, are among the many projects engineered or built by AECOM entities.  For the past three years, AECOM has been named one of the "World's Most Admired Companies" by Fortune magazine.

22.    Despite its name changes, AECOM proudly uses the MK name, as well as MK trademarks, in brochures and client presentations to tout MK and its expertise as among the entities that helped make the AECOM entities the premier engineering and construction firm that it is today.

**THE MORRISON KNUDSEN MARK**

23.    Throughout the course of its existence, MK used many trademarks, including the word mark MORRISON KNUDSEN, the MK logo and the combined word and design mark MKCO MORRISON KNUDSEN (each an "MK Mark"; collectively, the "MK Marks").





5

24. Through their consistent use for roughly 100 years, the MK Marks achieved tremendous recognition and goodwill, and became associated with MK's premier design, engineering, and construction services. The MK Marks have appeared, among other places, on construction equipment, locomotive parts, and design materials, and denote the expertise of a company that built American airfields in World War II, NASA's Kennedy Space Center, and the Hoover Dam. Even today, years after the company changed its corporate name, the MK Marks appear in AECOM promotional materials detailing a century of design, engineering and construction expertise.

25. Over the course of many decades, MK had several trademark registrations for engineering and construction services, including, but not limited to, the following:

Reg. No. 0980525; Registered Mar. 12, 1974–Nov. 18, 1980.

Reg. No. 0980526; Registered Mar. 12, 1974–Nov. 18, 1980.

Reg. No. 1176535; Registered Nov. 3, 1981–May 27, 1988.

Reg. No. 1176536; Registered Nov. 3, 1981–May 27, 1988.

Reg. No. 1699437; Registered July 7, 1992–Feb. 5, 2016.

Reg. No. 1716505; Registered Sept. 15, 1992–Feb. 5, 2016.

Reg. No. 1744815; Registered Jan. 5, 1993–Feb. 5, 2016.

Reg. No. 1874224; Registered Jan. 17, 1995–Jan. 26, 2002.

Reg. No. 1874254; Registered Jan. 17, 1995–Jan. 26, 2002.

Reg. No. 1900555; Registered June 20, 1995–June 29, 2002.

Reg. No. 1921850; Registered Sept. 26, 1995–July 20, 2002.

Reg. No. 2199496; Registered Oct. 27, 1998–May 30, 2009.

26. Although the last registrations for the MK Marks lapsed in 2016, AECOM has been using the MK Marks in its marketing materials to refer to MK and its goodwill. They retain residual goodwill to this day, which belongs to AECOM.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' FRAUD

### Defendants Take over Two Dissolved Affiliates of MK and Two Unrelated Entities That They Renamed as MK Affiliates

27.    In 2008, unbeknownst to MK, Defendants began what would become an intricate series of frauds designed to trade off, and indeed take over, the MK identity.

### *Morrison-Knudsen Services*

28.    Defendants first fraudulently took over Morrison-Knudsen Services, Inc., an affiliate of MK that was incorporated in 1982 but dissolved in 2002 when its Vice President and General Counsel, Richard Parry, along with its Secretary, Craig G. Taylor, filed a certificate of dissolution with the Nevada Secretary of State.

29.    On July 28, 2008, however, Hale, purporting to be President of Morrison-Knudsen Services but acting fraudulently on behalf of all Defendants, revived that corporation.  To do so, he filed a Certificate of Revival of a Nevada Corporation, seeking reinstatement of that entity, falsely swearing under penalty of perjury that he had authority from the board of directors of Morrison-Knudsen Services, Inc. to do so. Based on that false statement, Morrison-Knudsen Services, Inc. was revived.  In the Certificate of Revival, Hale, acting on behalf of all Defendants, listed Blum as Vice President and the Registered Agent for service of process at 2756 N. Green Valley Parkway #414, Henderson, Nevada 89014 (which appears to be a UPS Store), and listed himself as President and Ripley as Secretary, with an address of 6433 Topanga Canyon Blvd #165, Woodland Hills, CA 91303.  Each year thereafter, Defendants filed fraudulent statements of officers and directors, under penalty of perjury.

