cc: Fiscal Section

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AECOM ENERGY & CONSTRUCTION, INC.,      ) <br>      ) <br> Plaintiff,      ) <br>      ) <br> v.      ) <br>      ) <br> JOHN RIPLEY; TODD HALE; GARY TOPOLEWSKI; HENRY BLUM; BUD ZUKALOFF; MORRISON KNUDSEN CORPORATION; MORRISON-KNUDSEN COMPANY, INC.; MORRISON-KNUDSEN SERVICES, INC.; and MORRISON-KNUDSEN INTERNATIONAL INC.,      ) <br> Defendants.      ) | 2:17-cv-05398-RSWL-SS <br><br> **ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** [11] |

Currently before the Court is Plaintiff AECOM Energy and Construction, Inc.'s ("Plaintiff") Motion for Preliminary Injunction ("Motion") [11]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiff's Motion.

# I. BACKGROUND

## A. Factual Background

### 1. Plaintiff's Corporate History

MK was a renowned multinational construction and engineering firm responsible for many notable projects, including the Hoover Dam, the San Francisco-Oakland Bay Bridge, and the Trans-Alaska Pipeline. Decl. of Charles Szurgot ("Szurgot Decl.") ¶ 6, ECF No. 13. In 2014, after MK had already gone through a series of mergers and name changes, Plaintiff acquired MK. Id. ¶ 8. Plaintiff is an engineering and construction firm that has also worked on many notable projects, including the new World Trade Center and the Los Angeles Chargers' new stadium. Compl. ¶ 21. Plaintiff continues to use MK's logo and corporate history in many of its promotional materials. Szurgot Decl. ¶ 9, Exs. B-1, B-2, B-3, B-4, ECF Nos. 13-3, 13-4, 13-5, 13-6; Compl. ¶ 21.

### 2. Defendants' Use of MK Name

Plaintiff alleges that, beginning in 2008, Defendants undertook an elaborate scheme to pass themselves off as MK and take advantage of MK's good reputation. Pl's. Mot. for Prelim. Inj. ("Mot.") 4:18-20. This included reviving dissolved MK entities such as Morrison Knudsen Services, Inc. and Morrison Knudsen Corporation of Viet Nam ("MK Viet Nam"). Decl. of Diana M. Torres ("Torres Decl."), Ex. 1 at 52-55, Ex. 2 at 97-99. In reviving these companies, Defendant

Topolewski stated under penalty of perjury that he had the authority from the board of directors of these companies to revive the companies. <u>Id.</u> Defendants also changed the names of two of their corporations to include the MK name.[1]

### 3. Website and Press Release

Defendants purchased the domain name "www.morrison-knudsen.com" and operate a website there in which they promote MK's history as their own and offer to sell used construction equipment used in MK's projects. <u>See id.</u>, Ex. 7, ECF No. 19-7; Decl. of Patricia Olson ("Olson Decl.") ¶ 3, ECF No. 17; Szurgot Decl. ¶¶ 10-11, Ex. C, ECF No. 13-6. At least some of the Defendants have email addresses associated with the domain morrison-knudsen.com. <u>See, e.g.</u>, Torres Decl. ¶¶ 8, 10, Exs. 6, 8, ECF Nos. 19-6, 19-8.[2] Defendants, through Defendant Blum, also distributed a press release titled, "Morrison Knudsen awarded $1.2 Billion Construction and Engineering Contract," which stated that Defendants had been awarded a contract to construct a harbor for the Indonesian government. <u>Id.</u> ¶ 8, Ex. 6.

---

[1] Defendants filed Certificates of Amendment with the Nevada Secretary of State to change the names of E Planet Communications, Inc. to Morrison Knudsen International, Inc., <u>see id.</u>, Ex. 3 at 125, and Westland Petroleum Corporation to Morrison-Knudsen Company, Inc., <u>see id.</u>, Ex. 4 at 153.

[2] For example, as discussed below, Diana Torres exchanged emails with "jripley@morrison-knudsen.com."

### 3. Plaintiff's Employee Discovers Defendants' Website

In April 2013, J. Brandon Davis (who, at that time, worked for Plaintiff) discovered morrison-knudsen.com. Decl. of J. Brandon Davis ("Davis Decl.") ¶ 3, ECF No. 36. The website confused Davis because it had pictures of actual MK projects, but he knew that MK had since undergone a series of name changes and mergers. Id. Davis then contacted the listed email address on the site to inquire further. Id. ¶ 4, Ex. L, ECF No. 36-1.

