UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AECOM ENERGY & CONSTRUCTION, INC., | 2:17-cv-05398-RSWL-SS |
| Plaintiff, | **ORDER RE: PLAINTIFF'S MOTION FOR CIVIL CONTEMPT** [64] |
| v. | |
| JOHN RIPLEY; TODD HALE; GARY TOPOLEWSKI; HENRY BLUM; BUD ZUKALOFF; MORRISON KNUDSEN CORPORATION; MORRISON-KNUDSEN COMPANY, INC.; MORRISON-KNUDSEN SERVICES, INC.; and MORRISON-KNUDSEN INTERNATIONAL INC., | |
| Defendants. | |

Currently before the Court is Plaintiff AECOM Energy and Construction, Inc.'s ("Plaintiff") Motion for Civil Contempt ("Motion") [64]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiff's Motion.

# I. BACKGROUND

On July 21, 2017, Plaintiff filed its Complaint [1]. Plaintiff then filed a Motion for Preliminary Injunction on August 1, 2017 [11]. The Court granted Plaintiff's Motion for Preliminary Injunction on September 28, 2017 [45]. In its Order, the Court enjoined Defendants John Ripley; Todd Hale; Gary Topolewski; Henry Blum; Bud Zukaloff; Morrison Knudsen Corporation; Morrison-Knudsen Company, Inc.; Morrison-Knudsen Services, Inc.; and Morrison-Knudsen International (collectively, "Defendants") from:

> a) using, displaying, or otherwise exploiting the MK trademarks, including MORRISON KNUDSEN and MKCO MORRISON KNUDSEN, in connection with the advertising, distribution, display, sale, or offering for sale of any products or services;
>
> b) using the Morrison Knudsen domain name (morrison-knudsen.com) and any associated email addresses;
>
> c) making any statement or representation or performing any act likely to lead members of the public to believe that the business Defendants operate at 2049 Century Park East, Suite 3850, Los Angeles, California 90067 is in any manner, directly or indirectly, associated, affiliated or connected with, or licensed, sponsored, authorized or approved by Plaintiff and the MK brand;
>
> d) conducting business, including selling any product or service, under the names Morrison-Knudsen Services, Inc.; Morrison Knudsen Corporation; Morrison Knudsen International Inc.; Morrison-Knudsen Company, Inc.; or any other related entities.

Order re Pl.'s Mot. for Prelim. Inj. ("Order") 27:3-25, ECF No. 45.

The Court's Order also instructed Defendants to file an affidavit, within twenty-one days of Plaintiff

2

posting a $50,000 bond, detailing the manner in which Defendants complied with the Order. Id. at 28:7-10. Plaintiff posted the $50,000 bond on October 10, 2017. See ECF No. 54. On November 9, 2017, nine days after the twenty-one-day deadline, Defendants filed the Declaration of Mike Johnson [62], one of their corporate officers. According to Mr. Johnson's Declaration, he directed his staff to change the name of each corporate defendant, and his staff filed four certificates of amendment with the Nevada Secretary of State on October 27, 2017. See Decl. of Mike Johnson ("Johnson Decl.") ¶ 4, ECF No. 62. The certificates of amendment changed the corporate names as follows:

1. Morrison Knudsen Corporation was changed to MK Corporation;
2. Morrison Knudsen Company, Inc. was changed to MK Company Inc.;
3. Morrison Knudsen Services, Inc. was changed to MK Services Inc.;
4. Morrison Knudsen International Inc. was changed to MK International Inc.[1]

Id. ¶ 5.

On November 28, 2017, Plaintiff filed the instant Motion [64]. Defendants' Opposition was due on

---

[1] According to Defendants, they learned on December 5, 2017 that the Nevada Secretary of State had not recorded Defendants' certificates of amendment for these name changes because the names were not available for use. Defs.' Opp'n to Pl.'s Mot. for Civil Contempt ("Opp'n") 5:17-19, ECF No. 80.

