1
2
3
4
5
6
7
8

Diana M. Torres (SBN 162284)
diana.torres@kirkland.com
Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff
AECOM ENERGY &
CONSTRUCTION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AECOM ENERGY & CONSTRUCTION, INC., an Ohio Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GARY TOPOLEWSKI, *et al.*,<br><br>Defendants. | CASE NO.: 2:17-cv-05398-RSWL(SSx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND FOR PERMANENT INJUNCTION**<br><br>**PUBLIC REDACTED VERSION**<br><br>Complaint Filed Date: July 21, 2017<br><br>Judge:      Hon. Ronald S. W. Lew<br>Hearing Date: September 18, 2018<br>Time:      10:00 AM<br>Courtroom:  1 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND .............................................................................. 2

       A.    Factual Background .............................................................. 2

             1.    AECOM Corp. Acquires MK ..................................... 2

             2.    Defendants Fraudulently Take Over MK's Identity ................... 4

       B.    Procedural Background .......................................................... 7

III.   ARGUMENT ................................................................................... 8

       A.    Legal Standard for Summary Judgment ............................... 8

       B.    AECOM Is Entitled to Summary Judgment on Its False
             Designation Claims. ............................................................. 8

             1.    There Is No Genuine Dispute for Any of the Three Elements ... 9

                   a.    *Use in commerce* ............................................ 9

                   b.    *Use of word, false designation of origin, false or
                         misleading description, or representation of fact* ..................... 10

                   c.    *Likelihood of confusion* ................................. 10

             2.    Defendants' Abandonment Argument Fails ............................. 13

       C.    AECOM Is Entitled to Summary Judgment on Its False
             Advertising Claims ............................................................... 15

             1.    Defendants Made False Statements of Fact in Commercial
                   Advertisements. ......................................................... 16

             2.    Defendants' Deliberately False Statements Are Material and
                   Likely to Deceive. ..................................................... 16

             3.    Defendants Caused Their False Statements to Enter
                   Interstate Commerce. ................................................. 18

             4.    Defendants' False Statements Have Injured AECOM. ........... 18

       D.    AECOM Is Entitled To Summary Judgment on Its Cyberpiracy
             Claim. ................................................................................... 19

             1.    Defendants Registered Two Domain Names ......................... 19

             2.    Defendants' Domain Names Are Identical and/or
                   Confusingly Similar to AECOM's Distinctive Marks. ........... 20

         3.     Defendants Registered the Domain Names in Bad Faith. ........20

E.     AECOM Is Entitled to Summary Judgment on Its Petition for Cancellation of a Registered Mark........................................................21

F.     Defendants' Equitable Defenses Fail....................................................22

G.     AECOM Is Entitled to a Permanent Injunction. .................................23

IV.    AECOM IS ENTITLED TO DISGORGEMENT OF PROFITS. ................24

V.     CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Fed. Republic of Nigeria*,
  219 F.3d 869 (9th Cir. 2000) ................................................................. 22

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ..................................................... 10, 11, 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................ 8

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................. 20

*Cairns v. Franklin Mint Co.*,
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) ................................................. 17

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
  434 F.2d 794 (9th Cir. 1970) ............................................................... 13

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993) ................................................................. 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................ 8

*Chanel, Inc. v. Mode Salon, Inc.*,
  No. SACV 12-01533, 2013 WL 12138729 (C.D. Cal. June 10, 2013) .................. 11

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ................................................................. 9

*Coca-Cola Co. v. Overland, Inc.*,
  692 F.2d 1250 (9th Cir. 1982) ............................................................. 13

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*,
  304 F.3d 1167 (11th Cir. 2002) ........................................................... 13

*DSPT Int'l, Inc. v. Nahum*,
  624 F.3d 1213 (9th Cir. 2010) ............................................................. 20

*Echo Drain v. Newsted*,
    307 F. Supp. 2d 1116 (C.D. Cal. 2003) ....................................................... 8

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*,
    458 F.3d 931 (9th Cir. 2006) ............................................................. 13, 14

*eMachines, Inc. v. Ready Access Memory, Inc.*,
    2001 WL 456404 (C.D. Cal. Mar. 5, 2001) ............................................ 14

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ................................................................ 12

*Fed. Trade Comm'n v. Medicor, LLC*,
    217 F. Supp. 2d 1048 (C.D. Cal. 2002) ............................................... 8, 25

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) ................................................................ 25

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007) .............................................................. 9, 10

*GoPets Ltd. v. Hise*,
    657 F.3d 1024 (9th Cir. 2011) ........................................................... 19, 20

*Groves v. Prickett*,
    420 F.2d 1119 (9th Cir. 1970) ................................................................ 22

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*,
    559 F.3d 985 (9th Cir. 2009) .................................................................. 23

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
    184 F.3d 1107 (9th Cir. 1999) ................................................................ 12

*Itex Corp. v. Glob. Links Corp.*,
    90 F. Supp. 3d 1158 (D. Nev. 2015) ...................................................... 16

*JHP Pharm., Lt. Liab. Co. v. Hospira, Inc.*,
    52 F. Supp. 3d 992 (C.D. Cal. 2014) ..................................................... 15

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
    762 F.3d 867 (9th Cir. 2014) (*citations omitted*) .................................... 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014) ........................................................................... 18

*Marketquest Group, Inc. v. BIC Corp.*,
   No. 11-cv-618-BAS-JLB, 2018 WL 2933518 (S.D. Cal. June 12,
   2018) ................................................................................................ 22, 23

*Matsuo Yoshida v. Liberty Mut. Ins. Co.*,
   240 F.2d 824 (9th Cir. 1957) ........................................................... 23

*Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*,
   No. 2:16-201 WBS DB, 2016 WL 6696061 (E.D. Cal. Nov. 15, 2016)............ 9, 10

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
   No. 12-463, 2012 WL 1698368 (C.D. Cal. May 15, 2012) ..................... 18

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) ............................................................. 12

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
   920 F.2d 187 (3d Cir. 1990) ............................................................. 11

*Robi v. Five Platters, Inc.*,
   918 F.2d 1439 (9th Cir. 1990) ......................................................... 21

*Seymour v. McLane Inc.*,
   No. 11-55351, 2013 WL 2177365 (9th Cir. May 21, 2013) ..................... 8

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ......................................................... 15

*Smith v. Montoro*,
   648 F.2d 602 (9th Cir. 1981) ............................................................. 9

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ................................................... 15, 16

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   875 F.3d 426 (9th Cir. 2017) ........................................................... 24

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
   240 F.3d 832 (9th Cir. 2001) ........................................................... 18

*Summers v. Teichert & Son, Inc.*,
   127 F.3d 1150 (9th Cir. 1997) ........................................................... 8

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820 (9th Cir. 2011) ........................................................... 18

