1   Diana M. Torres (SBN 162284)
    diana.torres@kirkland.com
2   Yungmoon Chang (SBN 311673)
    yungmoon.chang@kirkland.com
3   KIRKLAND & ELLIS LLP
    333 South Hope Street
4   Los Angeles, California 90071
    Telephone: (213) 680-8400
5   Facsimile: (213) 680-8500

6   Attorneys for Plaintiff
    AECOM ENERGY &
7   CONSTRUCTION, INC.

8

                    **UNITED STATES DISTRICT COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10

11  AECOM ENERGY &                    )   CASE NO. 2:17-cv-05398-RSWL(SSx)
    CONSTRUCTION, INC., an Ohio       )
12  Corporation,                      )   **PLAINTIFF'S SECOND REPLY IN**
                                       )   **SUPPORT OF ITS MOTION FOR**
13          Plaintiff,                 )   **SUMMARY JUDGMENT AND FOR**
                                       )   **PERMANENT INJUNCTION**
14       v.                            )
                                       )   Complaint Filed Date: July 21, 2017
15  GARY TOPOLEWSKI, *et al.*,         )
                                       )   Judge:        Hon. Ronald S. W. Lew
16          Defendants.                )   Hearing Date: September 18, 2018
                                       )   Time:         10:00 AM
17                                     )   Courtroom:    1
                                       )
18                                     )
                                       )
19                                     )

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT.................................................................................................. 5

        A.      Defendants Fail to Establish a Triable Issue of Material Fact for
                AECOM's Passing Off Claim.............................................................. 5

        B.      Defendants Fail to Establish a Triable Issue of Material Fact for
                AECOM's False Advertising Claim Because They Erroneously
                Conflate Injury/Damage and Damages ............................................... 10

        C.      Defendants Fail to Establish a Triable Issue of Material Fact for
                AECOM's Cyberpiracy Claim............................................................. 12

        D.      Defendants Fail to Establish a Triable Issue of Material Fact for
                AECOM's Cancellation Claim ............................................................ 12

        E.      AECOM Is Entitled to a Permanent Injunction and Disgorgement
                of Defendants' Profits ......................................................................... 14

        F.      Defendants' Equitable Defenses Are Precluded and Lack
                Evidentiary Support ............................................................................ 16

        G.      Defendants' Statement of Disputed Facts Is Nothing More Than
                Legal Conclusions and Argument........................................................ 18

III.    CONCLUSION ............................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)...................................................................................1, 4, 5, 17

*Chance v. Pac-Tel Teletrac Inc.,*
  242 F.3d 1151 (9th Cir. 2001) ...................................................................... 8, 9

*Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.,*
  448 F.3d 1118 (9th Cir. 2006) ............................................................................ 5

*Devereaux v. Abbey,*
  263 F.3d 1070 (9th Cir. 2001) .......................................................................... 17

*Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.,*
  458 F.3d 931 (9th Cir. 2006) .............................................................................. 7

*Freecycle Network, Inc. v. Oey,*
  505 F.3d 898 (9th Cir. 2007) .............................................................................. 6

*Fresno Motors, LLC v. Mercedes Benz USA, LLC,*
  771 F.3d 1119 (9th Cir. 2014) .......................................................................... 19

*Getz v. Boeing Co.,*
  654 F.3d 852 (9th Cir. 2011) .............................................................................. 1

*Hoffman v. Constr. Protective Servs., Inc.,*
  541 F.3d 1175 (9th Cir. 2008) .......................................................................... 10

*Hutchinson v. United States,*
  838 F.2d 390 (9th Cir. 1988) ......................................................................... 1, 18

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,*
  762 F.3d 867 (9th Cir. 2014) ............................................................................ 14

*McIndoe v. Huntington Ingalls Inc.,*
  817 F.3d 1170 (9th Cir. 2016) .......................................................................... 18

*Nelson v. Pima Community Coll.,*
  83 F.3d 1075 (9th Cir. 1996) .............................................................................. 1

*Pollution Denim & Co. v. Pollution Clothing Co.,*
  547 F. Supp. 2d 1132 (C.D. Cal. 2007) .............................................................. 8

*R&R Sails, Inc. v. Ins. Co. of Penn,*
  673 F.3d 1240 (9th Cir. 2012) .......................................................................... 10

*Rogan v. City of Boston,*
  267 F.3d 24 (1st Cir. 2001) ................................................................................. 1

*Smith v. Montoro,*
    648 F.2d 602 (9th Cir. 1981) .................................................................. 5

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
    768 F.2d 1001 (9th Cir. 1985), cert. denied, 474 U.S. 1059, 106 S. Ct.
    802, 88 L. Ed. 2d 778 (1986) ................................................................ 12

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
    758 F.3d 1069 (9th Cir. 2014) ................................................................ 3

*Yucaipa Corp. Initiatives Fund I, LP v. Hawaiian Airlines, Inc.,*
    No. cv 13-9060, 2014 WL 12564354 (C.D. Cal. Dec. 17, 2014) ............ 7

