**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AECOM ENERGY & CONSTRUCTION, INC.,<br><br>              Plaintiff,<br><br>    v.<br><br>JOHN RIPLEY; TODD HALE; GARY TOPOLEWSKI; HENRY BLUM; BUD ZUKALOFF; "MORRISON KNUDSEN CORPORATION;" "MORRISON-KNUDSEN COMPANY, INC.;" "MORRISON-KNUDSEN SERVICES, INC.;" and "MORRISON-KNUDSEN INTERNATIONAL INC.,"<br><br>              Defendants. | CV 17-5398-RSWL-SSx<br><br>**REDACTED** BY THE COURT<br><br>**ORDER re: Plaintiff's Motion for Summary Judgment and for Permanent Injunction against Defendants Gary Topolewski; Morrison Knudsen Corporation; Morrison-Knudsen Company, Inc.; Morrison-Knudsen Services, Inc.; and Morrison-Knudsen International Inc. [157]** |

Currently before the Court is Plaintiff AECOM Energy & Construction, Inc.'s ("Plaintiff") Motion for Summary Judgment and Permanent Injunction [157] ("Motion"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND**

1

**RULES AS FOLLOWS:** the Court **GRANTS** Plaintiff's Motion against Defendants Gary Topolewski, Morrison Knudsen Corporation, Morrison-Knudsen Company, Inc., Morrison-Knudsen Services, Inc., and Morrison-Knudsen International Inc.

**I. BACKGROUND**

**A.  Factual Background**

    1.  <u>Plaintiff's Corporate History</u>

Morrison Knudsen Corporation ("MK") was a renowned multinational construction and engineering firm responsible for many notable projects, including the Hoover Dam, the San Francisco-Oakland Bay Bridge, and the Trans-Alaska Pipeline.  Pl.'s Statement of Uncontroverted Facts ("Pl.'s SUF") ¶ 3(b), ECF No. 173.  MK has used many trademarks including: "MORRISON KNUDSEN," the MKO logo, and "MKCO MORRISON KNUDSEN" (collectively, the "MK Marks").  <u>Id.</u> ¶ 17(b). Plaintiff maintained trademark registrations for the MK Marks until February 2016, <u>id.</u> ¶ 17(b)-(c), and continues to use MK's logo and corporate history in many of its current promotional materials.  <u>Id.</u> ¶ 17 (listing exemplars); Decl. of Charles Szurgot ("Szurgot Decl.") ¶ 8, Exs. 1-7, ECF No. 175.

In 1996, MK merged with Washington Construction Group, Inc. ("WGI"), while continuing to operate under the name "Morrison Knudsen Corporation."  Szurgot Decl. ¶ 5.  In 2000, MK changed its name to WGI.  <u>Id.</u>  In 2007, URS Corp. ("URS") acquired WGI, and in 2014,

2

AECOM, the parent company of Plaintiff AECOM Energy &
Construction, Inc., acquired URS and its subsidiaries.
Id. ¶¶ 6-7.

2. Defendants' Use of MK Name

Plaintiff alleges that, beginning in 2008,
Defendants Gary Topolewski, Morrison Knudsen
Corporation, Morrison-Knudsen Company, Inc., Morrison-
Knudsen Services, Inc., and Morrison-Knudsen
International Inc., (collectively, the "Defendants"),
undertook an elaborate scheme to pass themselves off as
MK and take advantage of MK's good reputation. Pl's.
Mem. re Mot. for Summ. J. ("Mot.") 4:8-9, ECF No. 172.

a. "Morrison-Knudsen Services, Inc."

Morrison-Knudsen Services, Inc. was an affiliate of
MK incorporated in Nevada in 1982 under a different
name, but changed its name to Morrison-Knudsen
Services, Inc. in 1983. Decl. of Diana M. Torres
("Torres Decl.") ¶ 19, ECF No. 174; id., Ex. Q,
Corporate Records of Morrison-Knudsen Services, Inc.
947-52, 954-55, ECF No. 174-17. In 2002, MK dissolved
Morrison-Knudsen Services, Inc. through its Vice
President and General Counsel. Id., Ex. Q at 987-89.

In 2008, defaulting Defendant Todd Hale[1] filed a
Certificate of Revival with the Nevada Secretary of
State's office for Morrison-Knudsen Services, Inc.,

---

[1] Default was entered by the Clerk against Defendant Todd
Hale, as well as Defendants Henry Blum, John Ripley and Bud
Zukaloff, on December 4, 2017 [77].

swearing under penalty of perjury that he had authority
to do so from the company's board of directors. <u>Id.</u>,
Ex. Q at 990-93, ECF No. 174-17. The Certificate of
Revival lists defaulting Defendant Henry Blum as Vice
President and defaulting Defendant John Ripley as
Secretary. <u>Id.</u>, Ex. Q at 991. In 2008, Hale filed the
annual list of officers and directors listing Morrison-
Knudsen Services' address as 2049 Century Park East,
Suite 3850, Los Angeles, California 90067. <u>Id.</u>, Ex. Q
at 996. Around 2007 or 2008, Blum contacted Defendant
Topolewski about reviving "Morrison Knudsen." Torres
Decl. Ex. B, at 25:19-26:9, 27:5-6. Defendant
Topolewski was later listed as President and Secretary
in 2010; Chairman in 2011; Chairman, Director, and
President in 2014; Secretary and Director in 2016; and
President, Secretary, and Director in 2017. <u>Id.</u>, Ex.
Q, at 996-1005.

  b.  *"Morrison Knudsen Corporation"*

MK incorporated Morrison Knudsen of Viet Nam ("MK
Viet Nam") in 1996 and dissolved it in 2002. Torres
Decl. ¶ 20, Ex. R, Corporate Records of Morrison
Knudsen Corp. 1019-21, 1029-30, ECF No. 174-18. In
October 2014, Defendants Topolewski and Blum filed a
Certificate of Revival with the Nevada Secretary of
State, seeking to reinstate MK Viet Nam and declaring,
under penalty of perjury, that they had authority to do
so from MK Viet Nam's board of directors. <u>Id.</u> at 1033-
35. The Certificate of Revival listed Defendant

4

Topolewski as President, Secretary, and Treasurer; defaulting Defendant Blum as Vice President; and defaulting Defendants Ripley and Hale as Directors. Id. The address for each was listed as 2049 Century Park East, Suite 3850, Los Angeles, California 90067. Id. at 1033.

Later that month, after MK Viet Nam was revived, Defendant Topolewski filed a Certificate of Amendment with the Nevada Secretary of State to change the name of MK Viet Nam to "Morrison Knudsen Corporation." Id. at 1036. The annual list of officers filed on January 27, 2016 reflects the name change. Id. at 1037.

c. *"Morrison-Knudsen International Inc." and "Morrison-Knudsen Company"*

Plaintiff also alleges the names of two unrelated entities, E Planet Communications, Inc. ("E Planet") and Westland Petroleum Corporation ("Westland"), were changed to make them appear to be MK affiliates. Pl.'s Mot. at 4:28-5:7.

First, E Planet was incorporated in Nevada in 2011. Torres Decl. ¶ 21, Ex. S, Corporate Records of Morrison-Knudsen Int'l Inc. 1050, ECF No. 174-19. As of 2012, the company's records listed Defendant Topolewski as E Planet's President and Secretary. Id. In May 2016, defaulting Defendant Zukaloff filed a Certificate of Amendment with the Nevada Secretary of State to change the name of E Planet Communications, Inc. to "Morrison-Knudsen International Inc." Id. at

1065.

Second, Westland was incorporated in Nevada in 1926 and fell out of good standing in 2013. Torres Decl. ¶ 22, Ex. T, Corporate Records for Morrison-Knudsen Company, Inc., 1068-74, 1087-88, ECF No. 174-20. In October 2016, John Anderson, listed as Vice President of Westland, filed a Certificate of Reinstatement for Westland with the Nevada Secretary of State. Torres Decl. in Supp. Prelim. Inj. Ex. 4, 150-152, ECF No. 19-4. The records listed Westland Petroleum's address as 2049 Century Park East, Suite 3850, Los Angeles, California 90067. Id. at 151. The Nevada Secretary of State granted reinstatement sometime that month, and on October 18, 2016, defaulting Defendant Ripley filed a Certificate of Amendment with the Nevada Secretary of State to change Westland's name to "Morrison-Knudsen Company, Inc." Id.

         d.   *Websites and Press Releases*

On March 25, 2008, Defendant Morrison Knudsen Corporation registered the domain names www.morrison-knudsen.com and www.morrison-knudsen.net. Torres Decl. ¶¶ 9-10; id. Exs. E-F, Whois Record. The website contained promotions of MK's history, current AECOM projects, a current business relationship AECOM has with a construction equipment maker, and the website also offered to sell construction equipment used in MK's projects. See Pl.'s SUF ¶ 2(b),(f), ¶ 4(a)-(b),(k)-(n).

"Morrison Knudsen" issued three press releases claiming original MK projects and announcing: (1) on March 16, 2016, "Morrison Knudsen Awarded $570 Million Environmental Clean Up Project"; (2) on June 30, 2016, "Morrison Knudsen Awarded $36 Million Mine Engineering Contract"; and (3) on April 11, 2017, "Morrison Knudsen awarded $1.2 Billion Construction and Engineering Contract".  Torres Decl. ¶¶ 16-18, Exs. N-P, ECF Nos. 174-14, 174-15, 174-16.

