O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AECOM ENERGY & CONSTRUCTION, INC., | ) ) ) | 2:17-cv-05398-RSWL-SSx |
| Plaintiff, | ) ) ) | **ORDER re: Plaintiff's Motion for Default Judgment against Defendants John Ripley;** |
| v. | ) ) ) | **Todd Hale; Henry Blum; and Bud Zukaloff** [244] |
| JOHN RIPLEY; TODD HALE; GARY TOPOLEWSKI; HENRY BLUM; BUD ZUKALOFF; "MORRISON KNUDSEN CORPORATION;" "MORRISON-KNUDSEN COMPANY, INC.;" "MORRISON-KNUDSEN SERVICES, INC.;" and "MORRISON-KNUDSEN INTERNATIONAL INC.," | ) ) ) ) ) ) ) ) ) ) ) ) ) | <span style="color:red">**REDACTED BY COURT**</span> |
| Defendants. | ) ) | |

Currently before the Court is Plaintiff AECOM Energy & Construction, Inc.'s ("Plaintiff") Motion for Default Judgment ("Motion") against Defendants John Ripley, Todd Hale, Henry Blum, and Bud Zukaloff (the "defaulting Defendants") [244]. Having reviewed all

1

papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiff's Motion.

## I. BACKGROUND

### A. Factual Background

Plaintiff brought this Action for injunctive relief and damages against Defendants John Ripley, Todd Hale, Gary Topolewski, Henry Blum, Bud Zukaloff, Morrison Knudsen Corporation, Morrison-Knudsen Company, Inc., Morrison-Knudsen Services, Inc., and Morrison-Knudsen International Inc. (collectively, the "Defendants"). Plaintiff's claims all arise from Defendants' alleged attempts to assume the identity of Morrison Knudsen Corporation ("MK").

MK was a renowned multinational construction and engineering firm responsible for many notable projects, including the Hoover Dam, the San Francisco-Oakland Bay Bridge, and the Trans-Alaska Pipeline. Compl. ¶¶ 17-18, ECF No. 1. MK has used many trademarks including: "MORRISON KNUDSEN," the MKO logo, and "MKCO MORRISON KNUDSEN" (collectively, the "MK Marks"). Id. ¶ 23. In 1996, MK merged with Washington Construction Group, Inc. ("WGI"), while continuing to operate under the name "Morrison Knudsen Corporation." Id. ¶ 19. In 2000, MK changed its name to WGI. Id. In 2007, URS Corp. ("URS") acquired WGI, and in 2014, AECOM, the parent company of Plaintiff AECOM Energy & Construction, Inc., acquired URS and its subsidiaries.

Id. ¶¶ 19-20.

Plaintiff alleges that Defendants undertook an elaborate scheme to pass four corporate entities, Morrison Knudsen Corporation, Morrison-Knudsen Company, Inc., Morrison-Knudsen Services, Inc., and Morrison-Knudsen International Inc. (the "Corporate Defendants") off as MK by falsifying corporate records, submitting false statements to federal and state government agencies, and offering goods and services to the public under the MK name online through its website, www.morrison-knudsen.com. Pl.'s Mem. ISO Default J. ("Mem.") 1:8-12, ECF No. 244-1. The website contained promotions of MK's history, current AECOM projects, and also offered to sell construction equipment used in MK's projects. See Compl. ¶¶ 40-43.

1. Corporate Defendants and the Defaulting Defendants' Involvement

The defaulting Defendants are or were each officers, directors, or employees of the Corporate Defendants. Each defaulting Defendant's alleged involvement with the Corporate Defendants is discussed in turn below.

a. *Morrison-Knudsen Services, Inc.*

Morrison-Knudsen Services, Inc. was an affiliate of MK incorporated in Nevada in 1982 under a different name, but changed its name to Morrison-Knudsen Services, Inc. in 1983. Order re Pl.'s Mot. for Summ. J. ("MSJ Order") 3:14-19, ECF No. 242. In 2002, MK

dissolved Morrison-Knudsen Services, Inc. through its Vice President and General Counsel. Compl. ¶ 28.

In 2008, defaulting Defendant Todd Hale ("Hale") filed a Certificate of Revival with the Nevada Secretary of State's office purporting to be President of Morrison-Knudsen Services and swearing under penalty of perjury that he had authority to revive the company from its board of directors. Id. ¶ 29. In 2008, Hale also filed the annual list of officers and directors listing himself as President. Id. In 2011, the annual list of officers and directors listed Hale as President still, and Morrison-Knudsen Services' address as 2049 Century Park East, Suite 3850, Los Angeles, California 90067. Id. ¶ 30.

Defaulting Defendant Henry Blum ("Blum") served as Vice President of Corporate Defendant Morrison-Knudsen Services, Inc. from 2008 until at least June 21, 2017, shortly before Plaintiff filed its Complaint. See Declaration of Diana M. Torres ISO Mot. for Preliminary Inj. ("Torres Inj. Decl."), Ex. 1, 61-78, ECF No. 19.

Defaulting Defendant John Ripley ("Ripley") served as Secretary of Corporate Defendant Morrison-Knudsen Services, Inc. in 2008, the year it was revived, and remained in this position until at least February 20, 2014. See id., Ex. 1 at 52-56, 58-59, 61-62, 64. Ripley also served as a Director in 2010, and then served as Treasurer until at least May 29, 2015. See id. at 60, 70-72.

4

Finally, Defaulting Defendant Bud Zukaloff
("Zukaloff") served as COO for Morrison-Knudsen
Services, Inc. at least from 2013 to 2014.  See id.,
Ex. 1, 62, 68-69; id., Ex. 3, 117, 119.

b. *Morrison Knudsen Corporation*

MK incorporated Morrison Knudsen of Viet Nam ("MK
Viet Nam") in 1996 and dissolved it in 2002.  Compl. ¶
32.  In October 2014, non-defaulting Defendant
Topolewski ("Topolewski") and defaulting Defendant Blum
filed a Certificate of Revival with the Nevada
Secretary of State, seeking to reinstate MK Viet Nam
and declaring, under penalty of perjury, that they had
authority to do so from MK Viet Nam's board of
directors.  Id.  The Certificate of Revival listed
Topolewski as President, Secretary, and Treasurer;
defaulting Defendant Blum as Vice President; and
defaulting Defendants Ripley and Hale as Directors.
Id.  Blum was also listed as the agent for service of
process.  Id.  The address for each was listed as 2049
Century Park East, Suite 3850, Los Angeles, California
90067.  Id.  Later that month, after MK Viet Nam was
revived, a Certificate of Amendment was filed with the
Nevada Secretary of State to change the name of MK Viet
Nam to "Morrison Knudsen Corporation."  Id. ¶ 33.

c. *Morrison-Knudsen International Inc. and*
*Morrison-Knudsen Company*

Plaintiff also alleges the names of two unrelated
entities Defendants had operated, E Planet

Communications, Inc. ("E Planet") and Westland Petroleum Corporation ("Westland"), were changed to make them appear to be MK affiliates—Corporate Defendants Morrison-Knudsen International Inc. and Morrison-Knudsen Company, respectively. Id. ¶¶ 34-35.

First, E Planet was incorporated in Nevada in 2011. Id. ¶ 34. In May 2016, Zukaloff filed a Certificate of Amendment with the Nevada Secretary of State to change the name of E Planet to "Morrison-Knudsen International Inc." Id. Zukaloff also served as COO from at least 2013 to 2014. See Torres Inj. Decl., Ex. 3 at 117, 119. Blum filed the most recent list of officers and directors in January 2017, listing himself as Vice President, and the address as 2049 Century Park East, Suite 3850, Los Angeles, California 90067. Compl. ¶ 34.

Second, Westland was incorporated in Nevada in 1926 and fell out of good standing in 2013. Id. ¶ 35. In October 2016, John Anderson, who Plaintiff alleges acted as an agent of Defendants, filed a Certificate of Reinstatement for Westland with the Nevada Secretary of State. Id. The list of officers and directors listed the address as 2049 Century Park East, Suite 3850, Los Angeles, California 90067. Id. Ripley then signed and filed a Certificate of Amendment with the Nevada Secretary of State under penalty of perjury renaming Westland to "Morrison-Knudsen Company, Inc.," in 2016. Id. ¶ 36.

2. <u>Takeover of MK Marks</u>

Plaintiff also alleges that Defendants made false statements to the United States Patent and Trademark Office ("USPTO"). <u>Id.</u> ¶ 37. On November 10, 2014, Hale submitted a "change of address" form to the USPTO, and changed the contact information listed in the USPTO records for two of Plaintiff's registered trademarks ("MORRISON KNUDSEN" and "MKCO MORRISON KNUDSEN") from Plaintiff's addresses, to Hale's email address [todd.hale@morrison-knudsen.com](mailto:todd.hale@morrison-knudsen.com), and the physical address of 2049 Century Park East, Suite 3850, Los Angeles, California 90067. <u>Id.</u> On November 11, 2015, Zukaloff submitted a document to the USPTO purporting to assign the registered trademark "MKCO MORRISON KNUDSEN" from WGI (a previous name of Plaintiff) to Corporate Defendant Morrison Knudsen Corporation, listed at 2049 Century Park East, Suite 3850, Los Angeles, California 90067. <u>Id.</u> ¶ 38.

**B.  Procedural Background**

Plaintiff filed its Complaint [1] on July 21, 2017, alleging the following claims:

1) False Designation of Origin

2) False Advertising

3) Cyberpiracy

4) California Common Law Unfair Competition

5) California Statutory Unfair Competition

6) California Statutory False Advertising

7) Petition for Cancellation of Registered Mark

Plaintiff filed a Motion for Preliminary Injunction [11] on August 1, 2017. This Court granted Plaintiff's Motion for Preliminary Injunction [45] on September 28, 2017. The Clerk of Court entered default against Defendants Todd Hale, Henry Blum, John Ripley, and Bud Zukaloff [77] on December 4, 2017. On July 24, 2018, Plaintiff filed a Motion for Summary Judgment and Permanent Injunction [157] against the remaining Defendants: Gary Topolewski; Morrison Knudsen Corporation; Morrison-Knudsen Company, Inc.; Morrison-Knudsen Services, Inc.; and Morrison-Knudsen International Inc. On November 8, 2018, the Court granted Plaintiff's Motion for Summary Judgment and Permanent Injunction on all claims [242]. Plaintiff filed the instant Motion for Default Judgment against the defaulting Defendants [244] on November 9, 2018. Plaintiff then filed a Supplemental Declaration In Support of Plaintiff's Motion [246] on November 30, 2018. To date, the defaulting Defendants have not responded or otherwise appeared in this Action.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment. Pursuant to Local Rule 55-1, the party moving for default judgment must submit a declaration establishing: (1) when and against which party default was entered; (2) on which pleading default was entered; (3) whether the

defaulting party is a minor, incompetent person, or active service member; and (4) proper service.  Upon default, all factual allegations in the complaint, except those relating to damages, are assumed to be true.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion to grant default judgment, the court must consider the following factors: (1) possibility of prejudice to the plaintiff, (2) merits of the substantive claim, (3) sufficiency of the complaint, (4) sum of money at stake, (5) possibility of disputes regarding material facts, (6) whether excusable neglect caused the default, and (7) the strong policy favoring decisions on the merits.  NewGen, LLC v. Safe Ciq, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).  Additionally, if the defaulting party failed to plead or otherwise defend, the court must determine that it has subject matter and personal jurisdiction.  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).  When default judgment is granted, the relief awarded "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

///

///

///

**B. Discussion**

    1. Jurisdiction and Service of Process

    In considering whether to enter default judgment against the defaulting Defendants, the Court must first determine whether it has jurisdiction over the subject matter and the parties to the case. In re Tuli, 172 F.3d at 712.

    The Court has subject matter jurisdiction over the present matter under 28 U.S.C. §§ 1331, 1334 for violations of the Lanham Act. The Court also has general personal jurisdiction over all defaulting Defendants because each defaulting Defendant allegedly resides in California. Compl. ¶¶ 8-12.

    Finally, each defaulting Defendant was properly served. Unless federal law provides otherwise, service on both an individual and a corporation within the United States is proper in any manner following state law in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A). Plaintiff has provided proof that after unsuccessful attempts at personal service,[1] Plaintiff served by mail each defaulting Defendant on August 29, 2017, in compliance with Cal. Code Civ. Proc. § 415.30. See Declaration of Diana M. Torres ISO Service ("Torres

---

    [1] On July 25, 2017, Plaintiff attempted personal delivery on defaulting Defendants Zukaloff, Ripley, Blum, and Hale at the address listed for each on file with the Nevada Secretary of State, as well as various Los Angeles addresses, but was unsuccessful. See Torres Service Decl. ¶¶ 5-12; id., Ex. 1.

Service Decl.") ¶¶ 8-12, ECF No. 42; id., Exs. 2-5.

2.  Procedural Requirements

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Federal Rule of Civil Procedure 55 and Local Rule 55-1.  Under Federal Rule of Civil Procedure 55(a), the Court Clerk properly entered default against the defaulting Defendants.  ECF No. 77.  Plaintiff properly moved pursuant to Rule 55(b) for entry of default judgment.

Local Rule 55-1 requires that Plaintiff provide the following in an application for default judgment: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that notice has been served on the defaulting party. Here, the Clerk of Court entered default against the defaulting Defendants on December 4, 2017.  ECF No. 77. There is no indication any of the defaulting Defendants is an infant or incompetent person, or that the Servicemembers Civil Relief Act applies, and Plaintiff served the defaulting Defendants with the Motion on January 10, 2019.[2]  Proof of Service, ECF No. 255.

---

[2] In filing its Motion for Default Judgment [244], Plaintiff did not originally attach Proof of Service that the defaulting Defendants received notice of the Motion.  Plaintiff later provided Proof of Service [247, 252] for its Supplemental Declaration ISO the Motion [246], however that Proof of Service

Thus, Plaintiff has met the requirements of Local Rule 55-1.

### 3. Eitel Factors

#### a. *Factor 1: Prejudice to Plaintiff*

A court must first consider whether a plaintiff will suffer prejudice if default judgment is not entered. See Eitel, 782 F.2d at 1471 (citation omitted). A plaintiff who is denied a default judgment and is subsequently left without other recourse for recovery has a basis for establishing prejudice. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Plaintiff has already secured judgment against the four Corporate Defendants and Defendant Topolewski in the amount of ███████████, see MSJ Order 54:22-23, and now seeks to hold the defaulting Defendants jointly and severally liable for that amount. Although denying default judgment would mean Plaintiff cannot also recover from the defaulting Defendants, the fact that Plaintiff has already secured judgment against the non-defaulting Defendants weighs against default. See Aifang v. Velocity VIII L.P., No. CV 14-07060 SJO (MRWx), 2016 WL 5420641, at *3 (C.D. Cal. Sept. 26, 2016) (finding a

only listed the counsel on record for the non-defaulting Defendants, and did not show proof that the defaulting Defendants were ever served. Finally, after the Court ordered Proof of Service [254], Plaintiff filed Proof of Service [255] showing that each defaulting Defendant was properly served with the Motion on January 10, 2019.

$4,000,000 judgment against one other defendant weighing against default, or "at best, neutral").

      b.   *Factors 2 & 3: Sufficiency of the Complaint and Merits of the Claim*

The second and third <u>Eitel</u> factors call for analysis of the causes of action. <u>See</u> <u>Eitel</u>, 782 F.2d at 1471 (citation omitted). Here, Plaintiff alleges the following claims: (1) false designation of origin; (2) false advertising; (3) cyberpiracy; (4) California common law unfair competition; (5) California statutory unfair competition; and (6) California statutory false advertising.[3] The Court found at summary judgment that the non-defaulting Defendants are liable for each claim by passing themselves off as the original MK. <u>See</u> <u>generally</u> MSJ Order. Plaintiff now seeks to hold the defaulting Defendants jointly and severally liable with the non-defaulting Defendants on all claims.

      1.   *False Designation of Origin*

A false designation claim for "passing off" requires that Plaintiff allege the defaulting Defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his

---

[3] Plaintiff also brought a claim to cancel the registered trademark, Reg. No. 1,744,815, pursuant to 15 U.S.C. § 1064(3). However, the Court granted Plaintiff's Motion for Summary Judgment on this claim to cancel the mark and thus does not discuss it here. <u>See</u> MSJ Order at 40:13-43:6.

or another person's goods or services." <u>Freecycle</u>
<u>Network, Inc. v. Oey</u>, 505 F.3d 898, 902 (9th Cir.
2007). "[C]ommunications made on public websites"
satisfy the use in commerce requirement. <u>Nat'l Grange</u>
<u>of the Order of Patrons of Husbandry v. Cal. State</u>
<u>Grange</u>, No. 2:16-201 WBS DB, 2016 WL 6696061, at *4
(E.D. Cal. Nov. 15, 2016)(citing <u>United States v.</u>
<u>Sutcliffe</u>, 505 F.3d 944, 952-53 (9th Cir. 2007)).

   Here, the Complaint alleges that all Defendants,
the individual defaulting Defendants and Corporate
Defendants collectively, passed themselves off as the
original MK by claiming MK's history and projects as
their own on the website, www.morrison-knudsen.com.
Compl. ¶ 48. The website falsely represents that
Defendants completed original MK projects including the
Hoover Dam, San Francisco-Oakland Bay Bridge, and
Trans-Alaska Pipeline, and also advertised equipment
for sale with the MK logo. <u>Id.</u> ¶¶ 40-43; <u>see</u>
Declaration of Diana M. Torres ISO Summ. J. ("Torres
MSJ Decl.") ¶ 11, ECF No. 174; Torres MSJ Decl., Ex. G,
267-71, 293-95, 335-36, 362, 389-391, ECF No. 174-7.
The defaulting Defendants' failure to answer these
allegations constitutes an admission, and the Court
must accept as true these allegations that,
collectively with all Defendants, the defaulting
Defendants used the website to pass themselves off as
MK. <u>TeleVideo Sys., Inc.</u>, 826 F.2d at 917-18.
   Moreover, the defaulting Defendants used email

addresses associated with the website and the name "Morrison Knudsen": (1) Ripley was listed as the contact person on the website and used the address jripley@morrison-knudsen.com, see Torres Service Decl. 1:19-21, ECF No. 42; (2) Hale used the address todd.hale@morrison-knudsen.com, which was listed on the USPTO website in connection with changes made to the trademark registration for the mark "MORRISON KNUDSEN," see Torres MSJ Decl., Ex. U, USPTO Record, ECF No. 174-21; (3) Blum used the address hblum@morrison-knudsen.com, which was listed in a press release for the Corporate Defendants as a means to contact "Morrison Knudsen," regarding a $1.2 billion contract Defendants claimed they were awarded, see Torres MSJ Decl., Ex. P, Press Release, ECF No. 174-16; and (4) when Zukaloff submitted a change of address form to the USPTO for the mark "MKCO MORRISON KNUDSEN," he listed an email address associated with morrison-knudsen.com, see Torres MSJ Decl., Ex. V, ECF No. 174-22.

As to likelihood of confusion, Plaintiff alleges that, as a result of the website, the public and potential consumers are likely to be confused and deceived. Compl. ¶ 49. Plaintiff has provided evidence beyond mere allegation that the website has confused at least one potential consumer, a former AECOM employee, Brandon Davis. See Davis Decl. ISO Prelim. Inj. ¶¶ 3-9, ECF No. 36.

The Complaint's allegations taken as true, and the

evidence of the defaulting Defendants' involvement in the formation of the Corporate Defendants and their efforts to takeover the MK name via the website, would be sufficient to render the defaulting Defendants liable under Section 43(a) of the Lanham Act for passing themselves off as the original MK. <u>Comm. for Idaho's High Desert, Inc. v. Yost</u>, 92 F.3d 814, 823-24 (9th Cir. 1996) (finding district court erred in dismissing corporate officers who would be individually liable under §43(a) for their acts in forming the defendant corporation). Thus, Plaintiff has sufficiently pled its false designation of origin claim.

### 2. *False Advertising*

Likewise, Plaintiff's allegations and evidence of the defaulting Defendants' involvement with the Corporate Defendants is sufficient for Plaintiff's second claim for false advertising under the Lanham Act. To adequately allege false advertising under the Lanham Act,[4] Plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

---

[4] Plaintiff also alleges violations of California Business and Professions Code sections 17200 and 17500, which similarly prohibit misleading advertising. However, these state law claims are not substantively addressed because the state claims are "substantially congruent" to the Lanham Act claims. <u>JHP Pharm., Ltd. Liab. Co. v. Hospira, Inc.</u>, 52 F. Supp. 3d 992, 997 n.4 (C.D. Cal. 2014).

> deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997). Plaintiff alleges, and has shown with evidence as discussed above, that the defaulting Defendants falsely claimed MK and AECOM projects through interstate commerce via their website in a manner that is likely to deceive potential customers. Compl. ¶ 53.

Plaintiff further alleges that Defendants' false statements injure Plaintiff "commercially, by diminishing the value of their strategic acquisition investments," and "cause competitive injury" impeding the "right and ability to tout [MK's] accomplishments in its own presentations." Id. ¶ 54. Indeed, this is the exact type of harm a Plaintiff can recover for in bringing a false advertising claim. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1393 (2014)(stating that injuries such as "damage to . . . business reputation . . . are injuries to precisely the sorts of commercial interests the [Lanham] Act protects"); Neighborhood Assistance Corp. of Am. v. First One Lending Corp., No. SACV 12-463-DOC (MLGx), 2012 WL 1698368, at *18 (C.D. Cal. May 15,

2012)("Loss of good will or the loss of the ability to control one's own reputation is a cognizable harm under the Lanham Act.")(citing <u>Stuhbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.</u>, 240 F.3d 832, 841 (9th Cir. 2001)).

Taking these allegations as true, Plaintiff has sufficiently pled a false advertising claim. Accordingly, Plaintiff has also sufficiently pled its claims for: (1) California Common Law Unfair Competition; (2) California Statutory Unfair Competition; and (3) California Statutory False Advertising.[5]

### 3. *Cyberpiracy*

To succeed on a claim for cyberpiracy under 15 U.S.C. § 1125(d), Plaintiff must allege Defendants (1) register, traffic in, or use a domain name, (2) that was "identical or confusingly similar to" a mark that was distinctive at the time of registration, with (3) a "bad faith intent to profit from that mark." <u>GoPets Ltd. v. Hise</u>, 657 F.3d 1024, 1030 (9th Cir. 2011) (quoting 15 U.S.C. § 1125(d)).

Here, Plaintiff alleges that Defendants registered the domain name www.morrison-knudsen.com, at a time when the MK Marks were distinctive, that Defendants' use of the MK Marks is likely to confuse or deceive

___

[5] These claims arise under Cal. Bus. & Prof. Code §§ 17200, 17500, which are "substantially congruent" to the Lanham Act claims. See JHP Pharm., Ltd. Liab. Co. v. Hospira, Inc., 52 F. Supp. 3d 992, 997 n.4 (C.D. Cal. 2014).

customers, and that in registering and using the domain name, Defendants had a bad faith intent to profit from the MK mark and its goodwill. Compl. ¶ 57. For the same reasons as the prior two claims, and taking these allegations as true, Plaintiff sufficiently alleges a cyberpiracy claim.

### c. *Factor 4: Money at Stake*

The fourth <u>Eitel</u> factor addresses the sum of money at stake in the action. <u>Eitel</u>, 782 F.2d at 1471 (citation omitted). This requires that the court assess whether the recovery sought is proportional to the harm caused by a defendant's conduct. <u>See</u> <u>Walters v. Statewide Concrete Barrier, Inc.</u>, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.").

As discussed in greater detail below, Plaintiff requests that the defaulting Defendants be jointly and severally liable with the non-defaulting Defendants in the amount of ████████████. Where a defendant has engaged in willful infringement and has refused to respond to the allegations brought against it, damages of high magnitude have been deemed appropriate. <u>See</u> <u>Philip Morris U.S.A. Inc. v. Castworld Prods.</u>, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (finding that the defendant's willful trademark infringement through large scale sale of counterfeit cigarettes and its

19

failure to participate in the judicial process justified statutory damages under the Lanham Act in the amount of $2,000,000).

Here, the defaulting Defendants have engaged in willful trademark violations as they were instrumental in forming the Corporate Defendants and their attempt to fraudulently take over the MK brand and name. Indeed, each defaulting Defendant submitted false statements to either the Nevada Secretary of State or USPTO under penalty of perjury. While it is a substantial amount of money at stake, it is proportionate in that it reflects the only amount of Defendants' alleged profits known to Plaintiff,[6] particularly weighed against the defaulting Defendants' willful conduct. See Eitel, 782 F.2d at 1472; see also, e.g., Kerr Corp. v. Tri Dental, Inc., No. SACV 12-0891, 2013 WL 990532, at *4-5 (C.D. Cal. Mar. 11, 2013) (granting default judgment despite $24 million at stake for $8 million in revenue from infringing products). The defaulting Defendants have also failed to participate in the litigation process, rendering

---

[6] As discussed below, Plaintiff derives this number for profits from three press releases announcing contracts Defendants were allegedly awarded in 2016 and 2017. See Torres MSJ Decl., Exs. N-P, ECF Nos. 174-14, 15, 16. Defendants' collective scheme to pass themselves off as MK began as early as 2008, but because Defendants did not provide any financial information as to profits, see MSJ Order at 49-51, Plaintiff has accepted the total of the three press releases as Defendants' total profit over the years. This suggests that the amount in controversy requested could then be less than what Defendants actually received in profits.

this factor in favor of default.

d. *Factor 5: Dispute of Material Fact*

The fifth Eitel factor is the likelihood of a dispute as to material facts. Eitel, 782 F.2d at 1471-72 (citation omitted). To date, the defaulting Defendants have not answered or otherwise appeared. Since Plaintiff's factual allegations are presumed true in this context and the defaulting Defendants failed to move to set aside the default, no factual dispute exists that would preclude the entry of default judgment. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1013 (C.D. Cal. 2014). Thus, this factor weighs in favor of default judgment.

e. *Factor 6: Excusable Neglect*

Next, courts consider whether the default was due to some excusable neglect. Eitel, 782 F.2d at 1472 (citation omitted). The defaulting Defendants here were properly served on August 29, 2017 and Plaintiff served its Motion on January 10, 2019 [255]. Nevertheless, the defaulting Defendants have not appeared in this Action and have not offered any explanation for their default. Further, Plaintiff has provided evidence showing the defaulting Defendants' knowledge of this lawsuit. In his deposition on June 18, 2018, Topolewski stated that he has discussed the current lawsuit with Blum. Mem. at 3:8-9; Ex. A, Topolewski Dep. 67:15-21, ECF No. 244-3. Topolewski also testified that he spoke to Zukaloff as recently as

a month and a half before his deposition and discussed
this lawsuit.  <u>Id.</u>, Ex. A at 114:11-20, 114:23-115:10.
The non-defaulting Defendants stated in their Second
Supplemental Response to Interrogatory No. 8 that they
had phone contact with Hale to obtain information for
Interrogatory responses.  Torres Supp. Decl. ¶ 28.

    Accordingly, this factor weighs in favor of
granting default judgment.  <u>Vogel</u>, 992 F. Supp. 2d at
998 (finding "it reasonable to infer [the] default was
not the product of excusable neglect" where defendant
was properly served).

      f.  *Factor 7: Public Policy*

    The seventh <u>Eitel</u> factor considers the strong
policy favoring rulings on the merits.  <u>Eitel</u>, 782 F.2d
at 1472 (citation omitted).  Notwithstanding such
policy, default judgment is appropriate "[w]here the
[d]efendant's failure to appear makes decision on the
merits impossible."  <u>Warner Bros. Home Entm't, Inc. v.
Slaughter</u>, CV 13-0892-DOC (RNBx), 2013 U.S. Dist LEXIS
156597, at *9 (C.D. Cal. Oct. 30, 2013) (citing
<u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d
1039, 1061 (N.D. Cal. 2010)).

    While the first <u>Eitel</u> factor weighs against default
judgment, all remaining factors support default
judgment, and as a result, the Court **GRANTS** Plaintiff's
Motion.

///

///

4. <u>Relief</u>

In seeking default judgment, "Plaintiff is required to prove all damages sought in the [C]omplaint." <u>Philip Morris</u>, 219 F.R.D. at 498. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." <u>Truong Giang Corp. v. Twinstar Tea Corp.</u>, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. 2007). Here, Plaintiff argues that the defaulting Defendants, as officers of the Corporate Defendants, should be jointly and severally liable for Plaintiff's damages in the amount of ████████████.

a. *Damages*

For violations of section 1125(a) or (d) of the Lanham Act, a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Here, Plaintiff seeks actual damages by disgorgement of Defendants' profits in the amount of ████████████. A court may award disgorgement of profits under the Lanham Act where there is willful infringement. <u>Stone Creek, Inc. v. Omnia Italian Design, Inc.</u>, 875 F.3d 426, 439-40 (9th Cir. 2017). Here, Plaintiff has alleged and provided evidence of the defaulting Defendants' willful infringement and participation in the collective efforts to takeover the MK brand and legacy, described in turn as follows.

Blum signed the Certificate of Revival for MK Viet Nam listing himself as its Vice President (later changed to Corporate Defendant Morrison Knudsen Corporation). See Torres Inj. Decl., Ex. 2 97-99, ECF No. 19-2. Blum then served as Director of Corporate Defendant Morrison-Knudsen Services, Inc. at least until June 21, 2017. See id., Ex. 1 61-62, 64, 66-68, 70-72, 74, 76, 78, ECF No. 19-1. Blum also served as its Vice President in 2017. Id. at 76. Topolewski also testified that Blum drew a salary from the Corporate Defendants and made managerial decisions, as he invited Topolewski to become President of Morrison-Knudsen Services and Morrison Knudsen Corporation. Torres Supp. Decl. at 2:6-12; Ex. A at 203:17-24, 205:4-25, 197:18-198:11.

Ripley served as a Director of Corporate Defendant Morrison Knudsen Corporation at the time it was revived without Plaintiff's permission (then, MK Viet Nam). See Torres Inj. Decl., Ex. 2 at 95. Ripley himself also signed the Certificate of Amendment renaming Westland to Corporate Defendant, Morrison-Knudsen Company, Inc. Id., Ex. 4, 153, ECF No. 19-4.

Hale served as President of Morrison-Knudsen Services, Inc. in 2008, when it was revived without permission, and signed the Certificate of Revival. Id. Ex. 1 at 52-55. In addition to serving as an officer for Corporate Defendants Morrison-Knudsen Services and Morrison Knudsen Corporation, Hale also submitted

unauthorized change of address requests to the USPTO
under penalty of perjury for the marks "MORRISON
KNUDSEN" and "MKCO" from Plaintiff's information (WGI
at the time), to Hale's email address and the physical
address used collectively by the Corporate Defendants.[7]
See Torres MSJ Decl., Ex. U 1097-99, ECF No. 174-21.
When asked to "[i]dentify each person who signed a form
submitted to the [USPTO] on behalf of each Corporate
Defendant after their respective Dates of Inception,
including the Assignment of Trademark [Reg. No.
1,744,815]" the non-defaulting Defendants responded
"Todd Hale" and "Bud Zukaloff." Torres Supp. Decl. ¶
28.

Finally, Zukaloff submitted and signed a
Certificate of Amendment, changing the name of E Planet
to Corporate Defendant Morrison-Knudsen International
Inc. See Torres Inj. Decl., Ex. 3 119, ECF No. 19-3.
Zukaloff also submitted forms to the USPTO under
penalty of perjury assigning the mark "MKCO MORRISON
KNUDSEN" from Plaintiff (WGI), to Corporate Defendant
Morrison Knudsen Corporation. See Torres MSJ Decl.,
Ex. V 11, ECF No. 174-22.

---

[7] Each Corporate Defendant is registered under the same
address, 2049 Century Park East Suite 3850, Los Angeles,
California, 90067. See Torres MSJ Decl., Ex. R at 1034 (showing
Morrison Knudsen Corporation's address); id., Ex. Q at 996
(address for Morrison-Knudsen Services); id., Ex, S at 1066
(address for Morrison-Knudsen International); and Torres Decl.
Inj. Decl., Ex. 4, at 151 (address for Morrison-Knudsen Company,
Inc.).

Thus, each defaulting Defendants' involvement in assuming the MK name as detailed above is sufficient to demonstrate willful infringement.  See D.C. Comics v. Towle, 802 F.3d 1012, 1026 (9th Cir. 2015) ("Willful trademark infringement occurs when the defendant's actions are 'willfully calculated to exploit the advantage of an established mark.'"); Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993)("Willful infringement carries a connotation of deliberate intent to deceive . . . [A]n account is proper only where the defendant is 'attempting to gain the value of an established name of another.'") *abrogated on other grounds by* SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 839 F.3d 1179 (9th Cir. 2016).

With respect to profits, a "plaintiff shall be required to prove defendant's sales *only*; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a)(emphasis added).  To prove sales, Plaintiff provides three press releases announcing contracts Defendants received under the MK name and brand amounting to $1.806 billion in revenue.  The press releases are as follows: (1) March 10, 2016 press release titled "Morrison-Knudsen Awarded $570 Million Environmental Clean Up Project"; (2) June 30, 2016 press release titled "Morrison Knudsen Awarded $36 Million Mine Engineering Contract"; and an (3) April 11, 2017 press release titled "Morrison Knudsen Awarded

$1.2 Billion Construction and Engineering Contract."
See Torres MSJ Decl., Exs. N-P, ECF Nos. 174-14, 15,
16.  As detailed in the Court's MSJ Order, the Court
accepted the total of these three contracts the press
releases claim as Defendants' revenue because the press
releases are the only evidence Plaintiff could rely on
due to the non-defaulting Defendants' failure to comply
throughout discovery and provide financial information
which Plaintiff, and the Court, repeatedly requested.
See MSJ Order at 49:26-52:7.  Without any evidence
provided by the non-defaulting Defendants as to profit,
the Court accepted Plaintiff's calculation for total
profits in using the MK name as ███████████.[8]  MSJ
Order at 54:16-24.  Not having appeared, the defaulting
Defendants have also not submitted anything showing
their expenses or disputing this amount.  Consistent
with the Courts prior Summary Judgment ruling, it
accepts Plaintiff's calculation for disgorgement of
profits in the amount of ███████████.

    b.  *Joint and Several Liability*

    When a defendant who is jointly liable defaults,
judgment against that defendant generally should not be
entered until the claims against all other defendants

_____

    [8] This figure consists of the total of the three press
releases, less the total expenses listed from 2013 to 2016 of
███████████ in a two-page financial summary Corporate Defendants
provided.  While during discovery the Court found this summary an
inadequate showing, absent any other documents showing
Defendants' costs, Plaintiff accepted this amount.  See MSJ Order
at 49:26-52:7.

have been fully adjudicated.  <u>Neilson v. Chang (In re</u>
<u>First T.D. & Investment, Inc.)</u>, 253 F.3d 520, 532 (9th
Cir. 2001).  Here, the claims against all other
Defendants have been adjudicated and only the
defaulting Defendants remain.  Because the Court found
liability against all other Defendants, granting
default judgment would not result in inconsistent
results.  Cf. <u>Garamendi v. Henin</u>, 683 F.3d 1069, 1083
(9th Cir. 2012) (finding the district court followed
the proper procedure by waiting until completion of the
trial against the non-defaulting defendants before
fixing damages and entering default judgment against
the defaulting defendant).

        "A trademark, like a patent or a copyright, may be
infringed by an individual as well as a corporation and
all participants, including those acting merely as
officers of a corporation, may be jointly and severally
liable."  <u>Stanley Black & Decker, Inc. v. D&L Elite</u>
<u>Investments, LLC</u>, No. C 12-04516 SC (LB), 2014 WL
3738327, at *21 (N.D. Cal. June 20, 2014) (quoting 4
Thomas McCarthy, McCarthy on Trademarks and Unfair
Competition, § 25:24 (4th ed.)).  "A corporate 'officer
or director is, in general, personally liable for all
torts which he authorizes or directs or in which he
participates, notwithstanding that he acted as an agent
of the corporation and not on his own behalf.'"  <u>Comm.</u>
<u>for Idaho's High Desert</u>, 92 F.3d at 823 (reversing
district court dismissal of individual defendants in

trademark infringement action against individuals and a
corporation).

Here, in addition to serving as corporate officers,
each defaulting Defendant was instrumental in the
formation of at least one of the Corporate Defendants
and their subsequent, collective takeover of the MK
marks and brand.  Thus, because the defaulting
Defendants participated in the alleged torts, the
defaulting Defendants may be held personally liable,
jointly and severally, with the non-defaulting
Defendants in the amount of ███████████ .

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS**
Plaintiff's Motion against defaulting Defendants John
Ripley, Todd Hale, Henry Blum, and Bud Zukaloff.


**IT IS SO ORDERED.**


DATED: January 24 , 2019          s/ RONALD S.W.LEW

                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge