1                                                              O

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  AECOM ENERGY &              )    CV 17-5398-RSWL-SSx
    CONSTRUCTION, INC.,         )
13                             )
                Plaintiff,     )    **ORDER re: Defendants**
14                             )    **Gary Topolewski;**
                               )    **Morrison Knudsen**
15                             )    **Corporation; Morrison-**
                               )    **Knudsen Company, Inc.;**
16       v.                    )    **Morrison-Knudsen**
                               )    **Services, Inc.; and**
17                             )    **Morrison-Knudsen**
    JOHN RIPLEY; TODD HALE;     )    **International Inc.'s**
18  GARY TOPOLEWSKI; HENRY      )    **Motion for Alteration,**
    BLUM; BUD ZUKALOFF;         )    **Amendment, or**
19  "MORRISON KNUDSEN           )    **Reconsideration of the**
    CORPORATION;" "MORRISON-    )    **Court's Order re Summary**
20  KNUDSEN COMPANY, INC.;"     )    **Judgment** [268];
    "MORRISON-KNUDSEN SERVICES, )    **Plaintiff's Motion to**
21  INC.;" and "MORRISON-       )    **Set Amount of Attorneys'**
    KNUDSEN INTERNATIONAL       )    **Fees** [262]
22  INC.,"                      )
                               )
23                             )
                               )
                Defendants.    )
24  _____)

25       Currently before the Court is Defendants Gary

26  Topolewski; Morrison Knudsen Corporation; Morrison-

27  Knudsen Company, Inc.; Morrison-Knudsen Services, Inc.;

28  and Morrison-Knudsen International Inc.'s

                                1

1  (collectively, "Defendants") Motion for Alteration,

2  Amendment, or Reconsideration of the Court's Order re

3  Summary Judgment ("Defs.' Motion") [268]; and

4  Plaintiff's Motion to Set Amount of Attorneys' Fees

5  ("Pl.'s Mot.") [262].  Having reviewed all papers

6  submitted pertaining to the Motions, the Court **NOW**

7  **FINDS AND RULES AS FOLLOWS**: the Court **DENIES**

8  Defendants' Motion and **GRANTS** Plaintiff's Motion

9  subject to certain reductions discussed below.

10                    **I. BACKGROUND**

11       Plaintiff AECOM Energy & Construction, Inc.

12  ("Plaintiff") brought this Action for injunctive relief

13  and damages against Defendants John Ripley, Todd Hale,

14  Gary Topolewski, Henry Blum, Bud Zukaloff, Morrison

15  Knudsen Corporation, Morrison-Knudsen Company, Inc.,

16  Morrison-Knudsen Services, Inc., and Morrison-Knudsen

17  International Inc.  Plaintiff's claims all arise from

18  Defendants' attempts to assume the identity of Morrison

19  Knudsen Corporation ("MK").  For the sake of these

20  Motions, the Court assumes familiarity with the facts

21  of this case.  A detailed account of the facts are laid

22  out in the Court's Order re Plaintiff's Motion for

23  Summary Judgment ("MSJ Order") [242].

24       On November 8, 2018, the Court granted Plaintiff's

25  Motion for Summary Judgment [242] against Defendants

26  Gary Topolewski; Morrison Knudsen Corporation;

27  Morrison-Knudsen Company, Inc.; Morrison-Knudsen

28  Services, Inc.; and Morrison-Knudsen International Inc.

1  (collectively, "Defendants") on Plaintiff's claims for:

2  (1) false designation of origin under the Lanham Act;

3  (2) false advertising under the Lanham Act; (3)

4  California Common Law Unfair Competition; (4)

5  California Statutory Unfair Competition; (5) California

6  Statutory False Advertising; (6) Cyberpiracy; and (7)

7  Cancellation of Defendants' Registration.  The Court

8  also granted a permanent injunction, attorneys' fees,

9  and disgorgement of profits in the amount of

10 ███████████.

11      On November 9, 2018, Plaintiff filed a Motion for

12 Default Judgment [244] against Defendants John Ripley,

13 Todd Hale, Henry Blum, and Bud Zukaloff (the

14 "defaulting Defendants"), which the Court granted on

15 January 24, 2019 [257].  The Court issued a Judgment on

16 January 24, 2019, in accordance with both the MSJ Order

17 and the Order re Default Judgment ("Default Order")

18 [259].  On February 6, 2019, Plaintiff filed a Motion

19 to Set Attorneys' Fees [262].  Defendants timely

20 opposed [264], and Plaintiff timely replied [265].  On

21 February 21, 2019, Defendants filed a Motion for

22 Alteration, Amendment, or Reconsideration of the

23 Court's MSJ Order regarding damages only [268].

24 Plaintiff timely opposed [272] and Defendants timely

25 replied [276].

26 ///

27 ///

28 ///

**II. DISCUSSION**

**A.  Legal Standard**

  1.  Motion for Alteration, Amendment, or Reconsideration

Motions for Reconsideration of a final judgment are governed by Federal Rule of Civil Procedure 59(e) or Rule 60(b).  See Fed. R. Civ. P. 59(e), 60(b). Under Rule 59(e), "[a]bsent 'other, highly unusual, circumstances,' reconsideration [] is appropriate only where (1) the court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law."  Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).  Rule 60(b) "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief."  ACandS, 5 F.3d at 1263 (quoting Fuller v. M.G. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991)).

In addition, this district provides that the moving party must show that there was: "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such

decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision."  C.D. Cal. L.R. 7-18.  "Whether to grant a motion for reconsideration . . . is a matter within the court's discretion."  Daghlian v. DeVry Univ., Inc., 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007).

### 2.  Attorneys' Fees

When attorneys' fees are awarded under § 1117(a) of the Lanham Act, the amount of the fee award is subject to the court's discretion.  Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1384 (9th Cir. 1984).  The Ninth Circuit set forth the steps a district court should follow in determining the amount of a fee award under the Lanham Act in Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614 (9th Cir. 1993):

> When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate.  Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975),[1] that

---

[1] The Kerr factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and

1   have not been subsumed in the lodestar
2   calculation.

3   Intel Corp., 6 F.3d at 622 (internal citation omitted);
4   Cairns v. Franklin Mint Co., 292 F.3d 1139, 1157 (9th
5   Cir. 2002).

6       The reasonable hourly rate corresponds to the
7   prevailing market rate in the relevant community,
8   considering the experience, skill, and reputation of
9   the attorney in question.  See Chalmers v. City of Los
10  Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1985).
11  Furthermore, "counsel bears the burden of submitting
12  detailed time records justifying the hours claimed to
13  have been expended."  Id. at 1210.  Counsel must
14  demonstrate that the time actually spent was reasonably
15  necessary to the effective prosecution or defense of
16  the claims.  See Sealy, 743 F.2d at 1385 n.4.

17  **B.**   **Discussion**

18      1.   Motion for Alteration, Amendment, or
19          Reconsideration

20          a.   *Request for Oral Argument*

21      On March 21, 2019, the Court took off-calendar and
22  under submission the hearing for Defendants' Motion as
23  it found it suitable for decision without argument
24  [288].  That same day, Defendants filed a Request for

26  the results obtained; (8) the experience, reputation, and ability
27  of the attorneys; (9) the 'undesirability' of the case; (10) the
    nature and length of the professional relationship with the
28  client; and (11) awards in similar cases.  Kerr, 526 F.2d at
    69-70.

Oral Argument [291].  Defendants argue that they will be prejudiced without the opportunity to present an oral argument, but provide no explanation as to how they would prejudiced.  Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).  Defendants were given the opportunity to reply in full to Plaintiff's Opposition.  Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir. 1991) ("When a party has an adequate opportunity to provide the trial court with evidence and memorandum of law, there is no prejudice [in a refusal to grant oral argument]. . . .).  As such, the Court **DENIES** Defendants' Request for Oral Argument.

            b.  *Request for Judicial Notice*

Defendants request that the Court take judicial notice of government records from the Environmental Protection Agency ("EPA") included as an exhibit to the Reply Declaration of Drew Sherman ("Sherman Reply Decl.").  Defs.' Req. for Judicial Notice ("RJN") 1:2-5, ECF No. 277.  Specifically, Defendants attach a PDF document list of the EPA's Active Contracts By Vendor Name, "Last Refresh Date: 10/25/16."  RJN at 1:23-25.

A court may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Plaintiff has objected to the Court taking judicial notice of the document on the basis

that its accuracy can reasonably be questioned.  Pl.'s
Obj. to RJN at 1, ECF No. 285.  The records and reports
of administrative bodies, such as the EPA, "are proper
subjects of judicial notice, as long as their
authenticity or accuracy is not disputed." <u>Phillips v.</u>
<u>Salt River Police Dept.</u>, No. CV-13-798-PHX-LOA, 2013 WL
1797340, at *6 (D. Ariz. Apr. 29, 2013) (quoting <u>Mack</u>
<u>v. South Bay Beer Distrib.</u>, 798 F.2d 1279, 1282 (9th
Cir. 1986)).  Plaintiff does dispute the authenticity,
however a document from a federal agency is self-
authenticating pursuant to Fed. R. Evid. 902(5), and
here the PDF displays the EPA logo along with a
disclaimer at the bottom of each page that reads "Data
provided by US EPA Office of Acquisition Management."
<u>See</u> RJN, Ex. A, ECF No. 277-1.  Defendants have shown
that this is indeed an accurate document from the EPA's
website.[2]  As such, the Court **GRANTS** Defendants' Request
for Judicial Notice.

        c.  *The Motion*

Defendants seek reconsideration of the Court's
grant of summary judgment in favor of Plaintiff only as
to the award of disgorgement of profits in the amount
of ▮▮▮▮▮▮▮▮.  Specifically, Defendants argue that

---

   [2] Plaintiff makes further arguments as to the accuracy of
the document insofar as what qualifies a contract to appear on
the list and whether it is a complete list, however such concerns
are irrelevant to whether the document is an authentic EPA
document subject to judicial notice.  <u>See</u> Pl.'s Evidentiary
Objs., ECF No. 284.

the Court erred in relying on the following three press
releases to determine Defendants' revenue: (1) a March
16, 2016 press release titled, "Morrison Knudsen
Awarded $570 Million Environmental Clean Up Project";
(2) a June 30, 2016 press release titled, "Morrison
Knudsen Awarded $36 Million Mine Engineering Contract";
and (3) an April 11, 2017 press release titled,
"Morrison Knudsen awarded $1.2 Billion Construction and
Engineering Contract".  MSJ Order at 49 (citing
Declaration of Diana M. Torres ("Torres MSJ Decl.") ¶¶
16-18, Exs. N-P, ECF Nos. 174-14, 174-15, 174-16).
Defendants argue that the Court's grant of summary
judgment as to disgorgement of profits was a clear or
manifestly unjust error because Plaintiff did not
provide any evidence proving the occurrence of damages.
Without such evidence, Defendants argue that
reconsideration is necessary because: (1) the Court
relied on deemed admissions by the Defendants to
authenticate the press releases, but the admissions had
been withdrawn and denied by the time of the MSJ Order;
(2) the press releases are erroneous and opposite of
the actual factual record, and the Court failed to
consider other material facts; and (3) it is manifestly
unjust to impose the award on Defendant Gary Topolewski
("Topolewski") as an individual.

    Local Rule 7-18 instructs that "newly discovered
evidence" is either facts occurring after the time of
decision or those "that in the exercise of reasonable

diligence could not have been known" to the movant at the time of the decision.  See also AcSandS, 5 F.3d at 1263 ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'").  Here, Defendants largely base their Motion on arguments and evidence that were available to them at the time of the summary judgment briefing, yet of which they failed to raise before the Court.  The Court is bewildered as to why Defendants did not previously advance these arguments. Defendants did not argue once that the amount of revenue Plaintiff claimed for disgorgement of profits was incorrect or that it was based on unreliable evidence—regardless of its admissibility.[3]  Nor did Defendants provide or point to any evidence in opposition to the press releases, leaving the Court to conclude there was no triable issue.  The Court acknowledged it was hesitant to rely solely on the press releases when such an exorbitant amount of damages is at stake, as such evidence would ordinarily fall short of a plaintiff's burden of proof.  The Court

---

[3] Defendants argue that they did not need to dispute the press releases or Plaintiff's damages calculation because Plaintiff only stated as an undisputed fact that Defendants "claimed" to have been awarded the contracts, rather than stating that they actually were awarded the contracts.  Such a technical argument is a complete red herring and does not excuse what would be ordinary common sense to argue against such an extreme amount of damages.

agrees that Plaintiff should have done more, but how Defendants expected the Court to determine damages when they provided nothing in response left the Court confounded.  While Plaintiff had the initial burden to prove its case, the standard is clear—the burden then shifts to Defendants to produce admissible evidence showing a triable issue of fact—which Defendants did not do.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However slight Plaintiff met its burden, because Defendants failed to meet their burden in response, the Court begrudgingly put aside its concern over the amount of damages to abide by such legal standards.

Defendants were free to raise these arguments during their briefing regarding Plaintiff's Motion for Summary Judgment.  Defendants may not now raise these arguments in the posture of a motion for reconsideration, and Defendants' Motion should be denied on this basis alone.  See, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'") (quoting Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)); Chapman v. Starbucks Corp., No. 2:09-cv-2526-GEB-EFB, 2011 WL 826810, at *3 (E.D. Cal. Mar. 3, 2011) ("[A] motion for

reconsideration 'may not be used to relitigate old matters[.]'" (second alteration in original) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008)).

In short, Defendants appear to have realized in hindsight their error in failing to raise a single dispute of material fact as to damages, and cannot now assert such arguments that were available to them during the summary judgment briefing. Despite Defendants' utter failure to timely provide these arguments before the Court, the Court will nonetheless consider Defendants' arguments in turn below to determine whether the Court committed a clear or manifestly unjust error in its decision granting summary judgment.

i.  *Reliability of the Press Releases*

1.  *Withdrawn Admissions*

First, Defendants argue that the Court was only able to rely on the press releases because they were authenticated by admissions that were later withdrawn during the time between Defendants' Opposition, filed on August 21, 2018, and the Court's MSJ Order, issued on November 8, 2018.  Plaintiff's First Set of Requests for Admission (the "RFAs") sought admission from Topolewski that the press releases were drafted or issued by him, or someone acting on his behalf. Declaration of Diana Torres ISO Pl.'s Mot. re Summ. J. ("Torres MSJ Decl."), ECF No. 174; id., Ex. C, Pl.'s

RFAs at 6-8, ECF No. 174-3. These admissions were deemed admitted when Topolewski failed to respond, but were later withdrawn by the Magistrate Judge assigned to this case on October 3, 2018. See Order re *Ex Parte* to Withdraw Admissions, ECF No. 231.

Defendants argue that because the admissions were not withdrawn at the time of their Opposition, they "literally could not contest the Press Releases's admissibility." Defs.' Mem. at 20 n.2, ECF No. 268-1. Defendants are correct that Plaintiff relied on Topolewski's admissions as supporting evidence in listing the three press releases in Plaintiff's Statement of Uncontroverted Facts ("Pl.'s SUF"). See Pl.'s SUF ¶ 26(a)-(c), ECF No. 173. However, even though the press releases were supported by Topowelski's admissions, that did not prevent any of the Defendants from arguing that the press releases contain inaccurate information, or that despite what the press releases say, the contracts never came to fruition.[4] As Plaintiff points out, the admissions were served on Topolewski himself, and not the Corporate Defendants, yet none of the Corporate Defendants

_____

[4] Defendants suggest that the Court "was unaware Defendants had successfully challenged the evidence through the *Ex Parte* Application and Order." Defs.' Mem. at 20 n.2. However, the Magistrate Judge merely held that Topolewski's admissions were withdrawn, and made no ruling as to the content of the press releases themselves. See ECF No. 231 at 14:4-6 ("The Court takes no position as to whether the representations on Defendants' website and in their press releases persuasively establish Defendants' actual income.").

objected to the authenticity or accuracy of the press releases.[5]

Defendants further argue that with the admissions withdrawn, the press releases were not authenticated, and relying on them constituted clear error. The Court cited to the press releases as exhibits attached to the Torres MSJ Declaration. In her declaration, Ms. Torres stated that Exhibits N-P contain "true and correct cop[ies] of [the] press release[s]," but she made no mention of the RFAs and did not cite to the RFAs. Torres MSJ Decl. ¶¶ 16-18. Yet, nowhere in Defendants' evidentiary objections did any of the Defendants object to these three paragraphs of the Torres MSJ Declaration for lack of authentication, or any other evidentiary basis.

Defendants also point to Topolewski's deposition to argue that his testimony shows that the contracts never occurred. In the excerpt provided, Topolewski responded "no" to the question of whether he had ever seen the press releases before, and he further testified that he was "unaware of any bids that were made" during his time with the Corporate Defendants. See Defs.' Opp'n to Pl.'s MSJ, ECF No. 187; id.,

---

[5] Defendants argue that they did object to the press releases as violating Rule 37 because the press releases were never properly produced during discovery, however, this is merely a regurgitation of the same argument the Court already dismissed at summary judgment, and as such, the Court need not address it now.

Declaration of Drew Sherman in Opp'n to Pl.'s MSJ
("Sherman MSJ Decl.") Ex. E, Topolewski Dep. at 136:8-
139:23, ECF No. 187-1.  Whether Topolewski denied
knowing of the press releases in his admissions or
deposition has no bearing on whether the press releases
were issued by Corporate Defendants or someone on their
behalf, as Topolewski testified personally and not as a
corporate representative.  Defs.' Statement of Genuine
Disputes of Facts ("Defs.' SGDF") ¶ 8, ECF No. 188.
Notably, Corporate Defendants did not designate a
single corporate witness in response to Plaintiff's
noticed depositions and Plaintiff took the non-
appearance at the deposition of each Corporate
Defendant.  Torres Decl. ISO MSJ Reply ¶ 9, ECF No.
202.  The fact that Topolewski claimed to not have
knowledge of the press releases does not create a
triable issue as to whether Corporate Defendants issued
the press releases.[6]  Nor did any of the Defendants
offer any evidence in opposition to the press releases
to create a triable issue as to whether the contracts

---

[6] As discussed in further detail later in this Order,
Topolewski was held jointly and severally liable with the
Corporate Defendants for his *own* extensive involvement in the
fraudulent activities; joint and several liability under the
Lanham Act does not require that Topolewski personally knew of or
authorized the press releases so long as he was instrumental in
the underlying fraudulent activity of forming the Corporate
Defendants.  Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d
814, 823-24 (9th Cir. 1996) (finding district court erred in
dismissing corporate officers who would be individually liable
under §43(a) for their acts in forming the defendant
corporation).

occurred.  The Court again stresses that Defendants never pointed to Topolewski's deposition in their Opposition to dispute that the contracts were ever performed.

Topolewski filed his first Motion to Withdraw Admissions [185] one day before Defendants filed their Opposition to Plaintiff's MSJ.  At the very least, Defendants should have notified the Court in their Opposition that the Motion to Withdraw Admissions was pending, and that should the admissions be withdrawn, they would object to the admissibility and accuracy of the press releases.  Defendants also had over a month following the Order withdrawing Topolewski's admissions to request to file supplemental briefing, but did not do so.  Fed. R. Civ. P. 15.  The Court was thus left with no argument, evidence, or indication from Defendants that the press releases were inaccurate or unreliable.  Moreover, as Plaintiff points out, in the absence of any evidence or argument by Defendants to oppose the press releases, the press releases themselves contained information listed on Defendants' website, connecting the Corporate Defendants to the press releases.  See Torres MSJ Decl., Ex. D at 2, ECF No. 174-4 (referencing Tom Barrett and Jason Butler, whom Topolewski admitted worked for Corporate Defendants); id., Ex. O at 2, ECF No. 174-15 (listing contact as info@morrison-knudsen.com, Corporate Defendants' email); id., Ex. P at 2, ECF No. 174-16

1  (listing contact as defaulting Defendant Henry Blum,

2  hblum@morrison-knudsen.com).  Defendants provided no

3  evidence to the contrary, leaving the Court to

4  determine that there was no triable issue.  Thus, the

5  Court is unpersuaded by these arguments that it

6  committed a clear or manifestly unjust error.

7                    2.  *EPA Website*

8      Defendants repeatedly argue that the Court is

9  penalizing them for actions they did not commit because

10  they never received the money announced in the press

11  releases.  However, Defendants provide no evidence in

12  support of this assertion, other than the declaration

13  of Mike Johnson, Corporate Defendants' authorized

14  representative,[7] and an exhibit they have attached to

15  their Reply for the first time containing a PDF

16

17      [7] Plaintiff objects to the Declaration of Mike Johnson ISO
18  Defs.' Reply ("Johnson Decl."), ECF No. 276-4, in its entirety.
    Pl.'s Evidentiary Objs. 4-5, ECF No. 284.  Mr. Johnson states in
19  his declaration that the Corporate Defendants never received the
    money stated in any of the three press releases, and that, in
20  fact, no money was received by the Corporate Defendants other
    than what is listed in the Income Statement.  Johnson Decl. ¶¶ 3-
21  5.  As Plaintiff points out in its objections, Mr. Johnson does
    not identify sufficient facts to show the basis of his personal
22  knowledge regarding the contracts, such as his role and
    involvement with the Corporate Defendants, his knowledge of their
23  dealings, or who he spoke to, other than saying he is an
    "authorized representative."  Fed. R. Evid. 602.  Further,
24  Defendants provide no evidence to support Johnson's statements
    other than the EPA listing, which is discussed in the body above.
25  For these reasons, and because Defendants never presented this
    declaration during the time of their Opposition to Plaintiff's
26  MSJ, although they could have, the Court declines to consider the
    Johnson Declaration as "new evidence" for the purposes of a
27  motion for reconsideration and thus **DENIES as MOOT** Plaintiff's
28  objection.

                                   17

document from the EPA's website showing the EPA's list
of "Active Contracts By Vendor Name."  Sherman Reply
Decl. ¶¶ 3-6, ECF No. 276-1; id., Ex. 1, ECF No. 276-2.[8]
Defendants provide this to now dispute only one of the
press releases that claimed a $570 Million contract
awarded by the EPA, arguing that had the contract
actually been awarded to Defendants, they would have
been listed on the website, yet nowhere on the list do
their names appear.  Reply at 5:5-16.  The exhibit
shows the "Last Refresh Date" as 10/26/16," and
Defendants indicate that the PDF is as the list
appeared on www.epa.gov on the date of January 19,
2017.  Declaration of Joshua Eichenstein ISO Defs.' RJN
("Eichenstein Decl.") ¶ 8, ECF No. 286-1.  Given the
dates listed, the EPA listing was accessible to
Defendants long before they ever filed their Opposition
to Plaintiff's MSJ, and thus cannot be considered "new
evidence" for the purposes of a motion for
reconsideration.  See, e.g., TYR Sport, Inc. v. Warnaco
Swimwear, Inc., 709 F. Supp. 2d 821, 839 (C.D. Cal.
2010) (citation omitted) ("The Court may disregard

---

[8] Plaintiff objects to the EPA PDF document on the grounds
that (1) it is procedurally improper as it was neither produced
during discovery, nor attached as an exhibit to either
Defendants' MSJ Opposition or their Motion for Reconsideration;
(2) it is inadmissible hearsay; and (3) it lacks authentication.
Pl.'s Evidentiary Objs. 2-3.  Because the Court has taken
judicial notice of the document, Plaintiff's objections are
**OVERRULED** on the bases of inadmissible hearsay and lack of
authentication.  As to the procedural argument Plaintiff makes,
the Court addresses this argument in the body above.

evidence or arguments on a motion for reconsideration that could reasonably have been presented prior to this Court's ruling.").

Even if the Court were to consider the evidence, it is not clear from the PDF who is considered a "vendor" to be included in the list, at what stage a contract must be at to be included in the list, or whether this is a full and complete list of every contract the EPA has ever granted. The last refresh date of October 26, 2016, is just over six months after the press release was issued announcing the contract, but there is no explanation at what point such a contract would be included on this list, if at all. Because Defendants did not provide any evidence or argument disputing the press releases in their Opposition to the MSJ, when they could have, the Court did not commit clear error. The EPA document is the only evidence Defendants provide now to argue that there is a triable issue, that they should have raised in Opposition to the MSJ. Consequently, this alone is insufficient to meet the standard for the Court to reconsider its MSJ Order

<em>ii. The Court Did Not Fail to Consider Other Material Facts</em>

Defendants assert that there was evidence the Court neglected to consider in its MSJ Order, which raise a genuine issue of fact as to the validity of the press releases, and as such, the Court erred in relying on the press releases.

1.  *Defendants' Income Statement*

Defendants argue that the Court's award of damages was speculative in part because the Court ignored Defendants' purported Income Statement, which Defendants argue creates a triable issue of fact as it shows "less than ███████ in revenue over a four-year period." Specifically, Plaintiff provided an "Income Statement" produced by Defendants during discovery, which shows that for all of the Corporate Defendants combined, their revenue was as follows: (1) ███████ for 2013; (2) ███████ for 2014; (3) ███████ for 2015; and (4) ███████ for 2016. Torres MSJ Decl., Ex. M, ECF No. 178-1. In the absence of any evidence of costs provided by Defendants, Plaintiff attached the Income Statement to show that Defendants claimed total costs and expenses of ███████ for 2013-2016.[9] Defendants are correct that the Court did rely on the Income Statement to deduct costs. However, the Court noted that the Magistrate Judge deemed the Income Statement "plainly inadequate,"[10] and the Court relied on the

_____

[9] The Court notes Plaintiff only included as an undisputed fact in its SUF that Defendants claim total labor costs and operating expenses, see Pl.'s SUF ¶ 27, and made no mention of the claimed revenue as an undisputed fact. Nowhere in Defendants SGDF did they assert the claimed revenue from the Income Statement as an undisputed fact. See generally Defs.' SGDF, ECF No. 188.

[10] The Magistrate Judge found that "Defendants' production of two pages of financial summaries only partially addressing the period identified by the Court is plainly inadequate. Plaintiff is entitled, at a minimum, to all of the documents Defendants consulted to create the Income Statements, as well as any

statement solely for the purpose of its showing of costs, since Plaintiff conceded as much.  MSJ Order at 51 ("Even though the Court found that the two-page financial statement Defendants initially provided was inadequate, Plaintiff has conceded that in the absence of any showing of costs by Defendant, Plaintiff will accept the summary's showing of Defendants' total costs and expenses for 2013-2016 as ███████████.").

The Court essentially threw Defendants a bone here because it was Defendants' burden to prove their costs, yet they did not point to any evidence, nor did they argue any amount of costs to be deducted from the amount Plaintiff submitted for Defendants' revenue. Because the burden was on Defendants to prove costs, the Court could have decided to not deduct any amount at all, and Plaintiff's award would have been even higher—by about ███████████.  Defendants failed to even point to the Income Statement once in their Opposition to argue that they received a different amount of revenue, or that the revenue listed in the Income Statement was accurate.

The Court relied on the press releases because no other evidence of Defendants' financials were

_____

additional documents that might contradict or otherwise call into question the accuracy of the information in those Statements."  Mem. re Pl.'s Mot. for Contempt, 13:6-12, ECF No. 154.  The Court agrees that the Income Statement was "plainly inadequate" as it provides no indication of where the alleged revenue or costs came from.

presented, and the Court surmised that this could be because Defendants received more than what the press releases accounted for.  Defendants argue that the exact opposite of what the Court concluded is true—that the Court "ignored the alternative possibility that Defendants had no other documentation because there was such minimal business; this happens to be the true explanation."  Defs.' Mem. at 21:3-10.  Yet, Defendants do not explain where the "minimal profits" on their Income Statement were derived from and how they spent millions of dollars that would generate such a large deficit in profit.  If this was the true explanation, all Defendants had to do was say so in their Opposition.  To date, Defendants have not provided any further evidence relating to their financials and now only offer argument, this is entirely insufficient to merit the rare instance of granting a motion for reconsideration.

Finally, Defendants argue that Plaintiff could have relied on its own financials, but this is a clear misunderstanding of the law for disgorgement of profits.  Plaintiff asserted in its Complaint they would be seeking an accounting of profits, Compl. ¶ 3, and repeatedly sought Defendants' financial information throughout discovery.  MSJ Order at 49-50.  Never once did Plaintiff assert they would be seeking damages in any form other than disgorgement of profits, and with respect to profits, a "plaintiff shall be required to

prove defendant's sales *only*; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a)( emphasis added).  Thus, Plaintiff could not have relied on its own financials.

## 2.  *Discovery Conduct*

Defendants argue that they were not wholly uncooperative throughout discovery, a factor the Court considered in its damages analysis.  As detailed in the MSJ Order, the Magistrate Judge ordered Defendants to supplement discovery several times to provide financial information.  MSJ Order at 50-51.  Defendants argue that after the June 27 Order re Contempt [154], they filed supplemental discovery including a Declaration of Mike Johnson, the Corporate Defendants' authorized representative, on August 24, 2018 [191].  Defendants further argue that on September 7, the Magistrate Judge ruled that Defendants' August 24 supplemental responses "satisf[ied] the June 27 Order."  See Reply at 16:19-23 (quoting ECF No. 210 at 26:1-4).[11]  Defendants point out

---

[11] On July 24, 2018, Plaintiff filed a Motion to Hold Defendants in Civil Contempt for violating the Court's June 27 Order to supplement discovery [162].  The responses were due by July 9, 2018, and Defendants failed to meet that deadline and did not serve their supplemental responses until July 18, 2018, after several nudges from Plaintiff.  Contempt Order 3:3-22, ECF No. 210.  Specifically, Defendants are referring to their supplement to the Court's Order that they provide all monthly, quarterly, and annual income statements and other financial statements from July 21, 2013 until the filing of the Complaint because their previous Income Statement was inadequate.  Id. at 15:19-28.  The Magistrate Judge did find Defendants responses were satisfactory because Topolewski responded that he is no longer affiliated with the Corporate Defendants and does not have access to such

that the Magistrate Judge added that the Corporate
Defendants should execute a declaration if they were
unable to obtain bank statements or other documents,
and Defendants did so by serving another Declaration of
Mike Johnson on September 21, 2018, explaining that the
Corporate Defendants' bank records were unavailable
because the bank would not release statements without
authorization from defaulting Defendant Henry Blum, who
could not be found.  Id. at 16:24-17:5; Sept. 21
Johnson Decl. ¶¶ 7-11, ECF No. 268-4.  While this does
partly explain the lack of financial documents, it does
not change the fact that Defendants repeatedly did not
abide by discovery orders prior to this and neglected
to raise any of this to the Court during the summary
judgment briefing.  Defendants cannot expect the Court
to search every single docket entry to find an answer
as to why they were non-compliant in handing over
financial information.  Freeman Investment Mgmt., Co.
LLC v. Frank Russel Co., 729 Fed. App'x 590, 591
(quoting United States v. Dunkel, 927 F.2d 955, 956
(7th Cir. 1991) ("Judges are not like pigs, hunting for
truffles [buried in briefs]".).  The Court reminds
Defendants that it is not the Court's duty to do the
work for them, and failing to raise this in their

_____

documents, and Mike Johnson, the representative for Corporate
Defendants, stated that he contacted the Corporate Defendants'
accounting department and was told that no documents exist.  Id.
at 18-20.

1  Opposition is not grounds for reconsideration.

2                    iii.    *Personal Liability of Topolewski*

3       Defendants argue that the amount of damages is

4  manifestly unjust with respect to Topolewski, an

5  individual.  Defendants argue there was no discussion

6  in the MSJ Order supporting personal liability against

7  Topolewski, however Defendants fatally grouped

8  Topolewski in with the Corporate Defendants and never

9  once argued before the Court that Topolewski should not

10 be held personally liable.  Defendants also point to

11 Topolewski's deposition testimony that he never

12 received any "profit sharing" or "compensation."

13 Sherman Decl. ¶ 6; id., Ex. 2, Topolewski Dep.  Whether

14 Topolewski knew of the press releases, knew of any

15 profits by Corporate Defendants, or received any

16 profits himself is irrelevant.  Holding Topolewski

17 personally liable is not manifestly unjust because he

18 is liable jointly and severally for his direct

19 involvement in the extensive fraud committed in forming

20 the Corporate Defendants.  Comm. for Idaho's High

21 Desert, Inc. v. Yost, 92 F.3d 814, 823-24 (9th Cir.

22 1996) (finding district court erred in dismissing

23 corporate officers who would be individually liable

24 under §43(a) for their acts in forming the defendant

25 corporation); Transgo, Inc. v. Ajac Transmission Parts

26 Corp., 768 F.2d 1001, 1021 (9th Cir. 1985) ("A

27 corporate officer or director is, in general,

28 personally liable for all torts which he authorizes or

directs or in which he participates, notwithstanding
that he acted as an agent of the corporation and not on
his own behalf.").

In sum, Defendants have not provided any new
evidence or argument that was not available to them at
the time of the summary judgment briefing, and fail to
establish the Court committed a clear error or manifest
injustice because: (1) the RFAs Defendants argue were
withdrawn were with respect to Topolewski, yet none of
the Corporate Defendants disputed that they won and
performed the contracts; (2) none of the Defendants
disputed the reliability of the press releases, which
is different than their admissibility; (3) Defendants
did not provide any evidence in opposition to the press
releases creating a triable issue; (4) Topolewski is
liable jointly and severally for being involved in the
fraudulent activity; and, most significantly, (4) none
of the Defendants ever argued that they never received
the profits alleged.

The only other argument Defendants put forth is
that the sheer amount of damages is manifestly unjust
to impose by relying only on the press releases.[12]   The

---

[12] The only authority Defendants provide for this
proposition is a 2016 decision from this district, Kaloud, Inc.
v. Shisha Land Wholesale, Inc.   Sherman Decl. ¶ 5, Ex. 1, ECF No.
268-6.   Defendants argue that Kaloud is analogous because there,
the district court granted reconsideration because "[t]o hold
otherwise would be to penalize [d]efendant for a violation that
it did not legally commit."   Reply at 4:18-22.   Not only is this
decision merely persuasive authority, but it is also is
distinguishable because there, the court found that it applied

Court has been troubled about the amount of damages ever since the parties completed briefing on summary judgment and it became apparent that Plaintiff should have done more to support the press releases.  However restless the Court has been, and still is over the amount of damages, Defendants' procedural failures left the Court with no clear avenue other than to rest upon the standards of civil procedure and the shifting burden of proof on summary judgment.  Thus, the Court is unconvinced by the arguments Defendants now raise that reconsideration of disgorgement of profits is necessary because it boils down to one issue—that Defendants never once disputed the revenue or offered any evidence in opposition to the press releases to create a triable issue of fact.  The Court did not commit a clear or manifestly unjust error in its summary judgment decision because it determined disgorgement of profits based on the only evidence that was before the Court at the time—the three press releases.  Defendants failure to raise a dispute or provide evidence in opposition to the press releases does not justify the rare occurrence of granting a

the wrong statutory section with regard to counterfeit marks and on reconsideration it became clear that the defendant was not liable at all because the counterfeit marks at issue were not registered at the time of the wrongdoing under the applicable section.  See Sherman Decl. Ex. 1 at 5.  Here, Defendants have not provided any new evidence showing they are not legally liable, rather, the issue here is whether there was sufficient evidence supporting the amount of damages.

motion for reconsideration.  <u>Lal v. California</u>, 610 F.3d 518, 524 (9th Cir. 2010) ("An attorney's actions are typically chargeable to his or her client and do not ordinarily constitute extraordinary circumstances warranting relief from judgment under Rule 60(b)(6)."). For all the reasons already discussed, Defendants have not provided any new evidence of their revenue, and Defendants' mere disagreement with the Court's determination is insufficient grounds for reconsideration.  <u>Andrews v. Pride Indus.</u>, No. 2:14-cv-02154-KJM-AC, 2017 WL 117899, at *2 (E.D. Cal. Jan. 11, 2017) (citation omitted) ("'A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation ...' of that which was already considered by the Court in rendering its decision.").  As such, the Court **DENIES** Defendants' Motion.

   2.  <u>Attorneys' Fees</u>

   Plaintiff requests **$881,790.30** in attorneys' fees. Plaintiff has provided two declarations by Yungmoon Chang, as well as time entries logged by the Accounting Department of Kirkland & Ellis from May 8, 2017, to December 15, 2018.  Declaration of Yungmoon Chang ("Chang Decl.") ¶ 3, ECF No. 262-4; <u>id.</u>, Ex. A, Accounting Spreadsheet, ECF No. 262-5.  The total fees incurred is $958,196.40.  Ex. A at 40.  The total is broken down as follows:

Partner Diana Torres          414.5 hours @ $892/hr
                              15.2 hours @ $988/hr[13]
                              = $384,751.60

Associate Yungmoon Chang      608.15 hours @ $554/hr
                              43.2 hours @ $669/hr
                              = $365,815.90

Partner David Klein           64 hours @ $818/hr
                              = $52,352

Associate Colin Bosch         2.8 hours @ $506/hr
                              = $1,416.80

Associate Katherine McNutt    4.2 hours @ $581/hr
                              = $2,440.20

Law Clerk Fady Essam Saleh    12.5 hours @ $308/hr
                              = $3,850

Senior Paralegal              257.9 hours @ $334/hr
Keith Catuara                 21.3 hours @ $352/hr
                              = $93,636.20

Senior Paralegal              12.5 hours @ $317
Jelani Solper                 = $3,962.50

Senior Litigation Support
Specialist Colleen C. Caamano 38.3 hours @ $299/hr
                              = $11,451.70

Senior Litigation Support
Specialist Wendy D. Mitchell  18.5 hours @ $299/hr
                              = $5,531.50

Paralegal LaTonya D.          29.8 hours @ $260/hr
Fountain                      1.3 hours @ $273/hr
                              = $8,102.90

Junior Paralegal              84.9 hours @ $189/hr
Stephanie S. Rosa             14.6 hours @ $198/hr
                              = $18,936.90

Junior Paralegal              14.3 hours @ $189/hr
Eric J. Tintle                = $2,702.70

---

[13] These numbers reflect the hours Ms. Torres billed after October 1, 2018, the date at which her hourly rate increased. The same applies below to Ms. Chang, Mr. Catuara, Ms. Fountain, and Ms. Rosa.

```
Junior Paralegal        9.5 hours @ $189/hr
Terry Ellis             = $1,795.50

Library Factual Research 5 hours @ $290/hr
                         = $1,450

Total:   $958,196.40
```

See Supplemental Declaration of Yungmoon Chang ("Supp. Chang Decl.), ECF No. 303; Chang Decl., Ex. A. Plaintiff already collected three sets of fees during this litigation: (1) $21,815.80 in fees related to Plaintiff's November 28, 2017 Motion for Civil Contempt, ECF No. 97; (2) $32,874.00 in fees related to Plaintiff's May 10, 2018 Motion for Further Contempt, ECF No. 155; and (3) $21,716.30 in fees related to Plaintiff's July 24, 2018 Contempt Motion, ECF No. 233. As such, Plaintiff deducted $76,406.10 from the total, leaving $881,790.30 in fees remaining in this Action.

     a.   *Reasonable Rates*

Defendants do not contest the reasonableness of the hourly billing rates of Plaintiff's attorneys, thus the rates are not at issue here. Even so, the Court notes that it has previously found Plaintiff's rates reasonable. Order re Contempt Attorneys' Fees at 1:1-14, ECF No. 97 (finding that "while on the higher end," Diana Torres' rate of $892 per hour, associate Chang's rate of $554, and paralegal Keith Catuara's rate of $334, "are in line with rates courts in the Central District have previously approved"); Order re Further Contempt Attorneys' Fees 9:21-10:11, ECF No. 155

(same).  Since then, Plaintiff's counsel's rates did increase starting on October 1, 2018, to $988 per hour for partners, $506-$669 for associates, and $352 for legal assistants—all of which remain within or minimally above the market range.  See Univ. Elecs., Inc. v. Univ. Remote Control, Inc., 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) (showing intellectual property partners in the range of $600 to $1,100 per hour); Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AC SHX, 2015 WL 1746484, at *20 (C.D. Cal. Mar. 24, 2015) (associate rate between $350 and $690 and paralagel rate between $240 and $345).  As such, the rates here are reasonable.

                    b.   *Reasonable Hours Expended*

     The Court must next assess "whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013).  In doing so, courts perform an "'hour-by-hour analysis of the fee request,' and exclude those hours for which it would be unreasonable to compensate the prevailing party."  Id. (quotation admitted).  The requested hours "may be reduced where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary."  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

i. *Block Billing*

Defendants argue that Plaintiff's counsel included improper block billing.  Specifically, Plaintiff's counsel block-billed as follows: (1) 20.9 hours of Ms. Torres' time; (2) 34.7 hours of Ms. Chang's time; and (3) 3.6 hours of Mr. Klein's time.  Pl.'s Reply at 3:10-20; Chang Decl. ¶ 3, Ex. A (entries for May 8, 19, and 29 of 2017; June 2, 8, 13, 16, 21, 23, 26, of 2017; and July 8-9, 11-13, 17-18, 20-21 of 2017).

Block billing is the "time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007) (internal quotation marks and citation omitted).  Courts may reduce block-billed hours because block billing "makes it more difficult to determine how much time was spent on particular activities." Id. at 948.  Courts generally impose a 5% to 20% reduction for hours block-billed. Pierce v. Cnty of Orange, 905 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012).  Even where entries are sufficiently detailed to give courts an accurate sense of the task performed, as in this case, block billing runs the risk that the time spent was inflated, even if only slightly, and does not allow a court to precisely determine whether the time devoted to each individual task was reasonable. Id. at 1031-32.  Thus, the Court will impose an across-the-board reduction of 20% for

hours submitted in block billing format.  See, e.g., Welch, 480 F.3d 942 at 948-49 (across-the board cut of 20% to block-billed entries was justified).  As a result, Ms. Torres' total time shall be reduced by 4.18 hours ($3,728.56)[14]; Ms. Chang's hours will be reduced by 6.94 ($3,844.76)[15]; and Mr. Klein's time shall be reduced by .72 hours ($588.96).

> ii. *Duplicate and Unnecessary Billing*

Defendants argue that there are several instances of double-billing and duplicative work.  Defendants first argue that Ms. Chang and Mr. Klein have double-billed for "trivial internal discussions and conferences," but do not point to any specific entry. Defs.' Opp'n 4:15-17, ECF No. 264.  "[C]onferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation."  Contreras v. City of Los Angeles, No. 2:11-cv-1480-SVW-SH, 2013 WL 1296763, at *5 (C.D. Cal. Mar. 28, 2013) (citation omitted).  Upon review of the timesheet, the Court finds that the conferences were not excessive, as the communications involving Mr. Klein appear to be from May to July 2018, focusing on strategy and preparation for both Plaintiff's Motion

---

[14] Because all of the block-billed entries were prior to October 1, 2018, this number reflects Ms. Torres' rate of $892/hr.

[15] Because all of the block-billed entries were prior to October 1, 2018, this number reflects Ms. Chang's rate of $554/hr.

for Summary Judgment and Motion for Contempt.  <u>See</u> Ex.
A at 22-23 (entries from 5/18/18, 5/21/18, 5/23/18,
5/29/18, 7/17/18, 7/18/18, 7/20/18, 7/23/18, and
7/24/18).  It does not appear that Ms. Chang also
billed for these same conferences, thus no double-
billing occurred.  <u>Cf.</u> <u>Robinson v. Plourde</u>, 717 F.
Supp. 2d 1092, 1099 (D. Haw. 2010) ("[W]hen a party's
counsel meet with one another, the Court deducts the
duplicative time billed.") (citation omitted).

Defendants also argue that Ms. Torres billed for
"brief discussion[s]", "prepar[ing] materials" that a
paralegal could have done, "stragiz[ing]" for half a
day at time, and for hundreds of conferences and phone
calls with little detail as to their purpose.  Opp'n at
3:18-22.  However, Defendants again fail to point to
any specific billing entry out of the near forty-page
spreadsheet Plaintiff provided.  Defendants do,
however, state that "[i]n the middle of June 2017,"
Torres billed more than $10,000 "essentially ordering
assistants and associates to perform tasks," and that
in the same month, she charged "nearly $700 just for an
email."  Opp'n at 4:1-6.  Upon review of the June 2017
entries, the Court only found that Ms. Torres seemed to
spend time directing tasks on two occasions, once where
Ms. Torres met with summer associates for research
needs, and once where she directed her assistant
regarding a list of documents.  <u>See</u> Ex. A at 2
(6/13/17, 6/21/17 entries).  The Court does not find

these excessive, and moreover, both of these entries were block-billed with other tasks, and thus have already been reduced.

Additionally, Defendants point to entries in December of 2017 where "seemingly the entirety of Plaintiff's counsel's firm was working on discovery, billing tens of thousands of dollars to do largely duplicative work." Opp'n at 4:10-12. The timesheet shows Ms. Chang, Ms. Torres, and Mr. Catuara as the only three people who billed for the month of December—a far cry from the entire firm. See Ex. A at 10-12. Defendants further argue that in one week in December 2017, Ms. Chang and Ms. Torres billed nearly twenty hours and over $10,000 revising discovery at least four times. Id. at 4:12-14. The Court finds these billings reasonable given that during this time Plaintiff's counsel drafted and revised the following: (1) First Set of Requests for Admission with corresponding exhibits; (2) Second Set of Requests for Production; (3) Second Set of Requests for Admission with corresponding exhibits; (4) Notice of Deposition of Topolewski; and (5) Second Set of Interrogatories. Reply at 4:23-5:2.

Defendants next argue that over a three-day span in July 2018, paralegals billed for cite checking and exhibit checking as follows: Ms. Ellis (8.5 hours); Ms. Rosa (21.8 hours); and Mr. Catuara (22.5 hours). Opp'n at 4:26-5:1. As Plaintiff points out, during this

time, Plaintiff's counsel was preparing their MSJ which was comprised of the memorandum, five declarations, a 56-page long statement of uncontroverted facts and conclusions of law, 78 exhibits (including a physical exhibit that required lodging), and a corresponding application to seal with proposed redacted and public versions of filings.  Checking cites and exhibits are not "purely clerical" tasks that cannot be billed. Forouzan v. BMW of North Amercia, LLC, No. CV 17-3875-DMG (GJSx), 2019 WL 856395, at *6 (C.D. Cal. Jan. 11, 2019) (declining to exclude similar entries of "preparing pleadings, reviewing client files, drafting deposition subpoenas, coordinating production of documents, and reviewing trial exhibit binders and deposition transcripts" from fee recovery).  Defendants do not cite any authority otherwise, thus the Court declines to exclude these hours from Plaintiff's fee award.

Finally, attorneys Colin Bosch and Katherine McNutt also billed a combined total of seven hours on November 8 and 9, 2018, to prepare Plaintiff's motions *in limine*.  Chang Decl. ¶ 3; id., Ex. A, at 38-39. Plaintiff argues it delayed pretrial preparations as long as possible while the parties awaited the Court's MSJ Order, and that this was the only pretrial work billed.  Further, Plaintiff argues that Ms. McNutt and Mr. Bosch billed at a lower rate than either Ms. Chang or Ms. Torres in an effort to allocate tasks to the

lowest appropriate biller.  Defendants argue that the "entirety" of Ms. McNutt's billed time was "simple paralegal research" that could have been accomplished by somebody who does not charge nearly $600 an hour. Opp'n at 4:22-25.  Again, Defendants fail to cite any authority to support their position that having lawyers, rather than paralegals, conduct legal research is a basis for reduction.  Given that Mr. Bosch and Ms. McNutt both bill at a lower rate than the two primary attorneys on this case, it was not unreasonable for them to bill for a total of seven combined hours to conduct legal research.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

### III. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Alteration, Amendment, or Reconsideration [268]; and **GRANTS** Plaintiff's Motion to Set Attorneys' Fees [262], but reduces the hours reasonably expended for the block-billed hours as follows:  Ms. Torres' total is reduced by $3,728.56 to$381,023.04;  Ms. Chang's total is reduced by $3,844.76 to $361,971.14; and Mr. Klein's total is reduced by $588.96 to $51,763.04.  As such, the cumulative total of attorneys' fees awarded is $873,628.02.

**IT IS SO ORDERED.**


DATED: April 24, 2019          /s/ RONALD S.W. LEW

                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge