1  JEFFER MANGELS BUTLER & MITCHELL LLP
   STANLEY M. GIBSON (Bar No. 162329)
2  *sgibson@jmbm.com*
   DAN P. SEDOR (Bar No. 139091)
3  *dsedor@jmbm.com*
   LAUREN BABST (Bar No. 313156)
4  *lbabst@jmbm.com*
   1900 Avenue of the Stars, 7th Floor
5  Los Angeles, California 90067-4308
   Telephone:  (310) 203-8080
6  Facsimile:  (310) 203-0567

7  Attorneys for Defendant Gary G. Topolewski

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   Western Division

12 | AECOM ENERGY & CONSTRUCTION, INC., an Ohio Corporation, | Case No. 2:17-cv-05398-RSWL (SSx)

13 | | Assigned to: Judge Ronald S.W. Lew

14 |          Plaintiff, |

15 |     v. | **DEFENDANT GARY G. TOPOLEWSKI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS, TERMINATING SANCTIONS, AND ATTORNEY'S FEES**

16 | JOHN RIPLEY, *et al.*, |

17 |          Defendants. |

18 | |

19 | | Date: January 18, 2022
   | | Time: 10:00 a.m.
20 | | Ctrm: TBD

21 | | Action Filed:          July 21, 2017
   | | Discovery Cutoff:     November 22, 2021
22 | | Pretrial Conference: January 25, 2022
   | | Trial Date:            March 1, 2022
23

24

25

26

27

28

JMBM | Jeffer Mangels | Butler & Mitchell LLP

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION .................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

    A.   The Ninth Circuit's Reversal And Remand And Plaintiff's Refusal To Withdraw Its $1.8 Billion Abstract of Judgment ................ 2

    B.   Status Conference With This Court ........................................................ 3

    C.   Plaintiff Served No New Discovery On Any Of The Defendants .......... 3

    D.   Plaintiff's Third Party Subpoenas ........................................................ 4

    E.   The Court Granted Mr. Topolewski's Motion For Protective Orders But Allowed The Subpoenas To Stand To The Extent That They Seek Information Related To The Corporate Defendants ............................................................................................... 4

    F.   Plaintiff's Counsel Refused To Follow Up On The Third Party Subpoenas As They Related To The Corporate Defendants ................. 5

    G.   The Discovery Disputes Underlying Plaintiff's Sanctions Motion Relate Solely To The Corporate Defendants, Not Mr. Topolewski .......................................................................................... 6

    H.   Mr. Topolewski Has Not Held A Position With The Corporate Defendants Since Before this Litigation Commenced ........................... 8

    I.   Mr. Topolewski had Nothing to do with the Corporate Defendants' Compliance or Lack Thereof with the Preliminary Injunction ............................................................................................... 9

    A.   Legal Standard .................................................................................... 11

    B.   Plaintiff Failed To Meet The Prerequisites For Bringing A Motion For Terminating Sanctions ...................................................... 11

    C.   Terminating Sanctions Are Unjustified Because Mr. Topolewski Cannot Be Held Vicariously Liable For The Alleged Misconduct Of The Corporate Defendants .................... 12

    D.   Mr. Topolewski's Actions Do Not Rise To The Level Of Misconduct Required To Justify Terminating Sanctions .................... 13

        1.   Plaintiff Has Not Shown That Mr. Topolewski Violated Any Discovery Order ................................................................. 14

        2.   Alleged Violations of the Injunction Are Not Grounds for Terminating Sanctions Against Mr. Topolewski ........................ 15

JMBM | Jeffer Mangels Butler & Mitchell LLP

i

# **TABLE OF CONTENTS**

## **(CONTINUED)**

**PAGE**

3. The *Malone* Factors Do Not Support an Award of Terminating Sanctions Against Mr. Topolewski ........................ 16

    a. The Public's Interest in a Speedy Trial ............................ 16

    b. The Court's Interest in Docket Management ................... 16

    c. Risk of Prejudice ................................................................ 16

    d. Public Policy Favoring Judgment on the Merits ............. 17

    e. The Availability of Lesser Sanctions ................................ 18

E. Plaintiff's Adverse Inferences Regarding Damages Are Unwarranted Because They Are Speculative, Punitive, Made In Bad Faith, And Contrary To The Law Of The Case ........................... 18

    1. Plaintiff's Request that the Court Use the Press Release for Damages Runs Afoul of the Law of the Case ........................... 19

    2. Plaintiff's Requested Inference Of Monetary Sanctions Based On A Press Release Is Improper ...................................... 20

    3. Plaintiff's Request that the Court Treble Costs is Punitive ........ 21

        a. Plaintiff's Requested Damages are Disallowed Under the Lanham Act. ...................................................... 21

        b. Plaintiff's Proposed Sanctions Are Not Compensatory ...................................................................... 22

F. Plaintiff's Per Diem Demand Is Unsupported By Case Law .............. 23

G. Attorneys' Fees Should Not Be Awarded As Sanctions ..................... 23

H. Other Rules And Principles Do Not Support Sanctions ...................... 24

    1. Federal Rule of Civil Procedure 26(g) ....................................... 24

    2. Federal Rule of Civil Procedure 16(f) ........................................ 24

    3. Central District Local Rule 83-7 ................................................ 25

    4. Inherent Authority Sanctions ...................................................... 25

IV. CONCLUSION ............................................................................................ 25

JMBM | Jeffer Mangels Butler & Mitchell LLP

# TABLE OF AUTHORITIES

**Page**

## CASES

*AECOM Energy & Construction, Inc. v. Morrison Knudsen Corporation,*
851 Fed. Appx. 20 (9th Cir. 2021) .......................................................... 2

*Am. Unites for Kids v. Rousseau,*
985 F.3d 1075 (9th Cir. 2021) ............................................................... 11

*Barnd v. City of Tacoma,*
664 F.2d 1339 (9th Cir. 1982) ............................................................... 12

*Bonilla v. Volvo Car Corp.,*
150 F.3d 88 (1st Cir. 1998) ................................................................... 12

*CBS Broad. Inc. v. FilmOn.com, Inc.,*
814 F.3d 91 (2d Cir. 2016) .................................................................... 23

*City of Colton v. Am. Promotional Events, Inc.,*
No. CV0906630PSGSSX, 2012 WL 13013035 (C.D. Cal. June 7, 2012) .................................................................................................. 11

*Coach v. O'Brien,*
No. 10 Civ 6071(JPO)(JLC), 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012) .................................................................................................. 22

*Computer Task Group, Inc. v. Brotby,*
364 F.3d 1112 (9th Cir. 2004) ............................................................... 14

*Conn. Gen. Life Ins. Co. v. New Images Beverly Hills,*
482 F.3d 1091 (9th Cir. 2007) .......................................................... 14, 17

*DermFx, Inc. v. Obagi Med. Prods.,*
No. SACV 15-01999 JVS (DFMx), 2017 U.S.Dist.LEXIS 88466 (C.D. Cal. Mar. 24, 2017) .................................................................... 21

*Diamond Ben. Life Ins. Co. v. Dreyfuss,*
119 F.3d 5 (9th Cir. 1997) ..................................................................... 16

*Dreith v. Nu Image, Inc.,*
648 F.3d 779 (9th Cir. 2011) ................................................................. 11

iii

# TABLE OF AUTHORITIES

## (CONTINUED)

**PAGE**

*Earp v. Davis*,
   881 F.3d 1135 (9th Cir. 2018) ...................................................................... 18

*Enovative Techs., LLC v. Leor*,
   110 F. Supp. 3d 633 (D. Md. 2015) ............................................................. 15

*In re the Exxon Valdez*,
   102 F.3d 430 (9th Cir. 1996) ....................................................................... 25

*Goodyear Tire & Rubber Co. v. Haeger et al.*,
   137 S. Ct. 1178 (2017).................................................................... 21, 22, 23

*Harhay v. Starkey*,
   No. 08–30229–MAP, 2010 WL 5475706 (D. Mass. Aug. 26, 2010) ................. 22

*Henry v. Gill Industries, Inc.*,
   983 F.2d 943 (9th Cir. 1993) ..........................................................13, 14, 15, 16

*His & Her Corp. v. Shake-N-Go Fashion, Inc.*,
   No. 2:11-CV-05323-CAS, 2015 WL 1227997 (C.D. Cal. Mar. 13,
   2015) ........................................................................................................ 19

*Hook v. Ariz. Dep't of Corrections*,
   107 F.3d 1397 (9th Cir. 1997) ...................................................................... 23

*Ins. Co. of IR v. Compagnie Des Bauxites*,
   456 U.S. 694 (1982) .................................................................................... 11

*JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp and Paper Corp.
   Tbk*,
   854 F. Supp. 2d 528 (N.D. Ill. 2012)............................................................. 23

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...................................................................... 21

*Loops, LLC v. Phoenix Trading, Inc.*,
   594 Fed. Appx. 614 (Fed. Cir. 2014) ............................................................. 12

iv

1

**TABLE OF AUTHORITIES**

2

**(CONTINUED)**

3

4

**PAGE**

5    *Maier v. Fleischmann Distilling Corp.*,

6        390 F.2d 117 (9th Cir. 1968) ................................................................ 20

7    *Malone v. U.S. Postal Serv.*,

8        833 F.2d 128 (9th Cir. 1987) ........................................................ 13, 16

9    *Martin v. Brown*,

        63 F.3d 1252 (3d Cir. 1995) ............................................................... 12

10

11   *OmniGen Res., LLC v. Yongqiang Wang*,

        No. 6:16-cv-268-MC, 2017 WL 5505041 (D. Or. Nov. 16, 2017) ..................... 21

12

13   *Peermusic III Ltd. v. LiveUniverse, Inc.*,

        No. CV 09-6160-GW PLAX, 2011 WL 2358549 (C.D. Cal. May

14       24, 2011) ....................................................................................... 14

15   *PepsiCo v. Triunfo-Mex, Inc.*,

16       189 F.R.D. 431 (C.D. Cal. 1999) ...................................................... 21

17   *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,

        460 F.3d 1217 (9th Cir. 2006) .................................................... 14, 17

18

19   *Primus Auto. Fin. Servs., Inc. v. Batarse*,

        115 F.3d 644 (9th Cir. 1997) ...................................................... 12, 13

20

21   *Matter of Search of Content Stored at Premises Controlled by Google Inc.*,

22       No. 16-mc-80263-RS, 2017 WL 4700056 (N.D. Cal. 2017) ............................ 23

23   *Sigma Financial Corp. v. Gotham Insurance Co.*,

        (C.D. Cal., Nov. 6, 2017, No. SACV1501531AGDFMX) 2017 WL

24       10543646 ....................................................................................... 19

25   *U-Haul Int'l, Inc. v. Jartran, Inc.*,

26       793 F.2d 1034 (9th Cir. 1986) .......................................................... 24

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels Butler & Mitchell LLP

# TABLE OF AUTHORITIES

## (CONTINUED)

**PAGE**

*U.S. Legal Support, Inc. v. Hofioni*,
   No. 2:13-CV-1770 LKK AC, 2014 WL 172336 (E.D. Cal. Jan. 15, 2014) ........................................................................................................ 15

*U.S. Philips Corp. v. KXD Tech., Inc.*,
   No. 2:05-cv-08953-ER-PLAx, 2007 WL 4984153 (C.D. Cal. 2007) ................. 23

*United Constr. Prod., Inc. v. Tile Tech, Inc.*,
   843 F.3d 1363 (Fed. Cir. 2016) ...................................................................... 16

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) .......................................................................... 19

*United States v. Kinetic Concepts, Inc.*,
   No. CV0801885BROAGRX, 2017 WL 8948062 (C.D. Cal. Aug. 21, 2017) ..................................................................................................... 16

*Valley Eng'rs Inc. v. Electric Eng. Co.*,
   158 F.3d 1052 (9th Cir. 1998) ........................................................................ 17

*Vecron Exim Ltd. v. Clinton Lee Stokes, III*,
   No. CV1702944CASRAOX, 2018 WL 3830916 (C.D. Cal. July 19, 2018) ........................................................................................................... 11

*Wanderer v. Johnston*,
   910 F.2d 652 (9th Cir. 1990) .................................................................. 16, 17

*Matter of Yagman*,
   796 F.2d 1165 (9th Cir. 1986), *opinion amended on denial of reh'g sub nom.*, *In re Yagman*, 803 F.2d 1085 (9th Cir. 1986) .......................... 22

**STATUTES AND RULES**

15 U.S.C. § 1117(a) ............................................................ 19, 21, 23, 24

Central District Local Rule 83-7 ........................................................ 25

Fed. R. Civ. P. 16 ......................................................................... 24, 25

1

## **TABLE OF AUTHORITIES**

2

### **(CONTINUED)**

3

4                                                                                    **PAGE**

5   Fed. R. Civ. P. 26.................................................................................24

6   Fed. R. Civ. P. 37...................................................................11, 15, 18

7   Fed. R. Civ. P. 45.................................................................................17

8   Fed. R. Civ. P. 54.................................................................................24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   __INTRODUCTION__

In this trademark infringement action, Plaintiff AECOM Energy & Construction, Inc. ("Plaintiff") failed to properly support its $1.8 billion damages claim when it sought and obtained summary judgment using three press releases as its sole damages evidence, resulting in a reversal by the Ninth Circuit Court of Appeals and remand to this Court for discovery and trial on the issue of damages. Incredibly, however, Plaintiff failed on remand to seek any discovery relating to its purported damages from the Corporate Defendants[1] or from individual defendant Gary G. Topolewski ("Mr. Topolewski"), and refused to wait for third party discovery relating to the Corporate Defendants that the Magistrate Judge recently allowed to proceed.

Instead, Plaintiff now seeks many millions of dollars in sanctions against Mr. Topolewski even though Plaintiff has no evidence of any discovery misconduct or any violation of a discovery order by Mr. Topolewski that could possibly justify the draconian sanctions Plaintiff seeks against him.  To the contrary, the evidence is clear that before remand, Mr. Topolewski appeared for his deposition and Plaintiff never requested a second date for his deposition, nor sought an order compelling him to appear for a deposition.  The evidence is also clear that after remand, Plaintiff never requested a date for his deposition, nor sought to depose Mr. Topolewski on damages, much less a court order compelling him to appear.  Indeed, Plaintiff's sole foray into discovery motion practice following remand was its unsuccessful renewal of a motion to compel production of Mr. Topolewski's tax returns, which was denied by the Magistrate Judge for the third time.

To get around its own failure to seek proper discovery relating to damages and to ignore that Mr. Topolewski has committed no sanctionable discovery

---

[1] The "Corporate Defendants" are Morrison Knudsen Corporation, Morrison-Knudsen Company, Inc., Morrison-Knudsen Services, Inc., and Morrison-Knudsen International, Inc.

1

misconduct, Plaintiff improperly lumps Mr. Topolewski together with the Corporate Defendants and seeks to hold him vicariously liable for millions of dollars in sanctions.  Plaintiff's motion is based solely on the Corporate Defendants' discovery conduct, even though the evidence is clear that Mr. Topolewski has not held any position with any of the Corporate Defendants since before this litigation commenced (and thus cannot be held liable either for the Corporate Defendants' discovery conduct or their alleged violations of the Court's injunction).

Perhaps even worse, Plaintiff bases the largest of its three alternative sanctions calculations—for $36 million—on one of the same press releases that the Ninth Circuit specifically ruled are insufficient evidence of Plaintiff's damages, which is now the law of the case.  Plaintiff cannot end-run a Ninth Circuit ruling by way of a sanctions motion.

After remand, Plaintiff can point to no discovery violation by Mr. Topolewski and he cannot be held vicariously liable for the conduct of the Corporate Defendants.  Plaintiff's motion is fatally flawed and should be denied in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Ninth Circuit's Reversal And Remand And Plaintiff's Refusal To Withdraw Its $1.8 Billion Abstract of Judgment

The Court entered its order granting Plaintiff's motion for summary judgment on November 8, 2018.  [Dkt. 242.]  On September 9, 2019, Plaintiff obtained nine separate abstracts of judgment against each Defendant in the amount of $1,832,268,824.73, consisting of the $1.8 billion judgment, plus $28,545,046.95 in interest, attorneys' fees of $873,628.02, and costs of $15,477.76.  [Dkt. 327–35.]

On March 24, 2021, the Ninth Circuit reversed the judgment solely on the issue of damages.  *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 851 Fed. Appx. 20 (9th Cir. 2021).  The Ninth Circuit reversed because "AECOM's only evidence establishing Defendants-Appellants' sales were three press releases." *Id.* at 21–22.  Based specifically on this lack of evidence, the Ninth Circuit remanded

1  the case to this Court to determine the issue of damages.  *Id.* at 22.

2      Despite this reversal, however, Plaintiff failed and refused to remove the

3  recorded $1.8 billion plus abstract from the public record.

4      **B.    Status Conference With This Court**

5      Three months later, at a June 22, 2021 status conference, this Court reiterated

6  the difficult situation it was put in due to the lack of evidence to support the press

7  releases upon which Plaintiff relied:  "I was not happy with $1.8 billion because of

8  the lack of materials presented by the plaintiffs.  You guys, plaintiff, could have

9  done more, period.  I was very upset at you guys."  [Dkt. 361 at 8:6-9.][2]

10     At this same status conference, Plaintiff's counsel requested "four to five

11 months" to complete discovery on damages. [*Id.* at 16:9.]  Yet, Plaintiff has not

12 "done more" with the reopened discovery period.  Indeed, although Plaintiff

13 subpoenaed a number of third parties, it did not subpoena even one of the entities

14 referenced in the three press releases questioned by this Court and rejected by the

15 Ninth Circuit.  Plaintiff also sought no discovery from any of the Corporate

16 Defendants or from Mr. Topolewski.  Plaintiff's counsel never requested a

17 deposition of Mr. Topolewski or explained how or why such a deposition would be

18 related to damages.  [Declaration of Dan P. Sedor ("Sedor Decl."), ¶ 6.]

19     **C.    Plaintiff Served No New Discovery On Any Of The Defendants**

20     Plaintiff's only "discovery" to Mr. Topolewski came by way of a renewed

21 motion to compel—the third iteration of this motion, ***which had already been***

22 ***denied twice***.  [Dkt. 118 at 1:2; Dkt. 154 at 2:26–7.]  On September 3, 2021,

23 Plaintiff filed a third Motion to Compel Response to Request for Production

24 ("RFP") No. 21, [Dkt. 380], which sought "[a]ll tax returns and bank statements of

25 _____

26 [2] Plaintiff waited until the status conference to amend its abstract of judgment to
   eliminate the improper reference to the $1.8 billion damages award that the Ninth
27 Circuit reversed months earlier.  [Dkt. 363–71.]  Each of these Amended Abstracts
   of Judgment reflect the Court's attorneys' fee award of $873,628.02 and costs of
28 $15,477.76.  These Abstracts of Judgment remain recorded as of the writing of this
   Opposition, even though there is no judgment in this case.

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   any Individual Defendant since 2008," [Dkt. 154 at 16:16–17].  This third attempt

2   failed just as the prior two had.  [Dkt. 397 at 4 ("The reasoning in those Orders

3   remain[s] valid.  It is still not clear how tax returns of an individual would be

4   relevant and proportional to the issues remaining in this case.").]

5       **D.     Plaintiff's Third Party Subpoenas**

6       Plaintiff's only "new" discovery came in the form of various subpoenas

7   issued to, among others, one bank (US Bancorp), seven telecommunications service

8   providers, and Defendants' prior counsel.  [Dkt. 373-2–11.]

9       The subpoena served on US Bancorp sought various bank records, including

10  bank statements and documents showing transfers and balances and transactions

11  from the Corporate Defendants and numerous individuals including Mr.

12  Topolewski.  [Dkt. 373–10.]  From the telecommunications service providers,

13  Plaintiff sought documents sufficient to identify the account holder and payment

14  method used (and related information) for seven different phone numbers.  [Dkt.

15  373-3–9.]  From Defendants' prior counsel, Plaintiff sought information to identify

16  the source of funds used to pay Defendants' prior counsel.  [Dkt. 373-2.]

17      In response, and as permitted by law, Mr. Topolewski filed a Motion to

18  Quash Subpoenas and/or for a Protective Order Barring Enforcement of Subpoenas.

19  [Dkt. 373.]  The Corporate Defendants filed a similar motion.  [Dkt. 374.]

20      **E.     The Court Granted Mr. Topolewski's Motion For Protective**

21             **Orders But Allowed The Subpoenas To Stand To The Extent That**

22             **They Seek Information Related To The Corporate Defendants**

23      The Magistrate Judge issued her order on the Defendants' motions on

24  December 16, 2021.  [Dkt. 397.]  As to the US Bancorp subpoena, the Magistrate

25  Judge granted Mr. Topolewski's motion for a protective order "exclud[ing] from

26  production applications and bank statements for personal bank accounts owned by

27  the individuals listed in the subpoena," which included Mr. Topolewski.  [*Id.* at 3.]

28  The Magistrate Judge also granted Mr. Topolewski's motion for a protective order

4

as to two of the phone numbers in the telecommunications service provider subpoenas for Metal Jeans, Inc. and Topolewski America.  [*Id.* at 4 ("Even assuming Metal Jeans is paying Defendants' financial obligations in this litigation, that fact alone does not render discovery about Metal Jeans phone number proportional to the needs of this case.  Similarly, Plaintiff makes no showing that a phone number at Topolewski America has any relevance to this case.").]

Similarly, the Magistrate Judge granted Mr. Topolewski's Motion to Quash the Subpoena served on Defendants' prior counsel, the Adli Law Group, questioning the relevance of the information sought by way of the subpoena.  [*Id.* ("The court cannot discern any way in which the information sought would be directly relevant and proportional to the needs of this case.").]

With respect to the Corporate Defendants, the Court did not quash the subpoena to US Bancorp insofar as it sought the bank records solely related to the Corporate Defendants.  [*Id.* at 2–3.]  Yet, Plaintiff claims that "Defendants objected to every single subpoena, and AECOM was unable to obtain discovery, yet again." [Dkt. 398-1 at 1:23-25.]  ***This assertion is simply not correct.***

The Court granted Mr. Topolewski's Motion for a Protective Order as to his bank records and the phone numbers, and granted his Motion to Quash the Adli Group Subpoena.  [Dkt. 397 at 4.]  Otherwise, ***there is nothing in the Court's order preventing Plaintiff from obtaining discovery <u>related to the Corporate Defendants pursuant to the US Bancorp and telecommunication service provider subpoenas</u>***, despite Plaintiff's false claim that it is "unable to obtain discovery." [Dkt. 398-1 at 1:23-25.]

### F. <u>Plaintiff's Counsel Refused To Follow Up On The Third Party Subpoenas As They Related To The Corporate Defendants</u>

In light of the Magistrate Judge's ruling, counsel for Mr. Topolewski reached out to Plaintiff's counsel to propose a continuance of the discovery cutoff, writing:

The Magistrate Judge otherwise allowed Aecom to proceed with its

5

third party subpoenas as to the Corporate Defendants.  In light of this ruling, we think that the best way to proceed at this point is to stipulate to continue the trial and trial dates, the discovery cutoff, and the hearing date and briefing schedule on the defendants' motions for summary judgment and Aecom's motion for discovery sanctions.  ***This will give Aecom time to conduct the discovery permitted by the Magistrate Judge's order*** and to file its motion and opposition with the results of that discovery.  Otherwise, we are concerned that the Court will need to continue these matters on its own because the record will not be complete.

[Sedor Decl., Ex. 1 at 5–6 (emphasis added).]

Plaintiff rejected this offer: "Fact discovery closed nearly a month ago.  We will not stipulate to move a date that has already passed."  [*Id*. at 5.]

### G.    The Discovery Disputes Underlying Plaintiff's Sanctions Motion Relate Solely To The Corporate Defendants, Not Mr. Topolewski

Plaintiff argues that "Defendants have—to this day—refused to provide any information about any contracts they entered or any revenue they received."  [Dkt. 398-1 at 7:12-13.]  Mr. Topolewski simply does not have access to this information, and he cannot control the Corporate Defendants' action or inaction with respect to this discovery.  [Declaration of Gary G. Topolewski ("Topolewski Decl."), ¶ 2.]

Mr. Topolewski reiterated this lack of access in his Third Amended Responses to Plaintiff's Requests for Production.  These requests for production sought all documents relating to the Corporate Defendants' revenue (RFP No. 19) and all tax returns and bank statements of the Corporate Defendants (RFP No. 20).  [Sedor Decl., Ex. 2 at 17–8.]  Previously, Defendants responded to these requests collectively, but in these Third Amended Responses, Mr. Topolewski responded ***individually***, confirming under oath that, with respect to RFP No. 19, he "is unaware whether or not responding documents exist.  If they existed, [he] does not have

1   possession or control of documents."  [*Id.*, Ex. 3 at 24.]  And as relates to RFP No.

2   20, Mr. Topolewski confirmed that he "is not in possession or control of requested

3   records of Corporate Defendants."  [*Id.* at 25.]

4       Plaintiff complains that Defendants did not respond to other discovery, but

5   Mr. Topolewski did respond to Requests for Admission 1–14, as well as numerous

6   requests for production, and interrogatories, and, in some cases, he amended his

7   responses three times to comport with court orders.  [Sedor Decl., Ex. 3.]  After the

8   remand, Plaintiff never reached out to Mr. Topolewski's current counsel to obtain

9   responses to any purported outstanding discovery (likely because this discovery was

10  unnecessary, as well as irrelevant to the damages issue).  [Sedor Decl., ¶ 6.]

11      Moreover, Mr. Topolewski, unlike the Corporate Defendants, did appear for

12  his deposition.  Plaintiff claims that Mr. Topolewski left his deposition early, and

13  yet Plaintiff's counsel never contacted Mr. Topolewski after remand to depose him

14  on the issue of damages, much less explained how his deposition would be relevant

15  to the issue of damages.  [*Id.*]

16      Plaintiff cites to Docket 210—a discovery order entered prior to remand—in

17  support of the claim that Defendants have failed to respond to discovery, failed to

18  appear for depositions, and failed to comply with discovery deadlines or court

19  orders.  [Dkt. 398-1 at 1:12-16.]  But that order clearly distinguishes Mr.

20  Topolewski from the Corporate Defendants.  As it relates to Mr. Topolewski, the

21  only further response ordered by the Magistrate Judge was for him to include one

22  and a half more years in his response to Plaintiff's Interrogatory No. 15.  [Dkt. 210

23  at 15:7–9.]  This Interrogatory sought "all revenues and profits earned by

24  Topolewski America, Inc. since its date of incorporation and how those revenues

25  and profits, in whole or in part, are shared with or received by any of the

26  Defendants."  [Dkt. 154 at 9:4–8.]  Otherwise, the Court denied the motion with

27  respect to Mr. Topolewski.  [*Id.* at 20:9–10 (denied as to "RFP No. 19"); *id.* at

28  22:20–21 (denied as to "RFP No. 20").]

After remand, Plaintiff's counsel never requested any further information regarding this response to Interrogatory No. 15 or explained why it would need a supplemental response for the damage issue. [Sedor Decl., ¶ 6.] Regardless, Topolewski America, Inc. has never made any money from the Corporate Defendants, before or after the Complaint was filed. [Topolewski Decl., ¶ 4.]

Plaintiff alleges that Defendants' discovery responses were false, claiming that certain addresses listed in response to Interrogatory No. 3 were not real. But these addresses relate solely to each "shareholder, director, officer, and employee of the **Corporate Defendants**." [Dkt. 99 at 11.] and not Mr. Topolewski, who again had no access to the information underlying this response, and who had no control over the Corporate Defendants when they provided this information. [Topolewski Decl., ¶ 2–3.] Plaintiff also asserts that names the Corporate Defendants provided were not real, but Plaintiff offers no evidence beyond speculation.[3] [*See* Dkt. 398-1 at 7:6–10.]

## H.    Mr. Topolewski Has Not Held A Position With The Corporate Defendants Since Before this Litigation Commenced

Mr. Topolewski has not held a position with the Corporate Defendants for years. Mr. Topolewski does not appear in the Nevada Secretary of State filings for these entities since before Plaintiff even filed the Complaint on July 21, 2017. [RJN, Ex. A at 23.] Mr. Topolewski was listed as President and Secretary for Morrison-Knudsen Services, Inc. in a June 6, 2017 Annual List of Officers and Directors, (*Id.*), but was not in the subsequent list filed on June 21, 2017, (*Id.* at 21–2), nor in any filing afterwards, (*Id.* at 5–20). He has not appeared in the Morrison Knudsen Corporation's filings as an officer or director since an October 22, 2014

---

[3] Plaintiff points to corporate filings for Metal Jeans which include the name "Diane Torres," (Dkt. 398-1 at fn. 3), but this has nothing to do with this case or the damages issue, a fact confirmed by the Magistrate Judge. *See* Dkt. 397 at 3 (finding that phone numbers associated with Metal Jeans are not relevant to this case).

8

1   filing.[4]  [*Id.*, Ex. B at 55.]  He last appeared in a Morrison Knudsen International

2   Inc. filing on January 23, 2012.[5]  [*Id.*, Ex. C at 79.]  And he has never appeared in a

3   filing for Morrison-Knudsen Company, Inc.  [*Id.*, Ex. D.]

4        Having no evidence of discovery misconduct by Mr. Topolewski to support

5   sanctions, Plaintiff instead improperly tries to tie him to the Corporate Defendants.

6   Plaintiff claims that Defendants falsely denied that he was an officer of the

7   Corporate Defendants, pointing to a declaration asserting that he was "the Chief

8   Executive Officer of Defendant MORRISON-KNUDSEN INTERNATIONAL

9   INC." [Dkt. 27-1 at 2.]  This was erroneous, and Defendants subsequently corrected

10  it, as noted by Plaintiff's own submission [Dkt. 398-1 at 6:22–25] and the

11  declaration of counsel who drafted the declaration.  [Declaration of John Jahrmarkt,

12  ¶¶ 2–3.]  This fact is also confirmed by the Secretary of State filings, which, as

13  noted above, show that Mr. Topolewski was not listed as an officer, let alone CEO,

14  of Morrison Knudsen International Inc. on or around August 15, 2017, (RJN, Ex. C

15  at 55–6), nor had he appeared on a filing for the entity since 2012, (*Id.* at 79).

16  ## I.   Mr. Topolewski had Nothing to do with the Corporate Defendants'

17  ## Compliance or Lack Thereof with the Preliminary Injunction

18       Plaintiff notes that the Corporate Defendants failed to abide by the Court's

19  preliminary injunction entered on October 4, 2017, [Dkt. 50], but Mr. Topolewski

20  has not held any position with any of the Corporate Defendants since before that

21  injunction was entered, (RJN, Ex. A at 21–3), nor has he exerted any control over

22  their decision to abide by the injunction.  [Topolewski Decl., ¶ 3.]

23       This lack of control comports with the evidence set forth in Corporate

24

---

25  [4] Mr. Topolewski was not listed on Morrison Knudsen Corporation's subsequent

26  January 31, 2015 Annual List of Officers and Directors, (RJN, Ex. B at 44–5.), and he has not appeared on any filing since the October 22, 2014 filing. (*Id.* at 28–43).

27  [5] Mr. Topolewski was not listed on the subsequent Annual List of Officers and Directors for E Planet Communications Inc. (later renamed to Morrison Knudsen

28  International Inc.) filed on January 28, 2012, (*Id*, Ex. C at 77–8), and he has not appeared on any filing since the January 23, 2012 filing. (*Id.* at 53–76).

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  Defendants' declarations, in which corporate officer Mike Johnson details the

2  entities' compliance with the preliminary injunction.  [*See* Dkt. 62, 87.]  Mr.

3  Johnson filed both declarations on behalf of the corporate entities.  [Dkt. 62 at 2:9–

4  13; Dkt. 87 at 2:12–15.]  In the first declaration, Mr. Johnson asserts, "***I directed my***

5  ***staff***" to "change the corporate name of each defendant . . . [,] to contact all vendors,

6  suppliers, customers and creditors . . . [, and] to contact each directory service and

7  provide information that the company names have changed," and that "***I directed my***

8  ***accounting staff*** to change all letterhead and invoices."  [Dkt. 62 at 2:14-15, 3:4-5,

9  3:14-15, 4:3-4.]  The second declaration contained similar directives, including Mr.

10 Johnson's statement that "I directed my staff to pull down the website

11 http://morrisonknudsen.com/." [Dkt. 87 at 2:26–27.]

12      Mr. Topolewski, for his part, filed one declaration, stating that he "gave a

13 copy of this Court's Order Re: Plaintiff's Motion for Preliminary Injunction to Mike

14 Johnson . . . [and] asked that he take appropriate actions to see that the corporate

15 defendants comply with the order. . . . I have since come to believe that Mr. Johnson

16 took appropriate actions to effectuate the order. . . . I have reviewed Mr. Johnson's

17 declaration filed today and believe that through his actions, the corporations and I

18 are in compliance with the court order."  [Dkt. 63 at 2:6–14.]  This was the extent of

19 Mr. Topolewski's ability to influence the Corporate Defendants' actions.

20 [Topolewski Decl., ¶ 3.]

21      As for the recent claimed resurrection of www.morrisonknudsen.com, the

22 domain provider NameBright.com confirmed that, since June 18, 2020, the

23 website's registrant was located at 2049 Century Park East, Suite 2525, Los

24 Angeles, CA 90067, ***not*** the address Plaintiff claims is affiliated with Mr.

25 Topolewski.  [Sedor Decl., Ex. 4 at 30.]

26

27

28

## III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 37 governs sanctions for failure to cooperate in discovery.  Terminating sanctions are considered a "draconian remedy" and a "lethal weapon" only appropriate in extreme circumstances.  *Vecron Exim Ltd. v. Clinton Lee Stokes, III*, No. CV1702944CASRAOX, 2018 WL 3830916, at *4 (C.D. Cal. July 19, 2018).  The Supreme Court has established "two standards that must guide the exercise of the court's discretion" in awarding sanctions:  "[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery."  *City of Colton v. Am. Promotional Events, Inc.*, No. CV0906630PSGSSX, 2012 WL 13013035, at *6 (C.D. Cal. June 7, 2012) (internal quotations omitted)).

### B.   Plaintiff Failed To Meet The Prerequisites For Bringing A Motion For Terminating Sanctions

Terminating sanctions are only available when a party violates a discovery order.  *See* Fed. R. Civ. P. 37(b); *Ins. Co. of IR v. Compagnie Des Bauxites*, 456 U.S. 694, 707 (1982).  Under the statute, "order" means an order giving a party "unequivocal notice that a court has asked that certain documents be produced." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011).  Thus, a motion to compel is a prerequisite for terminating sanctions and terminating sanctions will not be granted until such a motion has come before the court.  *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1084 (9th Cir. 2021).

Since remand, Plaintiff has not filed any motions to compel.  Instead, Plaintiff renewed one motion to compel regarding a single document request that the previous Magistrate Judge denied.  The renewed motion to compel was denied again and this time by a different Magistrate Judge.  Plaintiff has not otherwise requested from Mr. Topolewski any additional documents, propounded any interrogatories, or noticed any deposition of Mr. Topolewski.  Because Plaintiff did not file any motion

1   to compel, the court has not yet entered a discovery order, and thus Plaintiff cannot

2   move for terminating sanctions on the theory that Mr. Topolewski violated court-

3   ordered discovery.  Plaintiff's motion for terminating sanctions should be denied for

4   this reason alone.

5   **C.**   **Terminating Sanctions Are Unjustified Because Mr. Topolewski**

6   **Cannot Be Held Vicariously Liable For The Alleged Misconduct Of**

7   **The Corporate Defendants**

8   A defendant cannot be sanctioned on a theory of vicarious liability.  *See*

9   *Loops, LLC v. Phoenix Trading, Inc.*, 594 Fed. Appx. 614, 617 (Fed. Cir. 2014)

10   (applying 9th Cir. law) (lower court improperly sanctioned defendants for

11   misconduct of co-defendant); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d

12   644, 650 (9th Cir. 1997) (reversing sanctions because district court did not "assess . .

13   . attorney's individual conduct and . . . make an explicit finding that he . . . acted in

14   bad faith."); *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982); *Bonilla*

15   *v. Volvo Car Corp.*, 150 F.3d 88, 93–94 (1st Cir. 1998) ("Codefendants cooperate

16   all the time, but that does not mean that one defendant is automatically responsible

17   for misconduct of another."); *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)

18   (sanctions can only be based on one's own improper conduct).

19   In addition, before a court can impose sanctions pursuant to its inherent

20   power, it must find that the party acted in bad faith.  *See Primus*, 115 F.3d at 650;

21   *Barnd*, 664 F.2d at 1343 (remanding case for withdrawal of personal sanctions or

22   further findings of fact on personal acts of bad faith).  A determination of bad faith

23   requires an assessment of each individual's conduct, separate and apart from the

24   conduct of the other parties.  *See Primus*, 115 F.3d at 650.  Failure to conduct an

25   individual assessment before the issuance of sanctions merits reversal.  *See id.*

26   Here, Plaintiff attempts to justify sanctions against Mr. Topolewski on the

27   basis of the Corporate Defendants' actions.  Plaintiff repeatedly addresses

28   Defendants collectively: (1) "Defendants have refused to produce any reliable

12

1   information regarding their financial records," [Dkt. 398-1, at 12]; (2) "Defendants

2   repeatedly put back online the Infringing Website advertising their services," *id.*; (3)

3   and Defendants "spoliated or withheld the underlying evidence, or . . . committed a

4   complete fraud on the Court by simply making up the numbers," *id.* at 13 (footnote

5   omitted).  Plaintiff makes no attempt to carve-out Mr. Topolewski and point to a

6   specific discovery order that he violated after the remand because there is none.

7       For example, as support for its request of terminating sanctions, Plaintiff

8   alleges that all Defendants meet the willful misconduct standard because they failed

9   to sit for depositions and violated the preliminary and permanent injunctive orders.

10  [*See* Dkt. 398-1, at 18.]  Mr. Topolewski, however, did sit for a deposition and does

11  not control the websites that are the basis for Plaintiff's allegations regarding the

12  injunctive orders.  [Topolewski Decl., ¶ 3.]  Plaintiff admits that its allegations

13  regarding the injunctions pertain to the Corporate Defendants and not to Mr.

14  Topolewski.  [*See* Dkt. 398-1, at 3.]  Plaintiff's own motion states that the

15  Defendants have continued to use the MK name "in their corporate names."  [*Id.*]

16  For the time period to which Plaintiff refers, these "corporate names" are not

17  attributable to Mr. Topolewski.  [Topolewski Decl., ¶ 3.]  Plaintiff repeated

18  references to the Defendants as a collective is insufficient under the law to justify

19  the imposition of sanctions.

20      **D.    Mr. Topolewski's Actions Do Not Rise To The Level Of**

21              **Misconduct Required To Justify Terminating Sanctions**

22      Considering only the individual allegations against Mr. Topolewski, as is the

23  rule when determining an award of sanctions, Mr. Topolewski did not engage in any

24  litigation misconduct that rises to the level of sanctionable behavior.  The imposition

25  of terminating sanctions requires willfulness, bad faith, or disobedient conduct that

26  is "not shown to be outside the control of the litigant."  *Henry v. Gill Industries,*

27  *Inc.*,  983 F.2d 943, 948 (9th Cir. 1993).  Only upon a finding of willful misconduct

28  does the Court apply the *Malone* factors to determine whether terminating sanctions

1   are appropriate.  *See id.*  The goal of these inquiries "is [to determine] whether
2   parties will ***ever*** have access to true facts or receive the discovery necessary for the
3   case to move forward."  *Conn. Gen. Life Ins. Co. v. New Images Beverly Hills*, 482
4   F.3d 1091, 1097 (9th Cir. 2007).

5        Plaintiff claims that Defendants meet the willful misconduct standard because
6   they "violat[ed] numerous orders, fail[ed] to respond to discovery and sit for
7   depositions, miss[ed] deadlines, and violat[ed] the preliminary and permanent
8   injunction orders."  [Dkt. 398-1 at 18.]  As noted above, Mr. Topolewski sat for a
9   deposition before remand, and Plaintiff never sought to depose him after remand.
10  Plaintiff admits that, after Mr. Topolewski had to leave his deposition early, counsel
11  made "assurances that he would be made available to complete his deposition."
12  [Dkt. 398-1, at 5.]  Yet after remand, Plaintiff never sought a deposition date for
13  him, much less a court order for his deposition. Plaintiff's allegations are therefore
14  not correct.

15       **1.    Plaintiff Has Not Shown That Mr. Topolewski Violated Any**
16              **Discovery Order**

17       As a threshold matter, an inquiry into alleged misconduct can only commence
18  if Mr. Topolewski violated a discovery order.  To support its claims that he did so in
19  this case, Plaintiff cites three inapposite cases:  *Peermusic III Ltd. v. LiveUniverse,*
20  *Inc.*, No. CV 09-6160-GW PLAX, 2011 WL 2358549 (C.D. Cal. May 24, 2011);
21  *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112 (9th Cir. 2004); and *In re*
22  *Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006).  In
23  *Peermusic III*, the court held that the defendants acted with willful misconduct after
24  failing to comply with an order compelling them to produce documents and an order
25  to show cause.  *See* 2011 WL 2358549, at *12.  In *Computer Task Group*, the court
26  granted "five orders compelling [the defendant] to cooperate with discovery." 364
27  F.3d at 1114.  *In re Phenylpropanolamine* addresses failure to comply with Case
28  Management Orders and is therefore inapplicable here.  *See* 460 F.3d at 1233–34.

14

1   Plaintiff points to no discovery order that Mr. Topolewski violated because

2   there is none.  The only discovery order Plaintiff has sought and obtained since

3   remand is an order *denying*, for the third time, Plaintiff's Motion to Compel the

4   production of Mr. Topolewski's tax returns.  [*See* Dkt. 397 at 4.]

### 2.   <u>Alleged Violations of the Injunction Are Not Grounds for Terminating Sanctions Against Mr. Topolewski</u>

7   Actions only rise to the level of willful misconduct required for an award of

8   terminating sanctions if those actions are "not shown to be outside the control of the

9   litigant."  *Henry*, 983 F.2d at 948.  Further, even if such actions were within Mr.

10  Topolewski's control, violation of an injunctive order is not, on its own, grounds for

11  terminating sanctions.  *See U.S. Legal Support, Inc. v. Hofioni*, No.  2:13-CV-1770

12  LKK AC, 2014 WL 172336, at *3 (E.D. Cal. Jan. 15, 2014) (denying motion for

13  terminating sanctions for violation of preliminary injunction  because "the court

14  does not construe a[n] . . . injunction . . . to be a 'discovery  order'"); *Enovative*

15  *Techs., LLC v. Leor*, 110 F. Supp. 3d 633, 640 (D. Md. 2015) (default judgment not

16  proper sanction for violations of injunction without violation of Rule 37(b)).

17  Further, the violations of the injunctions alleged by Plaintiff are attributable to

18  the Corporate Defendants, not Mr. Topolewski.  Mr. Topolewski's positions with

19  some of the Corporate Defendants ended before any injunction was entered.  Thus,

20  for the time in question, he had no control over the Infringing Websites nor any

21  control over the Corporate Defendants' decision to abide by the injunction.

22  [Topolewski Decl., ¶ 3.]  As for the claimed resurrection of

23  www.morrisonknudsen.com, NameBright.com, Plaintiff's own source, confirmed

24  that the registrant of the site has been located at 2049 Century Park East, Suite 2525,

25  Los Angeles, CA 90067 since June 18, 2020.  This is not the address Plaintiff claims

26  is affiliated with Mr. Topolewski.  [Sedor Decl., Ex. 4 at 30.]  Therefore, the

27  allegations Plaintiff claims show bad faith and willful misconduct are not within Mr.

28  Topolewski's control.

15

### 3. The *Malone* Factors Do Not Support an Award of Terminating Sanctions Against Mr. Topolewski

After a finding that a party violated a discovery order and acted with willful misconduct, the Court will employ the *Malone* factors to determine whether terminating sanctions are appropriate. *See Henry*, 983 F.2d at 948; *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). "[T]he *Malone* factors are not . . . a script the district court must follow, but 'a way for a district judge to think about what to do.'" *United States v. Kinetic Concepts, Inc.*, No. CV0801885BROAGRX, 2017 WL 8948062, at *5 (C.D. Cal. Aug. 21, 2017). While the Court should consider all of them, "the third and fifth factors . . . are dispositive." *Diamond Ben. Life Ins. Co. v. Dreyfuss*, 119 F.3d 5 (9th Cir. 1997).

#### a. The Public's Interest in a Speedy Trial

The public has an interest in dismissal where a party's "dilatory conduct greatly impede[s] resolution." *United Constr. Prod., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1368 (Fed. Cir. 2016) (applying 9th Cir. law). Plaintiff claims such a public interest exists here because Mr. Topolewski hired counsel to represent him individually. Dismissal is not proper because a party seeks new counsel, and Plaintiff fails to show how this prevented a speedy trial.

#### b. The Court's Interest in Docket Management

The Court's interest in managing its docket is disrupted when "there is no assurance that th[e] matter can proceed to trial on the true facts." *Id* at 1369. Here, Plaintiff had the opportunity, on remand, to seek the "true facts" through discovery but chose not to serve Mr. Topolewski with further discovery.

#### c. Risk of Prejudice

Prejudice, the third *Malone* factor, is "essential" to an award of terminating sanctions. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Prejudice exists where a party's actions interfere "with the rightful decision of the case" or make the "true facts" impossible to obtain. *See id.*

16

1    Any interference with Plaintiff's ability to find the "true facts" on damages is

2    its own fault.  Plaintiff did not propound any discovery on Mr. Topolewski after

3    remand.  Instead, its primary grievance is that Mr. Topolewski objected to the

4    subpoenas it served on third parties.  But Federal Rule of Civil Procedure 45 gives a

5    party the right to object to third party subpoenas.  *See* Fed. R. Civ. P. 45; Notes of

6    Advisory Committee on Rule 45—1991 Amendment ("The purpose of [45(b)(1)]

7    notice is to afford other parties an opportunity to object.").

8    Plaintiff repeatedly blames its inability and refusal to conduct discovery on

9    Mr. Topolewski's objections to its subpoenas, thus asking the Court to sanction him

10   for exercising that procedural right.  [*See* Dkt. 398-1, at 1 ("Defendants objected to

11   every single subpoena, and AECOM was unable to obtain discovery, yet again."); at

12   10 (same) ; at 12 (same); at 14–15 (same); at 22 (same)].  That argument is

13   distinguishable from Plaintiff's cited cases, none of which found objections to third-

14   party discovery prejudicial.  *See In re Phenylpropanolamine*, 460 F.3d at 1227

15   (actions risking unavailability of witnesses and loss of records were prejudicial);

16   *Wanderer*, 910 F.2d  at 656 (violating numerous discovery orders was prejudicial);

17   *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1097 (hiding identities and locations of

18   witnesses was prejudicial); *Valley Eng'rs Inc. v. Electric Eng. Co.*, 158 F.3d 1052,

19   1057–58 (9th Cir. 1998) (withholding and persuading witnesses to lie about a

20   document was prejudicial).  Plaintiff's lack of authority reinforces the fact that

21   objections are not prejudicial nor are they grounds for sanctions.  Plaintiff's

22   argument is all the more unjustified as the Magistrate Judge agreed with Mr.

23   Topolewski and granted a protective order.

24              d.    **Public Policy Favoring Judgment on the Merits**

25   Plaintiff claims that this factor cannot weigh against dismissal because Mr.

26   Topolewski withheld information "by objecting to third-party discovery."  Plaintiff

27   cites the same cases as in its analysis of factor 3, but as noted above, objections are

28   not grounds for sanctions and Plaintiff's cases do not support such a ruling.

### e.   The Availability of Lesser Sanctions

On remand, Plaintiff has not sought any discovery order nor has it moved this Court for lesser sanctions based on any violation of a discovery order.  As noted above, its allegations that Mr. Topolewski prevented Plaintiff from obtaining discovery are unfounded, as Plaintiff never sought discovery from him on damages. Plaintiff is not entitled to terminating sanctions under the *Malone* factors.

### E.   Plaintiff's Adverse Inferences Regarding Damages Are Unwarranted Because They Are Speculative, Punitive, Made In Bad Faith, And Contrary To The Law Of The Case

If a party fails to obey a discovery order, the court "may make such orders in regard to the failure as are just," including "[a]n order that . . . designated facts shall be taken as established for the purposes of the action in accordance with the claim of the party obtaining the order."  Fed. R. Civ. P. 37(b)(2)(A).  Any adverse inference must be reasonable and not merely speculative.  *Earp v. Davis*, 881 F.3d 1135, 1143 (9th Cir. 2018).  "A 'reasonable' inference is one that is supported by a chain of logic, rather than mere speculation dressed up in the guise of evidence."  *Id.*  Here, Plaintiff asks the Court to calculate sanctions based on the adverse inference that one of the press releases is an accurate representation of the Defendants' profits from the use of Plaintiff's trademarks.

Plaintiff alleges that adverse inferences are warranted because they either spoliated or withheld evidence or committed fraud on the Court.  [Dkt. 398-1, at 13.] Plaintiff's "chain of logic" is essentially as follows: (1) Defendants did not produce financial records; (2) Defendants' alleged use of the MK name "is highly profitable"; (3) the income statements produced were "made[] for litigation" and "bogus" and contained "false statements"; (4) Defendants either "spoliated or withheld . . . evidence" or "committed a complete fraud on the Court . . . Or—most likely—both."  [*Id.* (footnote omitted).]  This is not "logic."  It is mere speculation that because the Corporate Defendants failed to produce bank records, they have

spoliated evidence or committed fraud.  Regardless, these accusations are again not
attributable to Mr. Topolewski.

### 1.    Plaintiff's Request that the Court Use the Press Release for Damages Runs Afoul of the Law of the Case

Here, Plaintiff asks the Court to take as true the press release claiming that the
MK Companies were awarded a $36 million job and as a result, to award sanctions
in that amount.  On remand, the scope of the proceedings must comply with the
mandate of the remanding court.  *See His & Her Corp. v. Shake-N-Go Fashion, Inc.*,
No. 2:11-CV-05323-CAS, 2015 WL 1227997, at *2 (C.D. Cal. Mar. 13, 2015).

Everything covered by the appellate court is considered the law of the case.
*See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  The law of the
case doctrine precludes a lower court, on remand, from reconsidering an issue that
has already been decided by the higher court.  *See id.*; *Sigma Financial Corp. v.
Gotham Insurance Co.* (C.D. Cal., Nov. 6, 2017, No. SACV1501531AGDFMX)
2017 WL 10543646, at *2–3 (rejecting proposed adverse inference because it
contradicted the record).  There are five exceptions to this rule, none of which
Plaintiffs cite for the contention that the Court should ignore the law of the case and
consider the press release sufficient to prove damages.  *See Alexander*, 106 F.3d at
876 ((1) the decision was clearly erroneous; (2) an intervening change in the law; (3)
substantially different evidence on remand; (4) other changed circumstances exist;
or (5) injustice would otherwise result).  Further, "[f]ailure to apply the doctrine of
the law of the case absent one of the [exceptions] constitutes an abuse of discretion."
*Id*.

In its opinion, the Ninth Circuit stated, "Defendants-Appellants argue that the
press releases failed to satisfy AECOM's burden of proving Defendants-Appellants'
sales under § 1117(a) because the press releases 'merely announce construction
projects have been awarded,' and fail to show that Defendants-Appellants
completed any of the projects or received any revenue from the projects. We agree."

1  [Dkt. 339-1 at 4.]  Taking one press release as true and awarding sanctions based on

2  it would therefore run afoul of the law of the case and merit reversal.

3          **2.      Plaintiff's Requested Inference Of Monetary Sanctions Based**

4                  **On A Press Release Is Improper**

5          Plaintiff's request that the Court infer that Defendants were awarded $36

6  million based on a press release is an improper attempt to circumvent the law.  The

7  Ninth Circuit remanded this case on the issue of damages because the press releases

8  were insufficient and this Court reopened discovery on the damages issue.  [*See* Dkt.

9  361.]  Yet Plaintiff made no effort to seek any discovery from the third parties

10  identified in the press releases, never served Defendants with discovery relating to

11  the press releases, and made no effort to further investigate the Defendants' "sales."

12  Plaintiff's sanctions motion simply ignores the Ninth Circuit's finding that it "failed

13  to satisfy [its] burden of proving Defendants-Appellants' sales."  [Dkt. 339-1 at 4.]

14          Plaintiff cites *Maier v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir.

15  1968), for the proposition that it is entitled to damages beyond an injunction.  *Maier*

16  specifically deals with scenarios where plaintiffs who can prove profits, via

17  evidence of sales, seek to recover them.  *See id.* at 119 (appeal from award of profits

18  on basis of beer sales).  Here, the Ninth Circuit established the insufficiency of the

19  press releases to prove sales.  [*See* Dkt. 339-1 at 5 n.4 ("Even if we were to view the

20  press releases in the light most favorable to AECOM, we doubt they would support

21  an inference that there were 'sales'—i.e., monies actually received—by Defendants-

22  Appellants, in *any* amount.") (emphasis in original).]  Plaintiff argues that the

23  damages record is "incomplete" because Defendants evaded discovery, but after the

24  Court reopened discovery on damages, Plaintiff did not serve any discovery seeking

25  sales information.

26          Instead of pursuing evidence to support its contention that Defendants

27  accepted and executed the $36 million construction contract, Plaintiff attempts to

28  circumvent the requirement that it support a damages claim with evidence.  Plaintiff

1   now moves the court to grant it the same result—$36 million—via adverse

2   inference, a mechanism that does not require evidentiary proof of economic harm.

3   Plaintiff's improper attempt to avoid its obligation to come forward with evidence to

4   support the amount in the press release should be disregarded.

### 3. Plaintiff's Request that the Court Treble Costs is Punitive

6       If Plaintiff seeks monetary sanctions, it must prove up those damages caused

7   by Mr. Topolewski. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th

8   Cir. 1993) (under the Lanham Act, "[a] plaintiff must prove both the fact and the

9   amount of damage."); *DermFx, Inc. v. Obagi Med. Prods.* No. SACV 15-01999 JVS

10  (DFMx), 2017 U.S.Dist.LEXIS 88466 (C.D. Cal. Mar. 24, 2017) (same).   A

11  sanctions award is limited solely to those fees directly caused by sanctionable

12  misconduct. *Goodyear Tire & Rubber Co. v. Haeger et al.*, 137 S. Ct. 1178, 1186

13  (2017).  Further, under the Lanham Act, costs and fees cannot constitute a penalty,

14  nor can they pass as evidence for revenue and profits. *See* 15 U.S.C. § 1117(a).

### a. Plaintiff's Requested Damages are Disallowed Under the Lanham Act.

17      Section 1117(a) of the Lanham Act entitles a plaintiff who establishes a

18  violation to recover, *inter alia*, the defendant's profits.  "In assessing profits the

19  plaintiff shall be required to prove defendant's sales only; defendant must prove all

20  elements of cost or deduction claimed." *Id.*  This means that sales and costs are

21  calculated separately.  If a defendant does not meet its burden of proving costs, then

22  the relevant figure is sales.  If a plaintiff fails to prove the defendant's profits, it will

23  not recover them. *See Lindy Pen Co.*, 982 F.2d at 1408–09 (no evidence of lost

24  profits presented after plaintiff had additional opportunity to seek evidence).

25  Plaintiff's cited cases did not adopt costs as the measure of damages. *See PepsiCo

26  v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (damages based on proof

27  of profits); *OmniGen Res., LLC v. Yongqiang Wang*, No. 6:16-cv-268-MC, 2017

28  WL 5505041, at *18 (D. Or. Nov. 16, 2017) (damages based on market price of

1    infringing company).  The law does not support the designation of Defendants'

2    alleged costs as Plaintiff's damages under the guise of "sanctions."

3                    **b.**    **Plaintiff's Proposed Sanctions Are Not Compensatory**

4          A monetary sanction for fees and costs "must be compensatory rather than

5    punitive in nature." *Goodyear*, 137 S. Ct. at 1186.  The number must be reasonable,

6    which is impossible to determine when a party receives "a lump-sum sanctions

7    award . . . which is intended to cover a myriad of misconduct over a period of time."

8    *Matter of Yagman*, 796 F.2d 1165, 1184 (9th Cir. 1986), *opinion amended on denial*

9    *of reh'g sub nom.*, *In re Yagman*, 803 F.2d 1085 (9th Cir. 1986).

10         Plaintiff asks the Court to calculate its damages based on an estimate of

11   Defendants' costs because Defendants have not provided any proof of income.

12   Plaintiff mistakenly relies on *Harhay v. Starkey,* No. 08–30229–MAP, 2010 WL

13   5475706, at *6 (D. Mass. Aug. 26, 2010), a trust case, to support this adverse

14   inference.  In *Harhay*, the court did not take costs as profits or loss.  It gave damages

15   to the trust beneficiaries based on an adverse inference because the disputed

16   assets—a residual trust and estate and real property—proved "some loss." *Id.* at *7,

17   *11.  Plaintiff's claim that "Defendants claim to have spent hundreds of thousands

18   of dollars each year," which is not accompanied by a citation, does not rise to that

19   standard of "some loss." *Harhay*, 2010 WL 5475706, at *7.

20         Plaintiff's reliance on *Coach v. O'Brien*, No. 10 Civ 6071(JPO)(JLC), 2012

21   WL 1255276, at *4 (S.D.N.Y. Apr. 13, 2012) is also misplaced.  *Coach*, a statutory

22   damages case, permitted an inference that a party underreported revenues by a factor

23   of 20 when it failed to produce full financial evidence. *See id.* at *2.  But statutory

24   damages are governed by a different provision of the Lanham Act and are irrelevant

25   here, as Plaintiff did not initially elect to recover them.  Here, Plaintiff must provide

26   particularized proof of its damages, especially given the Ninth Circuit's remand for

27   a trial on that very issue.

28

### F.   Plaintiff's Per Diem Demand Is Unsupported By Case Law

Plaintiff demands a $9,000,000 additional monetary sanction based on a calculation of $10,000 per day for each day that this case has been pending in this Court.  Plaintiff claims that courts have imposed this sanction on noncompliant parties, but the case law it cites does not support entitlement to a $10,000 per diem for *past noncompliance*, as Plaintiff suggests.  Indeed, all of the cases cited by Plaintiff only support such an award for *future* noncompliance.  *See Hook v. Ariz. Dep't of Corrections*, 107 F.3d 1397 (9th Cir. 1997) (sanctions of $10,000 per day for future violation of injunctive order); *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91 (2d Cir. 2016) (same); *Matter of Search of Content Stored at Premises Controlled by Google Inc.*, No. 16-mc-80263-RS, 2017 WL 4700056 (N.D. Cal. 2017) (same for future noncompliance with government search warrant); *JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp and Paper Corp. Tbk*, 854 F. Supp. 2d 528 (N.D. Ill. 2012) (same for failure to comply with post-judgment collection orders); *U.S. Philips Corp. v. KXD Tech., Inc.*, No. 2:05-cv-08953-ER-PLAx, 2007 WL 4984153 (C.D. Cal. 2007) (same for future violations of injunction).

There is no legally cognizable basis for a per diem discovery sanction of $10,000 for each day the parties have spent in court.  Moreover, as noted above, Mr. Topolewski has no control over future violations of the injunction in this case.

### G.   Attorneys' Fees Should Not Be Awarded As Sanctions

A discovery sanction awarding attorneys' fees and costs must be reasonable and "go no further than to redress the wronged party for losses sustained." *Goodyear*, 137 S. Ct. at 1186.  When a sanctions award is based upon attorneys' fees, the reasonableness of the award is determined by the reasonableness of the claimed fees.  *See id.*  Recovery should never exceed those expenses and fees that were reasonably necessary to resist the offending action.  *See id.*

The Ninth Circuit remanded this case on the issue of damages under Lanham Act § 1117(a), making attorneys' fees available only upon a showing of exceptional

circumstances.  *See* 15 U.S.C. § 1117(a); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043–44 (9th Cir. 1986).  Plaintiff states that this case reflects exceptional circumstances, but it does not make any allegations against Mr. Topolewski individually to support such an allegation.  [*See* Dkt. 398-1 at 34.]  Nor has Plaintiff proved up its evidence of such fees, depriving Mr. Topolewski and the Court from determining their reasonableness.

Further, Plaintiff claims that the Court should treble damages in part because the Court has "ordered payment of attorneys' fees four times . . . [and] AECOM is still owed nearly $900,000."  [Dkt. 398-1 at 15].  Plaintiff also accuses Mr. Topolewski of trying to avoid paying attorneys' fees.  [*See id.* at 15 n.9.]

Plaintiff ignores the fact that because of the Ninth Circuit's reversal, no final judgment has been entered in this case.  Under Federal Rule of Civil Procedure 54(d)(2), attorneys' fees are not awarded until an entry of judgment.  *See* Fed. R. Civ. P. 54(d)(2).  There has been no enforceable award of attorneys' fees here and Plaintiff's reliance on the Court's earlier award of attorneys' fees is misplaced.

### H.    Other Rules And Principles Do Not Support Sanctions

#### 1.    Federal Rule of Civil Procedure 26(g)

Rule 26(g)(3) provides that the Court may impose sanctions if discovery responses are not "complete and correct as of the time they are made if such a disclosure is made "without substantial justification."  Fed. R. Civ. P. 26(g)(1)(A), (g)(3).  Mr. Topolewski made an incorrect statement in one declaration, and the mistake was later corrected.  Mr. Topolewski's actions are not grounds for sanctions under Rule 26(g).

#### 2.    Federal Rule of Civil Procedure 16(f)

Rule 16(f) gives the Court authority to impose sanctions for failure to appear at pretrial or scheduling conferences, unpreparedness for such conferences, or failure to obey such orders.  *See* Fed. R. Civ. P. 16(f)(1)(A)-(C).  Plaintiff interprets "pretrial" as "before trial," but "pretrial" in the context of Rule 16 refers to the

24

"pretrial conference" and associated filings.  *See* Fed. R. Civ. P. 16.  Neither Mr. Topolewski nor his counsel has committed any of the misconduct in Rule 16(f).

### 3.   Central District Local Rule 83-7

Plaintiff claims that the Court may sanction Mr. Topolewski under Local Rule 83-7 but provides no grounds upon which such sanctions may be based.

### 4.   Inherent Authority Sanctions

While this Court has inherent authority to sanction parties, *see In re the Exxon Valdez*, 102 F.3d 430, 432 (9th Cir. 1996), grounds for such sanctions do not exist here.  As described above, the court may not use its inherent authority to award sanctions on the basis of vicarious liability, *see* Section III.C, nor may it invoke inherent authority sanctions to award a monetary penalty, *see* Section III.E.3, or without a finding of bad faith, *see* Section III.C.  Here, Plaintiff seeks to sanction Mr. Topolewski vicariously for the acts of the Corporate Defendants, to impose on Mr. Topolewski a penalty sanction against of over $9,000,000, and to impute the Corporate Defendants' behavior to Mr. Topolewski as proof that Mr. Topolewski acted in bad faith.  Plaintiff is not entitled to inherent authority sanctions.

## IV.   CONCLUSION

For all of the foregoing reasons, Mr. Topolewski respectfully requests that the Court deny Plaintiff's Motion for Sanctions.


DATED:  December 28, 2021   JEFFER MANGELS BUTLER & MITCELL LLP
STANLEY M. GIBSON
DAN P. SEDOR
LAUREN BABST


By: _____
DAN P. SEDOR
Attorneys for Defendant Gary G. Topolewski