'O'

1     **JS-6**

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11

12  AECOM ENERGY &                    2:17cv05398-RSWL-AGRx
    CONSTRUCTION, INC.,
13                                    **ORDER re:**
              Plaintiff,
14                                    **PLAINTIFF'S MOTION FOR
         v.                           SANCTIONS** [398]
15
                                      **DEFENDANTS' MOTIONS FOR
16  GARY TOPOLEWSKI, et al.,          SUMMARY JUDGMENT** [395,
                                      396]
17            Defendants.

18

19       Plaintiff AECOM Energy & Construction, Inc.

20  ("AECOM") brought this Action for injunctive relief and

21  damages against Defendants Morrison Knudsen Corporation;

    Morrison-Knudsen Company, Inc.; Morrison-Knudsen
22
    Services, Inc.; Morrison-Knudsen International, Inc.
23
    (collectively, "Corporate Defendants"); and Gary
24
    Topolewski ("Defendant Topolewski") (collectively,
25
    "Defendants").  The Action arises out of Defendants'
26
    infringing use of the identity and goodwill of Morrison
27
    Knudsen Corporation ("MK IP" or "MK brand"), which AECOM
28

                              1

1   owns the rights to.

2       Currently before the Court is a Motion for

3   Sanctions filed by AECOM [398], a Motion for Summary

4   Judgment filed by Corporate Defendants [395], and a

5   Motion for Summary Judgment filed by Defendant

6   Topolewski [396].  Having reviewed all papers submitted

7   pertaining to the Motions, the Court **NOW FINDS AND RULES**

8   **AS FOLLOWS**: the Court **GRANTS in part and DENIES in part**

9   AECOM's Motion for Sanctions and **DENIES as moot**

10  Defendants' Motions for Summary Judgment.

11

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1
## I.  BACKGROUND

2
## A.  Factual Background

3 The facts underlying this Action are stated at

4 length in this Court's previous Order granting AECOM's

5 Motion for Summary Judgment and Permanent Injunction.

6 See generally Order re: Pl.'s Mot. for Summ. J., ECF

7 Nos. 242, 243.  The facts alleged by AECOM pursuant to

8 its Motion for Sanctions are as follows[1]:

9 Throughout the underlying discovery period,

10 Defendants showed no respect for this Court or for the

11 judicial process.  Pl.'s Mot. for Sanctions 2:26-27, ECF

12 No. 398-1.  Defendants have violated this Court's

13 preliminary injunction order, ignored multiple discovery

14 deadlines, failed to respond to discovery requests,

15 served false discovery responses, failed to comply with

16 Court orders compelling discovery, and failed to appear

17 at depositions.  Id. at 2:27-3:2.

18

19 ///

20 ///

21 ///

22 ///

23

24 [1] The Court does not cite to the parties' uncontroverted facts given that the Court **DENIES as moot** Defendants' Motions for

25 Summary Judgment.  The Court finds it more appropriate to rely on the facts as stated in AECOM's Motion for Sanctions, as it relies

26 on various orders and court records that have been filed throughout this case.  Accordingly, the Court cites only to the

27 facts contained in the moving papers pursuant to AECOM's Motion for Sanctions in summarizing the facts here.

28

1.     <u>Defendants Violated the Court's Preliminary and Permanent Injunction Orders</u>

On September 28, 2017, this Court granted AECOM's request for a preliminary injunction and enjoined Defendants from using the MK name, including as a domain name. <u>Id.</u> at 3:4-6. However, Defendants failed to abide by the preliminary injunction, necessitating multiple motions to compel. <u>Id.</u> at 3:9-10. Defendants finally complied with the preliminary injunction after over six months had passed and two motions for contempt were filed. <u>Id.</u> at 3:18-19.

On November 8, 2018, this Court granted AECOM's motion for permanent injunction. <u>Id.</u> at 8:18-19. However, Defendants resurrected two infringing websites in direct violation of the permanent injunction. <u>Id.</u> at 4:11-15. As of March 2021 and May 2021, www.morrisonknudsen.com and www.morrison-knudsen.com were live and the domain registrations had been updated. <u>Id.</u> at 4:18-20. AECOM notified Defendants twice before the infringing websites were finally taken offline. <u>Id.</u> at 4:15-22.

///
///
///
///
///
///

4

2.   <u>Defendants Ignored Their Discovery Obligations</u>

On December 4, 2017, during the initial discovery
period for this action, AECOM asked Defendants to
identify "revenue received by any Defendant or
affiliate" for every contract entered "under or using
the Morrison Knudsen name"; and "[f]or each Corporate
Defendant, . . . all revenue earned" since their
respective dates of inception.  <u>Id.</u> at 5:2-7.  Four
years, significant motion practice, and many court
orders later, Defendants have refused to produce
anything.  <u>Id.</u> at 5:7-9.  Defendants failed to respond
to discovery and to appear for depositions, served false
discovery responses, and have failed to produce
financial information.  <u>See id.</u> at 5:12-7:11.

Defendants, to this day, still refuse to provide
any information about any contracts they entered or
revenue they received.  <u>Id.</u> at 7:12-13.  When the
Magistrate Judge compelled discovery of "all revenue"
for each Corporate Defendant for four years before the
filing of the Complaint, Defendants produced only a two-
page "income statement" that the Court found "plainly
inadequate."  <u>Id.</u> at 7:13-16.  The Court stated
Defendants' decision to produce only two pages of
financial information "created specially for this
litigation" merited compelling Corporate Defendants'
corporate tax returns and bank statements.  <u>Id.</u> at 7:16-
19.  However, Corporate Defendants were suddenly unable
to find their bank statements, with Defendants claiming

1   that the bank statements either did not exist or were

2   not in their possession.  Id. at 8:1-4.  AECOM then

3   filed a subsequent motion for contempt, which the Court

4   granted.  Id. at 8:4-6.  Afterwards, Corporate

5   Defendants, through their representative Mike Johnson

6   (who has never appeared for a deposition), averred that

7   it was his understanding that Corporate Defendants "have

8   no legal authority to obtain bank records without Henry

9   Blum's[2] authorization," and that he had been "unable to

10  locate Henry Blum for over a year."  Id. at 8:7-10.

11      3.   The Court Reopened Discovery on Damages

12      Following remand from the Ninth Circuit, the Court

13  reopened discovery on damages.  Id. at 9:16-24.  AECOM

14  served eleven third-party subpoenas, seeking: account

15  information for the infringing websites; account

16  information for telephone numbers published by

17  Defendants; and bank statements from financial

18  institutions believed to be used by Defendants, as well

19  as identification of the bank from which Defendants'

20  previous counsel paid fee awards in this case.  Id. at

21  9:25-10:7.  Defendants objected to every subpoena,

22  effectively blocking AECOM from gaining information

23  about the sources of Defendants' revenues.  Id. at 10:3-

24  5.  On December 17, 2021, the Magistrate Judge denied

25  Defendants' motion to quash with respect to Corporate

26  

27      [2] Henry Blum is one of four defaulting defendants in this
action.  See generally Default by Clerk, ECF No. 77; Order re:
28  Mot. for Default J., ECF No. 258.

Defendants' bank statements and service provider information.  Id. at 10:13-15.  The Court noted "the subpoena seeks information that the court already ordered Defendants to produce," i.e., bank statements for Corporate Defendants.  Id. at 10:14-17.  At the close of fact discovery, Defendants had not supplemented any discovery responses, nor supplemented their document productions.  Id. at 10:18-19.

**B.  Procedural Background**

On November 8, 2018, this Court granted [242, 243] AECOM's Motion for Summary Judgment against Defendants,[3] finding willful infringement of the MK brand and awarding AECOM $1,802,834,672 ("$1.8 billion") in damages.[4]  On February 21, 2019, Defendants filed a Motion for Alteration, Amendment, or Reconsideration [268] of the Court's Order granting AECOM's Motion for Summary Judgment, which the Court denied [305] on April 24, 2019.

---

[3] AECOM also named four additional individual defendants in its Complaint: Bud Zulakoff, John Ripley, Todd Hale, and Henry Blum (collectively, "Defaulting Defendants").  See generally Compl., ECF No. 1.  On December 4, 2017, the court clerk entered default as to these four individuals.  See generally Default by Clerk.  On November 9, 2018, AECOM filed a Motion for Default Judgment against Defaulting Defendants.  See generally Mot. for Default J., ECF No. 244.  On January 24, 2019, the Court granted AECOM's motion, finding Defaulting Defendants jointly and severally liable for AECOM's damages.  See generally Order re: Mot. for Default J.

[4] The Court also granted AECOM's request for a permanent injunction ordering Defendants to cease their use of the MK IP and awarded AECOM its attorneys' fees.  See Order re: Pl.'s Mot. for Summ. J. at 45:5-55:8.

1    Defendants appealed the damages award, which the
2 Ninth Circuit reversed and remanded [339] on March 24,
3 2021.[5]  Following remand, this Court reopened discovery
4 on damages.  On December 16, 2021,[6] Defendants filed the
5 present Motions for Summary Judgment [395, 396].  On
6 December 17, 2021, AECOM filed the present Motion for
7 Sanctions [398].  On December 28, 2021, AECOM opposed
8 [403] Defendants' Motions for Summary Judgment and
9 Defendants opposed [402, 405] AECOM's Motion for
10 Sanctions.  On January 4, 2022, Defendants filed their
11 replies in support of their Motions for Summary Judgment
12 [408, 409] and AECOM filed its Reply [411] in support of
13 its Motion for Sanctions.

14

15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///

23 _____

24    [5] Defendants also argued on appeal that AECOM lacked Article
   III standing, which the Ninth Circuit rejected.  See Ninth Cir.
25 Mem. at 2-3, ECF No. 339.

26    [6] Also on December 16, 2021, Magistrate Judge Rosenberg
   granted in part and denied in part Defendants' motions to quash
27 AECOM's third-party subpoenas, granted in part Defendants'
   alternative motions for a protective order, and denied AECOM's
28 motion to compel [397].

1                   **II.  DISCUSSION**

2 **A.  <u>Legal Standard</u>**

3     1.  <u>Evidentiary and Terminating Sanctions</u>

4     Federal Rule of Civil Procedure ("Rule") 37

5 "authorizes the district court, in its discretion, to

6 impose a wide range of sanctions when a party fails to

7 comply with the rules of discovery or with court orders

8 enforcing those rules."  <u>Wyle v. R.J. Reynolds Indus.,</u>

9 <u>Inc.</u>, 709 F.2d 585, 589 (9th Cir. 1983) (citation

10 omitted).  Under Rule 37(b)(2)(A), "[i]f a party . . .

11 fails to obey an order to provide or permit discovery .

12 . . , the court where the action is pending may issue

13 further just orders," which can include "directing that

14 the matters embraced in the order or other designated

15 facts be taken as established for the purposes of the

16 action, as the prevailing party claims" and "rendering a

17 default judgment against the disobedient party."  Fed.

18 R. Civ. P. 37(b)(2)(A)(i)-(vi).

19     Courts also have "the inherent authority to issue

20 sanctions in response to abusive litigation practices."

21 <u>Garrison v. Ringgold</u>, 2020 WL 6537389, at *4 (S.D. Cal.

22 Nov. 6, 2020) (citing <u>Leon v. IDX Sys. Corp.</u>, 464 F.3d

23 951, 958 (9th Cir. 2006) ("There are two sources of

24 authority under which a district court can sanction a

25 party who has despoiled evidence: the inherent power of

26 federal courts to levy sanctions in response to abusive

27 litigation practices, and the availability of sanctions

28 under Rule 37 . . . .")); <u>Neighborhood Assistance Corp.</u>

1   of Am. v. First One Lending Corp., 2013 WL 12142562, at

2   *2 (C.D. Cal. Mar. 26, 2013) ("A district court may

3   impose terminating sanctions pursuant to its inherent

4   power and pursuant to . . . Rule . . . 37."). "It is

5   firmly established that the courts have inherent power

6   to dismiss an action or enter a default judgment to

7   ensure the orderly administration of justice and the

8   integrity of their orders." Phoceene Sous-Marine, S.A.

9   v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 (9th Cir.

10  1982) (citations omitted).

11  **B.   Discussion**

12        1.   AECOM's Motion for Sanctions

13        As a preliminary matter, the Court first addresses:

14  (1) Defendant Topolewski's requests for judicial notice

15  made in connection with his Opposition to AECOM's Motion

16  for Sanctions; (2) Defendants' evidentiary objections to

17  the Declaration of Yungmoon Chang ("Chang Declaration")

18  submitted by AECOM in support of its Motion for

19  Sanctions; and (3) AECOM's evidentiary objections to the

20  Declarations of Gary Topolewski ("Topolewski

21  Declaration") and John Jahrmarkt ("Jahrmarkt

22  Declaration") submitted in support of Defendant

23  Topolewski's Opposition to AECOM's Motion for Sanctions.

24

25  ///

26  ///

27  ///

28  ///

1
             a.   Defendant Topolewski's Requests for

2
                Judicial Notice

3
    A court may take judicial notice of an adjudicative

4
fact that is "not subject to reasonable dispute because

5
it: (1) is generally known within the trial court's

6
territorial jurisdiction; or (2) can be accurately and

7
readily determined from sources whose accuracy cannot

8
reasonably be questioned."  Fed. R. Evid. 201(b).

9
Matters of public record may be judicially noticed, but

10
disputed facts contained therein may not.  Khoja v.

11
Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir.

12
2018).  "[A]ccuracy is only part of the inquiry under

13
Rule 201(b)."  Id.  "A court must also consider—and

14
identify—which fact or facts it is noticing from" the

15
documents.  Id.

16
    Defendant Topolewski seeks judicial notice of the

17
following four documents on file with the Nevada

18
Secretary of State: (1) filings for Majestic Services,

19
Inc. (formerly known as Morrison-Knudsen Services, Inc.)

20
from May 29, 2017 to present ("Exhibit A"); (2) filings

21
for Goodbrand Corporation (formerly known as Morrison

22
Knudsen Corporation) from October 22, 2014 to present

23
("Exhibit B"); (3) filings for Northern Majestic

24
International Inc. (formerly known as Morrison Knudsen

25
International Inc.) from January 23, 2012 to present

26
("Exhibit C"); and (4) filings for Goodbrand Company

27
Inc. (formerly known as Morrison-Knudsen Company, Inc.)

28
from August 4, 1998 to present ("Exhibit D").  See

1    generally Topolewski's Req. for Judicial Notice, ECF No.
2    406.  Although Exhibits A-D may be judicially noticeable
3    as matters of public records, Defendant Topolewski does
4    not specify which facts he seeks to judicially notice
5    from the four filings.  Further, the documents are not
6    pertinent or necessary to the Court's resolution of the
7    present motion, and the Court does not rely upon them.
8    The Court therefore **DENIES** Defendant Topolewski's
9    requests for judicial notice in their entirety.
10            b.   Defendants' Evidentiary Objections
11        Defendants lodged sixteen evidentiary objections to
12   the Chang Declaration submitted by AECOM in support of
13   its Motion for Sanctions.  See generally Defs.' Evid.
14   Objs., ECF No. 405-1.  Many of Defendants' objections
15   read as a continuation or reiteration of their arguments
16   in their briefs.  See id. Nos. 8-16.  Further, the Court
17   does not rely on the majority of the Chang Declaration
18   or its attached exhibits in ruling on AECOM's Motion for
19   Sanctions.  Regarding the portions of the Chang
20   Declaration to which Defendants' object but the Court
21   does not rely, the Court **DENIES as moot** Defendants'
22   evidentiary objections.  See Muhammad v. Reese L. Grp.,
23   APC, 2017 WL 2578915, at *2 (S.D. Cal. June 14, 2017)
24   (denying evidentiary objections as moot where the court
25   "did not rely on the . . . declarations and exhibits in
26   ruling on the . . . motion [for sanctions].").
27   Accordingly, the Court **DENIES as moot** Defendants'
28   evidentiary objections 1-7 and 15-16 because the Court

does not rely on the objected-to information contained within them in reaching its determination on the Motion for Sanctions.

The Court does, however, rely on the press release titled "Morrison Knudsen Awarded $36 Million Mine Engineering Contract" in making its ruling on AECOM's Motion for Sanctions.  See Chang Decl. ¶ 24; see also Ex. 26 to Chang Decl.  The Court also relies on the Chang Declaration for the proposition that Defendants "published at least two other press releases."  See Chang Decl. ¶ 25; see also Exs. 27-28 to Chang Decl. The Court reaffirms its previous order overruling Defendants' same objections to these press releases. See Order re: Pl.'s Mot. for Summ. J. 49:21-25. Further, the press releases are relevant to AECOM's Motion for Sanctions because they are relevant for establishing evidentiary and terminating sanctions.  In sum, the Court **OVERRULES** Defendants' evidentiary objections 8-14, and **DENIES as moot** Defendants' evidentiary objections 1-7 and 15-16.

///
///
///
///
///
///
///

c.   Evidentiary Objections

AECOM objects to the Topolewski Declaration and Jahrmarkt Declaration in their entirety.  See Pl.'s Evid. Objs., ECF No. 414.  Given that the Court does not rely on either declaration in reaching its ruling on AECOM's Motion for Sanctions, the Court **DENIES as moot** AECOM's evidentiary objections.  See Muhammad, 2017 WL 2578915 at *2 (denying evidentiary objections as moot where the court "did not rely on the . . . declarations and exhibits in ruling on the . . . motion [for sanctions].").

d.   Motion for Sanctions

AECOM moves this Court to impose evidentiary, terminating, and monetary sanctions on Defendants.  See generally Pl.'s Mot. for Sanctions.  The Court **GRANTS in part and DENIES in part** AECOM's Motion for Sanctions. Each sanction request is examined in turn below.

i.   Evidentiary Sanctions

AECOM requests, pursuant to Rule 37(b)(2)(A)(i), that the Court take as established that Defendants "performed the work referenced in, and collected the amount listed in, the press release titled 'Morrison Knudsen Awarded $36 Million Mine Engineering Contract.'"[7]  Id. at 12:9-12.  AECOM argues that such an

---

[7] In the alternative, AECOM asks that the Court "designate as established that Defendants have earned as much as they claim to have spent in costs and expenses, trebled."  Id. at 14:9-11. Given that the Court **GRANTS** AECOM's primary evidentiary sanctions request and takes as true that Defendants collected on a $36 million contract, the Court need not address AECOM's alternative

14

evidentiary sanction is justified because Defendants "have refused to produce any reliable information regarding their financial records . . . ." Id. at 12:22-23.  In light of Defendants' flagrant discovery abuse, the Court **GRANTS** AECOM's request and takes as true that Defendants performed and collected on a contract for $36 million.

Under Rule 37(b)(2)(A), "[i]f a party . . . fails to obey an order to provide or permit discovery . . . , the court may "direct[] that the matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims . . . ." Fed. R. Civ. P. 37(b)(2)(A)(i).  "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" Guifu Li v. A Perfect Day Franchise, Inc., 281 F.R.D. 373, 390 (N.D. Cal. 2012) (quoting Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976)).  A "district court has great latitude in imposing sanctions for discovery abuse." Dahl v. City of Huntington Beach, 84 F.3d 363, 367 (9th Cir. 1996).

As a condition precedent to imposing evidentiary sanctions pursuant to Rule 37, Defendants must have violated a Court Order.  See Fed. R. Civ. P.

___

evidentiary sanctions request.

37(b)(2)(A); <u>Wanderer v. Johnston</u>, 910 F.2d 652, 657 (9th Cir. 1990) (affirming sanctions where a party repeatedly obstructed discovery and disobeyed court orders).  This condition precedent has been met here. To date, Defendants still have not complied with this Court's June 27, 2018 Order compelling Defendants to produce "all monthly, quarterly, and annual income statements, balance sheets, and other financial statements of any Corporate Defendants" and their corporate tax returns and bank statements "for the period beginning four years before the filing of the complaint . . . ."  Order re: Defs.' Mot. to Quash Subpoenas and/or for Protective Order at 2 ("Order re: Mot. to Quash"), ECF No. 397.  Thus, evidentiary sanctions pursuant to Rule 37 may be appropriately imposed.

     "There are two limitations to the application of a Rule 37(b)(2) sanction." <u>Guifu</u>, 281 F.R.D. at 393. "First, 'any sanction must be just; second, the sanction must be specifically related to the particular claim which was at issue in the order to provide discovery.'" <u>Id.</u> (quoting <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 707 (1982)). Here, taking as true that Defendants performed and collected on a contract for $36 million is both just and "specifically related" to this Court's previous order compelling Defendants to provide financial discovery. The evidentiary sanction is appropriate for the reasons

1  below.

2                  a. The Evidentiary Sanction Is Just in

3                     Light of the Circumstances of this

4                     Case

5      AECOM cannot calculate its damages due to

6  Defendants' repetitive discovery evasion.  As this Court

7  has stated—and as the Ninth Circuit agreed on appeal—

8  "[t]he history of this litigation demonstrates a pattern

9  in which Defendants continuously refused to comply with

10  Plaintiff's discovery requests, Court orders, and evaded

11  providing financial information."  Order re: Pl.'s Mot.

12  for Summ. J. 49:21-25; see also Ninth Cir. Mem. n.5 ("We

13  note that Defendants-Appellants failed to provide in

14  discovery any reliable evidence of their sales, profits,

15  or costs, despite court orders compelling them to do

16  so."); Ninth Cir. Mem. (Friedland, J., concurring)

17  ("[T]he defining feature of this dispute has been what

18  the district court aptly described as Defendants-

19  Appellants' 'lengthy history of bad faith litigation

20  practices.'  Defendants-Appellants ignored multiple

21  discovery orders, refused to appear for depositions, and

22  ultimately failed to produce a single reliable business

23  record from which AECOM could calculate damages.").  To

24  decline to impose an evidentiary sanction of some sort

25  here would be manifestly unjust to AECOM and effectively

26  reward Defendants for their discovery abuse.  Given

27  Defendants' discovery evasion and violations of this

28  Court's orders, designating that Defendants performed

and collected on a $36 million contract is just.  See
Compagnie des Bauxites, 456 U.S. at 708 (affirming a
sanction as "just" in light of a party's refusal to
provide discovery and where the court was "[c]onfronted
with continued delay and an obvious disregard of its
orders").

          b. The Evidentiary Sanction Is
             Specifically Related to the Order
             Compelling Defendants to Provide
             Financial Discovery

    Establishing that Defendants collected $36 million
on a construction contract directly remedies the
prejudice AECOM has faced due to Defendants' refusal to
produce their financial and tax statements.  Because
AECOM has no sources of information from which to
calculate its damages, directing it as true that
Defendants collected $36 million based on the lowest of
the three publicly available press releases is a
narrowly tailored sanction.  Cf. Guifu, 281 F.R.D. at
394 (finding that an evidentiary sanction deeming facts
alleged in a complaint as established for trial
"flow[ed] directly" from defendants' refusal to produce
financial discovery and was "narrowly tailored to
directly address the prejudice from Defendants'
conduct").  AECOM's reliance on the press release is
justifiable given that Defendants have not produced any
reliable financial discovery.  Thus, because the
evidentiary sanction sought here meets both requirements

under Rule 37(b)(2), the Court **GRANTS** AECOM's request to designate as established that Defendants performed and collected on a $36 million contract.

To be clear, the Court notes the somewhat unconventional nature of this evidentiary sanction.  In analogous cases where a party has evaded discovery, courts have instructed the jury that it may draw an adverse inference against the party responsible for withholding evidence.  See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); Neighborhood Assistance Corp., 2013 WL 12142562, at *3 (instructing the jury to infer that financial evidence destroyed by defendants "would have been favorable to the [p]laintiff and unfavorable to the [d]efendants").  Other times, courts have entered evidentiary sanctions "deem[ing] facts alleged in the complaint established for trial, subject to rebuttal by the non-moving party, where the moving party was prejudiced because of the other party's discovery abuses."  Guifu, 281 F.R.D. at 393 (citing General Atomic Co. v. Exxon Nuclear Co., 90 F.R.D. 290 S.D. Cal. 1981).  To take either approach here would be wholly insufficient to penalize and deter Defendants' discovery misconduct, however.  See Nat'l Hockey League, 427 U.S. at 643 (noting that the rationale of Rule 37 sanctions is to both penalize and deter future misconduct).  Directing the jury to infer that Defendants' financial statements would have been favorable to AECOM and unfavorable to Defendants would

not bring AECOM closer to the truth behind Defendants' profits.  A vague adverse inference of this kind would be inadequate here, as the jury would still be left with the conundrum of fashioning a damages award based on little to no information.

Nor would deeming facts in AECOM's Complaint as established for trial be sufficient.  Unsurprisingly, AECOM's Complaint does not state a specific damages amount.  See generally Compl.  At the time the Complaint was filed, AECOM could not have known how much Defendants profited from their infringement scheme, and AECOM was justifiably relying on the judicial process to uncover the true facts of this case.  But Defendants have so frustrated AECOM's discovery efforts that now, nearly five years after the filing of its Complaint, AECOM is in no better position than where it started.  Perhaps AECOM puts it best:

> "Without imposition of such sanctions, AECOM will be forced to proceed to a damages trial on a record that is incomplete solely due to Defendants' recalcitrance.  And Defendants (despite being adjudicated willful infringers) may escape paying any damages at all.  Such an outcome would reward Defendants for their flagrant disregard, and incentivize every other wrongdoer, in every type of case, to avoid paying damages simply by withholding financial information.  This could hardly be more unjust. As the Ninth Circuit has noted, '[i]t seems scarcely equitable . . . for an infringer to reap the benefits of a trade-mark he has stolen, force the registrant to the expense and

> delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss.  To impose on the infringer nothing more serious than an injunction when he is caught is a tacit invitation to other infringement.'"

Pl.'s Mot. for Sanctions 2:10-20 (quoting <u>Maier Brewing Co. v. Fleischmann Distilling Corp.</u>, 390 F.2d 117, 123 (9th Cir. 1968)).  Accordingly, deeming that Defendants performed and collected on a $36 million contract is necessary and appropriate here, especially in light of the Court's "great latitude in imposing sanctions for discovery abuse."  <u>See</u> <u>Dahl</u>, 84 F.3d at 367.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c. The Evidentiary Sanction Is Not
Speculative and Does Not Run Afoul of
the Law of the Case

Defendants argue that the evidentiary sanction
sought here is speculative and runs afoul of the law of
the case.  See MK Defs.' Opp'n to Mot. for Sanctions
("MK Defs.' MFS Opp'n") 12:18-14:28, ECF No. 402;
Topolewski's Opp'n to Mot. for Sanctions ("Topolewski's
MFS Opp'n") 18:7-21:4, ECF No. 405.[8]  Both arguments are
unavailing and are examined in turn below.

Defendants assert that the $36 million inference
requested by AECOM must be "supported by a chain of
logic, rather than [by] mere speculation dressed up in
the guise of evidence."  Id. at 13:1-3 (citation
omitted).  They argue AECOM has not shown a "chain of
logic" but rather, "merely speculates that because
Defendants failed to produce bank records, they have
spoliated evidence or committed fraud."  Id. at 13:14-
16.  But AECOM has, indeed, shown a "chain of logic"
here to support the $36 million inference it is
requesting.  What other "chain of logic" could there be?
Why else would Defendants go to the great lengths of
ignoring multiple discovery requests and violating court

---

[8] Corporate Defendants' and Defendant Topolewski's
Oppositions to AECOM's Motion for Sanctions are virtually
identical both in substance and in form.  See generally MK Defs.'
MFS Opp'n; Topolewski's MFS Opp'n.  Accordingly, the Court treats
them as the same and cites to Corporate Defendants' Motion for
arguments made in both.  For arguments only made by Defendant
Topolewski, the Court cites to his Opposition only.

orders compelling discovery if their infringement scheme was not highly profitable to begin with?  Had Defendants truly operated at a loss and made no profits—which they assert in their Motions for Summary Judgment—they would not have evaded discovery in the first place and could have simply turned over the records reflecting as much. AECOM's $36 million evidentiary sanction request is more than well-supported here.  The "chain of logic" underlying Defendants' shady litigation tactics points to only one conclusion: that Defendants' widespread infringement scheme was highly profitable and Defendants are withholding evidence of their true finances.  Any speculation concerning the $36 million amount here is due to Defendants' own wrongdoing, and AECOM's use of the publicly available press release is justified given that Defendants have not produced any reliable financial statements to date.

Moreover, establishing that Defendants performed and collected on a $36 million contract does not run afoul of the law of this case.  Defendants argue that because the Ninth Circuit held AECOM could not use the publicly available press releases to support a damages award, AECOM cannot now use the press release regarding a $36 million contract to request sanctions in the same amount.  MK Defs.' MFS Opp'n 13:21-14:28.  Defendants are mistaken, however.  Unlike in its previous motion for summary judgment, here, AECOM does not seek to use the press release to establish Defendants' sales as a

matter of law under Section 1117(a) of the Lanham Act. Pl.'s Reply to Mot. for Sanctions ("Pl.'s MFS Reply") 14:13-15, ECF No. 411.  Rather, AECOM seeks to use the press release to sanction Defendants under Rule 37.  Id. at 14:17-19.  Moreover, the Ninth Circuit contemplated such an evidentiary sanction, stating that "[o]ur decision does not preclude the district court on remand from considering whether a discovery sanction is appropriate should AECOM seek such relief, such as a sanction focused on the evidentiary inferences that may be drawn from the [D]efendants' refusal to produce relevant financial records."  Ninth Cir. Mem. n.5; see also Ninth Cir. Mem. (Friedland, J., concurring) at 3 ("I share the majority's opinion that the district court could consider entering discovery sanctions.").  The Court finds that the evidentiary sanction sought here is indeed appropriate and infers no more than is necessary to remedy Defendants' discovery abuses.  Using the press release regarding a $36 million contract to support an evidentiary sanction here is proper and does not run afoul of the law of this case.

///
///
///
///
///
///

1          d.    The Evidentiary Sanction Is
2                Additionally Authorized Under the
3                Court's Inherent Authority

4     Even if this evidentiary sanction was somehow
5 improper under Rule 37, the Court's decision is
6 authorized under its inherent powers.  Courts have
7 "inherent authority to issue sanctions in response to
8 abusive litigation practices."  Garrison, 2020 WL
9 6537389 at *4 (citing Leon, 464 F.3d at 958 ("There are
10 two sources of authority under which a district court
11 can sanction a party who has despoiled evidence: the
12 inherent power of federal courts to levy sanctions in
13 response to abusive litigation practices, and the
14 availability of sanctions under Rule 37 . . . .")).
15 This includes the "inherent power to sanction parties
16 and their attorneys, a power born of the practical
17 necessity that courts be able 'to manage their own
18 affairs so as to achieve the orderly and expeditious
19 disposition of cases.'"  Van Osten v. Home Depot,
20 U.S.A., Inc., 2021 WL 3471581, at *14 (S.D. Cal. May 4,
21 2021) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43
22 (1991)).  Given Defendants' "history of bad faith
23 litigation tactics" and the reasons stated above, an
24 evidentiary sanction based on the Court's inherent
25 powers establishing that Defendants collected on a $36
26 million contract is justified and necessary for the
27 "expeditious disposition" of this case.  See id. (noting
28 that courts may impose sanctions pursuant to their

25

1    inherent powers where a party has "willfully disobeyed a

2    court order, or where the party has acted in bad faith,

3    vexatiously, or for oppressive reasons").  This

4    litigation began in 2017 and Defendants, through their

5    evasive behavior, have dragged this case on for far too

6    long.  Thus, on this separate and additional basis of

7    authority, taking as established that Defendants

8    collected $36 million from a construction contract is

9    proper.

10        In sum, the Court **GRANTS** AECOM's request for an

11   evidentiary sanction and deems that Defendants performed

12   and collected on a $36 million contract.

13                  ii.  <u>Terminating Sanctions</u>

14        There may be no better case to grant terminating

15   sanctions than in this one.  "A terminating sanction,

16   whether default judgment against a defendant or

17   dismissal of a plaintiff's action, is very severe."

18   <u>Connecticut Gen. Life Ins. Co. v. New Images of Beverly</u>

19   <u>Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007) (citing

20   <u>Jorgensen v. Cassiday</u>, 320 F.3d 906, 912 (9th Cir.

21   2003)).  "Only willfulness, bad faith, and fault justify

22   terminating sanctions."  <u>Id.</u> (internal quotation marks

23   and citation omitted).  The Ninth Circuit also uses a

24   five-part test, with three subparts to the fifth part,

25   to determine whether a case-dispositive sanction is

26   just: "(1) the public's interest in expeditious

27   resolution of litigation; (2) the court's need to manage

28   its dockets; (3) the risk of prejudice to the party

seeking sanctions; (4) the public policy favoring
disposition of cases on their merits; and (5) the
availability of less drastic sanctions." <u>Malone v. U.S.
Postal Serv.</u>, 833 F.2d 128, 130 (9th Cir. 1987).
Because courts may grant terminating sanctions under
either Rule 37 or their inherent powers, this Court need
not engage in a Rule 37 analysis and **GRANTS** terminating
sanctions pursuant to its inherent powers.  <u>See
Anheuser-Busch, Inc. v. Natural Beverage Distributors</u>,
69 F.3d 337, 348 (9th Cir. 1995) (affirming terminating
sanctions under the district court's inherent powers and
thus declining to address whether sanctions were
appropriate under Rule 37).

a.<u>Defendants' Discovery Misconduct Was
Willful</u>

Disobedient conduct is willful if it is within the
offending party's control.  <u>Stars' Desert Inn Hotel &
Country Club, Inc. v. Hwang</u>, 105 F.3d 521, 525 (9th Cir.
1997); <u>Fair Hous. of Marin v. Combs</u>, 285 F.3d 899, 905
(9th Cir. 2002).  As AECOM aptly states, "the record is
replete with examples of Defendants' willful disregard
for the judicial process."  Pl.'s Mot. for Sanctions
18:22-23.  Willfulness, fault, and bad faith on the part
of Defendants have been repeatedly demonstrated
throughout this litigation.  Defendants have failed to
respond to AECOM's discovery requests; failed to appear
at depositions; failed to comply with Court orders
compelling them to provide discovery; violated the

27

preliminary and permanent injunction orders; and ignored
multiple deadlines to name a few.  In doing so,
Defendants have effectively precluded AECOM from
uncovering the truth behind their profits.  Cf. Ninth
Cir. Mem. (Friedland, J., concurring) at 3 ("Defendants-
Appellants had stonewalled AECOM's every effort to
ascertain information about their finances . . . .").
Defendants' flagrant discovery abuse was clearly within
their control, a point which Corporate Defendants do not
dispute, and intended to keep their profits from being
discovered.  Accordingly, the Court concludes that
Defendants' discovery misconduct was willful for the
purposes of imposing terminating sanctions.  See
Garrison, 2020 WL 6537389 at *5 (finding willfulness
where a defendant's failures to file discovery
responses, comply with orders compelling discovery, and
attend his deposition were in his control).

Defendant Topolewski's attempt to distance himself
from Corporate Defendants is unavailing.  As this Court
has found, he was extensively involved with Corporate
Defendants despite his current statements to the
contrary.  See Order re: Defs.' Mot. for Reconsideration
25:16-20, ECF No. 305 ("Holding Topolewski personally
liable is not manifestly unjust because he is liable
jointly and severally for his direct involvement in the
extensive fraud committed in forming the Corporate
Defendants.").  Defendant Topolewski himself has also
failed to comply with his discovery obligations which

1    were in his control.  He failed to appear for his first
2    deposition, arrived late to his second deposition and
3    left early, and failed to respond to discovery requests
4    propounded on him.  See Pl.'s MFS Reply 8:9-10.
5    Accordingly, it is proper for the Court to refer to
6    Defendants as a collective and find that Defendant
7    Topolewski's conduct, too, was willful and bind him to
8    this Order.  See Garrison, 2020 WL 6537389 at *5.

9                    b. The Malone Factors Support Terminating
10                      Sanctions

11       In determining whether to impose terminating
12   sanctions, "the key [Malone] factors are prejudice and
13   the availability of lesser sanctions."  See Davidson v.
14   Barnhardt, 2013 WL 6388354, at *6 (C.D. Cal. Dec. 6,
15   2013) (citing Wanderer v. Johnston, 910 F.2d 652, 656
16   (9th Cir. 1990)); Valley Eng'rs Inc. v Elec. Eng'g Co.,
17   158 F.3d 1051, 1057 (9th Cir. 1998) (noting that when
18   considering evidentiary, issue, or terminating
19   sanctions, factors three and five "are decisive").  Put
20   another way, "[w]hat is most critical for case-
21   dispositive sanctions, regarding risk of prejudice and
22   of less drastic sanctions, is whether the discovery
23   violations 'threaten to interfere with the rightful
24   decision of the case.'"  Valley Eng'rs, 158 F.3d at 1057
25   (quoting Adriana Int'l. Corp. v. Lewis & Co., 913 F.2d
26   1406, 1412 (9th Cir. 1990)).  Thus, a district court
27   need not make explicit findings regarding each of the
28   five factors.  Connecticut Gen. Life Ins., 482 F.3d at

1096; see also Wanderer, 910 F.2d at 656 (noting that in most cases, courts have found that the first two Malone factors weigh in favor of terminating sanctions and the fourth factor weighs against terminating sanctions). Given that Malone factors three and five are "key" and "decisive" in assessing terminating sanctions, and given that explicit findings regarding each of the five factors are not required, the Court focuses only on factors three and five in making its determination.

### i. Factor 3: Prejudice

"When assessing prejudice, courts consider whether the other party's actions 'impair' the ability of the party seeking sanctions 'to go to trial or threaten to interfere with the rightful decision of the case.'" Sec. & Exch. Comm'n v. Blockvest, LLC, 2020 WL 1910355, at *15 (S.D. Cal. Apr. 20, 2020) (quoting In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1227 (9th Cir. 2006) (internal quotations and citations omitted)). There is undoubtedly a high risk of prejudice to AECOM here due to Defendants' discovery misconduct. Defendants' obstructionist, recalcitrant, and contumacious behavior over the course of this litigation has made it impossible for AECOM to ever discover the truth behind Defendants' profits. See Anheuser-Busch, 69 F.3d at 352 ("Dismissal is appropriate where a 'pattern of deception and discovery abuse ma[k]e[s] it impossible' for the district court to conduct a trial 'with any reasonable assurance that the

1   truth would be available.'"); see also Valley Eng'rs,

2   158 F.3d at 1058 ("Where a party so damages the

3   integrity of the discovery process that there can never

4   be assurance of proceeding on the true facts, a case

5   dispositive sanction may be appropriate."); Connecticut

6   Gen. Life Ins., 482 F.3d at 1097 (affirming terminating

7   sanctions and finding prejudice where defendants had

8   engaged in a "pattern of deception and discovery abuse

9   that made it impossible for the district court to

10  conduct another trial with any reasonable assurance that

11  the truth would be available."). The only financial

12  discovery that Defendants have produced consists of "two

13  pages of Income Statements" that the Magistrate Judge

14  deemed "patently insufficient," "plainly inadequate,"

15  and "created specially for this litigation." Order re:

16  Pl.'s Mot. for Contempt 13:3-4, 6-8; 16:4-7, ECF No.

17  154. Otherwise, Defendants have yet to produce any

18  reliable discovery of their finances in direct violation

19  of this Court's orders. AECOM has clearly been

20  prejudiced as a result of Defendants' bad faith

21  discovery tactics. See Garrison, 2020 WL 6537389 at *5

22  (noting that a failure to produce documents as ordered

23  establishes sufficient prejudice) (citing Adriana Int'l

24  Corp., 913 F.2d at 1412).

25      Defendants' assertion that AECOM's inability to

26  find the "true facts" on damages is "its own fault"

27  flies in the face of this Court. See MK Defs.' MFS

28  Opp'n 11:7-8. Contrary to what Defendants argue, AECOM

was not required to re-serve discovery requests on
Defendants post-remand.  Rather, Defendants had—and
still have—an ongoing duty to supplement their prior
discovery responses.  See Woods v. Google, 2014 WL
1321007, at *4 (N.D. Cal. Mar. 28, 2014) ("The Court can
definitively state that the Rule 26(e) duty to
supplement or correct incomplete or incorrect responses
does, in fact, extend beyond the discovery cutoff
date."); Hernandez v. Polanco Enters., Inc., 19 F. Supp.
3d 918, 933 (N.D. Cal. 2013) ("Federal Rule of Civil
Procedure 26(e) places litigants under an affirmative
duty to supplement non-deposition discovery responses,
even after the discovery cut-off date.").

Additionally, it is not AECOM's "fault" that it
cannot calculate its damages; Defendants still have not
complied with this Court's June 27, 2018 Order
compelling Defendants to produce "all monthly,
quarterly, and annual income statements, balance sheets,
and other financial statements of any Corporate
Defendants" and their corporate tax returns and bank
statements "for the period beginning four years before
the filing of the complaint . . . ."  Order re: Defs.'
Mot. to Quash Subpoenas and/or for Protective Order at 2
("Order re: Mot. to Quash"), ECF No. 397.  Defendants'
argument that AECOM has prejudiced itself by not re-
serving discovery after remand is plainly nonsensical
given that it is Defendants who have continued to skirt
their discovery obligations.  It is due to Defendants'

fault that AECOM may never learn the true facts on damages in this case.

Similarly ludicrous is Defendants' argument that AECOM "repeatedly blames its inability and refusal to conduct discovery on Defendants' objections to its subpoenas, thus asking the Court to sanction them for exercising that procedural right." See MK Defs.' Opp'n 11:15-17. This argument is distracting and beside the point. As stated, AECOM's inability to conduct discovery is a direct result of Defendants' discovery abuse. While Defendants indeed have a procedural right to object to third-party subpoenas pursuant to Rule 45, this does not forgive or explain their refusal to produce discovery that the Court had already ordered them to produce. AECOM likely would not have had to subpoena third-party banks after remand had Defendants provided financial discovery in the first place. Indeed, in granting in part and denying in part Defendants' Motions to Quash Subpoenas and/or for a Protective Order, Magistrate Judge Rosenberg stated that "[t]o the extent the subpoena seeks [third-party] bank statements for a [Corporate Defendant], the subpoena seeks information that the court *already ordered* Defendants to produce." Order re: Mot. to Quash at 2-3 (emphasis added). Defendants face terminating sanctions not because they filed motions to quash third-party subpoenas, but because they—as of current—still have not produced any financial statements in direct violation of

court orders.  See id. at 2 (noting on December 16, 2021 that the financial documents that Defendants were ordered to produce "were not in fact produced.").

As a final attempt to escape the inevitability of terminating sanctions, Defendants argue that their discovery misconduct from 2018 is too remote in time. See MK Defs.' Opp'n 7:21-24 ("Very simply, the landscape of the case has changed too excessively to justify the extreme sanctions requested without any effort to conduct discovery more recently than three and a half years ago.").  Defendants cite no authority limiting the scope of sanctions to only the discovery period after remand, and the Court finds none.  What is clear, however, is that AECOM has been prejudiced by Defendants' shady discovery tactics and Defendants can no longer hide from their day of reckoning.  The Court finds that the prejudice factor weighs in favor of terminating sanctions.

///
///
///
///
///
///
///
///
///

1          ii. Factor 5: Availability of Lesser

2              Sanctions

3      The fifth factor asks the Court to consider: (1)

4  the feasibility of less drastic sanctions and why such

5  alternative sanctions would be inappropriate; (2)

6  whether alternative sanctions were implemented before

7  ordering dismissal; and (3) whether the spoliating party

8  was warned of the possibility of dismissal before

9  dismissal was ordered.  Leon, 464 F.3d at 960.  "It is

10 appropriate to reject lesser sanctions where the court

11 anticipates continued deceptive misconduct."

12 Connecticut Gen. Life Ins., 482 F.3d at 1097; see also

13 Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.,

14 322 F. Supp. 3d 1027, 1039 (C.D. Cal. 2018) ("The Court

15 finds that lesser sanctions would have no effect on the

16 sustained, deceptive behavior by Plaintiffs' counsel

17 during this litigation."); Computer Task Group, Inc. v.

18 Brotby, 364 F.3d 1112, 1116-17 (9th Cir. 2004) (noting

19 that terminating sanctions may be appropriate if lesser

20 sanctions would not deter future wrongdoing).

21     Lesser sanctions are not available here.

22 Defendants have shown a complete and total disregard for

23 the judicial process over the lifetime of this case, and

24 the Court anticipates that Defendants will only continue

25 their obstructive behaviors.  This is especially true

26 given that Defendants, as noted above, have yet to

27 produce any financial discovery despite court orders

28 compelling them to do so.  As AECOM states, "Defendants

have made clear in every way possible that they do not
intend to permit discovery of financial information.
Nor have multiple findings for contempt, multiple orders
to compel, or the imposition of daily sanctions for
noncompliance, dissuaded Defendants from doing
otherwise."  Pl.'s Mot. for Sanctions 22:17-20.  Indeed,
Magistrate Judge Rosenberg expressed her skepticism
regarding Defendants' failure to produce their bank
records, stating "I honestly don't know why a
corporation would not be able to get access to its own
bank statements.  I mean, that's, I must say, peculiar."
Transcript of Telephonic Hearing Re: Defs.' Mot. to
Quash 16:24-17:1, ECF No. 389.  Thus, the Court finds
that "lesser sanctions would have no effect on the
sustained, deceptive behavior" by Defendants and rejects
lesser sanctions.[9]  Jerry Beeman, 322 F. Supp. 3d at
1039; see also Nevijel v. N. Coast Life Ins. Co., 651
F.2d 671, 674 (9th Cir. 1981) ("[T]he district court
need not exhaust [all sanctions short of dismissal]
before finally dismissing a case . . . [dismissal]
requires only that possible and meaningful alternatives
be reasonably explored, bearing in mind the drastic
foreclosure of rights that dismissal effects.").

---

[9] Moreover, the Court is already granting AECOM's
evidentiary sanction request and taking as true that Defendants'
collected on a contract for $36 million.  In light of this
inference and considering that only damages are at issue for
trial, terminating the case at this stage is even more
appropriate.  There is no need to impose lesser sanctions and
proceed to trial.

The conclusion would be the same even if the Court were to engage in a more exacting inquiry of all three sub-parts of the fifth factor. First, less drastic sanctions are not feasible and would be inappropriate for the reasons stated above. Defendants have continued their deceptive behavior after remand by refusing to provide their financial records and less drastic sanctions would likely be ineffective to coerce them into compliance. Second, alternative sanctions have already been implemented in this case to no avail. See generally Order re: Pl.'s Mot. for Contempt, ECF No. 210 (ordering Defendants to supplement discovery and awarding AECOM attorney's fees and costs incurred in filing the motion). Third, and finally, Defendants have been explicitly warned of the possibility of case-dispositive sanctions. To quote Judge Friedland's concurrence from the Ninth Circuit's Memorandum:

> "I share the majority's opinion that the district court could consider entering discovery sanctions. In my view, appropriate sanctions could even include a *default judgment* against Defendant-Appellants, if the district court deems it justified."

Ninth Cir. Mem. (Friedland, J., concurring) at 3 (emphasis added).

In sum, Defendants' discovery misconduct "threaten[s] to interfere with the rightful decision of th[is] case" and terminating sanctions are more than

justified.  See Valley Eng'rs, 158 F.3d at 1057 ("What
is most critical for case-dispositive sanctions,
regarding risk of prejudice and of less drastic
sanctions, is whether the discovery violations 'threaten
to interfere with the rightful decision of the case.'")
(quoting Adriana Int'l. Corp., 913 F.2d at 1412).  Due
to Defendants' recalcitrant behavior, AECOM may never
have access to the true facts of Defendants' profits.
See Connecticut Gen. Life Ins., 482 F.3d at 1097 ("The
most critical factor to be considered in case-
dispositive sanctions is whether 'a party's discovery
violations make it impossible for a court to be
confident that the parties will ever have access to the
true facts.'") (quoting Valley Eng'rs, 158 F.3d at
1058).  Considering that Defendants' discovery
misconduct is willful and the Malone factors favor case-
dispositive sanctions, terminating sanctions are even
more appropriate here.  Accordingly, the Court **GRANTS**
Plaintiff's request for terminating sanctions and enters
default judgment against Defendants[10] in the amount of
$36 million.  See id. (affirming terminating sanctions
in the form of default judgment where defendants had so
frustrated the discovery process that plaintiffs could
not determine their damages).
///

---

[10] Defaulting Defendants (Bud Zulakoff, John Ripley, Todd
Hale, and Henry Blum) are also bound to this ruling, having been
previously held jointly and severally liable for AECOM's damages.
See generally Order re: Mot. for Default J.

1         iii.  <u>Monetary Sanctions</u>

2     AECOM also requests two forms of monetary

3 sanctions.  <u>See</u> <u>generally</u> Pl.'s Mot. for Sanctions.

4 First, AECOM requests a compensatory sanction of $9

5 million "based on a fine of $10,000 per day that this

6 case has been pending in this Court," coupled with a

7 $10,000 per day fine going forward for any future

8 violations of the permanent injunction.  <u>Id.</u> at 16:11-

9 13, 25:24.  Second, AECOM asks this Court to award

10 attorneys' fees and costs incurred following remand from

11 the Ninth Circuit.  <u>Id.</u> at 24:11-22.

12             a. <u>$9 Million Compensatory Sanction and</u>

13                 <u>$10,000 Per Day Coercive Sanction</u>

14     "A court may wield its civil contempt powers for

15 two separate and independent purposes: (1) to coerce the

16 defendant into compliance with the court's order; and

17 (2) to compensate the complainant for the losses

18 sustained."  <u>Shell Offshore Inc. v. Greenpeace, Inc.</u>,

19 815 F.3d 623, 629 (9th Cir. 2016) (internal quotations

20 omitted) (quoting <u>United States v. United Mine Workers</u>

21 <u>of America</u>, 330 U.S. 258, 303-04 (1947)).  In asking for

22 a $9 million sanction award "based on a fine of $10,000

23 per day that this case has been pending," AECOM

24 essentially requests that the Court hold Defendants in

25 civil contempt and: (1) enter a coercive sanction in the

26 amount of $10,000 per day for future violations of the

27 permanent injunction; and (2) enter a compensatory

28 sanction of $9 million by retroactively applying the

1  $10,000 per day coercive sanction over the lifetime of
2  this case, which is approximately 900 days according to
3  AECOM.  See id. at 16:11-14.  The Court **DENIES** both
4  requests.

5     Turning first to the $10,000 per diem coercive
6  sanction request, case authority does not support an
7  entry of coercive sanctions for prospective violations
8  of an injunction without a corresponding concurrent
9  violation.  See, e.g., Shell, 815 F.3d at 629-630.  Put
10 another way, a violation of an injunction is a condition
11 precedent to holding a party in civil contempt and
12 imposing coercive sanctions.  Id.  Here, it does not
13 appear that Defendants are violating the permanent
14 injunction order.  In fact, it seems Defendants have
15 complied with the permanent injunction since June 2021,
16 after AECOM notified Defendants that two infringing
17 websites were live.  See Mot. for Sanctions 4:17-22.
18 Indeed, all of the cases AECOM relies on involved
19 concurrent violations of an injunction which justified
20 coercive sanctions to ensure future compliance with the
21 injunction.  See Hook v. Arizona Dep't of Corr., 107
22 F.3d 1397, 1400 (9th Cir. 1997) (holding disobedient
23 party in civil contempt for violating injunction and
24 consent decree and imposing coercive $10,000 per day
25 fine for future noncompliance); CBS Broad. Inc. v.
26 FilmOn.com, Inc., 814 F.3d 91, 96 (2d Cir. 2016)
27 (holding defendants in contempt for violating injunction
28 and issuing $10,000 per day fine for "any further

failure" to comply with the injunction); <u>Matter of
Search of Content Stored at Premises Controlled by
Google Inc.</u>, 2017 WL 4700056, at *1 (N.D. Cal. Oct. 19,
2017) (holding a company in civil contempt for
noncompliance with a court order and imposing a $10,000
per day sanction to ensure compliance); <u>JPMorgan Chase
Bank, N.A. v. PT Indah Kiat Pulp & Paper Corp. Tbk</u>, 854
F. Supp. 2d 528, 537 (N.D. Ill. 2012) (ordering
defendants to comply with a court order by April 20,
2012 and imposing daily sanctions for noncompliance each
day thereafter); <u>U.S. Philips Corp. v. KXD Tech., Inc.</u>,
2007 WL 4984153, at *2 (C.D. Cal. July 27, 2007) (noting
that in a parallel case, the court had ordered
defendants to pay civil contempt damages for violation
of a preliminary injunction and imposed per diem
sanctions at $10,000 per day).  Given that Defendants
are complying with the permanent injunction, the Court
declines to hold Defendants in civil contempt at this
time and **DENIES** AECOM's coercive sanction request for
future violations of the permanent injunction.

The Court similarly **DENIES** AECOM's request that it
be awarded $9 million in compensatory sanctions by
retroactively applying the $10,000 per diem coercive
sanction over the course of this litigation.  Even if
the Court were to grant the above coercive sanction
request, AECOM has not provided any authority in support
of retroactively applying the $10,000 per day sanction.
Rather, and as Defendants point out, AECOM's cited cases

and other cases that the Court has found support only the future application of coercive sanctions.  See e.g., Hook, 107 F.3d at 1404; see also JPMorgan Chase, 854 F. Supp. at 532 ("The court declines to impose sanctions for the *past conduct* of the defendants, but will impose a sanction of $5,000 per day for each day after April 20, 2012, and $10,000 for each day after May 20, 2012, that the defendants have not complied with the citations.") (emphasis added).  While "[c]ompensatory sanctions are backward looking and are designed to compensate the complainant for damages caused by past acts of disobedience," Aug. Tech. Corp. v. Camtek, Ltd., 542 F. App'x 985, 991 (Fed. Cir. 2013) (citation and internal quotation marks omitted), they must still be limited to the "actual losses sustained as a result of the contumacy."  Shuffler, 720 F.2d at 1148; see also United Mine Workers, 330 U.S. at 304 (noting that compensatory fines must "be based upon evidence of complainant's actual loss").  AECOM has not provided justification for the $10,000 figure, nor has it shown any proof of actual losses sustained from Defendants' discovery evasion.  AECOM's $9 million compensatory sanction request, based on the retroactive application of the $10,000 per diem coercive sanction, is therefore **DENIED.**

    In sum, the Court **DENIES** AECOM's requests for a $10,000 per diem coercive sanction for future violations of the permanent injunction and a $9 million

42

1  compensatory sanction.

2       b. Attorneys' Fees Following Remand

3    AECOM additionally requests its costs and fees

4  incurred following remand from the Ninth Circuit

5  pursuant to two bases of authority: (1) the Lanham Act;

6  and (2) Rule 37.  Pl.'s Mot. for Sanctions 24:11-21.  In

7  opposition, Defendants argue that attorneys' fees and

8  costs are improper under the Lanham Act.  See MK Defs.'

9  MFS Opp'n 18:26-19:14.  Defendants also assert that an

10  award of attorneys' fees against Defendant Topolewski is

11  improper under the Lanham Act.  Id. at 19:8-14; see also

12  Topolewski's MFS Opp'n 24:1-6.  Defendants do not

13  address the recovery of such fees under Rule 37.  See MK

14  Defs.' MFS Opp'n 18:26-19:14.

15    The Court has inherent authority to award

16  attorneys' fees here and need not turn to the Lanham Act

17  or Rule 37.  See Chambers, 501 U.S. at 45 ("[A]n

18  assessment of attorneys' fees is undoubtedly within a

19  court's inherent power . . . .") (citation omitted);

20  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980)

21  ("There are ample grounds for recognizing . . . that in

22  narrowly defined circumstances federal courts have

23  inherent power to assess attorney's fees against

24  counsel.").  A court may assess attorneys' fees when a

25  party has "acted in bad faith, vexatiously, wantonly, or

26  for oppressive reasons."  Alyeska Pipeline Service Co.

27  v. Wilderness Society, 421 U.S. 240, 258-59 (1975)

28  (quoting F.D. Rich Co. v. United States ex rel.

1   Industrial Lumber Co., 417 U.S. 116, 129 (1974)).

2        To make AECOM whole for "expenses caused by

3   [Defendants'] obstinacy," the Court finds that awarding

4   AECOM all of its attorneys' fees and costs following

5   remand is appropriate here.  See Hutto v. Finney, 437

6   U.S. 678, n.14 (1978).  As outlined above, Defendants

7   have engaged in a years-long effort to prohibit AECOM

8   from ever discovering their financial posture.  To

9   reiterate, the Ninth Circuit agreed on appeal that "the

10  defining feature of this dispute has been . . .

11  [Defendants'] 'lengthy history of bad faith litigation

12  practices.'"  Ninth Cir. Mem. at 2 (Friedland, J.,

13  concurring).  Since remand, Defendants have not changed

14  their behavior given that they still have not produced

15  their financial statements in direct violation of court

16  orders.  Order re: Mot. to Quash at 2 (noting that

17  Defendants had not produced financial discovery after

18  remand despite being compelled to do so in 2018).

19  Further, Defendant Topolewski cannot escape the

20  attorneys' fees and costs award given his own extensive

21  involvement in the infringing activity and willful

22  evasion of his discovery obligations.  Awarding AECOM

23  its attorneys' fees and costs is plainly appropriate

24  here in light of Defendants' bad faith, flagrant, and

25  egregious discovery misconduct.  See Universal Oil Prod.

26  Co. v. Root Ref. Co., 328 U.S. 575, 580 (1946) ("No

27  doubt, if the court finds . . . that fraud has been

28  practiced upon it, or that the very temple of justice

44

has been defiled, the entire cost of the proceedings could justly be assessed against the guilty parties. Such is precisely a situation where 'for dominating reasons of justice' a court may assess counsel fees as part of the taxable costs." (citation omitted)).  The Court **GRANTS** AECOM's request for attorneys' fees and costs incurred after remand and orders AECOM to provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs.

## 2.   Defendants' Motions for Summary Judgment

On March 24, 2021, the Ninth Circuit reversed this Court's $1.8 billion damages award to AECOM.  See generally Ninth Cir. Mem.  The only issue on remand is that of damages, and Defendants seek summary judgment on the sole ground that evidence in the record does not show that Defendants profited from their infringing use of the MK IP.[11]  See generally MK Defs.' Mot. for Summ. J. ("MK Defs.' MSJ"), ECF No. 395; Def. Topolewski's Mot. for Summ. J ("Topolewski's MSJ"), ECF No. 396. AECOM argues in opposition that circumstantial evidence in the record, namely Defendants' behavior over the course of this litigation, leads to the conclusion that Defendants did profit from their use of the MK IP. Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n to MSJ")

---

[11] Corporate Defendants' and Defendant Topolewski's Motions for Summary Judgment (collectively, "Motions for Summary Judgment") are virtually identical both in substance and in form. See generally MK Defs.' Mot. for Summ. J. ("MK Defs.' MSJ"), ECF No. 395; Def. Topolewski's Mot. for Summ. J ("Topolewski's MSJ"), ECF No. 396.  Accordingly, the Court treats them as the same and cites to Corporate Defendants' Motion for arguments made in both.

6:17-7:24, ECF No. 403.  In light of the above disposition on AECOM's Motion for Sanctions, the Court **DENIES as moot** Defendants' Motions for Summary Judgment.

Still, engaging briefly on the merits, the Court notes that basic logic would have that there is a triable issue as to Defendants' profits precluding an entry of summary judgment.  Defendants' argument that they are entitled to summary judgment because AECOM cannot prove profits is preposterous.  Defendants' bad faith litigation tactics alone belie their nonsensical statement.  Defendants would not have violated—and be in current violation of—this Court's orders compelling them to produce financial discovery if their infringement scheme was not highly profitable.  To grant summary judgment in favor of Defendants here would reward Defendants for their discovery abuse and encourage future parties to do the same to escape judgment. Frivolous as Defendants' Motions for Summary Judgment are, the Court—perhaps too charitably—does not require Defendants to show cause why their Motions for Summary Judgment are not in violation of Rule 11(b) at this time.  Fed. R. Civ. P. ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).").  Defendants' Motions for Summary Judgment are **DENIED as moot.**

///

### III.   CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** AECOM's Motion for Sanctions. Specifically, the Court: (1) **GRANTS** AECOM's request for an evidentiary sanction and deems as true that Defendants performed and collected on a contract for $36 million; (2) **GRANTS** AECOM's request for terminating sanctions and enters default judgment against Defendants in the amount of $36 million; (3) **DENIES** AECOM's request for a $10,000 per diem coercive sanction for future violations of the permanent injunction; (4) **DENIES** AECOM's $9 million compensatory sanction request based on the retroactive application of the $10,000 per diem coercive sanction; and (5) **GRANTS** AECOM's requests for attorneys' fees and costs incurred following remand from the Ninth Circuit.  The Court orders AECOM to provide supplemental briefing to establish the amount of reasonable attorneys' fees and costs.  AECOM shall prepare and file a proposed judgment thereafter.

Defendants' Motions for Summary Judgment are **DENIED as moot** in light of the disposition on AECOM's Motion for Sanctions.

///
///
///
///
///

1     Having been previously found jointly and severally

2   liable for AECOM's damages, Defaulting Defendants are

3   also bound to this Order.

4     Defendants are still ordered to comply with this

5   Court's previous permanent injunction issued on January

6   24, 2019.

7     **IT IS SO ORDERED.**

8

9

10

11

12

13   DATED: February 25, 2022     /s/ Ronald S.W. Lew
                                _____
14                                **HONORABLE RONALD S.W. LEW**
                                Senior U.S. District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28