30.    By at least mid-2011, Defendants had moved to their current business address on Century Park East in Los Angeles.  On May 24, 2011, Topolewski, acting on behalf of all Defendants, filed the annual list of officers and directors of the fraudulently-revived Morrison-Knudsen Services, Inc. listing himself as Chairman, Hale as President, Blum as Vice President, and Ripley as Secretary, all with the

address of 2049 Century Park East, Suite 3850, Los Angeles, California 90067.  He also listed Blum as the agent for service of process at the same UPS Store in Henderson, Nevada.

31.     Zukaloff, who listed himself as the company's "Compliance Officer," signed a list of officers and directors of Morrison-Knudsen Services, Inc., sworn under penalty of perjury, which he filed with the Nevada Secretary of State in May 2013.

### *Morrison Knudsen Corporation of Viet Nam*

32.     Defendants similarly took over another dissolved Nevada affiliate of MK, Morrison Knudsen Corporation of Viet Nam.  That entity had been incorporated in 1996, but was dissolved in 2002 by Richard Parry, its General Counsel and Corporate Secretary.  On October 22, 2014, however, Topolewski and Blum, acting on behalf of all Defendants, submitted a form to the Nevada Secretary of State asking to have Morrison Knudsen Corporation of Viet Nam reinstated, and swearing under penalty of perjury that they had the authority from the Board of Directors of that company to do so.  The certificate of revival listed Topolewski as President, Secretary and Treasurer, Blum as Vice President, and both Ripley and Hale as Directors.  The address for each of the officers was 2049 Century Park East, Suite 3850, Los Angeles, California 90067.  The Certificate of Revival also listed Blum as the agent for service of process, at the same UPS Store address in Henderson, Nevada, that Defendants used for service of process for each of the other Defendant entities.  Topolewski's and Blum's statements under oath were false: they had no authority to take any action whatsoever on behalf of the dissolved Morrison Knudsen Corporation of Viet Nam.  Nonetheless, with their false sworn statement to the government of Nevada, Morrison Knudsen Corporation of Viet Nam was revived.

33.     On October 30, 2014, Topolewski, again falsely swearing that he had the authority to do so, changed the name of Morrison Knudsen Corporation of Viet Nam to "Morrison Knudsen Corporation."  In reliance on this false statement, the Nevada

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Secretary of State recorded the name change.  Each year since then, Defendants filed fraudulent statements of officers and directors, under penalty of perjury.

### *Morrison Knudsen International*

34.     Defendants also changed the name of an existing unrelated company that Defendants had operated for years, to make it appear to be an affiliate of MK.  In 2012, Topolewski was President and Secretary of E Planet Communications, Inc., a Nevada corporation formed in 2011.  On May 23, 2016, E Planet Communication's Compliance Officer, Zukaloff, filed a Certificate of Amendment with the Nevada Secretary of State changing E Planet Communications Inc.'s name to Morrison Knudsen International Inc.  The most recent list of officers and directors of this entity was filed with the Nevada Secretary of State in January 2017 by Blum under penalty of perjury.  In that document, Blum listed himself as Vice President and listed 2049 Century Park East, Suite 3850, Los Angeles, California 90067, as the address for each of the company's officers and directors.  Until June 28, 2017, the address for the agent for service of process for this entity was listed as 2657 North Green Valley Parkway, #414, Henderson, Nevada 89014, the same UPS Store address that Defendants used for service of process for each of the other Defendant entities.

### *Morrison-Knudsen Company*

35.     Finally, Defendants also fraudulently took control of a wholly unrelated defunct entity and renamed it to indicate that it too was an affiliate of MK (which it was not).  Westland Petroleum Corporation ("WPC") was an entity incorporated in Nevada in 1926 that had fallen out of good standing in or around 2013.  On October 6, 2016, however, Defendants, through "John Anderson," listed as the Vice President of WPC, requested and received reinstatement of WPC with the Nevada Secretary of State.  That same day, "Anderson," an agent of Defendants, filed a list of officers and

directors, citing 2049 Century Park East, Suite 3850, Los Angeles, California 90067 as the address for several of the officers and directors, and submitted a change of registered agent form, listing himself as the agent for service of process, with the same UPS Store address in Henderson, Nevada, that Defendants used for service of process for each of the other Defendant entities.

36.     On or about October 18, 2016, Defendants requested that WPC's name be changed to Morrison-Knudsen Company, Inc., a change that was thereafter reflected on the books and records of the Nevada Secretary of State.  The Certificate of Amendment changing the company's name was signed by Ripley.  Each of those forms was signed and submitted to the Nevada Secretary of State with the false statement, sworn under penalty of perjury, that the signer had the authority to act on behalf of the company.

**Defendants' Fraudulent Statements to the USPTO**

37.     Defendants also made knowing false statements to a federal government agency, the United States Patent & Trademark Office ("USPTO").  At all relevant times until November 10, 2014, the USPTO's records for MORRISON KNUDSEN, Reg. No. 1716505 and MKCO MORRISON KNUDSEN, Reg. No. 1744815, used MK's Boise, Idaho address.  On November 10, 2014, however, Hale, acting on behalf of all Defendants, submitted "change of address" requests to the USPTO, seeking to change the address for Reg. No. 1744815 and Reg. No. 1716505 to the address used by Defendants: 2049 Century Park East, Suite 3850, Los Angeles, California 90067 and to the email address of Todd.Hale@Morrison-Knudsen.com.  In doing so, knowingly made false representations to the USPTO:  MK's address had not changed, and neither MK nor its attorney of record authorized Hale to change the registrations' records at all, let alone to change the addresses to physical and electronic addresses controlled by Defendants.  In reliance upon Hale's fraudulent statement, the USPTO changed the addresses of record for those two registrations to Defendants' address and

Hale's email address.  Defendants effectively then had control of MK's trademark registrations, No. 1744815 and No. 1716505.

38.    Defendants' fraud on the USPTO did not end there.  One year later, on November 11, 2015, Zukaloff, acting on behalf of all Defendants, forged an assignment of Reg. No 1744815 to themselves as "Morrison Knudsen Corporation, 2049 Century Park East, Suite 3850, Los Angeles, California 90067."  Defendants listed an email address associated with the domain of the Fraudulent Website, pat@morrison-knudsen.com.

39.    One month after Reg. No. 1744815 was cancelled, Defendants made yet more false statements to the USPTO.  On March 26, 2016, Defendants applied to register the mark MORRISON KNUDSEN, falsely representing to the USPTO that they had the right and authority to do so and that the mark's first use in commerce was "at least as early as April 18, 1933," i.e., a date when MK, not Defendants, used the "Morrison Knudsen" name.  In reliance on Defendants' false affirmation that they were the rightful owners of the mark and had the right to claim a first use date of April 18, 1933, the USPTO issued Registration No. 5077287 for MORRISON KNUDSEN on November 8, 2016, for the following services: Construction and repair services in connection with public and private sector projects, namely, construction of dam sites and utility facilities, construction of bridge, road, rail, marine and air transportation facilities, and construction of industrial facilities; General construction contracting. The registrant is listed as "Morrison Knudsen Corporation" with an address at 2049 Century Park East Suite 3850, Los Angeles, California 90067.

40.    Having defrauded the USPTO into changing the registration records of the MK Marks and issuing Defendants their own registration, and having defrauded the Nevada Secretary of State into reinstating and renaming corporations such that they bear the "Morrison Knudsen" name and list Defendants as their officers and directors, Defendants now masquerade as MK to the general public and to the engineering and construction industry.  On the Fraudulent Website, Defendants

11

pretend to be the actual MK, describing MK's history and some of the many projects MK designed, engineered and constructed.  They do so, in part, by using images of MK projects.  A snapshot of the home page of the Fraudulent Website is depicted below.



41.     Among other false statements, in a section titled "About MK," Defendants include a detailed description of MK's corporate history and use video documentaries about MK that MK produced, doing so in a way that falsely claims MK's history and achievements as their own.



42.   Lest there be any doubt that Defendants are pretending to be MK, they refer to MK and its work by using "we" and "our."  Indeed, Defendants go so far as to say: "We are the world's largest dam builder and constructor of hydro power projects

with 160 dams built in the Company's history along with 100 hydro power plants;" Defendants well know that statement actually describes MK (now AECOM), *not* Defendants.



**About MK**

Morrison Knudsen Corporation began contracting in 1912 when Morris Knudsen allied with Harry Morrison to construct an irrigation canal and a pump station in Idaho. Two years later the Company built the Three Mile Falls Dam in Oregon establishing MK as the premier dam builder in the world. The Company moved onto the Hoover Dam leading a joint venture that built the dam two years ahead of schedule during the Depression.

Since that landmark project the Company has built some of the world's largest harbors, airports, freeways, rail lines, factories, oil refineries, air bases, naval stations, fuel storage facilities, missile silo's and systems, radar stations, rocket launching platforms, space control command centers including the Apollo and Space Shuttle launches, military communication systems, developed the largest coal, gold, silver, copper, bauxite and molybdenum, lignite and limestone mines.

We were the lead contractor in the joint venture that constructed the largest naval base in the world at Cam Ranh Bay, Vietnam during the war. Additional war time projects included air bases, hospitals, communication facilities, water supply systems, power stations, barracks, command centers, power transmission lines, highways, bridges and loading facilities. It still stands as the largest construction project ever executed over a five year period, $55 billion in today's dollars.

43.    Defendants have engaged in this elaborate fraud so that they can use the Fraudulent Website to deceive others for financial gain.  On a page titled "Equipment For Sale," Defendants offer for sale construction equipment ranging from used tractors to refurbished dump valves.  Indeed, as of the date of this complaint, Defendants list for sale a 2002 Transcraft Step Deck, twelve Caterpillar 631E II's, six Caterpillar 637D's, ten Northern Toolboxes, one Caterpillar D9R, and five water towers—many of which bear the Morrison Knudsen name and logo, effectively reinforcing the message that these products are being offered for sale by MK after having been used, maintained, and inspected by MK, all of which is false.  Because of Defendants' false statements on the Fraudulent Website and because of Defendants' use of the MK Marks on the pictured equipment, purchasers and prospective purchasers of the equipment are likely to be confused and deceived.

14

MORRISON KNUDSEN CORPORATION | HOME | ABOUT MK | CURRENT PROJECTS | DAMS | SPACE | MINING | NAVAL | POWER | INDUSTRIAL | OIL & GAS | INFRASTRUCTURE | EQUIPMENT FOR SALE | FINANCE | CONTACT US

### 1999 TO 2001 CATERPILLAR 631E II

Comes with radial tires, EROPS, air conditioning, 16,000 to 22,000 hours, tight necks, sandblasted and painted. 12 available. Located in California and Colorado. $180,000.00 each.

Contact Equipment Sales at 310-275-1359

sales@morrison-knudsen.com









MORRISON KNUDSEN CORPORATION | HOME | ABOUT MK | CURRENT PROJECTS | DAMS | SPACE | MINING | NAVAL | POWER | INDUSTRIAL | OIL & GAS | INFRASTRUCTURE | EQUIPMENT FOR SALE | FINANCE | CONTACT US

## Equipment For Sale

### 2002 48' Aluminum Transcraft Step Deck

Comes with low profile 22.5 radials, pipe racks, spread axles, 4 tool boxes and 20 slide winches. Located in Los Angeles. $22,000.00

sales@morrison-knudsen.com





44.     Defendants also seek to profit another way: by soliciting equity positions in third party contracts.  Specifically, on the Fraudulent Website, Defendants falsely claim they are currently pursuing projects across the United States, displaying images of multiple project sites and showing the use of construction equipment similar to that listed for sale.  On a separate Finance page, Defendants falsely claim that they can assist others by "taking equity positions in a variety of projects," and that they can "back your project with [MK's] engineering capabilities, construction resources, . . . equipment lend/lease and financing."  Defendants' statements are false: Defendants cannot actually back anyone's project with MK's engineering capabilities or construction resources, because Defendants are not MK, but mere imposters.  Notably, Defendants list Ripley, along with his email address and Defendants' phone number, as the person to contact concerning such opportunities on the Finance page of the Fraudulent Website.



45.     At no point did Defendants receive authorization to use the Morrison Knudsen name or the MK Marks, or claim any association, affiliation, or sponsorship whatsoever.  Through their unauthorized conduct, however, Defendants have succeeded in deceiving third parties into believing that they are the real MK.  Indeed, online searches for "Morrison Knudsen" return the Fraudulent Website at or near the top of the results and the Wikipedia page for MK wrongly identifies the Fraudulent

1    Website as MK's official website and wrongly claims that MK changed its name in

2    2007 to Morrison-Knudsen International, one of the entities Defendants now control.



16       **Defendants' Continued Infringement Despite Notice**

17       46.      In May of 2017, AECOM wrote to Defendants requesting that

18   Defendants cease any unauthorized usage of the Morrison Knudsen mark and never

19   again claim an affiliation with MK or its projects.  Ripley responded, accusing

20   AECOM of fraudulently misrepresenting its relationship to MK, and threatening to

21   pursue legal action.  On June 13, 2017, AECOM replied, detailing the acquisition

22   history of MK and including links to supporting SEC documents.  AECOM also

23   demanded, among other things, that Ripley inform AECOM of any basis for believing

24   that Defendants have the right to claim to be MK.  As of the date of this complaint,

25   neither Ripley, nor any other Defendant, has responded.  Defendants' infringement

26   and demonstrably false claims of being MK continue to harm AECOM and its legacy

27   as the successor to MK and its goodwill.

28

<u>COUNT I</u>

**(False Designation of Origin/Affiliation/Passing Off)**

47.     AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

48.     Defendants' actions as alleged herein violate 15 U.S.C. § 1125(a)(1)(A). Through their statements on the Fraudulent Website and in press releases, and by using the domain name of the Fraudulent Website (www.morrison-knudsen.com), Defendants pass themselves off as MK, and pass off MK's celebrated projects and history as their own.  Defendants then use MK's history and experience, the Morrison Knudsen name and the MK Marks, which retain residual goodwill, to pass off and sell construction-related products and services.  In doing so, Defendants falsely designate the origin of their products and services as coming from MK, which they do not, and falsely convey an association and affiliation with, as well as a sponsorship by, MK.

49.     As a result of Defendants' conduct, the public and potential consumers of the types of products and services Defendants offer are likely to be confused and deceived.

50.     Defendants' actions have been and continue to be knowing and willful.

51.     As a direct and proximate result of Defendants' conduct, AECOM has suffered irreparable harm and will continue to suffer such harm unless Defendants are enjoined from such further conduct.

<u>COUNT II</u>

**(False Advertising in Violation of the Lanham Act)**

52.     AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

53.     Defendants' actions as alleged herein violate 15 U.S.C. § 1125(a)(1)(B).

On the Fraudulent Website, Defendants falsely claim that MK and AECOM projects are Defendants' projects, and that Defendants were involved with and, indeed, are the principals behind those projects.  In addition, Defendants falsely state that the products and services they offer come from MK and that they can "back your project with [MK's] engineering capabilities, construction resources, . . . equipment lend/lease and financing."  Defendants also falsely claim, in press releases, that MK is bidding and winning contracts.  These press statements falsely advertise to the public that MK is responsible for projects with which MK is not actually involved.  Defendants' statements about the nature and quality of the products and services they provide, as set forth herein, are false and likely to deceive, indeed defraud, actual and potential customers and business partners.  Defendants' statements injure AECOM commercially, by diminishing the value of their strategic acquisition investments.  Defendants' statements also cause competitive injury because Defendants' false claims that MK's and AECOM's accomplishments are their own impedes AECOM's right and ability to tout those accomplishments in its own presentations.

54.     Defendants' actions have been and continue to be knowing and willful.

55.     As a direct and proximate result of Defendants' conduct, AECOM has suffered irreparable harm and will continue to suffer such harm unless Defendants are enjoined from such further conduct.

COUNT III

**(Cyberpiracy)**

56.     AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

57.     Defendants' actions as alleged herein violate 15 U.S.C. § 1125(d).  Defendants registered the domain name www.morrison-knudsen.com at a time when the MK Marks were distinctive, and indeed were registered with the USPTO.  The

domain name www.morrison-knudsen.com is not just confusingly similar but nearly identical to that MK Mark.  Defendants' use of the domain name www.morrison-knudsen.com is likely to confuse or deceive consumers into believing that there is an association or affiliation between Defendants and their website on the one hand, and MK (now AECOM) on the other hand, where there is none.  In registering and using the domain name www.morrison-knudsen.com, Defendants had, and continue to have, a bad faith intent to profit from the MORRISON KNUDSEN mark and its goodwill, which belongs to AECOM.

58.     Defendants' actions have been and continue to be knowing and willful.

59.     As a direct and proximate result of Defendants' conduct, AECOM has suffered irreparable harm and will continue to suffer such harm unless Defendants are enjoined from such further conduct.

<u>COUNT IV</u>

**(CA Common Law Unfair Competition)**

60.     AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

61.     Defendants' actions as alleged herein violate California Common Law. AECOM has common law trademark rights through the strategic use of the MK Marks, which retain residual goodwill, in promotional materials.

62.     Defendants falsely claim MK's storied history of over 100 years as their own and use the Morrison Knudsen name and MK Marks in connection with their offering construction equipment and related services, despite having no affiliation or association with MK.

63.     Defendants' conduct is likely to cause consumer confusion as to whether Defendants' offerings originate from MK (now AECOM), or are associated, affiliated, connected with, or approved or sponsored by AECOM.  Moreover, Defendants'

references to MK and use of the MK Marks deprives AECOM of the goodwill from MK and the MK Marks that it rightfully owns.

64.   Defendants' actions have been and continue to be knowing and willful.

65.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable harm and will continue to suffer such harm unless Defendants are enjoined from such further conduct.

## COUNT V

### (CA Statutory Unfair Competition)

66.   AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

67.   As described herein, Defendants have engaged in fraudulent, unfair and unlawful conduct in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, including through the fraudulent statements to the Nevada Secretary of State, to the USPTO, on the Fraudulent Website and in the press, claiming that Defendants are MK and the products and services they offer come from MK.

68.   Defendants' actions have been and continue to be knowing and willful.

69.   As a direct and proximate result of Defendants' conduct, AECOM has suffered injury and irreparable harm and will continue to suffer such injury and irreparable harm unless Defendants are enjoined from such further conduct.

## COUNT VI

### (CA Statutory False Advertising)

70.   AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

71.   Defendants' actions as alleged herein violate Cal. Bus. & Prof. Code

§ 17500.  On the Fraudulent Website, Defendants falsely claim that MK and AECOM projects are Defendants' projects, and that Defendants were involved with and, indeed, are the principals behind those projects.  In addition, Defendants falsely state that the products and services they provide come from MK and that they can "back your project with [MK's] engineering capabilities, construction resources, . . . equipment lend/lease and financing."  Defendants also falsely claim, in press releases, that MK is bidding and winning contracts.  These press statements falsely advertise to the public that MK is responsible for projects with which MK is not actually involved. Defendants' statements about the nature and quality of the products and services they offer, as set forth herein, are false and likely to deceive, indeed defraud, actual and potential customers and business partners.  Defendants' statements injure AECOM commercially, by diminishing the value of their strategic investments.  Defendants' statements also cause competitive injury because Defendants' false claims that MK's and AECOM's accomplishments are their own impedes AECOM's right and ability to tout those accomplishments in its own presentations.

72.    Defendants' actions have been and continue to be knowing and willful.

73.    As a direct and proximate result of Defendants' conduct, AECOM has suffered irreparable harm and will continue to suffer such harm unless Defendants are enjoined from such further conduct.

## COUNT VII

### (Petition for Cancellation of Trademark Registration)

74.    AECOM incorporates and realleges by reference each and every paragraph herein as if set forth in full in this count.

75.    Defendants' actions as alleged herein violate 15 U.S.C. § 1064.  AECOM is being irreparably harmed and damaged by Defendants' registration of the MORRISON KNUDSEN mark, Registration No. 5077287, on the principal register.

76. Defendants have committed fraud on the USPTO as set forth herein.

77. AECOM has rights to the MK Marks that are prior to Defendants' claimed rights and, indeed, Defendants' claimed rights and usage are actually the rights and usage of AECOM. Defendants registration falsely identifies the source of Defendants' goods and services and is likely to cause confusion.

78. AECOM requests that Registration No. 5077287 be cancelled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AECOM prays that this Court provide relief by:

1. Preliminarily and permanently enjoining and restraining each of the Defendants, and each of their officers, directors, agents, employees and all other individuals, firms, corporations, associations and partnerships affiliated, associated or acting in concert with them, from using the Morrison Knudsen name, any of the MK Marks, or any other mark, symbol, name, domain name or logo that is likely to cause confusion or to cause mistake or to deceive people into believing that Defendants or any services or goods that Defendants entered into the stream of commerce originate from MK or AECOM, are in any way sponsored, endorsed, licensed by MK or AECOM, or are affiliated with MK or AECOM;

2. Preliminarily and permanently enjoining and restraining each of the Defendants, and each of their officers, directors, agents, employees and all other individuals, firms, corporations, associations and partnerships affiliated, associated or acting in concert with them, from falsely stating that they are MK or any related entity, or that they are associated in any way with MK or AECOM or their projects;

3. Ordering Defendants to provide AECOM an accounting of their profits and advantages received from improperly using the MK Marks and the Morrison Knudsen name;

1        4.    Ordering that the domain name www.morrison-knudsen.com be

2    transferred to the control of AECOM;

3        5.    Ordering that control of the corporate records for Defendants Morrison-

4    Knudsen Services, Inc. and Morrison Knudsen Corporation be transferred to

5    AECOM;

6        6.    Ordering that Defendant Morrison Knudsen Company, Inc. be dissolved;

7        7.    Ordering that Defendant Morrison Knudsen International's corporate

8    name be returned to E Planet Communications, Inc. or such other name that does not

9    consist of or incorporate "Morrison Knudsen," MK, or any name confusingly similar

10   to "Morrison Knudsen";

11       8.    Ordering that Defendants take all available steps to retract and correct

12   statements made in other media or to actual or potential customers and business

13   partners concerning their relationship with MK or MK's accomplishments;

14       9.    Awarding AECOM its reasonable attorneys' fees and costs pursuant to

15   15 U.S.C. § 1117 or as allowed by any other statute or legal doctrine, including

16   California Code of Civil Procedure § 1021.5;

17       10.    Awarding AECOM such other and further relief or remedy that the Court

18   may deem just and proper.

20   DATED: July 21, 2017          Respectfully submitted,

21       KIRKLAND & ELLIS LLP

23       By:

    Diana M. Torres

25       *Attorney for Plaintiff*
    AECOM ENERGY &

26       CONSTRUCTION, INC.