Davis engaged in an email exchange with a contact from morrison-knudsen.com, who told him that Plaintiff sold all MK brand companies to raise capital and MK was now an independent entity. Id. This exchange eventually led to phone conversations between Davis and someone named "Gary." Id. ¶ 9. The two spoke more about MK, and Davis continued to believe that Defendants were MK. Id. Eventually, in 2015, Davis referred an AECOM colleague to Gary for some work on a project in Las Vegas. Id. ¶ 10.

### 4. Defendants' Attempt to Take Over the MK Marks

On November 10, 2014, Defendant Hale submitted a "change of address" form to the United States Patent and Trademark Office ("USPTO"). Decl. of Annette Bottaro-Walklet ("Bottaro-Walklet Decl.") ¶ 6, ECF No. 14; id., Ex. F, ECF No. 14-1. Defendants changed the contact information listed in USPTO records for two of Plaintiff's registered trademarks ("MORRISON KNUDSEN"

and "MKCO MORRISON KNUDSEN") from Plaintiff's address, email address, and phone number to Defendants' address, email address, and phone number.  Id.

One year later, Defendant Zukaloff submitted a document to the USPTO purporting to assign the registered trademark "MKCO MORRISON KNUDSEN" from Washington Group International (a previous name of Plaintiff) to Defendants in exchange for valuable consideration.  Id. ¶ 7, Ex. G., ECF No. 14-2.

Plaintiff did not renew its registrations for the "MORRISON KNUDSEN" and "MKCO MORRISON KNUDSEN" marks, so the USPTO cancelled the marks in February 2016. Pl.'s Mot. for Prelim. Inj. ("Mot.") 8:16-18; Compl. ¶ 26.  On March 26, 2016, Defendants filed a new application with the USPTO to register the mark "MORRISON KNUDSEN," declaring that they owned the mark and claiming a first use date of April 18, 1933. Torres Decl. ¶ 7, Ex. 5 at 155, 158.  The USPTO granted Defendants' application on November 8, 2016.  Id.

5.  Plaintiff Confronts Defendants

On May 23, 2017, Michael Gallo, an investigator for the law firm representing Plaintiff, emailed "sales@morrison-knudsen.com" and asked if some equipment listed for sale on Defendants' website was still available.  Decl. of Michael Gallo ("Gallo Decl.") ¶ 3, ECF No. 16; id., Ex. K., ECF No. 16-1. Gallo received a response from the address: "Just some older gear that's getting sold."  Id.

On May 30, 2017, Plaintiff, through counsel Diana Torres, sent an email to Defendant Ripley at jripley@morrison-knudsen.com, demanding that Defendants take down the website and stop presenting all MK marks, projects, and services as their own. Torres Decl. ¶ 10, Ex. 8. Ripley responded, stating that Plaintiff's allegations were "moronic," "scurrilous," and "idiotic," and Ripley had reviewed SEC documents and had found nothing to indicate a relationship between Plaintiff and MK. Id. ¶ 11, Ex. 9.

Plaintiff responded to Ripley's email, detailing Plaintiff's corporate history and connection with MK. Id. ¶ 12, Ex. 9. Plaintiff's response also asked Ripley to identify the basis for Defendants' claim to be Morrison Knudsen Corporation. Id. Plaintiff has received no response as of July 28, 2017. Id.

**B.** **Procedural Background**

On July 21, 2017, Plaintiff filed its Complaint, alleging seven claims: (1) false designation of origin/affiliation/passing off in violation of 15 U.S.C. § 1125(a)(1)(A); (2) false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); (3) cyberpiracy in violation of 15 U.S.C. § 1125(d); (4) California common law unfair competition; (5) California statutory unfair competition; (6) California statutory false advertising; and (7) petition for a cancellation of a registered mark. Compl. ¶¶ 48, 53, 57, 61, 66, 70, 74.

Plaintiff filed its Motion on August 1, 2017 [11].

Defendants filed their Opposition on August 15, 2017.
[27]. Plaintiff filed its Reply on August 22, 2017.
[34].

## II. DISCUSSION

**A. Legal Standard**

"A plaintiff seeking a preliminary injunction must
establish that he is likely to succeed on the merits,
that he is likely to suffer irreparable harm in the
absence of preliminary relief, that the balance of
equities tips in his favor, and that an injunction is
in the public interest." Am. Trucking Ass'ns v. City
of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009)(quoting
Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20
(2008)).

A court employs a sliding scale when considering a
plaintiff's showing as to the likelihood of success on
the merits and the likelihood of irreparable harm.
Alliance for the Wild Rockies v. Cottrell, 632 F.3d
1127, 1131 (9th Cir. 2011). "Under this approach, the
elements of the preliminary injunction test are
balanced, so that a stronger showing of one element may
offset a weaker showing of another." Id. Therefore,
"serious questions going to the merits and a balance of
hardships that tips sharply towards the plaintiff can
support issuance of a preliminary injunction, so long
as the plaintiff also shows that there is a likelihood
of irreparable injury and that the injunction is in the
public interest." Id. at 1135.

**B.  Discussion**

    1.  Likelihood of Success on the Merits

    As discussed more fully below, Plaintiff has made a showing that it is likely to succeed on the merits of its claims.

        a.  *False Designation Claim*

    "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." Smith v. Montoro, 648 F.2d 602, 603 (9th Cir. 1981).  In a false designation claim, Plaintiff must prove that Defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007).  Courts have defined "use in commerce" to include "communications made on public websites." Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange, No. 2:16-201 WBS DB, 2016 U.S. Dist. LEXIS 158144, at *10 (E.D. Cal. Nov. 15, 2016).

    Here, Plaintiff has clearly established that Defendants have used the MK marks in commerce. Defendants operate a website, www.morrison-knudsen.com, which uses the MK mark in the domain name, and through this website, Defendants represent that they are in

fact MK, taking credit for MK's history and
achievements.  See Szurgot Decl., Ex. C.

Next, Plaintiff must establish a likelihood of
confusion between the marks.  Freecycle Network, 505
F.3d at 902.  Courts consider eight factors in
determining likelihood of confusion.[3]  However, at the
preliminary injunction stage, the court is not required
to consider all of the factors because the court "will
have had only a brief opportunity to consider the
different factors relevant to the likelihood of
confusion determination."  Miss Universe, Inc. v.
Flesher, 605 F.2d 1130 (9th Cir. 1979).

Even a consideration of some of the factors shows a
likelihood of confusion.  The uses of the MK marks are
identical.  In fact, Defendants merely assumed
ownership of the MK marks and display them and MK's
history prominently on their website.  Further,
Plaintiff and Defendants use identical MK marks in the
same market to sell the same services and goods,
including construction contracts and construction
equipment.  Torres Decl., Ex. 7.  The Ninth Circuit has

---

[3] The eight factors include "1) strength of the allegedly
infringed mark; 2) proximity or relatedness of the goods;
3) similarity of the sight, sound, and meaning of the marks;
4) evidence of actual confusion; 5) degree to which the marketing
channels converge; 6) type of goods and degree of care consumers
are likely to exercise in purchasing them; 7) intent of the
defendant in selecting the allegedly infringing mark; and
8) likelihood that the parties will expand their product lines."
Metro Pub. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir.
1993).

found it to be clear error "to find no likelihood of confusion when two products with virtually identical marks are in the same market." Honor Plastic Indus. Co. v. Lollicup USA, Inc., 462 F. Supp. 2d 1122, 1132 (E.D. Cal. 2006)(citing Lindy Pen Co. v. Bic Pen Corp., 796 F.2d 254, 257 (9th Cir. 1986)). Finally, Plaintiff has provided evidence of actual confusion. Mr. Davis, Plaintiff's former employee, discovered Defendants' website and, after contacting one of Defendants' employees, was convinced that Defendants were MK. Davis Decl. ¶ 9. Accordingly, Plaintiff has shown a likelihood of success on the merits for its false designation claim.

Defendants argue that Plaintiff has abandoned its use of the MK marks and therefore has no right to bring its trademark claims under the Lanham Act. Opp'n 5:6-16. To prove abandonment of the MK marks, Defendants must prove "(1) discontinuance of trademark use and (2) intent not to resume such use." Electro Source, Ltd. Liab. Co. v. Brandess-Kalt-Aetna Grp., Inc., 458 F.3d 931, 935 (9th Cir. 2006). "Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." Carter-Wallace, Inc. v. Proctor & Gamble Co., 434 F.2d 794, 804 (9th Cir. 1970). Further, contrary to Defendants' argument, use of a mark in promotional materials, including "customer presentations and solicitations," is sufficient use to defeat an argument for

abandonment.  <u>Wells Fargo & Co. v. ABD Ins. & Fin.</u>
<u>Servs., Inc.</u>, 758 F.3d 1069, 1072 (9th Cir. 2014), <u>as</u>
<u>amended</u> (Mar. 11, 2014).  This is true even where a
company has acquired another company and changed the
name of that company but still uses the acquired
company's marks in promotional materials.  <u>Id.</u> at 1071.

Here, as the exhibits to the Szurgot Declaration
evidence, Plaintiff has continued to use the MK marks
and name in its promotional materials, including making
reference to MK's past projects.  <u>See</u> Szurgot Decl.,
Exs. B-1, B-2, B-3, B-4.  As Plaintiff argues, it
purchased the MK brand to profit from MK's impressive
history and to gain a competitive advantage in the
marketplace.  Reply 10:4-9; <u>see</u> <u>Wells Fargo</u>, 758 F.3d
at 1072 (holding that use of a mark "demonstrate[s]
Wells Fargo's business calculation that it could
continue to benefit from the goodwill and mark
recognition associated with [the company it
acquired]").  Because Plaintiff has continued to use
the MK marks, Defendants' abandonment argument must
fail.  <u>See</u> <u>Cumulus Media, Inc. v. Clear Channel</u>
<u>Commc'ns, Inc.</u>, 304 F.3d 1167, 1174 (11th Cir.
2002)(finding use in promotional materials enough to
vitiate an abandonment argument).

    b.  *False Advertising*

As a preliminary matter, Defendants argue that
Plaintiff does not have standing to bring its false
advertising claim because the parties "are not

competitors." Opp'n 8:14-18.  To allege standing for a false advertising claim under the Lanham Act, the plaintiff must show: (1) an "injury to a commercial interest in sales or business reputation" (2) that is "proximately caused by the defendant's misrepresentations."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1395 (2014). Despite Defendants' argument, "a plaintiff need not be a direct competitor with a defendant to bring a false advertising claim under the Lanham Act."  Luxul Tech., Inc. v. Nectarlux, LLC, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015)(citing Lexmark, 134 S. Ct. at 1392).

Plaintiff alleges Defendants' misrepresentations as to MK's involvement in Defendants' products and services have injured Plaintiff because Plaintiff has "lost control over the goodwill" in the MK name and "Defendants literally transferred Plaintiff's property into Defendants' own name and control."  Reply 3:4-10. The Court holds that this is sufficient for standing under a false advertising claim.  Because Defendants have essentially stolen the MK brand from Plaintiff, Defendants' advertising of the MK brand and services under this brand "causes [consumers] to withhold trade from the plaintiff."  Lexmark, 134 S. Ct. at 1391. Defendants' deception also hurts Plaintiff's business reputation, which includes the MK brand Plaintiff acquired with the purchase of the MK entities. Accordingly, Plaintiff has standing to bring its false

advertising claim.

To succeed on its claim for false advertising under the Lanham Act,[4] Plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

Both parties focus on the first element, with Plaintiff arguing that the statements Defendants make on their website are literally false, see Mot. 15:12-24, and Defendants arguing that because Plaintiff abandoned the MK marks, the statements Defendants make cannot be literally false and are at best ambiguous, see Opp'n 7:6-10.

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary

---

[4] Plaintiff also alleges violations of California Business and Professions Code sections 17200 and 17500, which similarly prohibit misleading advertising. However, these state law claims are not substantively addressed because the state claims are "substantially congruent" to the Lanham Act claims. JHP Pharm., Ltd. Liab. Co. v. Hospira, Inc., 52 F. Supp. 3d 992, 997 n.4 (C.D. Cal. 2014).

implication, or that the statement was literally true but likely to mislead or confuse consumers." Southland Sod Farms, 108 F.3d at 1139. "To be 'literally false' the statement must be unambiguously false." Kwan Software Eng'g, Inc. v. Foray Techs., Ltd. Liab. Co., No. C 12-03762 SI, 2014 U.S. Dist. LEXIS 17376, at *16 (N.D. Cal. Feb. 11, 2014).

Here, the alleged literally false statements include, among others, statements on Defendants' website that Defendants are in fact MK and taking credit for MK projects including projects prior to Plaintiff's acquisition of MK as well as Plaintiff's current projects. Szurgot Decl. ¶ 11, Ex. C at 41-43, 47-50. In their argument, Defendants again rely on Plaintiff's alleged abandonment of the MK marks; however, as discussed above, Plaintiff continues to use the MK marks and therefore has not abandoned these marks. Defendants are claiming to be MK despite Plaintiff's ownership of the MK entities and brand. Therefore, the MK-related statements on Defendants' website cannot be true and satisfy the first element of Plaintiff's false advertising claim.

Plaintiff has shown a likelihood of success on the remaining elements of false advertising. "Statements that are literally false are presumed to have a tendency to deceive," and therefore, Plaintiff need not prove the second element of false advertising. Leatherman Tool Grp., Inc. v. Coast Cutlery Co., 823 F.

Supp. 2d 1150, 1155 (D. Or. 2011); see McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991)("[When] the advertising claim is shown to be literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.").

Additionally, "if the statements at issue are found to be literally false, the court may presume materiality." Itex Corp. v. Glob. Links Corp., 90 F. Supp. 3d 1158, 1173 (D. Nev. 2015). Even if the Court did not presume materiality, the statements at issue were clearly made to influence consumers, who rely on MK's brand and long history in the construction industry when making a decision whether to engage Defendants' services.

The statements at issue clearly entered interstate commerce as Defendants published them on their website. See United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007)(stating that "the Internet is both an instrumentality and channel of interstate commerce")(internal quotations and citations omitted). Finally, as to the injury element, "'a competitor need not prove injury when suing to enjoin conduct that violates section 43(a).'" Healthport Corp. v. Tanita Corp. of Am., 563 F. Supp. 2d 1169, 1181 (D. Or. 2008)(quoting Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir. 1989)). Even so, Plaintiff has provided evidence to show that

Defendants' false statements have lessened the goodwill in the MK brand, including that Plaintiff no longer has control over the goodwill remaining in the brand.

Consequently, Plaintiff has proven a likelihood on the success of the merits of its false advertising claim.

### c. *Cyberpiracy*

To succeed on a claim for cyberpiracy under 15 U.S.C. § 1125(d), Plaintiff "must establish that its mark is distinctive, that defendants used a mark that is identical or confusingly similar to [Plaintiff's mark], and that defendant had a bad faith intent to profit from the mark." <u>Flow Control Indus. v. AMHI, Inc.</u>, 278 F. Supp. 2d 1193, 1200 (W.D. Wash. 2003). In looking at whether the mark is distinctive, the Court focuses on whether the mark is distinctive **at the time of registration of the domain name**.[5] <u>GoPets Ltd. v. Hise</u>, 657 F.3d 1024, 1030 (9th Cir. 2011). Plaintiff provided a Whois Record for Defendants' domain name, morrison-knudsen.com, which shows a registration date of March 25, 2008.  Torres Decl., Ex. 7.  At that time, Plaintiff held a valid registered trademark in MORRISON KNUDSEN.  <u>See</u> Bottaro-Walklet Decl. ¶ 5.  A registered trademark is presumed to be distinctive.  <u>Zobmondo Entm't, Ltd. Liab. Co. v. Falls</u>

---

[5] Defendants do not mention this rule and instead conclusorily argue that Plaintiff's "claim must fail because it does not have [any] valid trademark."  Opp'n 9:24-25.

Media, Ltd. Liab. Co., 602 F.3d 1108, 1113-14 (9th Cir. 2010)("Where the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive."). Additionally, Defendants' domain name, morrison-knudsen.com, is identical to Plaintiff's MORRISON KNUDSEN mark.  Therefore, Plaintiff can prove the first two elements of its cyberpiracy claim.

Finally, Plaintiff must prove that Defendants had a "bad faith intent to profit" from the MORRISON KNUDSEN mark when they registered their domain name.  15 U.S.C. § 1125(d)(1)(A)(i).  "[T]he defendant must intend to profit specifically from the goodwill associated with another's trademark."  Solid Host, NL v. Namecheap, Inc., 652 F. Supp. 2d 1092, 1109 (C.D. Cal. 2009).  The statute lists nine factors to consider when determining whether a defendant has acted with a bad faith intent to profit from the use of a mark.  See 15 U.S.C. § 1125(d)(1)(B)(I)-(IX).  However, courts are not limited to these listed factors in making a determination of a bad faith intent.  See Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 498 (2d Cir. 2000).

There is ample evidence of Defendants' bad faith intent to profit from their use of the MORRISON KNUDSEN mark.  First, Defendants did not have any intellectual property rights in the mark at the time they registered the domain name containing the mark.  See 15 U.S.C.

17

§ 1125(d)(1)(B)(i)(I).  In fact, Plaintiff owned the registered MORRISON KNUDSEN mark at the time Defendants' registered the domain name.  <u>See</u> Bottaro-Walklet Decl. ¶ 5.  Further, Defendant Hale submitted a "change of address" request to the USPTO seeking to change the address of the registered MORRISON KNUDSEN mark to Defendants' address.  <u>Id.</u> ¶ 6.  Defendant Hale did this without any apparent authority from the true owner of the mark, Plaintiff.  <u>Id.</u> ¶ 6.  Following the cancellation of the MORRISON KNUDSEN mark in February 2016, Defendants applied to register the mark with the USPTO, claiming that their first use of the mark in commerce was "at least as early as April 18, 1933," the date MK, not Defendants, began using the mark.  Torres Decl. ¶, Ex. 5 at 155.  Finally, Defendants, on the morrison-knudsen.com website, tout the architectural accomplishments associated with the MK marks, claiming that these accomplishments are their own.  Szurgot Decl. ¶ 11, Ex. C at 41-43.  Defendants' actions with regard to the MORRISON KNUDSEN mark therefore demonstrate a "bad faith intent to profit" from the use of the mark.  Plaintiff has established a likelihood of success on the merits of its cyberpiracy claim.

    2.  <u>Irreparable Harm</u>

    In addition to demonstrating a likelihood of success on the merits of its claims, Plaintiff must demonstrate that it is likely to suffer irreparable harm if the Court does not grant the preliminary

injunction.  <u>Winter</u>, 555 U.S. at 20.  While monetary
harm is typically not sufficient to demonstrate
irreparable harm, <u>see California Pharmacists Ass'n v.</u>
<u>Maxwell-Jolly</u>, 563 F.3d 847, 851-52 (9th Cir. 2009),
"[e]vidence of loss of control over business reputation
and damage to goodwill could constitute irreparable
harm," <u>Herb Reed Enterprises, LLC v. Florida</u>
<u>Entertainment Management</u>, 736 F.3d 1239, 1250 (9th Cir.
2013).

Defendants argue that Plaintiff was aware of the
alleged wrongful conduct in May 2017 but did not file
the Action until four months later, which suggests that
there is no irreparable injury.  Opp'n 10:1-5.  A "long
delay before seeking a preliminary injunction implies a
lack of urgency and irreparable harm."  <u>Oakland</u>
<u>Tribune, Inc. v. Chronicle Publ'g</u>, 762 F.2d 1374, 1377
(9th Cir. 1985).  Here, Plaintiff sent Defendants a
letter dated May 30, 2017 regarding Defendants'
allegedly infringing conduct to which Defendants
responded on June 1, 2017 stating that Plaintiff was
the one fraudulently using the MK marks.  Torres Decl.,
Exs. 8, 9.  Plaintiff's counsel responded on June 13,
2017 in an email outlining Plaintiff's history and its
acquisition of the MK entities and MK brand.  <u>Id.</u>, Ex.
9.  Plaintiff then ordered Defendants' corporate
records, which it received on June 26, 2017.  Plaintiff
filed suit approximately three weeks later, on July 21,
2017 [1], and filed the instant Motion ten days later,

on August 1, 2017 [11].  The few weeks' delay in filing
the instant Motion, during which Plaintiff likely
conducted further investigation on Defendants' actions
necessitating the instant Motion, does not weigh
against a finding of irreparable harm.  <u>See</u> <u>Disney</u>
<u>Enters. v. VidAngel, Inc.</u>, No. 16-56843, 2017 U.S. App.
LEXIS 16188, at *36 (9th Cir. Aug. 24, 2017)(affirming
decision that delay did not negate irreparable harm
because plaintiff was investigating defendant's alleged
infringement and defendant made clear it would continue
its alleged infringement).

Plaintiff has properly established a likelihood of
irreparable harm should the Court not grant injunctive
relief.  According to the Ninth Circuit's opinion in
<u>Herb Reed</u>, plaintiffs seeking injunctive relief must
proffer evidence, not just "pronouncements [] grounded
in platitudes," to establish a likelihood of
irreparable harm.  736 F.3d at 1250-51.  Defendants'
usurpation of the MK brand, including MK's
accomplishments and the MK marks, has prevented
Plaintiff from exclusively controlling the brand and
its goodwill, something Plaintiff paid to acquire.
Plaintiff has offered evidence of Defendants'
fraudulent takeover of the entire MK brand, which
Plaintiff argues will continue to harm its business
reputation.  Mot. 21:3-16.  On October 22, 2014,
Defendant Topolewski filed a Certificate of Revival for
MK Viet Nam.  <u>See</u> Torres Decl., Ex. 2 at 97.  In the

Certificate of Revival, Defendant Topolewski named himself as the President of MK Viet Nam and declared, under penalty of perjury, that he had authorization from the board of directors of MK Viet Nam to revive the company.  Id. at 99.  Plaintiff, the owner of the MK brand, at no time authorized Defendant Topolewski to revive MK Viet Nam.  Then, on November 10, 2016, Defendant Hale submitted a change of address form to the USPTO seeking to change the address of the owner of the MORRISON KNUDSEN mark from Washington Group International, Inc.'s address (the former name of MK prior to Plaintiff's acquisition) to Defendants' address.  Bottaro-Walklet Decl., Ex. F.  In essence, Defendant Hale was assuming ownership of the mark and cutting off Plaintiff's chain of communication with the USPTO regarding the MORRISON KNUDSEN mark.  As explained above, Defendants also renamed a number of their corporations to include the MK name.  See Torres Decl., Exs. 3, 4.  When Plaintiff discovered Defendants had essentially assumed the identity of the MK brand, Plaintiff sent a cease and desist letter to which Defendants responded that Plaintiff's letter was a "petty act of extortion and larceny," and instead, Defendants accused Plaintiff of fraudulently claiming it owned the MK brand.  Id., Ex. 9 at 179.  Such a response shows Defendants have no intent to stop using the MK brand.

As the evidence Plaintiff presented shows,

Defendants have engaged in deceptive tactics to gain
control over the entire MK brand.  Defendants' takeover
has allegedly resulted in a billion dollar construction
contract under the MK brand.  <u>See</u> <u>id.</u>, Ex. 6 at 164.
Defendants are using the MK brand and its impressive
history to gain an advantage in the marketplace.
Ultimately, Defendants have "borrow[ed] [Plaintiff's]
reputation, whose quality no longer lies within
[Plaintiff's] own control."  <u>Opticians Ass'n of Am. v.</u>
<u>Indep. Opticians of Am.</u>, 920 F.2d 187, 195 (3d Cir.
1990).  Such a complete loss of control over a brand,
including the quality of the products and services
Defendants offer under this stolen brand, as well as
Defendants' clear intent to continue operating under
the MK brand demonstrate that Plaintiff is likely to
suffer irreparable harm absent a preliminary
injunction.  <u>See</u> <u>Toyo Tire & Rubber Co. v. Kabusikiki</u>
<u>Kaisha Tokyo Nihoon Rubber Corp.</u>, No. 214CV01847JADVCF,
2015 WL 6501228, at *4 (D. Nev. Oct. 26, 2015)(finding
likelihood of irreparable harm where defendant piggy-
backed off of plaintiff's success and there was "no
indication that defendant [would] cease its infringing
activity absent injunctive relief").

    3.  <u>Balance of Hardships</u>

    "In evaluating the balance of hardships a court
must consider the impact granting or denying a motion
for a preliminary injunction will have on the
respective enterprises."  <u>Int'l Jensen, Inc. v.</u>

<u>Metrosound U.S.A., Inc.</u>, 4 F.3d 819, 827 (9th Cir. 1993).

The balance of hardships tip in favor of Plaintiff. Defendants argue that if the Court grants a preliminary injunction, Defendants "would be essentially put out of business."[6] Opp'n 11:21. However, Plaintiff has not authorized Defendants to operate their business using the MK marks and brand. As explained above, Defendants, through their statements to the USPTO and actions in creating several Morrison Knudsen entities, have assumed the MK identity, infringing on Plaintiff's ownership of the MK marks and brand. "It is no hardship to cease intentionally infringing someone else's trademark rights." <u>Diller v. Barry Driller, Inc.</u>, No. CV 12-7200 ABC EX, 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012).

Additionally, the potential hardship on Defendants is "purely economic," <u>see</u> <u>id.</u>, while the hardship on Plaintiff is a complete loss of control over the brand and history of the MK entities it specifically paid to acquire. Defendants cannot argue an injury that they

_____

[6] Plaintiff argues that Defendants operate another business, Topolewski America Inc., which provides construction services and sale of construction equipment, just as Defendants do under the MK brand. Reply 13:13-20. Assuming this is true, Defendants can continue to operate under the Topolewski brand. No matter what the name of the company, Defendants can still offer construction services and sell construction equipment. Their only reason for operating under the MK brand is to profit from the long and impressive history of the MK brand, a brand Plaintiff owns. This is just further evidence that the balance of hardships tips in favor of Plaintiff.

brought upon themselves through deceptively adopting trademarks and an entire brand that are identical to that which Plaintiff owns.  See Moroccanoil, Inc. v. Moroccan Gold, LLC, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008).  Therefore, the balance of hardships tips in Plaintiff's favor.

   4.   Public Interest

   "A plaintiff seeking an injunction must establish that the injunction is in the public interest." Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 993 (9th Cir. 2009). "[T]he most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy."  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 730 (3d Cir. 2004).  "An injunction to prevent intentional trademark infringement not only protects the plaintiff, but protects the public from trademark confusion."  Diller, 2012 WL 4044732, at *10.

   Here, it could not be more clear that enjoining Defendants' use of the MK brand would promote the public interest in preventing consumer confusion. Defendants have not used a deceptively similar mark, they have taken over the entire MK brand, including using identical trademarks and listing MK's accomplishments as Defendants' own.  Szurgot Decl., Ex. C.  In fact, Plaintiff's own employee was confused by

Defendants' use of the MK brand when he contacted Defendants seeking information about their services. See Davis Decl. Such confusion was only made worse by Defendants' assurance that Plaintiff had sold the MK brand to make money. See id., Ex. L. It is therefore in the public interest to prevent confusion regarding the ownership of the MK brand by enjoining Defendants' use of the MK brand.

  5. <u>Request for Bond</u>

  Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Ninth Circuit has recognized that Rule 65(c) invests the district court "with discretion as to the amount of security required, if any." <u>Barahona-Gomez v. Reno</u>, 167 F.3d 1228, 1237 (9th Cir. 1999)(citing <u>Doctor's Assocs., Inc. v. Stuart</u>, 85 F.3d 975, 985 (2d Cir. 1996)).

  In their Opposition, Defendants request that the Court "impose a bond of at least $5 million." Opp'n 12:17-21. Defendants have not cited to any authority to support this bond amount. Further, Defendants have not even provided an explanation for how they reached the $5 million bond amount or evidence of the loss that they would incur should the Court issue a preliminary

injection.  Plaintiff argues that because Defendants
have failed to prove they will suffer any damages if
the Court issues a preliminary injunction, no bond is
required.  Mot. 15:18-19.

While Plaintiff has provided evidence that
Defendants operate another business, Topolewski
America, which offers the same products and services as
their MK company, the Court's issuance of a preliminary
injunction will halt all operation of Defendants' MK
company.  However, because Defendants have provided no
evidence of potential damages, including lost sales or
business, the Court, in its discretion, orders a bond
of $50,000.00.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS**
Plaintiff's Motion for Preliminary Injunction [11] and
orders Plaintiff to post a bond of $50,000.00 within
fourteen days of the Order.

**IT IS SO ORDERED:**

1.  Pursuant to the Court's Order granting Plaintiff's
    Motion, Defendants John Ripley; Todd Hale; Gary
    Topolewski; Henry Blum; Bud Zukaloff; Morrison
    Knudsen Corporation; Morrison-Knudsen Company,
    Inc.; Morrison-Knudsen Services, Inc.; and
    Morrison-Knudsen International Inc. and their
    agents, officers, employees, representatives,
    successors, assigns, attorneys, and those persons
    acting for, with, by, or under authority of

Defendants, or in concert or participation with Defendants, are HEREBY ENJOINED FROM:

a) using, displaying, or otherwise exploiting the MK trademarks, including MORRISON KNUDSEN and MKCO MORRISON KNUDSEN, in connection with the advertising, distribution, display, sale, or offering for sale of any products or services;

b) using the Morrison Knudsen domain name (morrison-knudsen.com) and any associated email addresses;

c) making any statement or representation or performing any act likely to lead members of the public to believe that the business Defendants operate at 2049 Century Park East, Suite 3850, Los Angeles, California 90067 is in any manner, directly or indirectly, associated, affiliated or connected with, or licensed, sponsored, authorized or approved by Plaintiff and the MK brand;

d) conducting business, including selling any product or service, under the names Morrison-Knudsen Services, Inc.; Morrison Knudsen Corporation; Morrison Knudsen International Inc.; Morrison-Knudsen Company, Inc.; or any other related entities.

2. Plaintiff is ordered to post a bond in the amount of $50,000.00 within fourteen days of the date of this Order. This Order granting preliminary

injunctive relief to Plaintiff shall only become
effective upon the posting of the bond as set forth
above within the time limit set by the Court.
Failure to do so, absent a court-ordered extension,
may result in the withdrawal of this Order and the
denial of Plaintiff's Motion.

3.  Within twenty-one days of the date Plaintiff posts
    the bond described above, each Defendant shall file
    a sworn affidavit detailing the manner in which
    that Defendant has complied with this Order.

DATED: September 27, 2017          s/ RONALD S.W. LEW

                                   **HONORABLE RONALD S.W. LEW**
                                   Senior U.S. District Judge