3

December 19, 2017. After Defendants failed to timely file their Opposition on December 19, 2017, Plaintiff filed its Reply on December 20, 2017 informing the Court of Defendants' failure to timely file their Opposition. See Pl.'s Reply in Supp. of Mot. for Civil Contempt ("Reply") 2:4-8, ECF No. 78.

On December 24, 2017, Defendants filed an *Ex Parte* Application for Leave to File a Late Opposition ("*Ex Parte* Application") [79]. Defendants then filed their Opposition to Plaintiff's Motion on December 26, 2017 [80]. The Court denied Defendants' *Ex Parte* Application on December 28, 2017 [82].

## II. DISCUSSION

### A. Legal Standard

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966). Civil contempt consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." Stone v. City & Cty. of S.F., 968 F.2d 850, 856 n.9 (9th Cir. 1992)(citations

omitted).

A person should not be held in contempt if his action "appears to be based on a good faith and reasonable interpretation of the [court's order]." Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982). "[C]ivil contempt may be established even though the failure to comply with the court order was unintentional." Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985). A showing of willfulness is not a necessary element for civil contempt because while the purpose of criminal contempt is punishment, the purpose of civil contempt is remedial. Id.

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). Accordingly, there are two types of civil contempt sanctions: compensatory and coercive. Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983). "Compensatory sanctions are intended to compensate the aggrieved party for 'actual loss' resulting from the contemnor's noncompliance." HM Elecs., Inc. v. R.F. Techs., Inc., No. 12-CV-2884-MMA (JLB), 2014 WL 12059031, at *3 (S.D. Cal. Apr. 18, 2014)(internal citation omitted). Coercive sanctions are "intended to coerce the

contemnor to comply with the court's orders in the future." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1481 (9th Cir. 1992).

**B.  Analysis**

As noted, Defendants' Opposition to Plaintiff's Motion was due on December 19, 2017, but Defendants did not file their Opposition until December 26, 2017. Pursuant to Local Rule 7-12, "failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." Accordingly, the Court **GRANTS** Plaintiff's Motion without reaching the merits, simply based on Defendants' failure to timely oppose the Motion. See Canon Sols. Am., Inc. v. Gungap, No. SACV141990JLSRNBX, 2016 WL 9108916, at *2 (C.D. Cal. Feb. 8, 2016)(granting motion for civil contempt when defendant failed to timely file opposition to motion).

   1.  Civil Contempt

Even an analysis of the merits of Plaintiff's Motion, including the arguments Defendants asserted in their late-filed Opposition, supports granting Plaintiff's Motion.

To succeed on its Motion, Plaintiff must first prove by clear and convincing evidence that Defendants violated the Court's Order. In re Dual-Deck, 10 F.3d at 695. Defendants argue that the Court's Order lacked specificity regarding the acts sought to be restrained, in violation of Federal Rule of Civil Procedure

6

("Rule") 65(d), and therefore, the Order cannot support a finding of civil contempt. Opp'n 5:25-6:4. Despite Defendants' arguments, the Court's September 28, 2017 Order was clear and unambiguous. The Order enjoined Defendants from "making any [] representation that the business Defendants operate . . . is . . . connected with . . . the MK brand." Order 27:11-19. The Order further enjoined Defendants from using Defendants' corporate names. Id. at 27:20-25. While Defendants argue that the Order created uncertainty as to whether Defendants were prohibited from using the MK initials, "[i]njunctions are not set aside under rule 65(d) . . . unless they are so vague that they have no reasonably specific meaning."[2] United States v. Holtzman, 762 F.2d 720, 726 (9th Cir. 1985).

Further, Defendants fail to identify any portion of the Order that lacks specificity, nor could they do so. See AT&T Intellectual Prop. II, L.P. v. Toll Free

---

[2] The case Defendants cite in support of their argument that the Order was too vague and thus unenforceable, International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64 (1967), is easily distinguishable from the instant Action. In International Longshoremen's, the trial court ordered the parties to comply with the arbitrator's award. 389 U.S. at 69. When counsel inquired into what this order meant, the trial court refused to explain itself and at no point clarified its order. Id. at 70-72. The Supreme Court then overturned the trial court's contempt order based on the failure to comply with Rule 65(d). Id. at 75-76. This holding is inapplicable here. The International Longshoremen's trial court's incredibly vague and brief order and refusal to explain its order is nothing like the four paragraph explanation in this Court's Order of the enjoined activity. Thus, Defendants' Rule 65(d) argument holds no merit.

Yellow Pages Corp., No. CV095707PSGPJWX, 2010 WL 11508795, at *5 (C.D. Cal. Feb. 8, 2010)(rejecting argument that injunction lacked specificity when defendants failed to cite a single instance of "overbreadth or lack of specificity"). The Court's Order outlined four paragraphs explaining the various conduct it enjoined. Defendants were on clear notice that they could not continue to operate a business that suggested a connection to Morrison Knudsen and its brand. This cannot be considered so vague that it has no reasonably specific meaning.

Defendants have failed to comply with the Court's Order. Instead of changing their corporate names to names that clearly departed from Morrison Knudsen and the MK brand, Defendants simply abbreviated Morrison Knudsen to MK. See Johnson Decl. ¶ 5. "This act on the part of [D]efendants was intentionally calculated by them to deceive the public into the belief that" they were still affiliated with Morrison Knudsen. See Rests. & Patisseries Longchamps, Inc. v. Longchamps, Inc., No. 5972-WM, 1947 WL 4003, at *3 (S.D. Cal. May 23, 1947). Defendants made no effort to distance themselves from the MK brand and are continuing to operate a business under confusingly similar names. See id. (holding defendant in contempt when defendant changed store name from "Longchamps" to the confusingly similar name "Longshires").

Defendants argue that a lay person would not think

MK is related to Morrison Knudsen because MK could stand for anything. Opp'n 6:10-12. However, the Morrison Knudsen trademarks, ownership over which Defendants attempted to deceptively take, include the MK initials. See Decl. of Annette Bottaro-Walklet in Supp. of Pl.'s Mot. for Prelim. Inj., Ex. F at 8, ECF No. 14. Additionally, Defendants used the initials MK throughout their website to refer to Morrison Knudsen, see Decl. of Charles Szurgot in Supp. of Pl.'s Mot. for Prelim. Inj., Ex. C, ECF No. 13, and MK has been a common way of referring to Morrison Knudsen since at least the 1950s, id., Ex. A. Defendants' use of the initials MK to refer to Morrison Knudsen prior to the Court's Order, the presence of the MK initials in the MK trademark, and the consistent use of the MK initials to refer to Morrison Knudsen throughout history make it clear that no reasonable person could argue that the use of the MK initials does not infringe upon the Morrison Knudsen name. Accordingly, Plaintiff has met its burden to show by clear and convincing evidence that Defendants violated the Court's Order.

The burden then shifts to Defendants to establish why they were unable to comply with the Court's Order. See Stone, 968 F.2d at 856 n.9. Defendants maintain that they substantially complied with the Order. Defendants assert that they made an effort to change their corporate names to MK, which they felt complied with the Court's Order. Opp'n 5:12-22. Defendants did

not discover until December 5, 2017 that the Nevada Secretary of State had not accepted their paperwork because the MK names were not available for use. Id. at 5:17-19. This, Defendants assert, evidences substantial compliance with the Court's Order and is a defense to civil contempt.

However, this argument provides little support for a finding of substantial compliance. Even after discovering the Nevada Secretary of State had not accepted their certificates of amendment, Defendants made no effort to inform Plaintiff or the Court of this. Further, Defendants did not make any attempt to remedy the situation by filing paperwork to change their corporate names to names entirely unrelated to Morrison Knudsen or the MK brand. This lack of effort clearly evidences a failure to ensure substantial compliance with the Court's Order. See HM Elecs., 2014 WL 12059031, at *5 ("Defendant did not take 'all reasonable steps within its power' to comply with the labeling and disclosure requirements. Instead, Defendant opted for language in both its labeling stickers and written disclosure that evades the Court's clear directive."); Honor Plastic Indus. Co. v. Lollicup USA, Inc., 466 F. Supp. 2d 1217, 1224 (E.D. Cal. 2006)(finding defendant deliberately violated the preliminary injunction through continuing to represent itself as the plaintiff's company). Because Defendants have failed to substantially comply with the Court's

Order, the Court **GRANTS** Plaintiff's Motion and finds Defendants in civil contempt of the Order.

2. Sanctions

Where a court finds a party in contempt, the court has discretion to impose sanctions. See Gen. Signal Corp., 787 F.2d at 1380. One form of these sanctions is a coercive fine, which is imposed "to coerce the contemnor to comply with the court's order in the future" and "is conditioned upon continued noncompliance." Richmark Corp., 959 F.2d at 1481.

Here, Defendants failed to timely file their affidavit with the Court evidencing their compliance with the Court's Order. The affidavit that Defendants filed nine days after the Court's deadline showed a clear failure to comply with the Court's Order. Even after Defendants learned that the names they chose as their new corporate names, simple abbreviations of their previously infringing corporate names, were not available, Defendants made no further effort to remedy this and make another name change. Because Defendants have shown no motivation to follow the Court's Order, the Court now imposes a daily fine of $500 paid to the Court[3] until Defendants file an affidavit with the Court evidencing full compliance with Court's Order. See HM Elecs., 2014 WL 12059031, at *7 (imposing daily fine of

---

[3] Gen. Signal Corp., 787 F.2d at 1380 ("If the fine, or any portion of the fine, is coercive, it should be payable to the court . . . .").

11

$2,500 so long as the defendant continued to violate the terms of a preliminary injunction). Full compliance includes Defendants changing their corporate names to ensure no confusion that they are connected to Morrison Knudsen or the MK brand.[4]

Additionally, a district court "may assess attorneys' fees . . . as part of the fine to be levied on the defendant." Donovan v. Burlington N., Inc., 781 F.2d 680, 682 (9th Cir. 1986)(internal citation omitted). Attorneys' fees, "the cost of bringing the violation to the attention of the court[, are] part of the damages suffered by the prevailing party" and are thus a compensatory sanction. Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir. 1977). Attorneys' fees and costs may be awarded to the moving party even if the non-moving party's failure to comply with the injunction was not willful. See Perry, 759 F.2d at 705.

Plaintiff requests that the Court award Plaintiff its attorneys' fees and costs incurred in filing the instant Motion. Had Defendants fully complied with the Court's Order, Plaintiff's Motion would have been unnecessary and Plaintiff would not have incurred attorneys' fees and costs in drafting and filing such a motion. Consequently, the Court finds that attorneys'

---

[4] The Court's Order prohibits Defendants from using the name Morrison Knudsen or anything confusingly similar, such as the MK initials, in their corporate names.

fees and costs are an appropriate sanction for Defendants' failure to comply with the Court's Order. See Henry Schein, Inc. v. Certified Bus. Supply, Inc., No. SA CV 03-1662 DOC, 2008 WL 9452685, at *10 (C.D. Cal. Aug. 20, 2008).

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Civil Contempt [64]. Defendants are **ORDERED** to change the name of their corporate entities to comply with the Court's Order. Beginning with the issuance of this Order on January 11, 2018, Defendants shall pay a daily fine of $500, payable to the Court, until Defendants file an affidavit outlining their compliance with the Court's Order.

Additionally, Plaintiff's counsel is **ORDERED** to submit a supplemental filing, including declarations, setting forth the amount of attorneys' fees and costs Plaintiff incurred in filing the instant Motion. These papers shall be submitted no later than Friday, January 26, 2018. Defendants may then file an opposition to Plaintiff's supplemental filing by February 2, 2018, and Plaintiff may file a reply in support of its filing

///
///
///
///
///
///

13

by February 9, 2018.  Upon receiving these papers, the Court will determine what amount of fees and costs is reasonable.

**IT IS SO ORDERED.**

DATED: January 11, 2018　　S/ RONALD S.W. LEW

　　　　　　　　　　　　　　**HONORABLE RONALD S.W. LEW**
　　　　　　　　　　　　　　Senior U.S. District Judge

14