*U-Haul International Inc. v. Jartran Inc.*
 793 F.2d 1034 (9th Cir. 1986) ............................................................ 16

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
 205 F.3d 1219 (10th Cir. 2000) .......................................................... 21

*United States v. Sutcliffe*,
 505 F.3d 944 (9th Cir. 2007) .......................................................... 9, 18

*Wecosign, Inc. v. IFG Holdings, Inc.*,
 845 F. Supp. 2d 1072 (C.D. Cal. 2012) ............................................. 24

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
 758 F.3d 1069 (9th Cir. 2014) ............................................................ 13

*World Carpets, Inc. v. Dick Littrell's New World Carpets*,
 438 F.2d 482 (5th Cir. 1971) .............................................................. 12

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
 602 F.3d 1108 (9th Cir. 2010) ............................................................ 20

**Statutes**

15 U.S.C. § 1064(3) ....................................................................................... 21

15 U.S.C. § 1117(a) ...................................................................................... 25

15 U.S.C. § 1125(a) ...................................................................................... 10

15 U.S.C. § 1125(a)(1) .................................................................................. 15

15 U.S.C. § 1125(a)(1)(A) .............................................................................. 9

15 U.S.C. § 1125(a)(1)(B) ............................................................................. 15

15 U.S.C. § 1125(d) ...................................................................................... 19

15 U.S.C. § 1125(d)(1)(B)(i) .......................................................................... 20

Anti-Cybersquatting Consumer Protection Act ..................................... 19, 20

Bus. & Prof. Code § 17200 ............................................................................. 9

Bus. & Prof. Code § 17500 ........................................................................... 15

Lanham Act ........................................................................................*passim*

**Rules**

Fed. R. Civ. Proc. 56(a) ................................................................................. 8

**Other Authorities**

Fifth Amendment ........................................................................................ 22

# I.     <u>INTRODUCTION</u>

With discovery now closed, the material facts regarding Defendants' elaborate scheme to steal the identity of the iconic Morrison Knudsen Corporation ("MK") remain undisputed.  Defendants admit that they submitted false statements to the Nevada Secretary of State to resurrect dissolved MK subsidiaries.  Defendants admit that they filed forms with the United States Patent & Trademark Office ("USPTO") falsely representing their authority to change the addresses for two MK trademark registrations to their own address.  Defendants admit that they later forged an assignment to themselves of one of the registrations.  Defendants admit that they created two websites, www.Morrison-Knudsen.com and www.Morrison-Knudsen.net (collectively, the "Fraudulent Websites"), on which they touted MK's historical construction accomplishments as their own, offered to sell construction equipment bearing the MK logo, and offered consulting and finance services purportedly backed by MK's expertise.  Defendants also have no evidence to dispute that the true owner of the MK brand and intellectual property is, after a series of acquisitions and name changes, Plaintiff AECOM Energy & Construction, Inc. ("AECOM").  And Defendants do not dispute that AECOM never authorized Defendants to take any of the actions they took.  With this undisputed evidence, AECOM has all of the evidence it needs to prevail on all of its claims.

Instead, Defendants appear to rely on the affirmative defenses of abandonment, laches, waiver, and estoppel, none of which they can support. First, Defendants cannot proffer sufficient evidence of abandonment to create a triable issue of fact, as AECOM has produced voluminous evidence of its continuous use of the MK name and trademarks in numerous brochures, bid materials, marketing materials, and joint ventures.  Defendants' abandonment claim also fails the test of credibility, as Defendants would not have needed to undertake such an elaborate scheme—making false representations under oath

to change the addresses of MK registrations, submitting to the USPTO a forged assignment of an MK registration, falsely swearing under oath that they had permission to revive dissolved MK subsidiaries, and lying to an AECOM employee when asked about their right to call themselves MK—if they truly believed the MK name and intellectual property rights had been abandoned.

Defendants' equitable defenses likewise fail.  Defendants have put forth in discovery no evidence to show AECOM's unequivocal, knowing, intentional relinquishment of its trademark rights necessary to show waiver, no evidence of misleading conduct by AECOM and the resulting prejudicial reliance by Defendants necessary to show estoppel, and no evidence of the unreasonable delay and resulting prejudicial reliance necessary to show laches.  Moreover, a party seeking equity must come to court with clean hands.  Given Defendants' criminal conduct underlying the claims here, Defendants' hands are decidedly not clean, and their equitable defenses fail under the doctrine of unclean hands.

In short, Defendants have no evidence to show a disputed issue of fact material to any of AECOM's claims and fall far short of the burden they face to survive based on their affirmative defenses.  AECOM respectfully asks this Court to grant summary judgment in AECOM's favor and grant AECOM the remedies to which it is entitled.

## II.   **BACKGROUND**

### A.   **Factual Background**

#### 1.   AECOM Corp. Acquires MK

MK holds a special place in American history.  Founded in 1912 by Harry Morrison and Morris Knudsen, MK became a multinational engineering and construction powerhouse, completing notable projects such as the Hoover Dam, the San Francisco-Oakland Bay Bridge, and the Trans-Alaska Pipeline.  Statement of Uncontroverted Facts ("SUF") 3(b).  MK made such an impact that, in 1954, TIME featured Harry Morrison on its cover, calling him "the man

who has done more than anyone else to change the face of the earth." *Id.*

Through a series of acquisitions, MK became a subsidiary of AECOM, a Delaware Corporation ("AECOM Corp."). First, in 1996, MK merged with Washington Construction Group, Inc. SUF 17(a). The merged company operated for the next four years as Morrison Knudsen Corporation, and all of the relevant MK subsidiaries continued using their same corporate names. *Id.* In 2000, MK changed its name to Washington Group International ("WGI"), and its relevant subsidiaries' names likewise changed. *Id.* In 2007, URS Corporation ("URS") acquired WGI, which became a URS subsidiary. *Id.* In 2014, AECOM Corp. acquired URS and its subsidiaries through a merger transaction that left the subsidiaries intact. *Id.* MK is now AECOM, the Plaintiff here, and continues to offer engineering and construction services. *Id.*

Throughout its history, MK has used many trademarks in connection with its brand, including the word mark MORRISON KNUDSEN, the MK logo, and the combined word and design mark MKCO MORRISON KNUDSEN (each an "MK Mark"; collectively, the "MK Marks"). SUF 17(b)–(c). MK owned these trademarks and registered them with the USPTO. *Id.*; SUF 17(a) (Charles Szurgot Decl. in Supp. Summ. J. ("Szurgot Decl.") ¶¶ 5–7). Through their consistent use for roughly 100 years, the MK Marks achieved tremendous recognition and goodwill. SUF 3(a)–(b). The MK Marks have appeared in such varied places as bid and promotional materials, locomotive parts, and design materials as a source identifier to denote the experience and expertise of the company that built American airfields in World War II, NASA's Kennedy Space Center, and the Hoover Dam. SUF 2(a). For example, AECOM has used (and continues to use) the MK Marks and name  in client and potential client presentation materials, in general marketing brochures, on banners at industry conferences, and in a myriad of other ways. SUF 17 (listing exemplars of bid documents, general marketing materials, joint

ventures, and employee resumes, from 1991–present).

AECOM maintained trademark registrations for the MK Marks until February 2016.  SUF 17(b)–(c).  Although the trademark registrations lapsed then, AECOM's use of the MK Marks continued and, indeed, the MK Marks are still prominently featured in many current AECOM marketing materials.  SUF 17(qq).

2.   <u>Defendants Fraudulently Take Over MK's Identity</u>

In 2008, unbeknownst to MK, Defendants began an intricate series of frauds designed to trade off, and indeed take over, the MK identity.  First, Defendants gained control of and renamed entities so that they would appear to be MK affiliates.  In 2008, defaulting Defendant Todd Hale revived Morrison-Knudsen Services, Inc., a former MK affiliate that dissolved in 2002 through a certificate of dissolution signed by MK's Vice President and Secretary.  SUF 3(i).  Hale listed himself as President, defaulting Defendant Henry Blum as Vice President, and defaulting Defendant John Ripley as Secretary.  Defendants swore under oath that they had permission to revive the company from the Board of Directors or equivalent body.  *Id.*  They did not.  SUF 3(k).

Defendants similarly resurrected another MK affiliate, Morrison Knudsen Corporation of Viet Nam, which also dissolved in 2002.  SUF 3(l).  On October 22, 2014, Topolewski and defaulting Defendant Henry Blum submitted a reinstatement form to the Nevada Secretary of State, again falsely swearing under penalty of perjury that they had authority from the Board of Directors to do so.  SUF 3(m).  They did not.  SUF 3(o) (Topolewski Dep.) ("I don't know who the hell I would ask permission for" [sic])).  On October 30, 2014, Topolewski changed the name of Morrison Knudsen Corporation of Viet Nam to "Morrison Knudsen Corporation," again falsely swearing he had the authority to do so.  SUF 3(n).

Defendants also changed the names of two apparently unrelated entities

4

to make them appear to be MK affiliates.  On May 23, 2016, defaulting Defendant Bud Zukaloff filed a Certificate of Amendment with the Nevada Secretary of State, changing the name of E Planet Communications Inc., a company already associated with Topolewski, to Morrison Knudsen International Inc.  SUF 3(q).  On October 18, 2016, Defendants resurrected Westland Petroleum Corp., an unrelated entity that had fallen out of good standing, and renamed it "Morrison-Knudsen Company, Inc."  SUF 3(r)–(u).  With that, Defendants took control over four entities using the MK name and appearing to be MK affiliates.

Second, Defendants created the Fraudulent Websites on which they claimed to *be* MK.  For example, a page on the Fraudulent Websites displays MK's projects, such as the Hoover Dam and the Trans-Alaska Pipeline.  SUF 2(b).  In a section titled "About MK," Defendants detailed MK's corporate history and described MK's accomplishments using the first person (*i.e.*, "we" and "our"), and embedded a documentary about MK—a video produced by and about MK, not Defendants.  SUF 2(b), (f).  In other sections, Defendants also falsely claimed responsibility for MK's projects performed before the acquisition, as well as current AECOM projects, showing photographs of both.  SUF 4(m)–(n).  Defendants even went so far as to falsely claim a business relationship with the construction equipment maker Caterpillar—a relationship belonging to AECOM.  SUF 4(a)–(b).  Similarly, Defendants offered for sale used construction equipment bearing the MK logo (equipment they admit was never used or owned by MK) and offered financing services backed by the expertise of MK that they did not possess.  SUF 4(k)–(n).

Third, Defendants lied under oath to the USPTO.  In 2014, Hale changed the address for MORRISON KNUDSEN (Registration No. 1,716,505) and MKCO MORRISON KNUDSEN (Registration No. 1,744,815)—both owned by AECOM (at that time, Washington Group International)—to Defendants'

physical address (2049 Century Park East, Suite 3850, Los Angeles, California 90067) and electronic address (Todd.Hale@Morrison-Knudsen.com).  SUF 3(v)–(w).  Hale falsely represented that he had the authority to do so.  SUF 3(w).  One year later, Defendants, posing as Washington Group International (which had already been acquired by AECOM Corp.), assigned MKCO MORRISON KNUDSEN to Defendants.  SUF 3(y).  In 2016, the MK Marks were canceled due to nonrenewal.  SUF 17(b)–(c).  Defendants then applied to register the mark MORRISON KNUDSEN, falsely representing to the USPTO that they had the right and authority to do so, and that the mark's first use in commerce was "at least as early as April 18, 1933," a date when MK, not Defendants, had first used the mark.  SUF 3(z).  Relying on Defendants' fraudulent statements, the USPTO issued Reg. No. 5,077,287 for the mark MORRISON KNUDSEN to Defendants on November 8, 2016.  SUF 15(b).

Fourth, Defendants, posing as MK, issued press releases regarding contracts, describing MK's history, and providing their own contact information.  For example, in an April 2017 press release announcing a $1.2 billion contract to "Morrison Knudsen," Defendants stated that MK was "[f]ounded in 1912," has built such signature projects as the "Hoover Dam" and "Alaska Pipeline," and "has constructed world class projects in 65 countries." SUF 4(j).  Defendants previously issued press releases in March 2016 ($570 million environmental cleanup project) and June 2016 ($36 million mine engineering contract) containing verbatim the same description of MK.  SUF 4(h)–(i).  Through these press releases, Defendants reinforced the false claim that they are MK and falsely associated MK with projects.

Defendants' fraudulent acts have resulted in actual confusion.  As Topolewski admitted, Defendants received an unsolicited request to bid from one government agency and another unsolicited communication about a trademark from another government agency, each of which apparently believed

they were contacting the real MK.  SUF 3(aa).  And, Mr. Brandon Davis, a former MK employee, discovered one of the Fraudulent Websites and contacted Defendants in 2013 to inquire about their claim to be MK.  SUF 3(d)–(e). Defendants falsely told him that their entities had been "spun off" from the iconic MK.  SUF 3(d).  Believing this, Mr. Davis "was interested in possibly talking to [Defendants] about employment or business opportunities" because "Morrison Knudsen had always been a special company and an incredible brand."  SUF 3(d).  Based on his belief, Mr. Davis arranged for Defendants to submit a bid for a construction project in Nevada in 2015.  SUF 3(e).

### B.    Procedural Background

After unsuccessful attempts to resolve the matter without court intervention, AECOM filed suit against Defendants on July 21, 2017, alleging the seven claims on which AECOM currently moves for summary judgment. ECF No. 1.  On September 27, 2017, this Court granted AECOM's motion for preliminary injunction.  ECF No. 45.  The Court found that AECOM had proved it was likely to succeed on the merits of its claims.  *See* ECF No. 45 at 8.

Defendants have been slow and, in many cases, have failed entirely to comply with their obligations in this litigation.  Following two motions for contempt, and the passage of six months, Defendants finally complied with the preliminary injunction, although Defendants continue to fail to comply with the Court's orders re attorneys' fees.  Diana M. Torres Decl. Supp. Summ. J. ("Torres Decl.") ¶ 3.  Despite repeated assurances, none of the Corporate Defendants or their employees appeared for deposition, with Defendants claiming that all but one conveniently, and in some cases, suddenly, are no longer associated with Defendants.  *Id.* ¶ 4, Ex. A.  Only Gary Topolewski appeared (after one nonappearance) at deposition, but he left the deposition prematurely and did not return, despite assurances that he would.  *Id.* ¶ 5. AECOM moved to compel discovery responses twice, and, to date, Defendants

1    have still failed to supplement responses as ordered by the Court.  *Id.* ¶ 6.

2    Defendants also failed to respond ***at all*** to four more discovery sets, including

3    two sets of Requests for Admission.  *Id.* ¶ 7, Exs. C and D.  In doing so,

4    Defendants admitted key facts.  *Fed. Trade Comm'n v. Medicor, LLC*, 217 F.

5    Supp. 2d 1048, 1053 (C.D. Cal. 2002) ("Failure to timely respond to requests

6    for admissions results in automatic admission of the matters requested."); *see*

7    *also Seymour v. McLane Inc.*, No. 11-55351, 2013 WL 2177365, at *1 (9th Cir.

8    May 21, 2013) ("unanswered requests for admission . . . may be relied on as the

9    basis for granting summary judgment") (citations omitted).

10   **III.    ARGUMENT**

11            **A.    Legal Standard for Summary Judgment**

12           Summary judgment is proper if "there is no genuine dispute as to any

13   material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

14   Civ. Proc. 56(a).  The moving party bears the initial burden of demonstrating

15   the absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby,*

16   *Inc.*, 477 U.S. 242, 256 (1986).  The opposing party can then defeat summary

17   judgment if there are specific facts that create a genuine issue for trial.  *Celotex*

18   *Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A genuine issue of material fact

19   exists "if the evidence is such that a reasonable jury could return a verdict for

20   the nonmoving party."  *Anderson*, 477 U.S. at 248.  The opposing party may not

21   defeat summary judgment with mere denials or scintillas of evidence, but must

22   introduce "significant probative evidence" in support of its defense.  *Echo*

23   *Drain v. Newsted*, 307 F. Supp. 2d 1116, 1120–21 (C.D. Cal. 2003) (quoting

24   *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)).

25            **B.    AECOM Is Entitled to Summary Judgment on Its False**
26            **Designation Claims.**

27           The undisputed facts establish that Defendants are liable for false

28

1   designation under the Lanham Act.[1]  15 U.S.C. § 1125(a)(1)(A).  "Passing off"

2   is one form of false designation.  *See Smith v. Montoro*, 648 F.2d 602, 604 (9th

3   Cir. 1981).  The Ninth Circuit has held that "[p]assing off is the selling of a

4   good or service of one's own creation under the name or mark of another."

5   *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (internal

6   quotation marks omitted).  To succeed, AECOM must prove that Defendants:

7   "(1) use[d] in commerce (2) any word, false designation of origin, false or

8   misleading description, or representation of fact, which (3) is likely to cause

9   confusion or misrepresents the characteristics of his or another person's goods

10  or services."  *Id*.  Here, there is no genuine dispute of material fact as to any

11  element, and Defendants have no basis on which to defeat summary judgment.

12            1.    There Is No Genuine Dispute for Any of the Three Elements

13                  a.    *Use in commerce*

14        The first element—Defendants' use of the MK Marks in commerce—

15  cannot be disputed.  "[C]ommunications made on public websites" satisfy the

16  use in commerce requirement.  *Nat'l Grange of the Order of Patrons of*

17  *Husbandry v. Cal. State Grange*, No. 2:16-201 WBS DB, 2016 WL 6696061, at

18  *4 (E.D. Cal. Nov. 15, 2016) (citing *United States v. Sutcliffe*, 505 F.3d 944,

19  952–53 (9th Cir. 2007)) (holding the internet is an instrumentality and channel

20  of interstate commerce).  Here, the Fraudulent Websites were publicly

21  accessible as of the time of filing and displayed the MK Marks and name.  SUF

22  1.  Defendants also published press releases bearing the MK name on public

23  websites.  SUF 3(f).

24

25  [1]  AECOM is also entitled to summary judgment on its passing off claims
26  under California law for the reasons set forth in this Section.  The Ninth
    Circuit "has consistently held that state common law claims of unfair
27  competition and actions pursuant to California Business and Professions
    Code § 17200 are 'substantially congruent' to claims made under the
28  Lanham Act."  *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)
    (citations omitted).

9

*b.     Use of word, false designation of origin, false or misleading description, or representation of fact*

Defendants can show no triable issue of fact on the second element, *i.e.*, that their use of the MK Marks and the MK name constitutes a false designation of origin and false or misleading description.  Indeed, even "[u]ncredited references to another entity's history and achievements may constitute 'false or misleading' representations as to give rise to liability under section [1125(a)]." *Nat'l Grange of the Order of Patrons of Husbandry*, 2016 WL 6696061, at *5 (citations omitted).  Here, Defendants describe MK's accomplishments on the Fraudulent Websites by using "we" and "our."  SUF 2(b).  But these accomplishments are those of MK (now AECOM)—not Defendants.  SUF 2(c)–(d) (falsely listing Cam Ranh Bay); 2(f)–(h) (listing other accomplishments belonging to AECOM or AECOM's predecessor). Defendants have also passed off their own construction equipment as that of MK's by affixing MK logos.  SUF 2(e) (Topolewski Dep.) (admitting the equipment was only owned by Defendants' MK entities post 2008). Defendants' attempts to claim for themselves the achievements of MK on the Fraudulent Websites and in their press releases undoubtedly constitute "false or misleading" descriptions for purposes of 15 U.S.C. § 1125(a).

*c.     Likelihood of confusion*

There is also no disputed issue of material fact as to the third and final element of a passing off claim—the likelihood that Defendants' false representations will cause confusion.  Courts assess the likelihood of confusion by weighing eight nonexclusive factors.  *Freecycle Network, Inc.*, 505 F.3d at 902–03.  These factors, often referred to as the *Sleekcraft* factors, are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's

10

intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). Where, as here, a defendant uses a name or mark identical to that of the plaintiff on the very same goods and services for which the plaintiff uses the name or mark, a balancing of the *Sleekcraft* factors is unnecessary to show the inevitable likelihood of confusion. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities").

Nonetheless, balancing the key factors leaves no doubt that Defendants' use of the MK Marks and their countless statements claiming credit for MK's accomplishments are likely to cause confusion. First, there is no question that the MK Marks are strong: MK is known to this day as the company that built the Hoover Dam, the San Francisco-Oakland Bay Bridge, and the Trans-Alaska Pipeline. SUF 3(b). Indeed, the lengths to which Defendants went to steal MK's identity is a testament to the continuing strength of the MK brand and the MK Marks. *See, e.g.*, *Chanel, Inc. v. Mode Salon, Inc.*, No. SACV 12-01533, 2013 WL 12138729, at *3 (C.D. Cal. June 10, 2013) (sale of products bearing plaintiff's marks, for a fraction of the suggested retail price, indicated knowing and willful infringement). Second, the MK Marks used by both Defendants and AECOM are identical, both used the MK Marks to designate the origin of services in the engineering and construction markets, and both did so through a variety of channels, including online and through bids. SUF 3(a); SUF 17.

Moreover, "[e]vidence that use . . . has already led to confusion is persuasive proof that future confusion is likely." *Id.* at 352. Mr. Davis, a former MK employee, discovered one of the Fraudulent Websites and emailed Defendants seeking MK's services. SUF 3(d). Mr. Davis later engaged in telephone conversations with Defendants, and from these conversations "believed that [Defendants were] . . . employees of some spun off entity of the

iconic Morrison Knudsen companies . . . ."  SUF 3(d).  Mr. Davis thus
represents at least one instance of *actual* confusion resulting from Defendants'
attempt to create a plausible basis for claiming to be MK when questioned.
SUF 3(d).  Defendants' receipt of unsolicited correspondence clearly intended
for MK is also evidence of actual confusion.  SUF 3(d)–(e).  "[W]hile very little
proof of actual confusion would be necessary to prove the likelihood of
confusion, an almost overwhelming amount of proof would be necessary to
refute such proof."  *World Carpets, Inc. v. Dick Littrell's New World Carpets*,
438 F.2d 482, 489 (5th Cir. 1971).  Defendants have provided no such proof to
refute the proof of AECOM's evidence of actual confusion.

        Finally, Defendants' actions show that their intent in selecting the MK
Marks was to pass themselves off as MK.  Rather than incorporate *new* entities
named Morrison Knudsen wholly unrelated to MK, Defendants fraudulently
*revived* two previously-dissolved MK entities.  SUF 3(i), (m).  On the
Fraudulent Websites, Defendants claimed credit for projects completed by the
*original* MK—not Defendants.  In their press releases, Defendants listed facts
true of the original MK, not Defendants.  2(c)–(d), (f)–(h) (press release
claiming Defendants were "[f]ounded in 1912," and that their "[s]ignature
projects include the Hoover Dam [and] the Alaska Pipeline").  Finally,
Defendants falsely represented to the USPTO that their first use of the mark
MORRISON KNUDSEN in commerce was "at least as early as April 18,
1933," a date when the original MK, *not* Defendants, first used the mark.  SUF
3(z).  Such "intent to deceive is strong evidence of a likelihood of confusion."
*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (*citing
Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir.
1999); *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir.
1993) ("When an alleged infringer knowingly adopts a mark similar to
another's, courts will presume an intent to deceive the public.").

1    In short, there is no genuine dispute as to the likelihood of confusion, and

2    AECOM has proven all of the elements of its false designation claims.

3                    2.    Defendants' Abandonment Argument Fails

4    In opposing AECOM's motion for preliminary injunction, Defendants

5    argued that AECOM's Lanham Act claims fail because it abandoned the MK

6    Marks, and that abandonment argument has been their (unsupported) mantra

7    throughout this case.  ECF No. 27 at 2–3.  Defendants, as the party asserting

8    abandonment, bear the "heavy" burden of proving that AECOM abandoned the

9    MK Marks.  *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d

10   1167, 1175 (11th Cir. 2002).  Defendants must prove: "(1) discontinuance of

11   trademark use and (2) intent not to resume such use."  *Electro Source, LLC v.*

12   *Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 (9th Cir. 2006).  A "***single***

13   ***instance*** of use is sufficient against a claim of abandonment of a mark if such

14   use is made in good faith."  *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434

15   F.2d 794, 804 (9th Cir. 1970) (emphasis added).  Use of a mark in "customer

16   presentations and solicitations," or other promotional materials is sufficient use

17   to defeat an argument for abandonment; the use need not be in a company's

18   name.  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069,

19   1071–72 (9th Cir. 2014).

20   Defendants have failed to put forth in discovery any such evidence to

21   create a triable issue of whether they can meet their heavy burden.[2]  Nor could

22   they.  As a threshold matter, a valid registration is prima facie evidence of the

23   ownership and validity of a mark.  *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d

24

25   [2]  Instead, Defendants point to unidentified articles reflecting prior
26   bankruptcies and unsubstantiated claims that the company was abandoned.
     Defendants' Response to Interrogatory No. 5.  Torres Decl. ¶ 14, Ex. K
27   (ROG Set 2) No. 5 ("Former unknown MK employees . . . expressed it was
     tragic that the discarded company was abandoned and maligned and thought
28   its poor name, soiled reputation, shameful history and brand could be
     salvaged.")

1250, 1254 (9th Cir. 1982) ("Federal registration of a trademark endows it with a strong presumption of validity.").  The burden of overcoming a valid registration is very high.  *Electro Source*, 485 F.3d at 935 (abandonment must be proved "strictly"); *see also eMachines, Inc. v. Ready Access Memory, Inc.*, 2001 WL 456404, at *10 (C.D. Cal. Mar. 5, 2001) (granting summary judgment for plaintiff, even where defendant offered evidence of intent not to resume use).  AECOM held valid registrations for the MK Marks until February 6, 2016.  SUF 17(b)–(c).  And AECOM filed this lawsuit the next year, in 2017, and has ample evidence of continued use since that time.  ECF No. 1; SUF 17. It is simply not possible for Defendants to show abandonment on this record.

Even setting aside this strong presumption of validity, AECOM has produced ample evidence of the continuous use of the MK Marks ***since it first changed its corporate name***.  As set forth in the Declaration of Richard Parry, MK continued to use the MK Marks from 2000 (when it first changed its corporate name) through 2008 when he left the company.  SUF 17(rr). AECOM has also produced thousands of pages of documents from 2008 through the present, showing precisely the types of uses the law deems sufficient.  For example, AECOM has used MK's name and logo as a heritage company in bid documents for clients, as well as in public-facing materials, and produced multiple exemplars per year from 2008–present.  SUF 17(h)–(oo); *id.* 17(w) ("URS, through predecessor firm, Morrison-Knudsen, led the consortium of firms that built the Hoover Dam"); *id.* 17(j) (listing Morrison Knudsen Corporation as a "Power Sector Heritage Compan[y]").  AECOM has also displayed the MK logo at booths at conferences.  *See, e.g.*, SUF 17(k).  MK also has several joint ventures that use the MK name.  SUF 17(d)–(g).  And the joint venture G·UB·MK, formed by MK and two other entities to perform work for the Tennessee Valley Authority, has operated continuously from 1991 to present.  SUF 17(g).  In short, to this day, AECOM actively uses the MK Marks

in promotional materials celebrating its legacy of design, engineering and construction expertise.  SUF 17(qq).[3]

In light of this overwhelming evidence, any abandonment defense fails.

### C.   AECOM Is Entitled to Summary Judgment on Its False Advertising Claims.

Defendants likewise cannot demonstrate any triable issue of fact regarding AECOM's false advertising claim under the Lanham Act.[4]  The Lanham Act prohibits "false or misleading description[s] of fact, or false or misleading representation[s] of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ."  15 U.S.C. § 1125(a)(1).  Defendants can show no genuine dispute of fact for the required elements: (1) Defendants made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) Defendants caused their false statement to enter interstate commerce; and (5) AECOM has been, or is likely to be, injured as a result of the false statement.  *See Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B); *Southland*

---

[3]   Although the exemplars demonstrating continuous use were more than sufficient (especially given Defendants' total failure to satisfy their initial burden), AECOM also submitted uncontroverted evidence demonstrating that its parent company acquired MK to gain a competitive advantage based on MK brand's goodwill, and it used the MK name and MK Marks accordingly.  SUF 17(qq).

[4]   AECOM is also entitled to summary judgment on its false advertising claims under California's False Advertising statute, Bus. & Prof. Code § 17500, for the reasons set forth in this Section.  *JHP Pharm., Lt. Liab. Co. v. Hospira, Inc.*, 52 F. Supp. 3d 992, 997 n.4 (C.D. Cal. 2014) (stating that the state law claims under §§ 17200 and 17500 are not substantively addressed because they are "substantially congruent" to the Lanham Act claims).

*Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

       1.    <u>Defendants Made False Statements of Fact in Commercial Advertisements.</u>

Under the Lanham Act, in order to show that Defendants' statements are false, AECOM "may show that the statement[s] [were] . . . literally false, either on [their] . . . face or by necessary implication, or that the statement[s] [were] . . . literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)).

Defendants have made numerous false statements of fact in multiple types of commercial advertisements. On the Fraudulent Websites, Defendants falsely claim credit for MK's many historical accomplishments, falsely claim a business relationship with Caterpillar—a relationship that AECOM has and Defendants do not, and offer to sell used construction equipment bearing the MK Marks and financing services under the MK name, necessarily implying that Defendants are selling equipment and offering financing from one of America's oldest and most successful engineering and construction companies—MK. *See supra,* Section III.B.1.b; SUF 4(a)–(b). Similarly, Defendants have issued press releases that falsely claim they were established in 1912 and built the Hoover Dam. SUF 4(g).

       2.    <u>Defendants' Deliberately False Statements Are Material and Likely to Deceive.</u>

There is also no evidence to create a triable issue of fact on the elements of materiality and deception. Where a statement is literally false or the defendant intentionally set out to deceive, both actual deception and materiality are presumed. *See U-Haul Int'l*, 793 F.2d at 1041 ("He who has attempted to deceive should not complain when required to bear the burden of rebutting a

16

presumption that he succeeded."); *Itex Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1173 (D. Nev. 2015) ("[I]f the statements at issue are found to be literally false, the court may presume materiality . . . .") (citations omitted).

As the Court found previously, Defendants' statements that they are MK are literally false (ECF No. 45 at 14).  Defendants are not MK, and have no cognizable right to claim credit for MK's accomplishments.  On the contrary, when asked for their basis for filing forms with the Nevada Secretary of State and USPTO posing as MK, Defendants asserted only that the name was abandoned.  Torres Decl. ¶ 14, Ex. K (Defendants' Response to Second Set of Interrogatories ("ROG Set 2") No. 6.  Because Defendants' statements are literally false, materiality and likelihood of deception may be presumed.

Even without the presumptions, the statements are likely to deceive and are material.  As described above, anyone who read the listings of MK's historical accomplishments on the Fraudulent Websites and in press releases would have been deceived into believing Defendants were involved in those accomplishments.  *See supra,* Section III.B.1.c.  And people like Mr. Davis were actually deceived, providing "persuasive proof that future confusion" or deception is likely.[5]  *See AMF Inc.*, 599 F.2d at 352; SUF 6.

Moreover, "the statements at issue were clearly made to influence consumers."  ECF No. 45 at 15; SUF 6(c) (Topolewski Dep.) (admitting the purpose of the Fraudulent Websites was to promote the company).  And purchasers of expensive construction equipment, contractors looking for assistance, and developers looking to award construction contracts are certain to look for companies with a long-standing reputation in the engineering and construction industry—like that of MK.  *Cairns v. Franklin Mint Co.*, 24 F.

---

[5] Similarly, online searches for "Morrison Knudsen" returned the Fraudulent Websites at or near the top of the results.  SUF 5(b).  The Wikipedia page for MK falsely lists one of the Fraudulent Websites as MK's official website.  SUF 5(c).

Supp. 2d 1013, 1042 (C.D. Cal. 1998) (finding a higher degree of consumer care because, in part, the "products are not inexpensive goods purchased in the grocery or drug store").  Indeed, Defendants' false statements influenced Mr. Davis to solicit a bid from Defendants.  SUF 3(d)–(e).  In short, Defendants' false statements were designed to influence the purchasing decisions of customers and are likely to and have caused deception, leaving no dispute of fact as to the third element.

3.     Defendants Caused Their False Statements to Enter Interstate Commerce.

It is likewise undisputed that Defendants caused their false statements to enter interstate commerce, as they appeared on the Fraudulent Websites and online.  *See supra*, Section III.B.1.a; *see also Sutcliffe*, 505 F.3d at 953 (holding the internet is an instrumentality and channel of interstate commerce); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011) (interstate commerce element "virtually automatic for websites.").

4.     Defendants' False Statements Have Injured AECOM.

Finally, it is indisputable that Defendants' false statements have injured AECOM.  Damage to one's business reputation, including the inability to control one's reputation, is a cognizable harm under the Lanham Act.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1393 (2014) (stating that injuries such as "damage to . . . business reputation . . . are injuries to precisely the sorts of commercial interests the [Lanham] Act protects"); *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, No. 12-463, 2012 WL 1698368, at *18 (C.D. Cal. May 15, 2012) ("Loss of good will or the loss of the ability to control one's own reputation is a cognizable harm under the Lanham Act.") (citing S*tuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001)).

As the Court has held, AECOM has been injured through its loss of

control over its brand, goodwill, related corporate entities, and trademark registrations.  ECF No. 45 at 15–16.  AECOM has literally lost its ability to control the brand and goodwill of the MK Marks and name.  Defendants have claimed MK's and AECOM's accomplishments as their own, are soliciting business under the MK name, and, according to their own press releases, winning billion dollar contracts.  Furthermore, Defendants' use dilutes AECOM's legacy and diminishes AECOM's right to market MK's heritage as one of the great American companies that helped AECOM become who it is today.  SUF 8.  In sum, the undisputed facts show that AECOM has satisfied the fifth element.

AECOM is entitled to summary judgment on its false advertising claim.

### D. AECOM Is Entitled To Summary Judgment on Its Cyberpiracy Claim.

The undisputed facts establish that Defendants are liable for cyberpiracy. The Anti-Cybersquatting Consumer Protection Act ("ACPA") holds a defendant liable for cyberpiracy when the defendant registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, and does so with bad faith intent to profit from the mark.  *See* 15 U.S.C. § 1125(d).  To prevail on its claim for cyberpiracy, AECOM must show: (1) Defendants registered a domain name; (2) that was identical or confusingly similar to AECOM's marks "that [were] distinctive *at the time of registration*;" and (3) Defendants had "bad faith intent at the time of registration."  *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011) (citing 15 U.S.C. § 1125(d)) (emphasis added).  There is no genuine dispute of fact as to any of the elements.

### 1. Defendants Registered Two Domain Names.

An "initial contract with the register constitutes a 'registration' under ACPA."  *GoPets Ltd.*, 657 F.3d at 1030.  Here, it is undisputed that Defendants registered and used the domain names www.Morrison-Knudsen.com and

1  www.Morrison-Knudsen.net.  The domain lookup tool, Whois, shows that both

2  Fraudulent Websites were created on March 25, 2008.  SUF 9(a)–(b).  And

3  Defendants have admitted they registered and have control over the domains.

4  SUF 9 (Johnson Decl.) ("I directed my staff to pull down the website

5  www.morrison-knudsen.com.").

6               2.    Defendants' Domain Names Are Identical and/or
                      Confusingly Similar to AECOM's Distinctive Marks.
7

8       A registered trademark is presumed distinctive.  *Zobmondo Entm't, LLC*

9  *v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010) ("Where the PTO

10 issues a registration without requiring proof of secondary meaning, the

11 presumption is that the mark is inherently distinctive.").  Here, it is undisputed

12 that as of March 25, 2008, AECOM, then known as Morrison Knudsen

13 Corporation and later Washington Group International, held valid trademark

14 registrations for the marks MORRISON KNUDSEN and MKCO MORRISON

15 KNUDSEN.  SUF 10(a).  Defendants' domain names are simply hyphenated

16 versions of what were, as of March 25, 2008, registered trademarks of AECOM

17 and are thus identical or confusingly similar to MK Marks that were registered

18 and thus presumed distinctive at that time.  *See Brookfield Commc'ns, Inc. v. W.*

19 *Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999) ("Web users often

20 assume, as a rule of thumb, that the domain name of a particular company will

21 be the company name followed by '.com.'") (citations omitted); *see also DSPT*

22 *Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1222 (9th Cir. 2010) (upholding a finding

23 that eq-Italy.com was "confusingly similar" to EQ).

24               3.    Defendants Registered the Domain Names in Bad Faith.

25      The ACPA lists nine nonexclusive factors a court may consider in

26 determining whether a defendant has acted in bad faith at the time of

27 registration.  *See* 15 U.S.C. § 1125(d)(1)(B)(i); *GoPets Ltd.*, 657 F.3d at 1030.

28 As the Court has already held, there is ample evidence of Defendants' bad faith

1   intent to profit from their use of the MORRISON KNUDSEN mark.  ECF No.

2   45 at 17:24–18:22.  And Defendants have produced nothing in discovery to

3   suggest otherwise.  *See* SUF 11(e) (Topolewski Dep.) (admitting Defendants

4   did not take any steps to research whether MK had been acquired).  Defendants'

5   actions with regard to their domain registrations therefore demonstrate a "bad

6   faith intent to profit" from the use of the mark, and AECOM is entitled to

7   summary judgment on its cyberpiracy claim.

8      **E.     AECOM Is Entitled to Summary Judgment on Its Petition for
            Cancellation of a Registered Mark.**

9

10      The undisputed facts establish that Defendants fraudulently registered a

11   trademark.  The Lanham Act permits cancellation of a registered trademark on

12   the basis of fraud.  *See* 15 U.S.C. § 1064(3).  To succeed on its cancellation

13   claim, AECOM must show: (1) Defendants made a false representation

14   regarding a material fact, (2) knowing it was false, and (3) intending to induce

15   action in reliance on the misrepresentation; and (4) there was reasonable

16   reliance and (5) proximately caused damage.  *See Robi v. Five Platters, Inc.*,

17   918 F.2d 1439, 1444 (9th Cir. 1990); *United Phosphorus, Ltd. v. Midland*

18   *Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000).

19      There is no triable issue of fact as to any of the five factors.  In their

20   trademark application, Defendants falsely represented to the USPTO that they

21   were the rightful owners of the mark and that the mark's first use in commerce

22   was "at least as early as April 18, 1933."  SUF 11(d).  But Defendants knew

23   that they had no legitimate right to the MK Marks, and they knew that MK, not

24   Defendants, first used the mark in commerce on that date.  *See, e.g.*, SUF 13(a)

25   (Topolewski Dep.) (admitting he first heard the name "Morrison Knudsen" in

26   "[m]aybe 2007")).  They made these false representations—under oath—for the

27   obvious purpose of inducing the USPTO to grant them a trademark registration

28   for the MORRISON KNUDSEN mark, which the USPTO reasonably did,

1   issuing to Defendants Registration No. 5,077,287 for MORRISON KNUDSEN

2   on November 8, 2016.  SUF 15(a)–(b).  That registration leaves Defendants as

3   the owners of record of the mark, thus depriving AECOM of the ability to

4   control the MK identity, its goodwill, and its trademark registrations.  *See*

5   *supra*, Section III.C.4.  Thus, AECOM is entitled to summary judgment on this

6   claim and hence an order cancelling Defendants' registration.

7   ### F.    Defendants' Equitable Defenses Fail

8           Defendants cannot escape liability by relying on their proffered equitable

9   defenses.  First, with hands as dirty as theirs, Defendants have absolutely no

10  basis to seek to avoid liability on equitable grounds.  *Adler v. Fed. Republic of*

11  *Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000).  Defendants have engaged in

12  multiple fraudulent actions, such as submitting false statements under oath to

13  multiple government agencies to resurrect dissolved MK entities and to assign

14  intellectual property rights to themselves.  *See, e.g.*, SUF (21(b) (Topolewski

15  Dep.) ("but as far as permission goes, no, I don't know who the hell I would ask

16  permission for" [sic]); SUF 21(c) (Topolewski Dep.) (pleading the Fifth

17  Amendment when asked if the Corporate Defendants were used to "launder

18  money").  This conduct more than suffices to preclude any equitable defense.

19          Moreover, Defendants have put forth in discovery no evidence to show

20  that they could meet the elements of any of these defenses.  To establish waiver,

21  Defendants would need to proffer evidence of a "clear, decisive, and

22  unequivocal" intent by AECOM to relinquish its trademark rights.  *Marketquest*

23  *Group, Inc. v. BIC Corp.*, No. 11-cv-618-BAS-JLB, 2018 WL 2933518, at *39

24  (S.D. Cal. June 12, 2018) (*citing Groves v. Prickett*, 420 F.2d 1119, 1125 (9th

25  Cir. 1970)).  To show estoppel, Defendants would need to proffer evidence of

26  AECOM's conduct "which reasonably misleads another to his prejudice so that

27

28

1  a repudiation of such conduct would be unjust in the eyes of the law."[6]  *Id.*

2  (citing *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829 (9th Cir.

3  1957).  And, to show laches, Defendants would need to show that AECOM

4  unreasonably delayed and that Defendants reasonably relied on that delay to

5  their detriment.[7]  The record is undisputed that AECOM continuously intended

6  to use, and indeed did use, the MK Marks, that Defendants will suffer no

7  prejudice in light of their fraudulent actions, and that AECOM did not

8  unreasonably delay in filing this suit.  Thus, although Defendants are not

9  entitled to plead equitable defenses because of their unclean hands, even if they

10  did, no material issue of fact exists as to any.

11  ### G.  AECOM Is Entitled to a Permanent Injunction.

12  The Court should also enter a permanent injunction.  A prevailing

13  plaintiff seeking a permanent injunction must show: "(1) that it has suffered an

14  irreparable injury; (2) that remedies available at law, such as monetary

15  damages, are inadequate to compensate for that injury; (3) that, considering the

16  balance of hardships between the plaintiff and defendant, a remedy in equity is

17  warranted; and (4) that the public interest would not be disserved by a

18  permanent injunction."  *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,

19  762 F.3d 867, 879 (9th Cir. 2014) (*citations omitted*).

20

21  [6]  Defendants cannot satisfy any of the five elements for estoppel:
22  (1) AECOM's knowledge of Defendants' actions, (2) AECOM's actions led
     Defendants to reasonably believe AECOM did not intend to enforce its
23  trademark rights against Defendants; (3) Defendants did not know that
     AECOM actually objected to Defendants' conduct; and (4) Defendants will
24  be materially prejudiced if AECOM is allowed to proceed.  *Marketquest*,
     2018 WL 2933518, at *39.

25  [7]  Even if Defendants could plead laches, the *E-Systems* factors, which courts
     analyze to assess the equity of applying the defense, weigh in favor of
26  AECOM: "(1) strength and value of trademark rights asserted; (2) plaintiff's
     diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good
27  faith ignorance by junior user; (5) competition between senior and junior
     users; and (6) extent of harm suffered by junior user because of senior user's
28  delay."  *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559
     F.3d 985, 991 n.3 (9th Cir. 2009) (citations omitted).

All four factors weigh in favor of a permanent injunction. First, this Court already found that "Plaintiff has properly established a likelihood of irreparable harm should the Court not grant injunctive relief." ECF No. 45 at 20–22. Second (and relatedly), monetary damages[8] are inadequate to wholly compensate AECOM's loss of control over its brand, goodwill, corporate entities, and intellectual property rights, as preventing AECOM from being the sole claimant of MK's accomplishments inflicts an unquantifiable injury. SUF 18(a). Third, this Court likewise already determined that the balance of hardships weighed in AECOM's favor, because any injury to Defendant was "brought upon themselves through deceptively adopting trademarks and an entire brand that are identical to that which Plaintiff owns" and "it could not be more clear that enjoining Defendants' use of the MK brand would promote the public interest in preventing consumer confusion." ECF No. 45 at 22–25. Thus, AECOM should be granted a permanent injunction.

## IV. **AECOM IS ENTITLED TO RECOVER PROFITS AND FEES.**

AECOM is also entitled to disgorgement of Defendants' profits, as Defendants willfully violated the Lanham Act. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 439–42 (9th Cir. 2017). To establish profits, AECOM need only show Defendants' revenue; thereafter, the burden shifts to Defendant to prove costs. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("Plaintiff is required to prove only sales; had Defendants mounted a defense, they would have carried the burden of showing deductions."). Defendants' failure to meet their discovery obligations has rendered their revenue judicially admitted and thus profits easily determined on summary judgment. AECOM served two sets of Requests for Admission

---

[8] Defendants are also counting on their ability to hide their money, as they have produced obviously false financial statements showing millions of dollars in expenses for such things as payroll costs and equipment rentals but virtually no income for the past few years. SUF 27(a)–(d).

("RFAs") that Defendants failed to answer in any way.  In the first set, AECOM asked Defendants to admit that they had issued press releases claiming contracts totaling $1.806 billion.  SUF 4(h)–(j).  In the second set, AECOM asked Defendants to admit that they have bid, won, and performed construction contracts for third parties.  SUF 4(k).  Because Defendants failed to object or respond to these RFAs (Torres Decl. ¶ 7), they are deemed admitted, and the statements in the press releases are party admissions.  *Fed. Trade Comm'n*, 217 F. Supp. 2d at 1053.  Thus, revenue of $1.806 billion from the infringement is established by Defendants' own admissions.  SUF 26.  Defendants' financial statements—which are clearly false but which AECOM does not dispute for purposes of summary judgment—show total costs and expenses for 2013–2016 of █████████.  SUF 27.  Thus, the undisputable evidence shows that Defendants' net profits from its infringement are ████████████.  *Id.*

This case—with substantial fraudulent conduct by Defendants—also easily qualifies as an exceptional case, for which the prevailing party is entitled to attorneys' fees.  *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1079 (9th Cir. 2015) (citing 15 U.S.C. § 1117(a)).  AECOM is entitled to recover its attorneys' fees.

## V.    CONCLUSION

For these reasons, AECOM respectfully asks that this Court grant AECOM's Motion for Summary Judgment in its entirety, cancel Defendants' registration, and issue a Permanent Injunction enjoining Defendants' further use of the MK brand.  Finally, AECOM asks for a judgment in the amount of Defendants' profits, ████████████.

DATED:  July 24, 2018

KIRKLAND & ELLIS LLP

*/s/ Diana M. Torres*

Diana M. Torres
Attorney for Plaintiff
AECOM Energy & Construction, Inc.

25