**Statutes**

Lanham Act .................................................................................. 2, 3, 10, 12

**Rules**

Fed. R. Civ. P. 37 ................................................................................ *passim*

Fed. R. Civ. P. 56 ...................................................................................... 17

Fed. R. Civ. P. 56(e) ................................................................................... 1

**Other Authorities**

Fifth Amendment ...................................................................................... 16

Black's Law Dictionary (10th ed. 2014) ................................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      **INTRODUCTION**

Under *Celotex Corp. v. Catrett*, Defendants must come forward with sufficient factual evidence from which a reasonable jury could decide in their favor.  *See* 477 U.S. 317, 322–23 (1986).  Rather than cite evidence or applicable law, however, Defendants recite sweeping legal propositions and simply claim that there are factual disputes, with no attempt to support those facts with evidence and no attempt to apply applicable law to the facts of this case.  But merely calling something a "factual issue" does not make it a genuine issue of material fact sufficient to survive summary judgment, as Defendants' own cited case law confirms.  *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).  To defeat AECOM's motion, Defendants must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (*citing* Fed. R. Civ. P. 56(e)).  They "may not rely on mere speculation and conjecture to avoid summary judgment."  *Getz v. Boeing Co.*, 654 F.3d 852, 865 (9th Cir. 2011) (*citing Nelson v. Pima Community Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996)).  Nor may Defendants oppose the summary judgment by "rest[ing] on conclusory allegations." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).

Yet Defendants engage in exactly this type of speculation and conjecture while proffering no evidence to dispute the basic material facts underlying this case: that Defendants engaged in a multi-year fraudulent scheme to steal the identity of an American icon.  Defendants do not deny that they submitted false statements under oath to the Nevada Secretary of State to revive dissolved Morrison Knudsen entities. They do not dispute that they submitted false statements under penalty of perjury to the United States Patent and Trademark Office ("USPTO") to gain control of the Morrison Knudsen trademarks, including by forging an assignment.  And they do not dispute that they have been masquerading as Morrison Knudsen for years, and falsely advertising the accomplishments of Morrison Knudsen as their own through fraudulent websites and press releases.  Instead, they cite incorrect legal standards and

employ a defense that can best be described as dumpster diving.  However Defendants care to characterize their behavior, it is illegal and a violation of multiple aspects of the Lanham Act and related state law.

Defendants first focus on traditional trademark infringement rather than the broader claim at issue here—passing off—and engage in wild conjecture about the ownership of the MK Marks.[1]  Whether Defendants are truly confused about the law or are simply trying to confuse the record is unclear.  To prove its claim of passing off, AECOM must show that Defendants used a false designation of origin, *false or misleading description, or representation of fact likely to cause confusion or that misrepresents the characteristics of their services*.  In pretending to be Morrison Knudsen ("MK"), Defendants have misrepresented the nature of the services they provide as originating from the real MK, an iconic and historically important company in American history, and Defendants' claims constitute passing off.  In contrast, AECOM[2] has presented unrefuted evidence that it *is* the Morrison Knudsen entity that owned the MK Marks at issue in this lawsuit, and has merely changed its corporate name as a result of mergers involving its parent companies.

Moreover, the underlying tenet of Defendants' abandonment defense is fundamentally flawed.  Contrary to Defendants' argument, AECOM did not throw away or abandon the MK Marks under trademark law.  While AECOM may have changed its corporate name, it continued to use the MK Marks in a wide variety of ways, ranging from banners at trade shows to marketing presentation materials to bid proposal documents.  Those uses, the majority of which Defendants ignore, are not

---

[1]  As defined in AECOM's Motion for Summary Judgment, "MK Marks" refers to the word mark MORRISON KNUDSEN, the MK logo, and the combined word and design mark MKCO MORRISON KNUDSEN (each an "MK Mark"; collectively, the "MK Marks").

[2]  The Plaintiff here, AECOM Energy & Construction, Inc., an Ohio Corporation, is referred to throughout this Motion and supporting papers as simply AECOM.

"token" uses, but instead far exceed the threshold for maintaining trademark rights. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069 (9th Cir. 2014).

Defendants' sole argument as to why summary judgment should not issue for false advertising is equally specious.  Citing Rule 37 of the Federal Rules of Civil Procedure, Defendants claim that AECOM is not entitled to summary judgment on liability for false advertising because AECOM supposedly did not adequately lay out its damages calculation (which it did).  Again, whether Defendants are confused about the law or merely trying to sow confusion is unclear.  False advertising under the Lanham Act requires a plaintiff to show injury or *damage*—not to have quantified its *damages*.  And, ironically, any alleged "inadequacy" in AECOM's damages disclosures is a direct result of Defendants' continued failure to comply with the Magistrate Judge's discovery order compelling Defendants to produce bank and tax records, Dkt. 154, which is the subject of AECOM's pending motion for contempt, Dkt. 162.

Defendants' argument as to why summary judgment should not be granted on AECOM's cyberpiracy claim also fails.  To avoid liability, Defendants point to their own registration for the mark MORRISON KNUDSEN, Reg. No. 5,077,287, and claim that this registration provides them with a presumption of ownership of the Morrison Knudsen name.  As a preliminary matter, the evidence that Defendants obtained that registration fraudulently is overwhelming and undisputed, and thus warrants cancellation of that registration.  More simply, however, Defendants did not obtain that registration until 2016.  They registered the domain names www.morrison-knudsen.com and www.morrison-knudsen.net (the "Fraudulent Websites") *eight years earlier*—while AECOM (then known as Washington Group International) owned multiple registrations for the MK Marks.  Thus, Defendants' current trademark registration, even if it had been validly obtained (which it absolutely was not), provides no defense to AECOM's cyberpiracy claim.

3

Moreover, Defendants put forth nothing other than conclusory assertions of "factual issues" to avoid cancellation of their fraudulently-obtained trademark registration.  After having gained control of the existing registrations for the MK Marks, Defendants applied to register the MORRISON KNUDSEN mark almost immediately after those marks expired.  In doing so, Defendants claimed MK's historical use—dating back to the days of the Hoover Dam—as their own.  Defendants put forth nothing to refute the evidence that they knowingly made these false statements to induce the USPTO to grant their application.  Under *Celotex,* Defendants cannot defeat cancellation.

Defendants also offer nothing that undermines AECOM's right to the other remedies it seeks: a permanent injunction and disgorgement of Defendants' profits. Indeed, Defendants' sole argument is the flawed assertion that AECOM did not adequately disclose its damages calculation, but this is insufficient for several reasons. First, whether or not a plaintiff discloses its damages calculation has no bearing on whether it is entitled to a permanent injunction.  Second, AECOM disclosed long ago that it was pursuing Defendants' profits, not claiming out of pocket losses.  For AECOM to calculate Defendants' profits, Defendants needed to disclose evidence of their profits—which they have refused to do, despite a court order requiring them to do so and a pending motion for contempt.  Dkts. 154, 162.  Nonetheless, in light of Defendants' failure to disclose the records reflecting their profits and at Defendants' request, AECOM supplemented its disclosures with a profits calculation using Defendants' press releases as party admissions, the authenticity of which has been judicially admitted.  While Defendants may not like this calculation, it is proper under the law and AECOM adequately disclosed it when it became clear that Defendants had no intention of providing information that would allow for any other calculation. Declaration of Diana M. Torres ("Torres Decl.") ¶¶ 3–6.

Finally, Defendants claim that AECOM is not entitled to summary judgment because AECOM supposedly did not overcome Defendants' affirmative defenses.

4

The law does not require AECOM to disprove Defendants' affirmative defenses. Instead, AECOM need only show that Defendants do not have evidence sufficient to persuade a jury to rule in their favor on those defenses, nor are they entitled to assert their equitable defenses given the undisputed evidence of their unclean hands. Moreover, AECOM addressed Defendants' primary affirmative defenses— abandonment and ownership—at length, and pointed to Defendants' failure to present *any* evidence to support those defenses. Under *Celotex,* AECOM has more than met its burden but Defendants have not.

In sum, Defendants put forth no evidence to refute the basic material facts that establish liability for each claim and that entitle AECOM to the remedies it seeks. AECOM respectfully requests that the Court grant its Motion for Summary Judgment and Permanent Injunction in its entirety and award AECOM its attorneys' fees and costs.

## II. __ARGUMENT__

### A. __Defendants Fail to Establish a Triable Issue of Material Fact for AECOM's Passing Off Claim__

Defendants attempt to avoid summary judgment by focusing on a different claim than the one AECOM brings here and engaging in a confusing and speculative discussion about the historical ownership of the MK Marks. Neither endeavor satisfies *Celotex's* requirement of putting forth *evidence* to defeat summary judgment.

In their Opposition, Defendants contend that, to prove their false designation of origin claim, AECOM has the burden of demonstrating both (1) that it owns a valid, protectable trademark, and (2) that the defendant used the mark in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation or approval of the goods. This test is the test for traditional trademark infringement, however. *See Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) (reciting above test "to prevail on [a] claim of trademark infringement"). It is not the test for the form of false designation of origin

at issue here—"passing off."  *See Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981).  "Passing off is the selling of a good or service of one's own creation under the name or mark of another."  *Id.*; *see also Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (internal quotation marks omitted).  To succeed, AECOM must prove that Defendants: "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services."  *Id.*  Because Defendants cannot create a triable issue of fact under the applicable test for passing off, AECOM should be granted summary judgment on its passing off claim.

In fact, as set forth below, Defendants do not put forth evidence to create a triable issue of fact even under the test they articulate.  They put forth no evidence that contradicts that AECOM is the same entity, albeit with a different corporate name, that owned the registrations for the MK Marks at issue here.  And Defendants put forth no evidence that could create a triable issue of material fact with respect to abandonment of those Marks.

> 1.    Ownership Is Not a Required Element, But Even If It was, Defendants Cannot Establish a Triable Issue of Fact.

In their Opposition, Defendants wrongly claim that ownership of a mark is an element of passing off and is somehow critical to likelihood of confusion.  Then, in seeking to poke holes in AECOM's ownership of the MK Marks, Defendants spend pages meandering into irrelevant aspects of AECOM's corporate family history from decades ago, attempting to show that once upon a time other MK entities may have owned other marks related to MK that were registered before the MK Marks at issue here.  But whether or not AECOM's related entities once held other registrations is irrelevant, as no other AECOM-related entity (or *any* other entity, for that matter) is claiming priority.  Moreover, although the registrations for the MK Marks at issue here may still have been listed in AECOM's prior corporate name, AECOM has

6

presented unrefuted ***evidence*** that ***it is the same entity*** that owned those registrations, and that AECOM has simply changed its corporate name as a result of mergers involving its parent companies—mergers the Defendants expressly do not dispute. Dkt. 173 (Plaintiff's Statement of Uncontroverted Facts ("SUF")) ¶ 17(a); Dkt. 190-1 at 12:21–13:21.[3]  As AECOM's evidence shows, AECOM has remained the same legal entity throughout these name changes, with the same legal rights to the MK Marks and name.  Nothing in Defendants' musings about MK's corporate history refutes that evidence.  Thus, even if trademark ownership were required for a passing off claim, Defendants fail to show there is a triable issue of fact as to the ownership of the MK Marks.

> 2. Defendants Do Not Establish a Triable Issue of Fact That Could Lead a Reasonable Jury to Find Abandonment.

Nor have Defendants established a triable issue of fact on the issue of abandonment.  Defendants correctly state that abandonment requires (1) discontinuance of trademark use, and (2) intent not to resume use.  Dkt. 190-1 at 18:23–27.  Defendants also correctly state that the nonuse requires "***complete*** cessation or discontinuance of trademark use." Dkt. 190-1 at 19:10–12 (*citing Yucaipa Corp. Initiatives Fund I, LP v. Hawaiian Airlines, Inc.*, No. cv 13-9060, 2014 WL 12564354 (C.D. Cal. Dec. 17, 2014) (emphasis added)); *see also Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 936 (9th Cir. 2006).  But everything else about Defendants' position is legally incorrect, factually inaccurate, and nothing more than a desperate attempt to drum up a triable issue of fact where none exists.

Defendants first argue, without citing any authority, that there is a *prima facie* case of abandonment because "it has been sixteen (16) years since AECOM first

---

[3]  AECOM cites to the corrected version of Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Permanent Injunction, Dkt. 190-1.  AECOM cites to the page number contained in the ECF header (the number referenced as "[page number] of 29").

started walking away from the [MK] Marks." Dkt. 190-1 at 20:22–24. Defendants cite no authority because there is none: a decision by a trademark owner not to maintain all (or even any) prior trademark registrations has absolutely no bearing on trademark use. And, while AECOM and its predecessors may have had other registrations that expired over the years, Defendants themselves admit that the registrations for the MK Marks at issue here did not expire until 2016, and by that time Defendants had effectively usurped control over them. In other words, AECOM did not discard the MK Marks—Defendants took them.

Citing *Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151, 1159 (9th Cir. 2001)*,* Defendants next argue that AECOM's use of the MK Marks is a "token use." Dkt. 190-1 at 20:27–28, 21:5–6 (arguing that AECOM's exemplars of continuing use are "place holders and context for their marketing materials" and "are not used to entice prospective customers to use AECOM's services," and thus "token uses."). A "[t]oken use" is a use undertaken without *bona fide* commercial intent in a mere attempt to reserve the mark for future use. *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1142 n. 40 (C.D. Cal. 2007) (*citing Chance*, 242 F.3d at 1157 (9th Cir. 2001)). In contrast, AECOM's many exemplars of use reflect an intentional, systematic, and continued use of the MK Marks to convey to the public the source of AECOM's services. As the record reflects, AECOM has used the MK Marks in bid documents, client presentations, and at booths and conferences, every year since first changing its corporate name. Dkt. 173 (SUF) ¶¶ 17 (h)–(oo). MK also has several joint ventures that still use the MK name. *Id.* ¶¶ 17(d)–(g). As AECOM's witnesses have testified in their declarations, these uses were typical and sustained, and were undertaken precisely to identify its goods and services as originating from the same source. Dkt. 157-2 (Declaration of Tara McAdam Kassal) ¶ 4 ("AECOM leverages iconic projects from its heritage companies . . . to differentiate itself from competitors by demonstrating its rich history of highly complex projects"); Dkt. 157-4 (Declaration of Ed Toms) ¶ 3 ("[B]ecause of the importance of MK to our business,

8

we have featured MK in our marketing materials and bid documents (including on the resumes of key personnel that we submit as part of our bid materials)"); Dkt. 157-3 (Declaration of Lea Anne Russell) ¶ 3 ("When URS acquired MK . . . it was able to market to its clients and potential clients the construction expertise of MK"); Dkt. 175 (Declaration of Charles Szurgot) ¶ 12 ("To this day, AECOM lists MK, whose name and image promote and strengthen the AECOM brand, in many of its promotional materials throughout the world, including references to Morrison Knudsen's heritage projects"); Dkt. 15 (Declaration of Richard Parry) ¶ 4 ("The 'Morrison Knudsen' brand was tremendously strong and had a strong following."). Thus, AECOM's use of the MK Marks is a far cry from "token use."

Chance, in fact, supports AECOM's position, not Defendants'. In Chance, the court held that plaintiff's generic mailing of 35,000 post cards did not provide it with priority over the defendant, because although the mailing of the post cards might have evidenced commercial intent, plaintiff failed to show it genuinely continued to exploit the marks thereafter. Chance, 242 F.3d at 1160. The defendant, in contrast, had sent out brochures to potential customers using the mark in question, and "marketed to potential customers who managed large vehicle fleets through a slide presentation using the mark," which was sufficient to constitute use for purposes of priority. Id. Here, not only is priority between AECOM and Defendants not at issue, AECOM's continued and sustained commercial use of the MK Marks in brochures to potential customers and in slide presentations is much more similar to those of the defendant in Chance, whose uses the court held were **not** token uses, than those of the plaintiff in that case.

Finally, although Defendants concede that abandonment requires the intent to discontinue use, Defendants make no attempt to show the existence of a triable issue of fact that AECOM **intended** to discontinue use of the MK Marks. Nor could they— AECOM submitted four declarations, 39 exemplars of use, and stated the exact opposite at deposition. Torres Decl. ¶ 7, Ex. 5 (Szurgot Dep. Tr.) at 18:9–19:14. For

9

this reason as well, Defendants have failed to establish a triable issue of fact that could sustain their affirmative defense of abandonment.

In short, Defendants have fallen far short of their burden of showing a triable issue of fact that could lead a jury to find that the MK Marks were at any point in time discarded as "litter" for Defendants to take.  Dkt. 190-1 at 9:5–7.  Indeed, their own undisputed, surreptitious actions show they were well aware that they were stealing MK's identity, not simply taking over abandoned property.  The undisputed fact that they **lied** to multiple government agencies in order to gain control of MK entities and Marks demonstrates that they knew they had no right to either.

### B.   Defendants Fail to Establish a Triable Issue of Material Fact for AECOM's False Advertising Claim Because They Erroneously Conflate Injury/Damage and Damages

Defendants' sole argument as to why summary judgment should not be entered against them for false advertising is that AECOM supposedly did not comply with Rule 37 and therefore AECOM supposedly cannot seek damages.  Defendants are wrong on both the law and the facts.  False advertising under the Lanham Act requires a plaintiff to show injury or damage—not to have quantified its damages.  Indeed, the concepts of injury and quantified damages are fundamentally different, as a plaintiff may show injury or damage regardless of whether it has quantifiable damages, let alone calculated and disclosed the **amount** of its damages.  *See* Damage Definition, Black's Law Dictionary (10th ed. 2014), *available at* Westlaw (defining "damage" as the "[l]oss or injury to person or property"); *see also* Damages Definition, Black's Law Dictionary (10th ed. 2014), *available at* Westlaw (defining "damages" as "[m]oney claimed by, or ordered paid to, a person as compensation for loss or injury").  Accordingly, whether or not AECOM sufficiently disclosed its damages calculations under Rule 37 (it has) such that it is entitled to claim damages has no bearing on whether summary judgment is proper here (it is).[4]

---

4   None of Defendants' cited authority addresses whether or not a false advertising plaintiff is entitled to prevail on summary judgment based on its disclosure of its

Moreover, AECOM has set forth evidence to establish it has been harmed by Defendants' actions.  As the Court previously held, AECOM has already suffered harm from Defendants' actions, in the form of loss of control over its business reputation and damage to goodwill.  Dkt. 45 at 20:18–22.  Now, following the close of discovery, AECOM has set forth ***additional*** evidence showing it has suffered harm by losing control over its business reputation.  *See, e.g.*, Dkt. 157-2 (Declaration of Tara McAdam Kassal) ¶ 7 ("In offering [used construction] equipment on their website and claiming they are Morrison Knudsen Corporation, Defendants are sullying AECOM's hard earned reputation"); Dkt. 175 (Declaration of Charles Szurgot) ¶ 12 ("The use by another of MK's goodwill, including their use of the Morrison Knudsen name, MK's trademarks, MK's history and MK's projects and accomplishments, especially in the fashion being used by Defendants, dilutes AECOM's legacy and diminishes AECOM's right and ability to market the heritage of MK as one of the great American companies that has helped make AECOM what it is today").

Even if the proper test were whether AECOM had properly disclosed damages (it is not), AECOM's supplemental disclosures adequately set forth its damages theory.  *See* Section II.E.  To the extent Defendants contend that AECOM's supplemental disclosures are inadequate, any such deficiency is of Defendants' own making, because they have failed to turn over financial documents, despite an order from the Court to do so.  Dkts. 154, 162.

---

damages theory.  In fact, Defendants' cited authority addresses the issue of disclosure of damages in the context of a motion *in limine*, not a motion for summary judgment.  *See, e.g.*, *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) (excluding evidence of damages at trial where opt-in plaintiffs in class action did not disclose damages for state law causes of action not included in the class action); *R&R Sails, Inc. v. Ins. Co. of Penn*, 673 F.3d 1240, 1246 (9th Cir. 2012) (reversing and remanding exclusion of underlying financial documents at trial for determination of whether failure to disclose involved willfulness, fault, or bad faith).  All of Defendants' cases are therefore irrelevant.

### C. Defendants Fail to Establish a Triable Issue of Material Fact for AECOM's Cyberpiracy Claim

In opposing summary judgment on AECOM's cyber-piracy claim, Defendants rely solely on their claim that their current trademark registration is a complete bar to liability.  But whether or not Defendants hold a trademark registration entitling them to a presumption of validity now, ***eight years after*** they registered the Fraudulent Websites, is irrelevant.  Indeed, Defendants do not dispute that they registered www.morrison-knudsen.com and www.morrison-knudsen.net in 2008.  Even if Defendants could show *bona fide*, rather than fraudulent, ownership of a trademark registration for MORRISON KNUDSEN (they cannot), they did not obtain this registration until 2016—well ***after*** they had registered the domain names for the Fraudulent Websites.  Thus, Defendants' 2016 registration for the MORRISON KNUDSEN mark provides no defense to their liability for cyber-piracy in 2008.

### D. Defendants Fail to Establish a Triable Issue of Material Fact for AECOM's Cancellation Claim

In seeking to avoid cancellation of their fraudulently obtained registration, Defendants argue that AECOM's motion relies on a "misapplication of Gary's testimony" (presumably referring to Topolewski) and because AECOM is required to prove fraud.  Specifically, Defendants claim that AECOM cannot rely on the testimony of ***Topolewski*** to show that ***Corporate Defendants*** made false statements in registering the domain names and that AECOM cannot show damages because AECOM allegedly failed to set forth its damages calculation as required by Rule 37.[5] Dkt. 190-1 at 25:14–20.

---

[5] Indeed, Topolewski appears to be angling to avoid liability entirely by claiming not to have been involved in the Corporate Defendants' day to day activities.  Under the Lanham Act, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (internal quotation marks and citation omitted), cert. denied, 474 U.S. 1059, 106 S. Ct. 802, 88 L. Ed. 2d 778 (1986).  As the Nevada Secretary of State's

Defendants are wrong.  As Topolewski testified at deposition, he first became involved with Corporate Defendants in 2007 or 2008 and held the position of President of Morrison-Knudsen Services at that time.  Torres Decl. ¶ 8, Ex. 6 (Topolewski Dep. Tr.) at 81:22–82:6.  As the Nevada Secretary of State's records show, Topolewski was listed as "Chairman" that year and held various other officer positions that changed periodically (such as the President, Chairman, or Secretary) and was a Director of multiple Corporate Defendants throughout most of the relevant time period.  Torres Decl. ¶ 11.  Topolewski further testified that the first time he heard the term or name Morrison Knudsen was in "[m]aybe 2007," that Defendants did not use the mark in 1933 for construction services or for any services for that matter, as they did not begin masquerading as MK until 2008, but were instead claiming the real Morrison Knudsen's first use as their own.  In fact, Topolewski claims that Defendants actually ***never*** used the MK Marks for construction services. *Id.* ¶ 8, Ex. 6 at 83:6–84:19, 132:10–12, 142:11–19, 242:2–8, 244:17–25, 245:8–246:6.  Corporate Defendants, for their part, did not designate a single corporate witness in response to AECOM's noticed depositions to dispute any of Topolewski's testimony.  *Id.* ¶ 9.  In fact, when asked to identify the factual basis for Defendants' statements that they performed or were in any way involved in the projects accomplished by the real MK, Topolewski and Corporate Defendants' sole response was:  "Responding Parties revived an abandoned company."  Torres Decl. ¶ 10, Ex. 7 (Apr. 2, 2018 Defendants' Supplemental Response to First and Second Set of Interrogatories) at 7:24–26.  This testimony, individually and collectively, demonstrates that Defendants knowingly submitted false statements (*i.e.*, that they

records show, and as Topolewski admitted, Topolewski was an officer (such as the President, Chairman, or Secretary) and a Director of multiple Corporate Defendants throughout most of the relevant time period.  Torres Decl. ¶ 11.  He personally signed and submitted many of the fraudulent documents to the Nevada Secretary of State, including the unauthorized revival of Morrison Knudsen Corporation of Viet Nam, Dkt. 177 at ¶ 3(m), and the subsequent change of that entity's name to Morrison Knudsen Corporation, *id.* ¶ 3(n).  He clearly participated in the fraudulent scheme, and is therefore personally liable for that scheme.

began using the MORRISON KNUDSEN mark at least as early as 1933 for "construction services") to the USPTO to obtain Reg. No. 5,077,827.  This admitted (and undeniable) falsity warrants cancellation of Defendants' registration.

Moreover, the circumstances surrounding Defendants' registration underscore its fraudulent nature.  Beginning in 2014, Defendants submitted multiple false documents under penalty of perjury to the USPTO to obtain control over the existing registrations for the MK Marks that AECOM owned.  Defendants submitted a new application to register the exact same mark immediately after the registrations for those marks expired.

Defendants' second argument—that AECOM is not entitled to cancellation because it supposedly did not set forth its damages calculation sufficiently under Rule 37 is nonsensical.  The only remedy for a cancellation claim is ***cancellation***, not ***damages***, and thus a ***damages*** calculation is unnecessary.

**E.     AECOM Is Entitled to a Permanent Injunction and Disgorgement of Defendants' Profits**

Defendants' attempt to dispute AECOM's right to the remedies it seeks—a permanent injunction and disgorgement of Defendants' profits—fails.  Defendants' only argument is the flawed assertion that AECOM did not adequately disclose its damages calculation in its initial disclosures.  Their argument is inadequate for several reasons.

First, whether or not a plaintiff discloses its damages calculation has no bearing on whether it is entitled to a permanent injunction.  According to Defendants, "AECOM would need to prove . . . that remedies at law are not available to it," and thus that the availability of damages is an element of the permanent injunction test that AECOM cannot meet. Dkt. 190-1 at 27:16–18.  In fact, the necessary showing is "that remedies available at law, such as monetary damages, are ***inadequate*** to compensate for that injury." Dkt. 176 at 23 (citing *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014)) (citations omitted)

(emphasis added).  The calculation of AECOM's damages from the disgorgement of Defendants' profits is irrelevant because any damage**s**, regardless of the amount, are inadequate to compensate AECOM for the loss of control over its brand, goodwill, corporate entities, and intellectual property rights.  Indeed, this Court already found that AECOM's "complete loss of control over the brand and history of the MK entities it specifically paid to acquire" is not a purely economic harm.  Dkt. 45.  Given that this harm cannot be quantified, monetary damages are inadequate to compensate AECOM and the calculation of damages is immaterial to AECOM's right to a permanent injunction.

Second, Rule 37 of the Federal Rules of Civil Procedure does not preclude evidence of AECOM's damages because the timing of AECOM's disclosure of its damages calculation was both substantially justified and harmless.  AECOM disclosed long ago that it was pursuing Defendants' profits, not claiming out of pocket losses. *See* Torres Decl. ¶ 3, Ex. 1 (Initial Disclosures) at 4–5.  For AECOM to calculate Defendants' profits, Defendants needed to actually disclose evidence of their profits— which they have refused to do, despite a court order requiring them to do so. Dkt. 154.  Defendants' refusal is the subject of a pending motion for contempt filed by AECOM in July.  Dkt. 162.  Nonetheless, in light of Defendants' failure to disclose the records reflecting their profits and at Defendants' request, AECOM set forth a profits calculation using Defendants' press releases as party admissions, the authenticity of which has been judicially admitted.  Torres Decl. ¶ 6, Ex. 4 at 6–7. While Defendants may not like this calculation, it is proper under the law and AECOM adequately disclosed it in its supplemental initial disclosures when it became clear that Defendants had no intention of providing information that would allow for any other calculation.  *See* Torres Decl. ¶¶ 3–6.

Defendants do not, and cannot, articulate any harm from the timing of this calculation.  All of the evidence that AECOM used to calculate lost profits was in Defendants' possession.  Thus, the timing of this calculation did not deprive

Defendants of an opportunity to obtain discovery of the evidence that forms the basis for the calculation.  Further, earlier disclosure of the calculation would not have provided Defendants any additional opportunity to seek discovery to challenge the calculation.  There is no information regarding Defendants' revenues and expenses that Defendants could seek from AECOM, as there is no such evidence that AECOM possesses but Defendants do not.  Given that the timing of AECOM's disclosure of its damages calculation was solely due to Defendants' failure to comply with their discovery obligations and Defendants suffered no prejudice from this timing, Rule 37 does not apply.

Moreover, Defendants do not offer any evidence disputing AECOM's calculation of their profits in their Opposition.  Accordingly, no triable issue of fact exists as to AECOM's damages, and the Court should award disgorgement of Defendants' profits by summary judgment.

**F.    Defendants' Equitable Defenses Are Precluded and Lack Evidentiary Support**

Defendants' attempt to avoid summary judgment by relying on their equitable defenses also fails.  Defendants do not dispute that the unclean hands doctrine precludes each equitable defense on which they rely.  Dkt. 173 (SUF) at ¶ 21.  And Defendants do not offer any evidence or argument to dispute that their hands are unclean.  They cannot dispute that they knowingly submitted false statements under oath to a government agency to resurrect dissolved MK entities.  *Id.* at ¶ 21(d).  They cannot dispute that they knowingly submitted false statements under oath to another government agency to assign AECOM's intellectual property rights to themselves.  *Id.* at ¶ 21(e).  And they cannot dispute that they pleaded the Fifth Amendment when asked if the Corporate Defendants were being used to launder money.  *Id.* at ¶ 21(c).  The evidence submitted by AECOM establishing Defendants' fraudulent actions with respect to the MK name and Marks is more than sufficient to establish Defendants' unclean hands, precluding any equitable affirmative defense.  Defendants' failure to

16

come forward with any admissible evidence to dispute their unclean hands is fatal to their equitable defenses.

Defendants incorrectly assert that AECOM has the burden to defeat Defendants' equitable defenses. Dkt. 190-1 at 25:27–26:9. AECOM, however, does not have the burden to disprove equitable defenses—Defendants bear the burden of proof. Even if AECOM had not produced irrefutable evidence of Defendants' unclean hands, which renders equitable defenses unavailable, AECOM would need only show that Defendants do not have evidence sufficient to persuade a jury to rule in their favor on those defenses. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)); Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

Citing to the preliminary injunction record, AECOM explained that Defendants' sole unsupported defense throughout this case has been an abandonment argument. Dkt. 176 at 13. Defendants did not present evidence in support of any other affirmative defense in opposition to AECOM's motion for a preliminary injunction. Dkt. 27. AECOM addressed Defendants' abandonment argument at length, pointing to the record of its continuous use and intent to use the MK Marks and its filing of this lawsuit the year after it held a valid registration for the MK Marks. Dkt. 176 at 14. AECOM also noted that Defendants cannot suffer prejudice in light of their own fraudulent actions. *Id.* at 15; *see also* Dkt. 45 at 23–24 ("Defendants cannot argue an injury that they brought upon themselves through deceptively adopting trademarks and an entire brand that are identical to that which Plaintiff owns."). AECOM explained that with this record, no material issue of fact

17

exists regarding the elements of Defendants' equitable defenses.  Dkt. 176 at 22–23. Under *Celotex,* AECOM has more than met its burden.  In response, Defendants have failed to offer evidence that would allow a reasonable jury to find that Defendants can meet their burden to prove their equitable defenses.

Instead, Defendants' sole argument in support of ***all*** of their affirmative defenses is that AECOM allegedly waited nine years to remedy wrongs it knew Defendants had committed.  Defendants make no further effort to establish the elements of these defenses.  And the only evidence cited by Defendants is the testimony of AECOM's 30(b)(6) witness stating that AECOM and its predecessors had counsel responsible for policing intellectual property.  This single piece of evidence does not come close to creating triable issues of fact regarding the elements of estoppel, waiver, laches, or acquiescence.  *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("Arguments based on conjecture or speculation are insufficient[.]") (internal quotations and citation omitted).  Defendants also misstate the evidence of AECOM's knowledge about Defendants' actions.  According to Defendants, "AECOM claims that the Defendants changed the registrations' records kept by the USPTO for the Marks in 2008; nine (9) years before AECOM commenced this action."  Dkt. 190-1 at 26:20–21.  Defendants misread AECOM"s motion.  AECOM stated that Defendants changed the addresses for AECOM's registrations *in 2014*.  Dkt. 176 at 5:25–6:3.  Thus, even if Defendants were eligible to plead equitable affirmative defenses, the only evidence that they proffered in support of these defenses is insufficient to defeat summary judgment.

### G. Defendants' Statement of Disputed Facts Is Nothing More Than Legal Conclusions and Argument

Tellingly, Defendants' "Statement of Genuine Disputes of Material Facts in Opposition" does not consist of material facts at all.  Instead, Defendants' disputed "material facts" are legal conclusions, argument, and unsupported conjecture.  *See, e.g.*, Dkt. 188 Defendant's Statement of Genuine Disputes of Material Facts

("SGDF") No. 8 ("Gary Topolewwski's [sic] testimony carries great weight and can be considered the same as a 30b6 witness."); *id.* No. 9 ("AECOM and its predecessors companies [sic] policed their marks so as to not afford Defendants the ability to have affirmative defenses.").  These conclusory statements and arguments are not sufficient to demonstrate a triable issue of fact.  *See Hutchinson*, 838 F.2d at 392.  They are not disputed material facts essential to the elements of AECOM's claims and Defendants' affirmative defenses.  *See Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) ("A fact is material only if it might affect the outcome of the case, and a dispute is genuine only if a reasonable trier of fact could resolve the issue in the non-movant's favor.") (internal quotations and citation omitted).

## III.   **CONCLUSION**

For these reasons, AECOM respectfully asks that this Court grant AECOM's Motion for Summary Judgment in its entirety, cancel Defendants' registration, and issue a Permanent Injunction enjoining Defendants' further use of the MK brand. AECOM additionally asks for a judgment in the amount of Defendants' profits as set forth in its opening Motion, as well as an award of its attorneys' fees and costs.


 DATED:  September 4, 2018                    Respectfully submitted,


                                             */s/ Diana M. Torres*
                                             Diana M. Torres

                                             *Attorney for Plaintiff*
                                             AECOM ENERGY &
                                             CONSTRUCTION, INC.

19