3. <u>Take Over of the MK Marks</u>

On November 10, 2014, defaulting Defendant Hale submitted a "change of address" form to the United States Patent and Trademark Office ("USPTO").  Decl. of Annette Bottaro-Walklet ("Walklet Decl.") ¶ 6, ECF No. 14; <u>id.</u> Ex. F., ECF No. 14-1.  The contact information listed in the USPTO records for two of Plaintiff's registered trademarks ("MORRISON KNUDSEN" and "MKCO MORRISON KNUDSEN") was changed from Plaintiff's addresses, to Hale's email address todd.hale@morrison-knudsen.com, and the physical address of 2049 Century Park East, Suite 3850, Los Angeles, California 90067. <u>See</u> Torres Decl. ¶ 23, Ex. U, USPTO Record, ECF No. 174-21.

On November 11, 2015, defaulting Defendant Zukaloff submitted a document to the USPTO purporting to assign the registered trademark "MKCO MORRISON KNUDSEN" from Washington Group International (a previous name of Plaintiff) to Defendant Morrison Knudsen Corporation,

listed at 2049 Century Park East, Suite 3850, Los Angeles, California 90067.  Id. ¶ 24, Ex. V, USPTO Record, ECF No. 174-22.  On March 26, 2016, Defendant Morrison Knudsen Corporation filed a new application with the USPTO to register the mark "MORRISON KNUDSEN," declaring under penalty of perjury that they owned the mark and claiming a first-use date of April 18, 1933. See id. Ex. W, ECF No. 174-23.

**B. Procedural Background**

Plaintiff filed its Complaint [1] on July 21, 2017, alleging the following claims:

1) False Designation of Origin

2) False Advertising

3) Cyberpiracy

4) California Common Law Unfair Competition

5) California Statutory Unfair Competition

6) California Statutory False Advertising

7) Petition for Cancellation of Registered Mark

Plaintiff filed a Motion for Preliminary Injunction [11] on August 1, 2017.  This Court granted Plaintiff's Motion for Preliminary Injunction [45] on September 28, 2017.  The Clerk of Court entered default against Defendants Todd Hale, Henry Blum, John Ripley, and Bud Zukaloff [77] on December 4, 2017.

On July 24, 2018 Plaintiff filed the instant Motion for Summary Judgment and Permanent Injunction [157] against the remaining Defendants: Gary Topolewski; Morrison Knudsen Corporation; Morrison-Knudsen Company,

Inc.; Morrison-Knudsen Services, Inc.; and Morrison-Knudsen International Inc. The Court entered a joint stipulation on July 31, 2018 [167], setting August 17, 2018, as Defendants' deadline to file their Opposition. Plaintiff filed a Response on August 20, 2018 [184], claiming that its Motion should be granted because Defendants failed to timely file their Opposition. Defendants then filed a Memorandum of Good Cause for its Late-Filed Opposition [186] on August 20, 2018, and its Opposition [187] on August 21, 2018. Plaintiff filed its Second Reply [201] in response to Defendants' Opposition on September 4, 2018.

## II. DISCUSSION

### A. __Legal Standard__

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the nonmovant. Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328-29 (9th Cir.

1983).  In ruling on a motion for summary judgment, the
court's function is not to weigh the evidence, but only
to determine if a genuine issue of material fact
exists.  <u>Anderson</u>, 477 U.S. at 255.

Under Rule 56, the party moving for summary
judgment has the initial burden to show "no genuine
dispute as to any material fact."  Fed. R. Civ. P.
56(a); <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>,
210 F.3d 1099, 1102-03 (9th Cir. 2000).  The burden
then shifts to the non-moving party to produce
admissible evidence showing a triable issue of fact.
<u>Nissan Fire & Marine Ins.</u>, 210 F.3d at 1102-03.

**B.** **Discussion**

1. <u>Defendants' Late-Filed Opposition</u>

On July 31, 2018, the Court entered a joint
stipulation extending Defendants' deadline to file
their Opposition to August 17, 2018 [167].  However, on
August 20, 2018, Plaintiff filed a response addressing
the fact that Defendants had not yet filed their
Opposition [184].  Defendants then filed their
Opposition on August 21, 2018 [187].  With their
Opposition, Defendants filed a Memorandum of Points and
Authorities re Good Cause for the Court to Accept the
Late-Filed Opposition [186].  Defendants argue that the
short delay did not prejudice or impact Plaintiff
because Plaintiff still had 15 days to file its Reply
pursuant to the stipulation, a week longer than
contemplated under Local Rules 7-9 and 7-10.

Regardless, Local Rule 7-12 prohibits the Court from granting a motion solely based on the failure to file an opposition within the deadline for motions pursuant to Fed. Rule Civ. P. 56. As such, the Court will exercise its discretion to consider the late-filed Opposition and rule on the merits of Plaintiff's Motion.

  2.  Defendants' Evidentiary Objections

      a.  *Declarations*

Defendants make numerous evidentiary objections [189] to the following: (1) Declaration of Diana M. Torres [174], (2) Declaration of Tara McAdam Kassal [157-2], (3) Declaration of Lea Ann Russell [175-3], (4) Declaration of Ed Toms [175-4], and (5) Declaration of Charles Szurgot [175]. The Court **OVERRULES** Defendants' evidentiary objections because they "are boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." United States v. HIV Cat Canyon, Inc., 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016); see also Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013)(refusing to "scrutinize each objection and give a full analysis of identical objections"); Amaretto Ranch Breedables v. Ozimals, Inc., 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012)("This Court need not address boilerplate evidentiary objections."); Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 n.1

(C.D. Cal. 2010)(noting that "it is often unnecessary and impractical" to scrutinize "boilerplate recitations of evidentiary principles or blanket objections")(citation omitted).

   b.  *Evidence in Support of Plaintiff's Reply*

Defendants also object to Exhibit 4 to Plaintiff's Reply in Support of its Motion [209] consisting of three press releases, in which Defendants announce contracts totaling $1.806 billion. See Defs.' Obj., ECF No. 216. Defendants argue that Plaintiff cannot rely on these press releases because they were disclosed after the close of discovery. A party must make certain initial disclosures "without awaiting a discovery request," including a "computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). Where a party fails to disclose information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Moreover, the Court detailed in its Order re Oral Argument [229] that Plaintiff was substantially justified in its delay in disclosing the press release given Defendants lengthy history of bad faith litigation practices,[2] and no

---

   [2] Plaintiff stated in its Initial Disclosure it is seeking Defendants' "profits and advantages received" from using the MK brand, and repeatedly requested Defendants' provide a calculation

12

prejudice to Defendants as a result.  <u>See</u> Order re Oral
Argument, ECF No. 229.  For these reasons, the Court
**OVERRULES** Defendants' Objection to the three press
releases.

3.  <u>Plaintiff's Evidentiary Objections</u>

Plaintiff makes several evidentiary objections to
the Declaration of Drew Sherman in Support of
Defendants' Opposition ("Sherman Decl.") [187-1].
First, Plaintiff objects to Defendants' use of a Senior
Thesis from Boise State University on MK ("Senior
Thesis").  <u>See</u> Sherman Decl., Ex. A at 7-10, ECF No.
187-1.  Defendants rely on a one-page excerpt from the
Senior Thesis for its proposition that MK changed its
name to rid a "tarnished reputation."  Def.'s Stmt. of
Genuine Disputes of Fact ("SGDF") ¶ 2(b), ECF No. 188.
Plaintiff argues that Sherman has no personal knowledge
of who the author is, the author's background, how the
Senior Thesis was created, or what materials the author
considered.  Pl's Evidentiary Objs. 1:13-16, ECF No.
203.  As required by Rule 56, documentary materials
need authentication through affidavits or declarations
from individuals with personal knowledge of the
document.  <u>Zoslaw v. MCA Distrib. Corp.</u>, 693 F.2d 870,
883 (9th Cir. 1982).  While Sherman states it is a
"true and correct copy of the Senior Thesis from Boise

of its revenue since then.  <u>See</u> Order re Oral Argument 3-4, ECF
No. 229.  Defendants, however, never provided such information,
despite Court order and several deadline extensions.  <u>Id.</u> at 4.

13

State University," Defendants have not established Sherman has the personal knowledge required to authenticate the document.  <u>See</u> Fed. R. Evid. 602, 901. Additionally, Defendants rely on the Senior Thesis for its content containing a quote of a former MK worker stating, "[b]ut just imagine the value of the name and reputation and history they're wiping out with that one stroke."  <u>See</u> Ex. A at 10.  Because these statements are hearsay and not admissible under an exception, the Court **SUSTAINS** Plaintiff's Objections.  <u>See</u> Fed. R. Evid. 802-803.

Plaintiff also objects to the following exhibits on the grounds that Defendants never produced them during discovery: (1) Trademark Registrations, <u>see</u> Sherman Decl. ¶¶ 7-9, Exs. B1-B26; (2) State of Ohio Forms, <u>see</u> <u>id.</u> at ¶¶ 10-11, Exs. C1-C27; and (3) USPTO Registration, <u>see</u> <u>id.</u> at ¶¶ 20-21, Ex. F.  Because the Court does not rely on the objected-to-evidence, the Court **SUSTAINS as MOOT** this objection.

Finally, Plaintiff objects to forty pages of the Szurgot Deposition Transcript Defendants submitted as Exhibit D to the Sherman Declaration because Defendants do not identify with specificity the portions of the transcript they rely upon.  Pl.'s Objs. at 3:11-12.  A party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions . . . .").  Fed. R. Civ. P. 56(c)(1)(A).  Defendants cite

specifically to portions of the transcript in their Statement of Genuine Disputes, see SGDF ¶ 9, thus the Court **OVERRULES** this objection.

4. <u>Summary Judgment</u>

Plaintiff seeks summary judgment on each of Plaintiff's causes of action. The Court addresses these in turn.

a. *False Designation of Origin*

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." <u>Smith v. Montoro</u>, 648 F.2d 602, 603 (9th Cir. 1981). "Passing off," which consists of the "selling of a good or service of one's own creation under the name or mark of another," has consistently been held to violate section 43(a). <u>Id.</u> at 604. To succeed on its false designation claim for "passing off," Plaintiff must prove that Defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d 898, 902 (9th Cir. 2007).[3]

---

[3] Defendants argue that to prove false designation, Plaintiff must demonstrate (1) that it owns a valid, protectable trademark, and (2) that Defendant used the mark in a manner

            i.   *Use in Commerce*

"[C]ommunications made on public websites" satisfy the use in commerce requirement.  <u>Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange</u>, No. 2:16-201 WBS DB, 2016 WL 6696061, at *4 (E.D. Cal. Nov. 15, 2016)(citing <u>United States v. Sutcliffe</u>, 505 F.3d 944, 952-53 (9th Cir. 2007)(holding that "use of the internet is intimately related to interstate commerce")).

Plaintiff argues that Defendants used the MK Marks[4] on their website, www.morrison-knudsen.com and www.morrison-knudsen.net[5] to pass themselves off as "Morrison-Knudsen."  Plaintiff states as an uncontroverted fact that "Defendants," collectively, all used the MK Marks on the websites.  Pl.'s SUF ¶1. Defendants jointly filed one Statement of Genuine Dispute of Facts ("SGDF"), in which they also refer to

---

likely to cause confusion.  Def.'s Opp'n at 5:19-23.  However, as Plaintiff points out, this is the test for traditional trademark infringement, and not the test for false designation of origin for "passing off."  <u>Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006)(reciting the above test "to prevail on [a] claim of trademark infringement").  Thus, Plaintiff need not prove ownership of the marks to prove its false designation claim.  Defendants' lengthy argument and evidence put forth to claim that Plaintiff is not the owner or senior user of the MK Marks is thus irrelevant.

[4] The word mark MORRISON KNUDSEN, the MK logo, and the combined word and design mark MKCO MORRISON KNUDSEN are referred to each as an "MK MARK," and collectively as the "MK MARKS."

[5] These two domain names refer to the same website, just available at two different domains.  Torres Decl. ¶ 5, Ex. B, Topolewski Dep., 81:14-23, ECF No. 174-2.

themselves collectively as "Defendants." See Defs.'
SDGF, ECF No. 188. In their Opposition, Defendants
briefly argue that Plaintiff did not articulate which
"uncontroverted fact" applies to each Defendant.
Def.'s Opp'n 2:10-11, ECF No. 187. However, nowhere in
Defendants' SGDF did any of the Defendants dispute
Plaintiff's grouping of them together. And neither did
Defendants dispute Plaintiff's claim that all of the
Defendants used the website. Defendants one-sentence
argument with no cited authority or evidence in their
Opposition is insufficient to create a genuine issue of
material fact. U.S. v. Baisden, No. 1:06-cv-01368-AWI-
MJS, 2013 WL 1222101, at *7 (E.D. Cal. Mar. 25, 2013)(a
party may not "create a 'genuine' issue of 'material'
fact simply by making assertions in [their] legal
memoranda.")(citing Helmich v. Kennedy, 796 F.2d 1441,
1443 (11th Cir. 1986)).

    In their SGDF, Defendants only dispute the website
to the extent it is identical and confusingly similar
to the MK Marks, and that they registered the domain
names with a bad faith intent. Def.'s SGDF ¶¶ 10-11.
Because Defendants did not dispute Plaintiff's
contention that the Defendants all used the MK Marks
collectively on the website, for the purposes of this
Motion the Court takes this fact as true. See Beard v.
Banks, 548 U.S. 521, 527 (2006)(finding that because
the plaintiff failed to specifically challenge the
facts identified in the defendant's statement of

undisputed facts, the plaintiff was "deemed to have admitted the validity of the facts" in the statement); Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013)("As the text of the 2010 rule states, the opposing party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for purposes of the motion.'")(citing Fed. R. Civ. P. 56(e)(2)).  Hereinafter, the Court takes Plaintiff's assertion throughout its SUF that "Defendants" collectively acted together as true for all remaining claims in this Action due to Defendants' failure to dispute the grouping of them together.

Moreover, Plaintiff provided evidence that this website was used by all Defendants collectively. Defendant Morrison Knudsen Corporation registered both of the domain names on behalf of all Defendants.  Pl.'s SUF ¶1(a); Torres Decl. ¶¶ 9-10, Exs. E-F, ECF Nos. 174-5, 174-6 (showing registration of the websites).[6]

---

[6] In its Second Set of Requests for Admission ("RFA Set 2"), Plaintiff requested Defendant Topolewski admit that he or someone acting on his behalf registered the domain names.  Torres Decl. Ex. D, 240:3-9.  Defendant failed to respond.  Torres Decl. ¶ 7. Pursuant to Fed. R. Civ. P. 36(a)(3), a matter is deemed admitted unless, within 30 days after being served, the party serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.  Thus, Plaintiff's RFA Set 2 is deemed admitted as to Defendant Topolewski, and the Court can properly rely on the admissions in deciding summary judgment.  See Layton v. Int'l Ass'n of Machinists and Aerospace Workers, 285 Fed. Appx. 340, 341 (9th Cir. 2008)("There is no dispute that [plaintiff] did not respond on time; the facts were thus admitted without the need for any further action by the court or the parties."); Conlon v. United States, 474 F. 3d 616, 621 (9th Cir. 2007)("Unanswered requests

18

None of the Defendants dispute that the website was used as one website by the Corporate Defendants.[7] Torres Decl. Ex. B, 81:14-19 (deposition testimony of Defendant Topolewski stating that the Corporate Defendants' website was at www.morrison-knudsen.com). The entire website portrays Defendants as "Morrison-Knudsen." See Torres Decl. Ex G., 259, ECF No. 174-7 (banner reading "About MK - MORRISON-KNUDSEN"); id. at 260 (banner reading "Contact Us - MORRISON-KNUDSEN"). Defendants Morrison Knudsen Corporation and Morrison-Knudsen Services were both directly listed on the website. Id. at 260. The website also lists the North American headquarters address as 2049 Century Park East, Suite 3850, Los Angeles, California 90067. See id. This is the same address listed on the records for each Corporate Defendant and Defendant Topolewski in his capacity as an officer of at least one of the Corporate Defendants. Id. Ex. R at 1034 (showing both Morrison Knudsen Corporation's address and Defendant Topolewski's address as its president); id. Ex. Q at 996 (address for Morrison-Knudsen Services); id. Ex, S at 1066 (address for Morrison-Knudsen International);

---

for admissions may be relied on as the basis for granting summary judgment."). Hereinafter, this applies to any reference to Torres Decl. Ex. D, Pl.'s RFA Set 2.

[7] Hereinafter, "Corporate Defendants" refers to Defendants Morrison Knudsen Corporation, Morrison-Knudsen Services, Inc., Morrison-Knudsen Company, Inc., and Morrison-Knudsen International Inc.

and Torres Decl. ISO Prelim. Inj. Ex. 4, 151, ECF No. 19-4 (address for Morrison-Knudsen Company, Inc.).

Moreover, all of the Corporate Defendants used an email address associated with the domain name, info@morrison-knudsen.com. Torres Decl. Ex. B, at 24:9-20. This email address was also used to receive potential bids and inquiries from www.morrison-knudsen.com. See Davis Decl. ¶ 10, Ex. L, ECF No. 36-1 (Mr. Davis' email inquiring about "MK" stating he "stumbled on" the website); Torres Decl. Ex. M, 933-935, ECF No. 178-1 (email inquiring about potential bid). Defendant Topolewski also used an email associated with the domain name, gary@morrison-knudsen.com. Torres Decl. Ex. B, at 75:21-23.

When asked to identify the factual basis for Defendants' "advertising, marketing, and promotional materials" that they "performed or were in any way involved in the projects accomplished by the Original MK" shown on their website, the four Corporate Defendants and Defendant Topolewski collectively responded that "Responding Parties revived an abandoned company." See Torres Decl. ISO Pl.'s Reply ¶ 10, Ex. 7, Def.'s Supp. Resp. to First and Second Set of Interrogs., 7:19-26, ECF No. 202-7. Defendants have not put forth any evidence that they did not use the website to advertise themselves as "Morrison Knudsen."

Thus, there is no triable issue that all of the Defendants used the website, satisfying the first

element.  To the extent "Defendants'" use of the
website applies to the remaining claims, it refers to
all Defendants collectively.

> ii. *False Designation of Origin, False or
> Misleading Description, or
> Representation of Fact*

Plaintiff has put forth ample, undisputed evidence
that Defendants' website claims the original MK's
accomplishments as their own.  In the website's "About
MK" section, Defendants describe the history of the
original MK dating back to 1912 as its own, including
projects such as the Hoover Dam, Cam Ranh Bay, and
Trans-Alaska Pipeline.  Torres Decl. ¶ 11, Ex. G, at
255, 362; id. ¶ 5.  It is also undisputed that the
website offers for sale used construction equipment
bearing the MK logo.  Id. Ex. G, at 309-316.  Such
representation of the original MK's history on a
website is sufficient to satisfy this element.  See
Nat'l Grange of the Order of Patrons of Husbandry, No.
2:16-201 WBS DB, 2016 WL 6696061, at *5 (E.D. Cal. Nov.
15, 2016)("Uncredited references to another entity's
history and achievements may constitute 'false or
misleading' representations as to give rise to
liability under section 43(a)."); ITEX Corp. v. Glob.
Links Corp., 90 F. Supp. 3d 1158, 1171 (D. Nev.
2015)(trade exchange's claim to forty-year history of
unaffiliated company violates section 43(a)).

Rather than discussing the elements of false
designation, Defendants argue at length that there is a

triable issue as to Plaintiff's ownership and whether
it is senior user of the mark.  This argument is
irrelevant as ownership is not a required element for
false designation.  Even if it were, while Defendants
are correct that registrations for the MK Marks have
been listed under prior corporate names, the undisputed
evidence shows that Plaintiff is the same entity that
has retained the same legal rights to the MK Marks
throughout a series of corporate name changes and
mergers.  <u>See</u> Pl.'s SUF ¶ 17(a).  First, Defendants do
not dispute that MK merged with Washington Construction
Group, Inc. ("WGI") in 1996, while continuing to
operate under the name "Morrison Knudsen Corporation".[8]
Szurgot Decl. ¶ 5, ECF No. 175.  And in 2000, MK
changed its name to WGI.  <u>Id.</u>  Defendants also do not
dispute that in 2007, URS Corp. ("URS") acquired WGI,
and in 2014, AECOM, the parent company of Plaintiff
AECOM Energy & Construction, Inc., acquired URS and its
subsidiaries.  Szurgot Decl. ¶¶ 6-7.  Without citing
any legal authority, Defendants argue that Plaintiff
did not obtain the right to the MK Marks because WGI
"just kept deciding to change its name."  Opp'n at
11:9-10.  However, whether Plaintiff's predecessors

_____

[8] Defendants argue that MKCO's registration in 1993 was
under the name Morrison Knudsen Corporation, and thus it is
unclear whether Plaintiff acquired the registration.  This
argument fails given that it is undisputed WGI merged with
Morrison Knudsen Corporation in 1996, thus acquiring the
registration.

changed names has no effect on the trademark rights
passed to Plaintiff through its acquisition of URS.
See Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771
F.3d 1119, 1125 (9th Cir. 2014)("A fact is material
only if it might affect the outcome of the case . . .
."). As such, there is no genuine issue that any
representation of the MK history on the website is a
false representation.

### iii. *Likelihood of Confusion*

As to likelihood of confusion, courts consider
eight factors referred to as the Sleekcraft factors.[9]
Where the use of a name or mark is identical to that of
the plaintiff on the very same goods and services for
which the plaintiff uses the name or mark, that alone
can be "case-dispositive" before a full balancing of
the Sleekcraft factors. See Stone Creek, Inc. v. Omnia
Italian Design, Inc., 875 F.3d 426, 432 (9th Cir.
2017)(citing Opticians Ass'n of Am. v. Indep. Opticians
of Am., 920 F.2d 187, 195 (3d Cir. 1990)("[L]ikelihood
of confusion is inevitable, when, as in this case, the
identical mark is used concurrently by unrelated
entities.")). Indeed, courts have found likelihood of

---

[9] The eight factors include: (1) strength of the allegedly
infringed mark; (2) proximity or relatedness of the goods;
(3) similarity of the sight, sound, and meaning of the marks;
(4) evidence of actual confusion; (5) degree to which the
marketing channels converge; (6) type of goods and degree of care
consumers are likely to exercise in purchasing them; (7) intent
in selecting the allegedly infringing mark; and (8) likelihood of
expansion of the product lines. AMF Inc. v. Sleekcraft Boats,
599 F.2d 341, 348-49 (9th Cir. 1979).

confusion solely on the fact that the marks and
services are identical.  See Park 'N Fly, Inc. v.
Dollar Park and Fly, Inc., 782 F.2d 1508, 1509 (9th
Cir. 1986)(finding where marks and services provided
are identical, and marketing channels are convergent,
there is a likelihood of confusion despite no evidence
of actual confusion, weak mark, and no intent to
capitalize).

Here, Plaintiff has put forth evidence that the
marks on Defendants' website are identical and used in
the same market to sell the same services and goods,
including construction contracts and construction
equipment.  See Torres Decl. Ex. G, at 255-57.
Additionally, Defendants' website offered for sale
construction equipment bearing the MK logo.  See id. at
309-16; id. Ex. B, Topolewski Dep. at 87-89
(acknowledging it is the red MK logo on the equipment).
The entire website features the MKO logo and Morrison
Knudsen name on each page.  See generally Torres Decl.,
Ex. G; GoTo.com, Inc. v. Walt Disney Co., 202 F.3d
1199, 1206 (9th Cir. 2000)(holding that plaintiff is
likely to succeed on section 43(a) claim where
defendant used "glaringly similar" website logos).  The
Ninth Circuit has found it to be clear error "to find
no likelihood of confusion when two products with
virtually identical marks are in the same market."
Honor Plastic Indus. Co. v. Lollicup USA, Inc., 462 F.
Supp. 2d 1122, 1132 (E.D. Cal. 2006)(citing Lindy Pen

<u>Co. v. Bic Pen Corp.</u>, 796 F.2d 254, 257 (9th Cir. 1986)).

Even a consideration of the key factors shows a likelihood of confusion.  First, as to strength of the mark, there is substantial evidence of MK's reputation and legacy dating back to 1912 for projects such as the Hoover Dam, San Francisco-Oakland Bay Bridge, and the Trans-Alaska Pipeline.  <u>See</u> Szurgot Decl. ¶ 4; Torres Decl. ¶ 13, Ex. J (TIME Magazine cover featuring MK founder).  The strength of MK as a brand is evident from both parties' continuous use of its history in its marketing.  <u>See</u>, <u>e.g.</u>, Torres Decl. ¶ 11, Ex. G, at 255-57, 362 (showing MK projects on Defendants' websites); <u>id.</u> ¶¶ 16-18, Exs. N, O, P (press releases claiming MK's signature projects).

Additionally, Plaintiff has shown actual confusion. Defendants do not dispute that a former AECOM employee, Brandon Davis, confused Defendants' website for the original MK.  <u>See</u> Davis Decl. ¶¶ 3-9, ECF No. 36.  When Mr. Davis found the website www.morrison-knudsen.com, he emailed info@morrison-knudsen.com on April 18, 2013, and inquired whether MK survived the sale from WGI to URS.  <u>See</u> <u>id.</u>, Ex. L, ECF No. 36-1.  Mr. Davis received a response stating, "the entire group of MK companies are separate from URS now."  <u>See</u> <u>id.</u>  Mr. Davis later spoke to Defendant Topolewski on the phone, and based on what Defendant Topolewski told him, "believed that Gary and the people working for the Morrison Knudsen

company with which he was affiliated were employees of some spun off entity of the iconic Morrison Knudsen companies." Id. ¶ 9. In 2015, Mr. Davis contacted Defendant Topolewski again for a potential bid under the belief that it was the original MK. See id. ¶¶ 10-11 ("I would never have suggested that my colleague contact Gary at Morrison-Knudsen.com if I had known they were not legitimately operating the iconic Morrison Knudsen . . . .").[10] Based on Mr. Davis' actual confusion, future confusion is likely. Sleekcraft, 599 F.2d at 352 ("Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely.").

Finally, Plaintiff has put forth undisputed evidence showing that each Defendants' intent in selecting the MK Marks was to pass themselves off as MK. Defendants Morrison-Knudsen Services and Morrison Knudsen Corporation (formally MK Viet Nam) both assumed the identify of original MK entities, rather than creating their own business. See Torres Decl. Ex. Q, at 990-93 (revival of Morrison-Knudsen Services); id. Ex. R, at 1033-35 (revival of MK Viet Nam). Defendant Topolewski was the one who revived MK Viet Nam in 2014 (later changed to Morrison Knudsen Corporation) and

---

[10] Throughout this entire exchange, Defendant Topolewski was serving as an officer for Defendant Morrison-Knudsen Services, Inc. and Defendant Morrison Knudsen Corporation (formally MK Viet Nam). Torres Decl. Ex. Q at 996-1005; id. Ex. S, at 1053.

signed under penalty of perjury that he was authorized by a court or the entity to do so.  Id.  And Defendants Morrison-Knudsen International, Inc., and Morrison-Knudsen Company, Inc. both changed their names to assume an MK identity.  Id. Ex. S, at 1065 (E Planet changing its name to Morrison-Knudsen International, Inc.); id. Ex. T, at 1091 (Westland changing name to Morrison-Knudsen Company).  No one affiliated with the original MK, URS, or AECOM gave any of the Defendants permission to do so.  Szurgot Decl. ¶ 13.

Neither do any of the Defendants dispute that they were all involved in the revival of "Morrison Knudsen" or offer any evidence to the contrary.  When asked to identify the factual basis for Defendants' "advertising, marketing, and promotional materials" that they "performed or were in any way involved in the projects accomplished by the Original MK" on their website, the four Corporate Defendants and Defendant Topolewski collectively responded that "Responding Parties revived an abandoned company."  See Torres Decl. ISO Pl.'s Reply ¶ 10, Ex. 7, Def.'s Supp. Resp. to First and Second Set of Interrogs., 7:19-26, ECF No. 202-7.  Additionally, when asked about the Corporate Defendants and the original MK, Defendant Topolewski testified at his deposition "they were one in the same," and that "we [Topolewski and Corporate Defendants] revived Morrison Knudsen."  Torres Decl. ¶ 5; id. Ex. B, Topolewski Dep. at 91:9-23.

27

The evidence that Defendants knew of MK's history, and claimed it for their own upon reviving it without permission, supports a likelihood of confusion. <u>Entrepeneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1148 (9th Cir. 2002)("[I]ntent to deceive is strong evidence of a likelihood of confusion.")(citations omitted).

Defendants' only argument offers legal conclusions, with no authority or evidence, that because Defendants are the current owners of the MK Marks there cannot be confusion by Defendants' use of the marks. This is insufficient to create a triable issue of fact. <u>See</u> <u>Hutchinson v. United States</u>, 838 F.2d 390, 392 (9th Cir. 1988)("The party opposing the summary judgment may not rest on conclusory allegations, but must set forth facts showing there is a genuine issue for trial."). Defendant Morrison Knudsen Corporation only became the current owner by deceiving the USPTO and cutting off Plaintiff's chain of communication with the USPTO.[11] Regardless, as mentioned above, ownership is not a required element for false designation of origin. Even in viewing the evidence in light most favorable to Defendants, the evidence shows that Plaintiff acquired

---

[11] Defendants do not dispute that multiple false documents were submitted under penalty of perjury to the USPTO to obtain control of the MK Marks. For example, on November 10, 2016, defaulting Defendant Hale submitted a change of address form to the USPTO seeking to change the address of the owner of the MORRISON KNUDSEN mark from WGI's address (the former name of MK prior to Plaintiff's acquisition) to Defendants' address. <u>See</u> Bottaro-Walklet Decl. ¶ 6, Ex. F.

MK through its acquisition of URS, and Defendants use of the MK Marks and its history create a likelihood of confusion.

In sum, Plaintiff has put forth undisputed evidence showing Defendants used their website to pass themselves off as the original MK, and the Court **GRANTS** Plaintiff's Motion on this claim as to all Defendants.

>    b.    *Defendants' Abandonment Defense Fails*

Defendants argue that Plaintiff has abandoned its use of the MK Marks and therefore has no right to bring its trademark claims under the Lanham Act.  Opp'n 5:6-16.  To prove abandonment of the MK Marks, Defendants must establish "(1) discontinuance of trademark use and (2) intent not to resume such use." <u>Electro Source, Ltd. Liab. Co. v. Brandess-Kalt-Aetna Grp., Inc.</u>, 458 F.3d 931, 935 (9th Cir. 2006).  Non-use requires "complete cessation or discontinuance of trademark use." <u>Yucaipa Corp. Initiatives Fund I, LP v. Hawaiian Airlines, Inc.</u>, No. cv 13-9060, 2014 WL 12564354, at *2 (C.D. Cal. Dec. 17, 2014)(citations omitted).  "Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." <u>Carter-Wallace, Inc. v. Proctor & Gamble Co.</u>, 434 F.2d 794, 804 (9th Cir. 1970).

Defendants argue there is a prima facie case of abandonment because it has been sixteen years since Plaintiff "started walking away" from the MK Marks and any use since then has been a "token use."  Opp'n at

29

13:17-19, 14:26-28, 15:1-12.  A "token use" is a use
"undertaken without bona fide commercial intent in a
mere attempt to reserve the mark for future use."
Pollution Denim & Co. v. Pollution Clothing Co., 547 F.
Supp. 2d 1132, 1142 n.40 (C.D. Cal. 2007)(citing Chance
v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir.
2001)).  Here, Plaintiff proffers ample evidence of its
use of the MK Marks and MK's history in its promotional
materials, bid documents, client presentations, and at
booths and conferences.[12]  See Pl.'s SUF 17(h)-(oo).
Plaintiff used the MK Marks in its marketing to
identify its goods and services.  Kassal Decl. ¶ 4
("AECOM leverages iconic projects from its heritage
companies . . . to differentiate itself from
competitors . . . .").  Such use is sufficient to
defeat Defendants' argument for abandonment.  See Wells
Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d
1069, 1072 (9th Cir. 2014), as amended (Mar. 11,
2014)(finding use of a mark in promotional materials,

_____

[12] Plaintiff has provided twenty-one examples of the use of
the MK Marks in promotional materials from 2008 to 2016.  See
Szurgot Decl. ¶ 10.  The materials repeatedly refer to
Plaintiff's history through MK as its heritage company.  See
e.g., id. Ex. 13 at 49, 52 (listing MK under "Heritage Company
Experience"); Ex. 14 at 56, 57 ("URS, through predecessor firm,
Morrison-Knudsen"); Ex. 17 at 65 ("URS and its heritage
companies, WGI and Morrison-Knudsen, started building their long
reputations heavy civil constructors in 1912 and have over 70
years of history . . . ."); Ex. 34 (2016 AECOM-URS Company
History template listing MK under "previous company names"); Ex.
37 at 126 ("AECOM legacy firm, Morrison-Knudsen, was one of the
consortium of firms that built the Hoover Dam.").

including "customer presentations and solicitations," is sufficient use to defeat an argument for abandonment). This is true even though Plaintiff has acquired MK through a series of acquisitions and name changes. Id. at 1071 (plaintiff Wells Fargo acquired the original company, changed its name, and continued to display the original company's mark on customer presentations and solicitations). Defendants have not put forth evidence showing an intent by Plaintiff to completely cease using the MK Marks. Consequently, there is no genuine issue of material fact and Defendants' abandonment defense fails.

c. *False Advertising*

To succeed on its claim for false advertising under the Lanham Act,[13] Plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

---

[13] Plaintiff also alleges violations of California Business and Professions Code sections 17200 and 17500, which similarly prohibit misleading advertising. However, these state law claims are not substantively addressed because the state claims are "substantially congruent" to the Lanham Act claims. JHP Pharm., Ltd. Liab. Co. v. Hospira, Inc., 52 F. Supp. 3d 992, 997 n.4 (C.D. Cal. 2014).

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

To establish the first element, statements can be "literally false, either on [their] . . . face or by necessary implication," or "literally true but likely to mislead or confuse customers." Id. at 1139. Here, all of the Defendants have made numerous false statements claiming MK's historical accomplishments as their own. Defendants collectively represent, on www.morrison-knudsen.com, that they completed projects including the Hoover Dam, San Francisco-Oakland Bay Bridge, Trans-Alaska Pipeline, NASA's Space Kennedy Center, Olmsted Dam Construction, Addison Aiport, Miami-Dade Expressway Authority, and Snoqualmie Pass. See Torres Decl. ¶ 11, Ex. G, at 267-71, 293-95, 335-36, 362, 389-391. These are just a few examples of the numerous projects Defendants have claimed, that either the original MK completed prior to its acquisition by AECOM or that are current AECOM projects. See Olson Decl. ¶ 3, ECF No. 17 (listing forty-one projects shown on Defendants' website). These statements are literally false, and Defendants have not put forth evidence to the contrary.

As to the second and third elements, where a statement is literally false or the defendant intentionally set out to deceive, both actual deception and materiality are presumed. See Itex Corp. v. Glob. Links Corp., 90 F. Supp. 3d 1158, 1173 (D. Nev.

2015)("[I]f the statements at issue are found to be literally false, the court may presume materiality . . . .")(citations omitted); U-Haul Int'l Inc. v. Jartran, Inc., 793 F.2d 1034, 1040-41 (9th Cir. 1986). Because the statements here on Defendants' websites claiming MK's accomplishments are literally false, actual deception and materiality can be presumed. Even without the presumptions, AECOM's former employee Mr. Davis' belief that Defendants are the original MK, see supra Section B.4.a, is direct evidence that Defendants' use of the MK Marks on its websites are material and likely to deceive. See Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1111 (9th Cir. 2012)(finding testimony of a consumer purchase based on defendant's online representations and advertisements direct evidence of materiality).

As to the fourth element, it is undisputed that Defendants caused their false statements to enter interstate commerce, as they collectively used their online website and email addresses connected to the same domain name. See supra Section II.B.4.a; Sutcliffe, 505 F.3d at 953 (holding the internet is an instrumentality and channel of interstate commerce).

Defendants do not address any of the above elements, and only argue there is a genuine issue as to the last element, that Plaintiff cannot show any injury because Plaintiff failed to supplement its initial disclosures with its damages calculation. Opp'n at

17:1-18.  However, whether or not Plaintiff sufficiently disclosed its calculation is irrelevant because monetary damages is not the only manner in which a party can suffer injury under the Lanham Act. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1393 (2014)(stating that injuries such as "damage to . . . business reputation . . . are injuries to precisely the sorts of commercial interests the [Lanham] Act protects"); Neighborhood Assistance Corp. of Am. v. First One Lending Corp., No. SACV 12-463-DOC (MLGx), 2012 WL 1698368, at *18 (C.D. Cal. May 15, 2012)("Loss of good will or the loss of the ability to control one's own reputation is a cognizable harm under the Lanham Act.")(citing Stuhbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001)).

Here, Plaintiff has provided evidence to show that Defendants' false statements on their website have lessened the goodwill in the MK brand, including that Plaintiff no longer has control over its business reputation.  See Szurgot Decl. ¶ 12 ("The use by another of MK's goodwill, including their use of [MK Marks], MK's history and MK's projects and accomplishments . . . dilutes AECOM's legacy and diminishes AECOM's right and ability to market the heritage of MK as one of the great American companies that helped make AECOM what it is today."); Kassal Decl. ¶ 7 ("Defendants are sullying AECOM's hard earned

reputation."). As Defendants do not provide any evidence to the contrary, there is no triable issue that Plaintiff has suffered and is likely to continue to suffer injury in the loss of its goodwill in the MK brand.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on its false advertising claim as to all Defendants. Because Plaintiff is successful on its false advertising claim, the Court also **GRANTS** Plaintiff's Motion as to the claims for: (1) California Common Law Unfair Competition; (2) California Statutory Unfair Competition; and (3) California Statutory False Advertising.[14]

### d. *Cyberpiracy*

To succeed on a claim for cyberpiracy under 15 U.S.C. § 1125(d), Plaintiff must show Defendants (1) register, traffic in, or use a domain name, (2) that was "identical or confusingly similar to" a mark that was distinctive at the time of registration, with (3) a "bad faith intent to profit from that mark." GoPets Ltd. v. Hise, 657 F.3d 1024, 1030 (9th Cir. 2011)(quoting 15 U.S.C. § 1125(d)).

First, it is undisputed that Defendant Morrison Knudsen Corporation registered two domain names on March 25, 2008: www.morrison-knudsen.com and

---

[14] These claims arise under Cal. Bus. & Prof. Code §§ 17200, 17500, which are "substantially congruent" to the Lanham Act claims. See JHP Pharm., Ltd. Liab. Co. v. Hospira, Inc., 52 F. Supp. 3d 992, 997 n.4 (C.D. Cal. 2014).

www.morrison-knudsen.net.  *See* Torres Decl. ¶ 7, Exs.
E-F, Whois Lookup.  Defendants also do not dispute that
this is the same website used by all of the Defendants.

Second, these names are identical to the MK Marks.
*See* GoPets, 657 F.3d at 1032 (finding domain names
"gopets.mobi," "gopetssite.com," "goingpets.com,"
"egopets.com," and "mygopets.com," among others,
identical to the mark "GoPets").  They are also
confusingly similar because they simply hyphenate the
Morrison Knudsen name.  *See* Brookfield Commc'ns, Inc.
v. W. Coast Entm't Corp., 174 F.3d 1036, 1045 (9th Cir.
1999)("Web users often assume, as a rule of thumb, that
the domain name of a particular company will be the
company name followed by '.com.'")(citations omitted).

While these domain names are identical, Plaintiff
must also show the Morrison Knudsen name was a
distinctive mark at the time of registration.  A
registered trademark is presumed to be distinctive.
Zobmondo Entm't, Ltd. Liab. Co. v. Falls Media, Ltd.
Liab. Co., 602 F.3d 1108, 1113-14 (9th Cir.
2010)("Where the [US]PTO issues a registration . . .
the presumption is that the mark is inherently
distinctive.").  Defendants argue that because they
currently hold the trademark registrations to the MK
Marks, there is a complete bar to this claim.  Opp'n at
18:1-6.  However, whether or not Defendants hold a
trademark registration today is irrelevant because the
cyberpiracy analysis looks to whether there is a

distinctive mark "*at the time of registration of the domain name . . . .*"  15 U.S.C. § 1125(d)(1)(A)(ii)(I)(emphasis added).  The current trademark holder has no bearing on whether in 2008, when Defendants registered the domain names, they were identical to a distinctive mark.  At that time, Plaintiff held a valid registered trademark in MORRISON KNUDSEN.[15]  See Bottaro-Walklet Decl. ¶ 5, ECF No. 14. Defendant Morrsion Knudsen Corporation did not obtain trademark registration in MORRISON KNUDSEN until 2016. See Torres Decl. ¶ 28, Ex. Z, ECF No. 174-26.  Thus, it is undisputed that the mark was distinctive at the time the domains were registered.

Finally, Plaintiff must prove that Defendants had a "bad faith intent to profit" from the MORRISON KNUDSEN mark when they registered their domain name.  15 U.S.C. § 1125(d)(1)(A)(i).  The statute lists nine factors to consider when determining whether a defendant has acted with a bad faith intent to profit from the use of a mark.  See 15 U.S.C. § 1125(d)(1)(B)(I)-(IX).  However, courts are not limited to these listed factors in making a determination of a bad faith intent.  See Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 946 (9th Cir. 2002)("Congress did not mean

_____

[15] As of 2008, Plaintiff, through its heritage companies, including MK, was the registered owner of Registration Numbers 1,716,505 (MKCO MORRISON KNUDSEN) and 1,744,815 (MORRISON KNUDSEN).  Torres Decl. ¶ 24, Ex. U at 1097-1100 (showing prior registration belonging to WGI); Szurgot Decl. ¶¶ 5-7.

these factors to be an exhaustive list"); <u>Sporty's Farm</u>
<u>L.L.C. v. Sportsman's Mkt., Inc.</u>, 202 F.3d 489, 498 (2d
Cir. 2000)("The factors are, instead, expressly
described as indicia that 'may' be considered along
with other facts.")(quoting § 1125(d)(1)(B)(i)(I)).

There is ample evidence of each Defendants' bad
faith intent to profit.  The first factor looks at the
intellectual property rights in the domain name.  <u>See</u>
15 U.S.C. § 1125(d)(1)(B)(i)(I).  As already
discussed, Plaintiff owned the registered MORRISON
KNUDSEN mark at the time Defendant Morrison Knudsen
Corporation registered the domain names containing the
mark on behalf of all Defendants.  The second factor
looks to the extent to which the name is commonly used
to identify that person.  <u>See</u> 15 U.S.C.
§ 1125(d)(1)(B)(i)(II).  The MORRISON KNUDSEN Mark was
widely known to refer to the original MK (not
Defendants) and its iconic projects including the
Hoover Dam, the San Francisco-Oakland Bay Bridge, and
the Trans-Alaska Pipeline.  Kassal Decl. ¶¶ 4-6.  The
third factor looks to prior use, if any, of the domain
name.  <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(III).
Defendant Topolewski admits that he had no use of the
MK Marks, let alone knew of MK as of 2008, and the
records show that none of the Corporate Defendants had
used the name prior to 2008.  <u>See</u> Torres Decl. Ex. B,
at 132:10-12, 245:8-17; Torres Decl. Ex. Q at 990
(showing Morrison-Knudsen Services revived in 2008);

38

Torres Decl. Ex. R, at 1035 (showing MK Viet Nam (later Morrison Knudsen Corporation) was not revived until 2014); Torres Decl. Ex. S, at 1062 (showing E Planet did not change its name to Morrison-Knudsen International Inc. until 2016); Torres Decl. Ex. T, at 1091 (showing Westland did not change its name to Morrison-Knudsen Company, Inc. until 2016).

The fifth factor looks to "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark . . .". <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(V).  As discussed, the Defendants' use the websites to represent accomplishments associated with the MK marks, claiming such accomplishments as their own.  Szurgot Decl. ¶ 11, Ex. C, at 41-43.  At least one of the websites appeared in search results for "Morrison Knudsen."  Szurgot Decl. ¶ 16, Ex. 46.  And Defendant Topolewski does not dispute he represented to Mr. Davis through their conversations that the "Morrison Knudsen company with which he was affiliated were employees of some spun off entity of the iconic Morrison Knudsen companies." Davis Decl. ¶¶ 4-7.  Further, the overall intent to use the mark in Defendants' collective revival of the original MK, as previously discussed, shows a bad faith intent.  <u>See</u> <u>supra</u> section II.B.4.a.  This evidence demonstrates a bad faith intent to profit.  <u>See</u> <u>Solid Host, NL v. Namecheap, Inc.</u>, 652 F. Supp. 2d 1092, 1109

(C.D. Cal. 2009)(for bad faith, "the defendant must intend to profit specifically from the goodwill associated with another's trademark").

Defendants do not offer any evidence creating a triable issue that they did not demonstrate a bad faith intent to profit from the MK Marks, and instead only argue that before the cancellation of the MK Marks in 2016, Plaintiff had started letting the MK Marks cancel as early as 2002.  SGDF ¶ 11.  This argument fails for the same reason Defendants' abandonment defense fails.  See supra Section II.B.4.b.  Accordingly, the Court **GRANTS** summary judgment on this claim as to all Defendants.

### e. *Cancellation of Registered Mark*

The Lanham Act permits cancellation of a registered trademark on the basis of fraud.  15 U.S.C. § 1064(3). To succeed on its cancellation claim, Plaintiff must show there was a registration obtained by another who, (1) made a false representation regarding a material fact, while (2) knowing it was false; (3) intended to induce action in reliance on the misrepresentation; (4) caused reasonable reliance; and (5) proximately caused damage.  See Robi v. Five Platters, Inc., 918 F.2d 1439, 1444 (9th Cir. 1990).

Plaintiff provided undisputed facts showing false representations were made to the USPTO regarding the MK Marks.  Defendant Morrison Knudsen Corporation made false representations to the USPTO by assigning

40

Registration No. 1,744,815 for the MORRISON KNUDSEN
mark from Plaintiff (WGI at the time) to Defendant
Morrison Knudsen Corporation.  Torres Decl. ¶ 24; id.,
Ex. V.  Defaulting Defendant Hale also changed the
address with the USPTO for Registration Nos. 1,716,505
and 1,744,815 from Plaintiff (WGI at the time) to
Morrison Knudsen Corporation.  Torres Decl. ¶ 23; id.
Ex. U.  Finally, in its application for the mark
MORRISON KNUDSEN, Defendant Morrison Knudsen
Corporation represented to the USPTO that its first use
of the mark was as early as 1933.  Id. ¶ 25, Ex. W.
Thus, there is no triable issue as to the first
element.

        As to the second element, Defendants argue that
there is a genuine issue whether they knew of the
falsity of the representations.  Plaintiff argues that
in making the representations, Morrison Knudsen
Corporation knew they were falsely claiming ownership
of the MK Marks.  Plaintiff relies on the deposition
testimony of Defendant Topolewski, that, despite
Defendant Morrison Knudsen Corporation's claim their
first use of the Marks was in 1933, Topolewski had not
heard of Morrison Knudsen until "[m]aybe 2007," that
none of the other Defendants ever used the MK Marks
prior to 2008, and that none of the Defendants have
ever actually used the MK Marks for construction
services.  Torres Decl. ¶ 5, Ex. B, at 59, 134-135.

        Defendants argue Topolewski was only testifying for

himself personally, not as the 30(b)(6) witness for the Corporate Defendants, so his testimony is only speculative as to the Corporate Defendants' knowledge. SGDF ¶ 13. However, Defendant Topolewski has served as an officer for several of the Corporate Defendants,[16] and at the time both representations to the USPTO were made he was an officer of Morrison Knudsen Corporation. Torres Decl. Ex. R, at 1034. Additionally, the Corporate Defendants did not designate a witness to dispute any of Topolewski's testimony. Id. ¶ 9 (Plaintiff took the non-appearance at deposition of each Corporate Defendant). Moreover, none of the Corporate Defendants existed prior to 2008, and none of the Defendants provide any evidence they used the MK Marks prior to 2008. Thus, there is no dispute that Defendant Morrison Knudsen Corporation knew that it had not used the MK Marks dating back to 1933. As such, there is no genuine issue as to this element.

There is also no genuine issue of material fact as to the remaining elements. The false representations to the USPTO were made in order to receive a trademark

---

[16] For Morrison-Knudsen Services, Inc., Topolewski was listed as: President and Secretary in 2010; Chairman in 2011; Chairman, Director, and President in 2014; Secretary and Director in 2016; and President and Secretary in 2017. See Torres Decl., Ex. Q, at 996-1005. For Morrison Knudsen Corporation (formally MK Viet Nam), he was listed as: President, Secretary, Treasurer, and signed as an "Officer" in 2014. Id. Ex. R, at 1034. Finally, he was listed as the Secretary of E Planet in 2012, which later changed its name to Morrison Knudsen International Inc. Id. Ex. S, at 1053, 1062.

registration, the USPTO granted the registration in reliance on the false statements, and it resulted in harm to Plaintiff as it lost control over MK's identity, goodwill, and intellectual property rights. Consequently, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to this claim and cancels Defendants' registration.

f. *Defendants' Equitable Defenses Fail*

Defendants put forth one argument that Plaintiff waited nine years to bring this Action, to cover the defenses of estoppel, waiver, laches, unclean hands, and acquiescence. Opp'n at 21:5-10. This is insufficient to establish any of the defenses, as Defendants have not put forth evidence of the required elements of each defense.[17] See Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001)("When the nonmoving party has the burden of proof at trial, the party moving for summary judgment need only point out 'that there is an absence of evidence to support the

---

[17] For example, to establish waiver, Defendants would need to provide evidence showing a "clear, decisive, and unequivocal" intent by Plaintiff to relinquish its trademark rights. Marketquest Group, Inc. v. BIC Corp., No. 11-cv-618-BAS-JLB, 2018 WL 2933518, at *39 (S.D. Cal. June 12, 2018)(citing Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir. 1970)). For estoppel, Defendants would need evidence to prove each of the five elements: (1) Plaintiff knew of Defendants' actions; (2) Plaintiff's actions led Defendants to reasonably believe Plaintiff did not intend to enforce its trademark rights; (3) Defendants did not know that Plaintiff actually objected to Defendants' conduct; and (4) Defendants will be materially prejudiced if Plaintiff is allowed to proceed. Id.

nonmoving party's case.'")(internal citation omitted).

Moreover, Defendants rely solely on Plaintiff's 30(b)(6) witness, Charles Szurgot, as evidence that Plaintiff waited nine years to bring this Action. Defendants rely on deposition testimony stating that Plaintiff has had outside and in-house counsel maintain its portfolio of registered marks to argue that it is logical Plaintiff knew of Defendants' actions when they changed the records with the USPTO. Sherman Decl. ¶¶ 12-16; id. Ex. D, at 81:9-14, 82:5-8 ("we certainly relied on in-house counsel to maintain our portfolio."). First, Defendants are incorrect to claim it would have been nine years, because defaulting Defendant Hale changed the addresses with the USPTO in 2014, and not in 2008. See Torres Decl., Ex. U, at 1097-99. Second, even in viewing these statements in the light most favorable to the Defendants, at most this deposition testimony establishes that Plaintiff relied in part on its outside counsel to manage their portfolio, but no where does Mr. Szurgot specifically mention the MK Marks or indicate any knowledge of infringement prior to bringing this Action. This evidence alone does not create a triable issue because Defendants only speculate as to what Plaintiff's personnel could have discovered in managing the marks, with no actual evidence of delay on Plaintiff's part. See McIndoe v. Huntington Ingalls Inc., 817 F.3d 1170, 1173 (9th Cir. 2016)("Arguments based on conjecture or

speculation are insufficient . . . ."). Given that
Defendants have put forth no evidence proving the
required elements of any of the equitable defenses,
there is no genuine issue of material fact and
Defendants' defenses fail.

   5.   Permanent Injunction

   A prevailing plaintiff seeking a permanent
injunction must show: "(1) that it has suffered an
irreparable injury; (2) that remedies available at law,
such as monetary damages, are inadequate to compensate
for that injury; (3) that, considering the balance of
hardships between the plaintiff and defendant, a remedy
in equity is warranted; and (4) that the public
interest would not be disserved by a permanent
injunction." La Quinta Worldwide LLC v. Q.R.T.M., S.A.
de C.V., 762 F.3d 867, 879 (9th Cir. 2014)(citations
omitted).

   Here, Plaintiff has demonstrated success on the
merits.  If an injunction were not granted, Plaintiff
would suffer irreparable injury from the ongoing damage
to its goodwill as a result of Defendants' deceptive
tactics to take over the MK brand.[18]   See Herb Reed

_____

   [18] The Court notes that Defendants' actions have shown an
unwillingness to stop its infringement.  Defendants have already
been held in civil contempt for failure to comply with the
preliminary injunction this Court issued.  See Order re Civil
Contempt, ECF No. 86.  The preliminary injunction enjoined
Defendants from using Defendants' corporate names, and from
making any representation that Defendants are connected with the
MK brand.  Id. at 7:2-9.  Instead of changing their names to
clearly separate themselves from the MK brand, Defendants "simply

45

Enters., LLC v. Florida Entertainment Management, 736
F.3d 1239, 1250 (9th Cir. 2013)("Evidence of loss of
control over business reputation and damage to goodwill
could constitute irreparable harm.").  As detailed
above in discussing the merits of Plaintiff's claims,
there is substantial evidence that Plaintiff has
suffered a loss to control over its brand, goodwill,
and intellectual property rights that cannot be
quantified.  Further, the balance of hardships favors
Plaintiff because the potential hardship on Defendants
is "purely economic," while the hardship on Plaintiff
is a complete loss of control over the brand and
history of MK entities.  See Diller v. Barry Driller,
Inc., No. CV 12-7200 ABC EX, 2012 WL 4044732, at *10
(C.D. Cal. Sept. 10, 2012)("It is no hardship to cease
intentionally infringing someone else's trademark
rights.").  Finally, the public interest favors an
injunction because the marks are identical and shown to
have already caused actual confusion.  Internet
Specialties West, Inc. v. Milon-DiGiorgio Enters.,
Inc., 559 F.3d 985, 993 n.5 (9th Cir. 2009)("The public
has an interest in avoiding confusion between two
companies' products.").  Thus, the Court **GRANTS**
Plaintiff's Motion for Permanent Injunction.

---

abbreviated Morrison Knudsen to MK." Id. at 8:12-16.  This Court
found this act was "'intentionally calculated by [Defendants] to
deceive the public into belief that' they were still affiliated
with Morrison Knudsen." Id. at 8:16-19.

1    6.  <u>Damages</u>

2    For violations of section 1125(a) or (d) of the
3    Lanham Act, a plaintiff may recover "(1) defendant's
4    profits, (2) any damages sustained by plaintiff, and
5    (3) the costs of the action."  15 U.S.C. § 1117(a).
6    Here, Plaintiff seeks actual damages by disgorgement of
7    Defendants' profits in the amount of **REDACTED**.

8    A court may award disgorgement of profits under the
9    Lanham Act where there is willful infringement.  <u>Stone</u>
10   <u>Creek, Inc. v. Omnia Italian Design, Inc.</u>, 875 F.3d
11   426, 439-40 (9th Cir. 2017).  The Ninth Circuit has
12   recognized three justifications for awarding an
13   infringer's profits: (1) compensating the plaintiff for
14   diverted sales; (2) preventing unjust enrichment; and
15   (3) serving as a deterrent to infringers.  <u>Maier</u>
16   <u>Brewing Co. v. Fleischmann Distilling Corp.</u>, 390 F.2d
17   117, 123 (9th Cir. 1968).  The Ninth Circuit also has
18   suggested that where infringement is deliberate and
19   willful, merely awarding a permanent injunction is
20   insufficient.  <u>See</u> <u>Playboy Enters., Inc. v. Baccarat</u>
21   <u>Clothing Co., Inc.</u>, 692 F.2d 1272, 1274 (9th Cir.
22   1982)("[A]n award of little more than nominal damages .
23   . . would fail to serve as a convincing deterrent to
24   the profit maximizing entrepreneur who engages in
25   trademark piracy.").

26   To demonstrate willful infringement, a party only
27   needs to show "a connection between a defendant's
28   awareness of its competitors and its actions at those

47

competitors' expense." <u>Fifty-Six Hope Rd. Music</u>, 778
F.3d 1059, 1074 (9th Cir. 2015); <u>see also</u> <u>D.C. Comics</u>
<u>v. Towle</u>, 802 F.3d 1012, 1026 (9th Cir. 2015) ("Willful
trademark infringement occurs when the defendant's
actions are 'willfully calculated to exploit the
advantage of an established mark.'"); <u>Lindy Pen Co.,</u>
<u>Inc. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1406 (9th Cir.
1993)("Willful infringement carries a connotation of
deliberate intent to deceive . . . [A]n account is
proper only where the defendant is 'attempting to gain
the value of an established name of another.'")
*abrogated on other grounds by* <u>SunEarth, Inc. v. Sun</u>
<u>Earth Solar Power Co., Ltd.</u>, 839 F.3d 1179 (9th Cir.
2016).

Here, Plaintiff has offered ample evidence of each
Defendants' willful infringement by their efforts in
taking over the MK brand. Defendants Morrison-Knudsen
Services and Morrison Knudsen Corporation (formally MK
Viet Nam) both assumed the identify of original MK
entities. Defendant Topolewski was the one who revived
MK Viet Nam in 2014 (later changed to Morrison Knudsen
Corporation) and signed under penalty of perjury that
he was authorized by a court or the entity to do so.
Torres Decl. ¶ 20, Ex. R, at 1033-35. And Defendants
Morrison-Knudsen International Inc. and Morrison
Knudsen Company, Inc. both changed their names to
assume an MK identity. No one affiliated with the
original MK, URS, or AECOM gave any of the Defendants

permission to do so.  Szurgot Decl. ¶ 13.

With respect to profits, a "plaintiff shall be required to prove defendant's sales *only*; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a)(emphasis added).  To prove sales, Plaintiff provides three press releases announcing contracts Defendants received under the MK name and brand amounting to $1.806 billion in revenue.  <u>See</u> Torres Decl. ¶¶ 16-18, Exs. N-P.  The three press releases include: (1) March 16, 2016 titled, "Morrison Knudsen Awarded $570 Million Environmental Clean Up Project"; (2) June 30, 2016 titled, "Morrison Knudsen Awarded $36 Million Mine Engineering Contract"; and (3) April 11, 2017 titled, "Morrison Knudsen awarded $1.2 Billion Construction and Engineering Contract".  Torres Decl. ¶¶ 16-18, Exs. N-P, ECF Nos. 174-14, 174-15, 174-16.  The press releases were the only evidence Plaintiff could rely on because Defendants have not provided adequate documentation of their revenue, profits, or costs, despite repeated requests for such information throughout discovery.  The history of this litigation demonstrates a pattern in which Defendants continuously refused to comply with Plaintiff's discovery requests, Court orders, and evaded providing financial information.

During discovery, Plaintiff sought financial information to calculate damages in its Requests for

Production ("RFP") Nos. 19, 20, 21[19] and Interrogatory No. 15.[20]  Order re Mot. for Contempt. 9:4-8, 11:27-12:5, 13:22-24, ECF No. 154.  On April 26, 2018, after Defendants' failure to provide such information, the Court ordered Defendants to provide supplemental discovery responses by May 15, 2018 [118].  Id. at 1:20-25.  On May 29, 2018, Plaintiff filed a Motion for Contempt, or in the Alternative, Motion to Compel Supplemental Discovery against Defendants for failing to comply with the April 26 Order [132].  Plaintiff argued, and the Court found, that Defendants' supplemental discovery response, including a two-page financial summary, was "plainly inadequate" because the summary did not provide information from January 2017 forward.  Order re Mot. for Contempt at 13:6-12.  The Court ordered Defendants to respond to Plaintiff's Interrogatory No. 15 and RFP Nos. 19 and 20 by July 9, 2018 [154].  Id. at 18:1-4.  Specifically, the Court ordered Defendants to produce "all monthly, quarterly

[19] RFP No. 19 requested "[a]ll documents relating to or reflecting any revenue received by any Defendant arising in any way relating to the use of the Morrison Knudsen name or logo . . . ."; RFP No. 20 requested "[a]ll tax returns and bank statements of any Corporate Defendant since such Corporate Defendant's Date of Inception."; and RFP No. 21 requested "[a]ll tax returns and bank statements of any Individual Defendant since 2008."  Order re Mot. for Contempt 11-16, ECF No. 154.

[20] Interrogatory No. 15 states, "[i]dentify all revenues and profits earned by Topolewski America, Inc. since its date of incorporation and how those revenues and profits, in whole or in part, are shared with or received by any of the Defendants."  Id. at 9:4-8

and annual income statements, balance sheets and other financial statements of any Corporate Defendant." *Id.* at 13:12-20. Defendants missed that deadline, and did not file the supplemental responses until July 18, 2018,[21] after several communications from Plaintiff. Order re Contempt 3:4-22, ECF No. 210. In the supplemental responses, Defendants refused to produce any documents created after January 1, 2017, even though the Court clearly ordered them to do so. *Id.* at 18:1-10, 22:6-12. Despite several orders and ample time to provide further financial information, Defendants did not submit any additional financial documents.

Upon realizing Defendants would not provide Plaintiff further information, Plaintiff served its Supplemental Disclosure on July 17, 2018, including the three press releases. Even though the Court found that the two-page financial statement Defendants initially provided was inadequate, Plaintiff has conceded that in the absence of any showing of costs by Defendant, Plaintiff will accept the summary's showing of Defendants' total costs and expenses for 2013-2016 as **REDACTED**. Torres Decl. ¶ 15, Ex. M, 930-31, ECF No.

---

[21] Defendants served a joint set of "Further Supplemental Responses" on July 18, 2018; Defendant Topolewski served Third Supplemental Responses on July 23, 2018; and Corporate Defendants served their Third Supplemental Responses on July 31, 2018, only after Plaintiffs filed a Motion to Hold Defendants in Civil Contempt for Violating the Court's Order re Discovery and to Award Plaintiff Its Costs and Fees. *Id.* at 2:1-10.

178-1.  The two-page financial summary was put forth collectively by all four Corporate Defendants showing that they claimed to share the total expenses listed from 2013 to 2016.  Id.  Thus, the total profits Plaintiff seeks is the $1.806 billion in revenue as stated in the press releases, less the total costs and expenses of **REDACTED**, for a total of **REDACTED**.

In light of the significant amount of damages Plaintiff is seeking, the Court is more hesitant to rely solely on the press releases than it would be if there was a lesser amount at stake.  However, Defendants do not offer any evidence or argument disputing Plaintiff's calculation of **REDACTED**, or offer any alternative calculation.  Plaintiff clearly stated as an uncontroverted fact in its SUF that "Defendants have claimed to earn revenue totaling **REDACTED** " by issuing the three press releases.  Nowhere in Defendants' SGDF or Opposition did they dispute the amount or deny earning the contracts.  Defendants did not raise a genuine issue as to the accuracy of the press releases, or as to the amount the press releases state that Defendants were "awarded."  The Court finds this telling.[22]  The only genuine issue Defendants raised as to damages was that Plaintiff did not

---

[22] The Court surmises that Defendants' actions in failing to rebut the amount disclosed in the press releases and failing to provide financial information suggests the possibility that Defendants received more than what the three press releases accounted for.

disclose the press releases until after the close of discovery. See SGDF ¶ 6; Opp'n at 21:14-27. However, the Court has already rejected this argument and has deemed the press releases admissible. See supra, section II.B.2.b.

With no genuine issue raised by Defendants as to the amount, there is no other basis to compute damages than what Plaintiff has provided. Damages must only "be established with reasonable certainty," and they are not precluded merely "because they cannot be calculated with absolute exactness" so long as "a reasonable basis for computation ... exist[s]." Lindy Pen Co., 982 F.2d at 1407 (internal quotation marks omitted). Courts have accepted less precise estimates of damages where, as here, a defendant frustrates the discovery of a precise amount by refusing to cooperate in providing relevant discovery. See, e.g., Allergan Inc. v. Mira Life Group, Inc., No. SACV 04-36 JVS MLGX, 2004 WL 2734822, at *3 (C.D. Cal. June 9, 2004); Taylor Made Golf Co. v. Carsten Sports, Ltd., 175 F.R.D. 658, 662 (S.D. Cal. 1997)(granting imprecise damages because "[w]hile perhaps not a product of its best efforts, Plaintiff's calculations are probably conservative and do not appear to be unreasonable under the circumstances"). "In the end, any 'uncertainty in the amount of damages should be borne by the wrongdoer.'" Spin Master, Ltd. v. Zombondo Entmt. LLCU, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012) (quoting Adray v.

<u>Adry-Mart, Inc.</u>, 76 F.3d 984, 989 (9th Cir. 1995)).
The Second Circuit has held that "'where . . . the
defendant controls the most satisfactory evidence of
sales the plaintiff needs only establish a basis for a
reasoned conclusion as to the extent of injury caused
by the deliberate and wrongful infringement.'" <u>Louis
Vuitton S.A.v. Spencer Handbags Corp.</u>, 765 F.2d 966,
973 (2d Cir. 1985)(noting that a court may have to rely
on "indirect and circumstantial evidence" if a
defendant fails to produce evidence on damages). Here,
Defendants are in the best position to know their
profits and are in control of the evidence of their
profits, but did not provide any such information in
discovery or argue that the **REDACTED** amount is
incorrect.

Given Defendants' failure to comply throughout
discovery and failure to raise a genuine issue as to
damages, Plaintiff has met its burden of establishing
Defendants' revenue. Without any argument or evidence
provided by Defendant as to costs, the Court accepts
Plaintiff's calculation for the total profits as
**REDACTED**. Thus, the Court **GRANTS** Plaintiff's request
for disgorgement of profits in the amount of **REDACTED**.

    7.  <u>Attorneys' Fees</u>

    "The court in exceptional cases may award
reasonable attorney fees to the prevailing party." 15
U.S.C. § 1117(a). A case is considered exceptional
"when the infringement is malicious, fraudulent,

deliberate, or willful," however, no egregious conduct or bad faith is required.  <u>Fifty-Six Hope Road</u>, 778 F.3d at 1079.  There is ample evidence that Defendants willfully and deliberately infringed upon the MK Marks in an elaborate scheme to pass themselves off as the original MK.  Thus, this is an exceptional case entitling Plaintiff to attorneys' fees.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and Permanent Injunction in its entirety against Defendants Gary Topolewski, Morrison Knudsen Corporation, Morrison-Knudsen Company, Inc., Morrison-Knudsen Services, Inc., and Morrison-Knudsen International Inc.  All dates currently on calendar are vacated.  The Court declines to enter a final judgment until a Motion for Default Judgment is brought and a decision is made as to the remaining defaulting Defendants: Todd Hale, John Ripley, Bud Zukaloff, and Henry Blum.

**IT IS SO ORDERED.**


DATED: November 8, 2018          s/ RONALD S.W. LEW

                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge